# DECLARATION OF DAVID L. CLEVELAND

I, David L. Cleveland, make the following declaration based on my personal knowledge and declare under penalty of perjury pursuant to 28 U.S.C. § 1746 that the following is true and correct:

1. I am a practicing attorney licensed to practice in the District of Columbia. My business address is 924 G Street NW, Washington DC 20001

2. I am a full-time, volunteer staff attorney at Catholic Charities of Washington DC. I joined Catholic Charities in 1998 as a full-time volunteer and have since developed an expertise in asylum law. I previously worked in private practice, as a university law professor in Indonesia, and as a trial attorney for the District of Columbia Corporation Counsel where I conducted more than 40 civil jury trials over the course of eight years. My pro bono efforts have been recognized by many agencies, including Catholic Charities USA and the Board of Immigration Appeals Pro Bono Project. I am a longtime member of the American Immigration Lawyers Association (AILA) and served as the Chair of the National AILA Asylum Committee from 2004 to 2005. I regularly lecture on asylum law at D.C. Bar and other training sessions and my articles on immigration law can be found in Bender's Immigration Bulletin, AILA publications, Immigration Law Today, and ILW.COM, among others.

3. From 1998 to the present, I have spent about 90 percent of my time doing asylum cases. I have represented applicants for asylum from over 50 countries in affirmative asylum office proceedings and in removal proceedings before the Executive Office of Immigration Review (EOIR), which houses the immigration courts and the Board of Immigration Appeals (BIA). I have appealed and won asylum cases at the BIA.

4. From 2013 to the present, I increasingly have spent more time on Freedom of Information Act cases and now 10 percent of my time is spent on FOIA litigation in district court.

5. In my experience, USCIS is inconsistent in responding to requests. Sometimes, it answers in 2 months, sometimes only after 12 months. At times, the agency loses requests and says there is no record of it. So, we must send it again.

6. I estimate that I personally have about 3 FOIA requests for A-files that have been pending with USCIS for more than 30 business days without a determination. I estimate that that our office currently has 15 FOIA requests for A-files that have been pending with USCIS for more than 30 business days.

7. When a portion of the records have been referred to ICE for further processing, it takes months for ICE to process the referral. I estimate that our office has approximately 15 A-file FOIA requests that have been pending with ICE for more than 30 business days from the date of the initial filing with USCIS without a determination.

8. The process for an affirmative asylum case is as follows: the applicant comes to the United States, perhaps as a tourist or a student. She then fills out an asylum application and sends it to USCIS. Then, there is an in-person interview with an asylum officer. During the interview, the officer takes notes, often more than 10 pages, and then, after the interview, the officer writes an Assessment, often 3-4 pages long. If asylum is granted, the case is over. If the officer rejects the claim, the applicant is sent to Immigration Court, where there is a *de novo* hearing.

9. There is no discovery in Immigration Court.

10. The lawyer representing the government in court has a copy of the asylum officer notes and Assessment in his file. If the applicant says something inconsistent with those documents, the lawyer can use the documents to show the applicant is inconsistent, thus not credible, thus not deserving of asylum. The government lawyer can ambush the applicant and her lawyer in the middle of the hearing with the documents and introduce the documents into the record.

11. So, to avoid surprise, I file a FOIA request for the notes and Assessment. If I get them before the court hearing, I feel more confident I will be able to successfully represent my client.

12. Asylum officers do make mistakes, from time to time. If the officer notes or Assessment contain a serious mistake, I could subpoena the officer to appear in court, and cross-examine him. If I see the mistake only at the time of the court hearing, the Immigration Judge might allow me a continuance to subpoena the officer and have another hearing later, but that is not a guaranteed outcome.

13. At times, applicants contact me only after the asylum officer has rejected their claim. Because I did not go to their interview with them, I am very interested to read what the asylum officer wrote and reviewing the information in the file can be very helpful to my client's case. For example, I spoke to a client from Cameroon for hours while she detailed the harm she had suffered. Then, I received the notes of the asylum officer: my client told the officer that government soldiers had murdered her grandmother right in front of her! I asked the client if this was true; she said YES; I asked why she had not told me about that event. She responded that she thought it was not relevant. I told her it was very relevant and very helpful to her case.

14. Thus, I have learned asylum officer Assessments are useful to read. I can see which facts were deemed important, and which facts were ignored. This helps me as I interview future applicants. Even if I disagree, it is good to know what the officer thinks is important.

15. Some clients have lost all of their papers and do not know their immigration history. Approximately once a week a person walks into my Catholic Charities office and says something like, "I have lost all, or some, of my immigration papers; I am not sure of my status." For example, a homeless man told me he had been granted asylum but had no proof of it. After about six months, we got a response; he had been granted

2

asylum. As a result, we were then able to get a work permit for him. Had USCIS processed the A-file FOIA request in a timely manner, my client would have had his work permit more quickly. Getting his work permit was an essential first step in ending his homelessness.

I hereby declare under penalty of perjury that the foregoing is true and correct.
Executed on July 30, 2019.   Signature: *David L. Cleveland*