<u>DECLARATION OF AARON C. HALL</u>

I, Aaron C. Hall, make the following declaration based on my personal knowledge and declare under the penalty of perjury pursuant to 28 U.S.C. § 1746 that the following is true and correct:

1. I am a practicing attorney licensed to practice in the State of Colorado (Colo. Reg. No. 40376). My business address is 12203 E. Second Avenue, Aurora, CO, 80011.

2. I am a partner in Joseph Law Firm, P.C. I have practiced at Joseph Law Firm since 2008. I am licensed to practice at all courts in the State of Colorado. I am also licensed to practice before the U.S. District Court for the District of Colorado and before the Tenth Circuit Court of Appeals. Since my admission to the bar in 2008, my practice has focused exclusively on immigration law. I have represented hundreds of individuals in immigration matters before U.S. Citizenship and Immigration Services ("USCIS"), Immigration and Customs Enforcement ("ICE), the Department of Homeland Security ("DHS"), the Immigration Courts (Executive Office for Immigration Review, "EOIR"), and the Board of Immigration Appeals ("BIA"). I regularly present throughout the United States at continuing legal education seminars, most often on removal defense, family-based immigration, naturalization, and the immigration consequences of criminal convictions.

3. In representation of my clients, we typically file Freedom of Information Act ("FOIA") requests with at least one sometimes multiple immigration agencies. Most commonly, we file FOIA requests to USCIS for a copy of the immigration case file ("A-file"). The purpose of the FOIA request is to obtain existing immigration records to fully evaluate the history and potential options for a client.

4. I estimate that I personally have about 15 FOIA requests for A-files that have been pending with USCIS for more than 30 business days without a determination. I estimate that that our office currently has 45 FOIA requests for A-files pending with USCIS for more than 30 days without a determination.

5. When a portion of the records have been referred to ICE for further processing, it takes an additional 30-60 days to get those results. I estimate that our office has approximately 3 A-file FOIA requests that have been pending with ICE for more than 30 business days from the date of the initial filing with USCIS without a determination.

6. For A-File requests for clients in removal proceedings, in my experience a typical response time is currently 4-7 months. For other A-File requests, a typical response time is 5-10 months.

7. The A-file obtained through FOIA is often critical to evaluating and establishing a client's eligibility for an immigration benefit. For example, evidence of immigrant visa petitions filed on behalf of a client prior to May 1, 2001, may allow an

**Exhibit A6**

application for adjustment of status under 8 U.S.C. § 1255(i) for a client who would otherwise be ineligible. Because these petitions are now decades-old, clients themselves often no longer have copies of the records. The only way to find them is through FOIA. FOIA results often show government records of a client's previous entry to the United States. Such records can establish the client's ability to adjust to lawful permanent resident status under 8 U.S.C. § 1255(a). Entry records obtained through FOIA can also be essential to proving the requisite continuous residence following an admission to the United States for cancellation of removal under 8 U.S.C. § 1229(a). Information in the A-file is essential to evaluating the allegations and charges against a client in removal proceedings as well as the potential relief a client may be eligible for.

8. While processing delays in the production of A-files impact all types of immigration cases, the impacts are often most acute for cases in removal proceedings. On January 17, 2018, EOIR issued a memorandum to immigration judges titled, "Case Priorities and Immigration Court Performance Measures."[1] The memo requires immigration courts to complete 85% of all detained cases within 60 days of the filing of the charging document with the court. For non-detained cases, the memo requires that 85% are completed within one year of the filing of the charging document. In August of 2018, the Attorney General published a binding decision encouraging immigration judges to more strictly interpret the good-cause standard for a requested continuance. *Matter of L-A-B-R-*, 27 I&N Dec. 405 (A.G. 2018). The Attorney General reasoned that the crackdown on continuances was warranted as a reflection of "the public interest in expeditious enforcement of the immigration laws, as well as the tendency of unjustified continuances to undermine the proper functioning of our system." *Id.* at 406. Between the case completion goals and the new precedent discouraging the use of continuances, immigration judges are under extreme pressure to quickly complete cases.

9. For clients in removal proceedings, it is common that they are not able to retain counsel until after appearing at one hearing *pro se*. Counsel for the noncitizen thus often does not even enter an appearance until many months after the charging document is filed. In such situations, even if a FOIA request for the A-file is filed with USCIS upon being retained, the results often take five months and by the time they are received and reviewed, the case is quickly approaching the one year deadline for *completion* before counsel has even been able to evaluate the allegations, charges, and potential relief from removal with access to the client's records. Despite 8 U.S.C. § 1229a(c)(2)(B) instructing that "the alien shall have access to the alien's visa or other entry document, if any, and any other records… pertaining to the alien's admission or presence in the United States," I have never been provided a copy of the A-file upon a request to DHS counsel. Rather, the proper channel for obtaining any client records is FOIA. In my experience, immigration judges are not typically willing to delay pleading to the allegations and charges or submitting applications for relief from removal due to counsel's

---

[1] Available at the Department of Justice Website at https://www.justice.gov/eoir/page/file/1026721/download.

stated need to first receive and review the results of an A-file FOIA request. The alternative, to move forward with the case without the A-file, risks making a strategy decision from which there is no return without material evidence to inform the decision. For clients, these decisions can mean the difference between a future in the United States with their families and deportation and permanent banishment from the country.

10. Many clients in removal proceedings are anxious to resolve the matter as quickly as possible. For lawful permanent resident clients, I advise them not to travel abroad, even for brief trips to visit family, while their case is pending with the immigration court. If they do travel abroad, upon return they can be deemed arriving aliens subject to detention without bond for the remainder of the proceedings. *See* 8 U.S.C. § 1101(a)(13)(C)(iv). Lawful permanent resident clients are often frustrated at any delay in the proceedings, including delay while FOIA requests are pending. These delays can prevent lawful permanent residents from traveling to visit sick family members or attend the funeral of a parent. Other clients have time-sensitive relief from removal. For example, an applicant for cancellation of removal under 8 U.S.C. § 1229b(b) is required to have a qualifying relative who is a U.S. citizen or lawful permanent resident. For purposes of cancellation of removal under § 1229b(b), only children under the age of 21 count as qualifying relatives. *See* 8 U.S.C. § 1229b(b)(1)(D); 8 U.S.C. § 1101(b)(1). However, A-file records routinely contain evidence relevant to a noncitizen's eligibility for cancellation of removal. For example, evidence of entries and exits in the A-file are relevant to whether a client's temporary departures from the country may have broken the continuous physical presence for cancellation of removal. 8 U.S.C. § 1229b(d)(2) (providing that a single departure of over 90 days or multiple departures exceeding 180 days in the aggregate break the physical presence requirement). I currently have multiple clients who are in effect racing the clock to try to have their applications for cancellation of removal adjudicated before a child's 21st birthday. FOIA delays for clients with such time-sensitive matters can be the difference between being eligible to apply to stay in the United States or resignation to ultimate removal to the country of origin.

11. The following examples illustrate the harm clients have suffered due to FOIA delays:

    a. *Client S.L.*: SL is a 42-year-old mother of three children. She entered the U.S. with her parents as a child and has lived in the United States ever since. She is the mother of three U.S. citizen children. S.L. seeks to apply for adjustment of status through a petition for her adult U.S. citizen daughter. Because she seeks to adjust to obtain her lawful permanent resident status under 8 U.S.C. § 1255(i), she must provide evidence of an immigrant visa petition filed on her behalf before May 1, 2001. Her father was a lawful permanent resident and filed a visa petition for S.L. in the early 1990s. Unfortunately, S.L. has no records from this petition and her father is now deceased. DHS has already informed S.L. that it is considering putting her in removal proceedings. In June of 2019, I

3

submitted an A-file FOIA request on S.L's behalf with USCIS seeking records related to her father's immigrant visa petition. Unfortunately, USCIS' processing of this request could take several months. In the meantime, S.L. is vulnerable to arrest and initiation of removal proceedings. She has spent almost her entire life in the United States and is terrified of the looming prospect of deportation. If the A-file contains the immigrant visa petition filed on her behalf, we can file an application for adjustment of status for her, and she will be placed into a period of authorized stay during the processing of that application. And even if the A-file does not contain the immigrant visa petition, we need to know that information so that we can advise S.L. accordingly.  But as it stands, S.L. has to just hope that her FOIA request will be processed before DHS initiates removal proceedings.

    b. *Client J.O.*: J.O. had applied for adjustment of status based on an approved immigrant visa petition filed by his U.S. citizen brother. USCIS denied J.O.'s application for adjustment of status, along with those of his wife and children, alleging that he was ineligible due to an order of deportation from the early 1980s. J.O. denied having been deported but was not given the chance to inspect or rebut the alleged order of deportation in front of USCIS or the immigration court. At the time we were retained on the case, DHS had already indicated its intention to swiftly deport J.O. without further legal proceedings through reinstatement of removal under 8 U.S.C. § 1231(a)(5). We filed a FOIA request with USCIS for a copy of his A-file, seeking to review the evidence that DHS claimed to have of a deportation from the early 1980s. But with the USCIS FOIA request lingering for months without substantive response, we were forced to file a complaint for declaratory and injunctive relief in U.S. District Court in order to obtain his A-file in an attempt to stop his deportation and force USCIS to disclose records in the A-file in compliance with 8 C.F.R. § 103.2(b)(16). During the pendency of that litigation, over 10 months after having requested a copy of the A-file from USCIS, we finally received the records. DHS records showed internal confusion about the immigration documents in J.O.'s file from the early 1980s. They also revealed that a DHS officer who had reviewed the A-file had concluded that their records *did not* show a deportation. Finally, with access to the A-file, we were able to settle the litigation, reopen his application for adjustment of status, and get the adjustment applications for J.O. and his wife and children approved. The delay in FOIA response forced J.O. into costly litigation. And but for the forbearance of individual ICE officers (based on J.O.'s wife's cancer diagnosis), J.O. easily could have been deported without further legal proceedings before receiving FOIA results which ultimately vindicated his insistence that he had not been deported decades ago.

12. The above are just two examples of how delays in production of the A-file can inflict demonstrable harm. Access to the records sought in FOIA requests is essential for my effective representation of clients. The contents of the A-file often contain information which determines whether a client is deportable,

4

whether they have a defense against deportation, or whether they will qualify for an immigration benefit. The significant delays in USCIS's responses to our FOIA requests impede legal representation, cause further delays and frustration for the immigration courts, and prejudice clients' ability to present their case against removal or obtain immigration status.

I declare under penalty of perjury that the above information is true and correct to the best of my knowledge.

Executed this 24th day of July, 2019, at Aurora, Colorado.

Aaron C. Hall
Colo. Reg. No. 40376
Joseph Law Firm, P.C.
12203 E. Second Ave.
Aurora, CO 80011