DECLARATION OF PATRICK TAUREL

I, Patrick Taurel, make the following declaration based on my personal knowledge and declare under the penalty of perjury pursuant to 28 U.S.C. § 1746 that the following is true and correct:

1. I am a practicing attorney licensed to practice before the State of New York. My business address is 1001 Pennsylvania Ave., NW, Suite 1300 South, Washington, D.C. 20012.

2. I have been licensed to practice law since February 2011. I am a Senior Attorney with Clark Hill PLC. I previously worked with Benach Ragland LLP (now Benach Collopy LLP), the American Immigration Council, and Andrade Law Office. I have practiced exclusively in immigration law since I received my law license, representing hundreds of noncitizens in removal proceedings before the Executive Office for Immigration Review (EOIR) and federal courts and with applications and petitions for immigration benefits or relief filed with U.S. Citizenship and Immigration Services (USCIS).

3. I routinely file Freedom of Information Act (FOIA) requests on behalf of my clients for their immigration files, known as A-files. At this particular time, I believe I have only two A-file FOIA requests pending with USCIS, both of which were received by USCIS more than 30 days ago. It is atypical for us to have only two A-File FOIA requests pending with USCIS. Ordinarily, my office has approximately three to seven A-file FOIA requests pending with USCIS. In my experience over the past 18 months, it takes USCIS roughly five to nine months to respond to an A-file FOIA request for clients who are not in removal proceedings and between one to four months for USCIS to respond to A-file FOIA requests for clients who are in removal proceedings, although some such requests have taken over 8 months. In many cases, USCIS will refer a portion of the response to ICE to determine whether ICE will release that portion of the A-file. At this time, I have, I believe, only one FOIA request pending where this has happened and that request was filed with USCIS on November 20, 2018.[1] In my experience, it takes ICE at least one month and up to four months over and above the amount of time it takes USCIS to respond to the original request.

4. Unless a particular client is certain he or she has had no interactions with U.S. immigration authorities or some other special circumstance applies such that filing an A-file FOIA request would be impracticable or not in the client's best interest, I generally file FOIA requests for all of my clients. When I do file FOIA requests with USCIS on behalf of my clients, I almost always request a complete copy of my clients' immigration case files (A-files). A recent A-file FOIA response that I received from USCIS arrived in my office on July 16, 2019. I filed the request on November 20, 2018. Even though all I

---

[1] USCIS responded to our FOIA request on June 29, 2019, indicating that some records were referred to ICE. Notably, at the time I originally filed my A-File FOIA request with USCIS, I also separately requested all records in ICE custody or control pertaining to my client. On December 7, 2018, ICE responded to my request indicating it located no responsive records. On December 10, 2018, I appealed that determination on the ground that the search was inadequate. On February 7, 2019, ICE dismissed my appeal, affirming the adequacy of the original search.

**Exhibit A8**

requested was a copy of the A-file, it took USCIS nearly eight months to respond to my request.

5. When USCIS refers FOIA requests that I have filed with USCIS to ICE, I sometimes do not receive a response from ICE unless I proactively contact ICE and ask that it produce records in response to my original FOIA request to USCIS. On at least one occasion, I have had to follow up with ICE numerous times in order to obtain records that USCIS had referred to it. This is burdensome. In cases where I am billing my client on an hourly basis—as opposed to a fixed fee basis—this results in unnecessary attorney's fees.

6. I file FOIA requests for A-files with USCIS for myriad reasons.

7. For clients in removal proceedings, or who might be placed into removal proceedings, I file FOIA requests for A-files for the same reason any litigator would engage in discovery – to minimize surprises at trial, to prepare a client for cross-examination, to identify any inconsistent statements my client may have made and to be prepared to address them, and so on. FOIA is the closest thing to discovery in removal proceedings, where the rules of discovery do not apply. *Matter of Khalifa*, 21 I&N Dec. 112 (BIA 1995). In fact, at the American Immigration Lawyers Association's 2018 Annual Conference, I spoke on a panel entitled, "Discovery in Removal Proceedings," and the practice advisory I co-authored with my fellow panelists provides that FOIA is "undoubtedly the most vital mechanism available to immigration lawyers to obtain government records pertaining to clients." A FOIA delay in the context of removal proceedings can be very harmful for self-evident reasons, some of which are discussed in *Dent v. Holder*, 627 F.3d 365 (9th Cir. 2010).

8. For clients who are unlikely to be subject to removal proceedings and have enlisted my services to apply for immigration benefits, such as naturalization or adjustment of status, the A-file helps me to assess their eligibility for the benefit sought, to prepare their applications, and to prepare them for interviews with USCIS. For example, I am currently representing a long-time lawful permanent resident who sought my services after being questioned at a naturalization interview about interactions she had had with border officials over 30 years prior. It took approximately four months to receive the results of our A-File FOIA request. The USCIS FOIA results reflected that my client had been assigned a second alien registration number, which I used to call EOIR's automated case information system. My phone call to EOIR's automated case information system revealed that my client was the subject of an outstanding order of removal, which had been entered against her *in absentia*. Once I became aware of the prior removal order, I filed a FOIA request with EOIR to ascertain whether that agency complied with then-applicable statutes and regulations governing notice to noncitizens in exclusion proceedings (which is the type of proceeding in which she was ordered removed). USCIS did grant one request to postpone my client's naturalization interview as these FOIA requests were pending. However, USCIS denied our second such request—for the simple reason that it was a second request—and further stated in the letter denying our request that if we failed to appear for the interview, my client's application would be deemed abandoned.

2

9. For some clients, obtaining a client's A-file through FOIA is the critical first step to assessing the best way for a client to acquire lawful status. By way of example, I have represented a number of individuals who have been granted Deferred Action for Childhood Arrivals ("DACA") and who have gone on to marry U.S. citizens. Many DACA recipients were (mis)advised to state on their DACA applications that they entered the United States "without inspection," even when they were, in fact, inspected and admitted into the country. Acquiring copies of my clients' previously-filed DACA applications is critical to assessing whether they will have a meaningful chance of acquiring lawful immigration status through their U.S. citizen spouses *within* the United States or whether they will have to seek an immigrant visa *abroad*, because the domestic process of acquiring lawful permanent resident status (called "adjustment of status") is, absent certain limited exceptions, available only to noncitizens who were "inspected and admitted or paroled" into the United States at their last entry. Adjustment of status is preferable to pursuing an immigrant visa abroad, because it will not require the filing of a provisional unlawful presence waiver. *See* 8 U.S.C. §§1255(a), 1182(a)(9)(B); *Provisional Unlawful Presence Waivers of Inadmissibility for Certain Immediate Relatives, in the Federal Register*, 78 Fed. Reg. 536 (Jan. 3, 2013). If a client was, in fact, inspected and admitted into the United States but incorrectly represented on a DACA application that he or she entered the United States "without inspection," absent overwhelming evidence of lawful entry, the client will have a difficult time proving he or she was "inspected and admitted or paroled" because of the prior inconsistent statement. Getting a copy of the original DACA application in a case such as this is vital to determining the best strategy from the beginning. The delayed receipt of the A-file in a case like this harms the DACA recipient who must wait to take steps towards becoming a lawful permanent resident of this country (likely the only country he or she has ever known), and it harms the DACA recipient's spouse, who wants to see his or her partner have the security, comfort, rights, and privileges that a green card brings, like the ability to travel abroad.

10. These are just a few scenarios in which I would file FOIA requests for A-file material with USCIS. There are many others.

11. USCIS's persistent FOIA delays and practice of referring requests to ICE have harmed my clients.

    a. R.B. I represent an individual whose initials are R.B. An orphan following her birth, she was adopted by U.S. citizens. It appears, from her sparse paper trail, that her adoptive parents properly obtained an immigrant visa for her to come to the United States, and that she was issued a green card shortly thereafter. However, years later, she lost her green card. Soon afterwards, she applied for a replacement green card but she was not allowed to complete her biometrics appointment in connection with her application to replace her lost green card, because she did not have identification. Her only form of identification was her green card, which she did not even have a photocopy of. She hired me to file a FOIA request for her A-file, which I did on January 18, 2019. That request is still pending as of July 31, 2019. R.B. has been substantially disadvantaged by not having access to her A-

file, because it has impeded her ability to obtain identification, including a driver's license. For example, she has sought to legally change her name from the name she was given at birth to the name her adoptive parents have given her, but she is unable to present identification showing she is either person.

b. F.G.V. I represent an individual whose initials are F.G.V. She is a longtime resident of Texas who had an encounter with immigration authorities at her place of work some 25 years ago. She departed the United States following that encounter, although she did not recall whether she was ordered to depart or permitted to depart on her own. She hired me to obtain her records and to advise on her immigration options, including whether she would have a right to a hearing before an immigration judge should she ever be apprehended by immigration authorities. I requested her records from USCIS, ICE, and CBP on or about May 3, 2017. On June 16, 2017, CBP responded, indicating it had no responsive records. USCIS responded next. In a letter dated August 10, 2017, USCIS indicated that it had 32 pages that were responsive to my request, but that 25 potentially responsive documents, which were nearly entirely redacted, may have originated with ICE and that a copy of my FOIA request had been sent to the ICE FOIA office for consideration and direct response to me. Redacted versions of USCIS's cover letter and the responsive documents are attached. Based on the redactions, it was clear that the documents referred to ICE were critical to my analysis—indeed, they appeared to be the very records generated from the worksite raid my client vaguely recalled. On January 25, 2018, as I awaited a response to the request that I had filed with USCIS and that USCIS had referred to ICE, ICE separately responded to my original request dated May 3, 2017, claiming it had no responsive records. I immediately filed an administrative appeal, arguing that the scope of ICE's search was inadequate. By letter dated March 2, 2018, ICE responded to my administrative appeal, claiming that the search was "adequate in all respects[.]" During and after the pendency of my FOIA request with ICE, I repeatedly contacted ICE about the documents USCIS had referred to it. Finally, on October 1, 2018, some 16 months and 29 days after I had originally filed my FOIA request with USCIS, I received ICE's response which contained critical documents that finally enabled me to answer the questions my client had originally posed regarding her eligibility for certain benefits and her amenability to summary deportation under 8 U.S.C. §1231(a)(5) (reinstatement of removal). During that entire time, my client had no knowledge whether she could be whisked away without a hearing from the country she had called home for over half her life. What is more, my need to appeal and repeatedly follow up to obtain the records I sought resulted in unnecessary fees to my client, who is indigent.

[Signature block on next page.]

I declare under penalty of perjury that the above information is true and correct to the best of my knowledge.

Executed this 31st day of July, 2019 at Washington, DC.

                                                      Patrick Taurel



U.S. Department of Homeland Security
National Records Center
P.O. Box 648010
Lee's Summit, MO  64064-8010

U.S. Citizenship
and Immigration
Services

August 10, 2017

NRC

Patrick Taurel
Clark Hill PLC
1001 Pennsylvania Avenue, NW
Suite 1300 S
Washington, DC  20004

Dear Patrick Taurel:

This is in response to your Freedom of Information Act/Privacy Act (FOIA/PA) request received in this office May 23, 2017 regarding ▮▮▮▮▮▮▮▮▮▮▮▮.

We have completed the review of all documents and have identified 32 pages that are responsive to your request.  Enclosed are 7 pages released in their entirety.  The enclosed record consists of the best reproducible copies available.

During our review, USCIS located 25 potentially responsive documents that may have originated from U.S. Immigration and Customs Enforcement (ICE).  USCIS has sent the document and a copy of your FOIA request to the ICE FOIA Office for consideration and direct response to you.  Should you wish to contact ICE concerning the status of the processing of the document, please contact the ICE FOIA Office via phone at (866) 633-1182 or via e-mail at ICE-FOIA@dhs.gov.  The ICE FOIA Office mailing address is 500 12th Street, S.W., MS 5009, Washington, D.C. 20536-5009.

Documents responsive to your request may contain discretionary releases of exempt information.  If made, these releases are specifically identified in the responsive record.  These discretionary releases do not waive our ability to invoke applicable FOIA exemptions for similar or related information in the future.

The National Records Center does not process petitions, applications or any other type of benefit under the Immigration and Nationality Act.  If you have questions or wish to submit documentation relating to a matter pending with the bureau, you must address these issues with your nearest District Office.

www.uscis.gov

NRC
Page 2

All FOIA/PA related requests, including address changes, must be submitted in writing and be signed by the requester. Please include the control number listed above on all correspondence with this office. Requests may be mailed to the FOIA/PA Officer at the PO Box listed at the top of the letterhead, or sent by fax to (816) 350-5785. You may also submit FOIA/PA related requests to our e-mail address at uscis.foia@uscis.dhs.gov.

Sincerely,

*Jill A. Eggleston*

Jill A. Eggleston
Director, FOIA Operations

Enclosure(s)