UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ZACHARY NIGHTINGALE, et al., Plaintiffs, v. U.S. CITIZENSHIP AND IMMIGRATION SERVICES, et al., Defendants. | Case No. 19-cv-03512-WHO<br><br>**ORDER GRANTING CLASS CERTIFICATION**<br>Re: Dkt. No. 28 |

## INTRODUCTION

Plaintiffs challenge the systematic delay noncitizens face in obtaining access to immigration case files maintained by the U.S. Department of Homeland Security ("DHS"), and its component agencies, U.S. Citizenship and Immigration Services ("USCIS") and U.S. Immigration and Customs Enforcement ("ICE") (collectively "defendants"). These files, commonly referred to as Alien Registration Files ("A-Files"), contain documents relating to all interactions that a noncitizen has had with the immigration system, and therefore are critical to defending against removal or determining eligibility for immigration benefits.

The only way a noncitizen can obtain an A-File is by submitting a Freedom of Information Act ("FOIA") request from the same agency adjudicating their case. Congress mandated that FOIA requests must be answered within 20 business days. Adherence to this statutorily prescribed time frame is especially important for A-File FOIA requests, yet while defendants push to accelerate adjudication of immigration cases they routinely fail to timely provide noncitizens a copy of their A-Files. For people attempting to navigate our complex immigration system, often without counsel and in danger of deportation, this is a serious impediment.

While this may be the first class action addressing defendants' systematic failure of

making timely determinations on A-File FOIA requests, plaintiffs have shown that class certification is appropriate in these extraordinary circumstances. Plaintiffs have established that noncitizens nationwide experience significant delays in obtaining their A-Files and that such delays are harmful to their immigration cases. Accordingly, I GRANT plaintiffs' motion for class certification because a single injunction or declaratory judgment would provide relief to each member of the proposed classes – the timely determination of their time-sensitive A-File FOIA requests.

## BACKGROUND

### I. FACTUAL BACKGROUND

#### A. Importance of Timely Obtaining A-Files

Defendants possess A-Files that contain information that is critical to determining a noncitizen's eligibility to apply for an immigration benefit, to change their existing immigration status, to defend against removal, to work, and to travel freely. Complaint ("Compl.") [Dkt. No. 1] ¶ 2; Motion for Class Certification ("Mot.") [Dkt. No. 28] 1. The information includes an "individual's past interactions with immigration agencies and petitions and/or applications previously filed by or on behalf of the individual." Compl. ¶ 41; *see also id.* ¶¶ 43–50 (listing examples of how A-Files are vital in different immigration situations, such as applying for lawful permanent resident status, asylum, or rebutting charges in removal proceedings).

The only way a noncitizen or his or her attorney can obtain a copy of an A-File is to submit a FOIA request. *Id.* ¶¶ 41, 46; Mot. 3. Noncitizens in removal proceedings particularly rely on FOIA requests because discovery is not available. *Id.* ¶ 41; Mot. 3. Consequently, obtaining A-Files from defendants is critical in immigration cases; delays in obtaining A-Files leave noncitizen and their attorneys "in legal limbo" that inflicts substantial hardship. *Id.* ¶ 7; Exs. A1–A14, Exhibits to Motion for Class Certification [Dkt Nos. 28-3–28-16] (multiple declarations submitted by immigration attorneys across the nation attesting to distinct disadvantage faced by noncitizens due to delays in A-File FOIA requests); *see, e.g.*, Ex. A1, Nightingale Decl. ¶ 13 (longer detention for clients in removal proceedings); Ex. A14, Phelps Decl. ¶ 5 (risk of deportation for clients who are left without proof of status as they wait to file applications for relief until they obtain A-Files);

Ex. A10, Hansen Decl. ¶ 7 (prolonged family separation for clients who have to wait longer for their naturalization cases to be approved in order to file "immediate relative" visa petitions); Ex. A6, Hall Decl. ¶ 10 (inability to travel to visit sick family because of risks associated with re-entry while cases are still pending); Ex. A10, Hansen Decl. ¶ 8 (loss of access to public assistance such as Social Security Income and housing without proof of immigration status); Ex. A7, Asch Decl. ¶ 8 (increased attorney costs because many clients are forced to file lawsuits in federal district court in order to obtain their A-Files).

Noncitizens seeking their records without the assistance of counsel are especially disadvantaged by delays. Mot. 4. For those who are represented by counsel, their attorneys need A-Files to effectively prepare them for interviews or hearings, and effectively litigate appeals. *Id.*; *see, e.g.*, Ex. A7, Asch Decl. ¶ 3 (attorneys are duty-bound to make reasonable inquiry into the applicable facts of a case, but are unable to do so without A-Files); Ex. A1, Nightingale Decl. ¶ 8 (the Board of Immigration Appeals does not provide a copy of the written record, only the transcript of the hearing). Without A-Files, noncitizens are at risk of having their applications for immigration benefits denied based on a statement or testimony considered to be inconsistent with a previous statement in the A-File. Mot. 5; *see, e.g.*, Ex. A1, Nightingale Decl. ¶ 14 (immigration attorneys need A-Files to avoid risk of being accused of misrepresentation if clients were to make innocent mistake that turns out to be inconsistent with prior information or documents in the A-File). A-Files also contain reasons why previous applications were denied, and such information is crucial in determining eligibility for future benefits or relief from deportation. Mot. 5; *see, e.g.*, Ex. A14, Phelps Decl. ¶ 11 (attorneys cannot respond to allegations that ICE has made against their clients without knowing the factual basis for the allegation or being able to review the evidence being used against the client).

Delays in obtaining A-Files also put noncitizens at risk of missing other competing deadlines. *See, e.g.*, Ex. A1, Nightingale Decl. ¶ 12 (asylum applications must be filed within one year of arrival); *Id.* ¶ 13 (removal proceedings for detained noncitizens are normally expedited and expected to move much faster than proceedings for non-detained noncitizens); *Id.* ¶ 8 (BIA appeal process will proceed on its own timeline independent of any response to FOIA request); Ex. A2,

David Decl. ¶ 6 (risk of missing statutory deadlines to file motions in immigration court without first obtaining A-File); Ex. A6, Hall Decl. ¶ 10 (noncitizens must have their applications for cancellation of removal adjudicated before their child's 21st birthday because only children under the age of 21 count as qualifying relatives). Processing delays in production of A-Files are especially harmful given the recent changes in immigration policy that accelerate adjudication timelines. *See* Ex. A6, Hall Decl. ¶ 8 ("Between the case completion goals [of 60 days for detained cases and one year for non-detained cases], and the new precedent discouraging the use of continuances, immigration judges are under extreme pressure to quickly complete cases."); Ex. A6, Hall Decl. ¶ 9 (immigrations judges are not typically willing to delay due to counsel's need to first receive and review the results of an A-File FOIA request).

Requests for continuances due to delays in obtaining A-Files can also be risky because it can lead to outright denial of the application. Mot. 4; *see, e.g.*, Ex. A1, Nightingale Decl. ¶ 11 (postponing naturalization interview because of delays in obtaining A-Files can possibly cause USCIS to simply deny that application); Ex. A12, Falgout Decl. ¶ 7 (immigration judge ordered attorney to file any application for relief by deadline or applications would be deemed waived). The agency from which noncitizens seek A-Files is the same agency that has the authority to deny requests for continuances. *See, e.g.*, Ex. A8, Taurel Decl. ¶ 8 (client unable to timely obtain A-File from FOIA request sent to USCIS, but USCIS denied second request to postpone naturalization interview stating that failure to appear would lead to denial of her application).

### B. Plaintiffs' "Pattern or Practice" Claim

Plaintiffs are three immigration attorneys who regularly file A-File FOIA requests on behalf of their clients, and two noncitizens who have filed A-File FOIA requests from defendants. *Id.* ¶ 1. Plaintiffs allege that defendants have a "pattern or practice" of failing to answer these requests within the statutory deadline set under FOIA. *Id.* ¶ 23. The FOIA statute requires that an agency make a determination on a FOIA request within 20 business days. *Id.* ¶ 21 (citing 5 U.S.C. § 552(a)(6)(A)(i)). An agency may extend its response time in case of "unusual circumstances," by no more than 10 business days provided it sends the requestor "written notice." *Id.* ¶ 22 (citing 5 U.S.C. § 552(a)(6)(B)(i)). All plaintiffs had A-File FOIA requests that were pending with

4

defendants without a determination for more than 30 days at the time the Complaint was filed. *Id.* ¶¶ 53 (several), 56 (at least three), 59 (at least seven), 60 (one), 61 (one).

Plaintiffs assert that defendants have failed to comply with this statutory time frame and that some of them have waited for more than a year. *See, e.g., id.* at ¶ 62 (noncitizen plaintiff Maribel Caradang's FOIA request has been pending for over a year); ¶ 60 (noncitizen plaintiff Pao Lopa's FOIA request has been pending for more than seven months); ¶¶ 53, 56, 59 (attorney plaintiffs Zachary Nightingale, Courtney McDermed, and Cheryl David currently have multiple FOIA requests filed on behalf of their clients that have been pending for more than 30 days).

USCIS' FOIA backlog—the number of requests that have gone unanswered past the statutory deadline—has more than doubled in the last few years. *Id.* ¶¶ 4, 23.[1] The FY 2018 DHS FOIA Report indicates that there were 41,329 pending requests in the USCIS backlog and at least 17,043 referrals unaccounted for by ICE in the most recent fiscal year, which are in addition to the ICE backlog total of 1,332 pending requests. *Id.* ¶ 63. DHS has not disclosed how many of these pending requests are for A-Files, but plaintiffs estimate that the number of pending A-file FOIA requests with defendants are in the thousands. *Id.* ¶ 66.

When USCIS finally responds to A-File FOIA requests, plaintiffs claim that "it routinely fails to produce the entire A-File because portions are referred to ICE for it to make a determination about disclosure." *Id.* ¶ 27. Even then, the DHS regulations make clear that FOIA requests will be handled based on when the request was initially received "by the first component or agency, not any later date." *Id.* ¶ 28 (citing Responsibility for Responding to Requests, 6 C.F.R. § 5.4(g) (2019)). But, plaintiffs assert, ICE also regularly exceeds the 20-business day statutory timeframe for making determinations. *Id.* ¶ 29.

Plaintiffs allege that DHS holds ultimate responsibility for USCIS's and ICE's pattern or practice of failing to make timely determination in response to A-File FOIA requests. *Id.* ¶ 38. Plaintiffs assert that DHS has "failed to ensure that its components made reasonable progress in

---

[1] DHS, 2018 Freedom of Information Report to the Attorney General of the United States and the Director of the Office of Government Information Services ("FY 2018 DHS FOIA Report") vii (2019), https://www.dhs.gov/sites/default/files/publications/DHS%20FY2018%20FOIA%20Report.pdf.

5

clearing out their backlogs," and has "failed to ensure sufficient resources are allocated by each component to address their FOIA backlogs." *Id.* In 2015, DHS and another one of its component agencies, U.S. Customs and Border Protection ("CBP"), were sued in this District over similar nationwide pattern or practice of failing to timely respond to FOIA requests. *Id.* ¶ 39; *see Brown v. U.S. Customs & Border Prot.*, 132 F. Supp. 3d 1170 (N.D. Cal. 2015). The court denied dismissal of that action because it found that plaintiffs had "describe[d] a longstanding and pervasive practice of unreasonable delay in CBP's response to FOIA requests" and that DHS and CBP's failure to meet statutory response deadlines was an "actionable violation of FOIA." Compl. ¶ 39 (citing to *Brown*, 132 F. Supp. 3d at 1172, 1174). That case ultimately settled after CBP decreased its backlog significantly over the course of the litigation. *Id.* Plaintiffs assert that the present lawsuit makes similar claims and seeks similar relief. *Id.*[2]

## II. PROCEDURAL BACKGROUND

On June 16, 2019, plaintiffs filed this class action lawsuit, claiming that defendants' pattern or practice of failing to meet the statutory deadline with respect to A-File FOIA requests violates FOIA. Compl. ¶¶ 73–80. Plaintiffs seek declaratory relief that defendants' failure to make timely determinations on plaintiffs' and proposed classes' A-File FOIA requests violates FOIA, and nationwide injunction requiring defendants to make timely determinations. Compl. ¶ 63. On July 31, 2019, defendants filed an answer, denying each and every allegation in the Complaint. Answer [Dkt. No. 25]. Subsequently, on August 8, 2019, plaintiffs filed a motion seeking certification of the following two classes:

> **USCIS Class**: All individuals who filed, or will file, A-File FOIA requests with USCIS which have been pending, or will be pending, with USCIS for more than 30 business days without a determination.
> **ICE Referral Class**: All individuals who filed, or will file, A-File FOIA requests with USCIS that USCIS has referred, or will refer, to ICE and which have been pending, or will be pending, for more than 30 business days from the date of the initial filing with USCIS without a determination.

Mot. 1. All attorney plaintiffs and noncitizen plaintiff Lopa seek to represent the USCIS Class,

---

[2] Plaintiffs in *Brown* alleged a pattern or practice of delays in CBP's responses to all FOIA requests, whereas plaintiffs here allege a pattern or practice of delays in USCIS' and ICE's responses to A-File FOIA requests in particular.

6

1   and all attorney plaintiffs and noncitizen plaintiff Carandang seek to represent the ICE Referral
2   Class. Mot. 8. Accompanying their motion, plaintiffs also filed multiple declarations collected
3   from immigration attorneys across the nation that attest to the importance of A-Files and the
4   hardships caused by delays in attaining them from defendants. Exs. A1–A14 [Dkt. Nos. 28-3–28-
5   16]. Defendants opposed the motion on several grounds, Opposition ("Oppo.") [Dkt. No. 36]. I
6   heard arguments on October 1, 2019.

## LEGAL STANDARD

"Before certifying a class, the trial court must conduct a rigorous analysis to determine whether the party seeking certification has met the prerequisites of Rule 23." *Mazza v. Am. Honda Motor Co., Inc.*, 666 F.3d 581, 588 (9th Cir. 2012) (internal quotation marks omitted). The party seeking certification has the burden to show, by a preponderance of the evidence, that certain prerequisites have been met. *See Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 348–50 (2011); *Conn. Ret. Plans & Trust Funds v. Amgen Inc.*, 660 F.3d 1170, 1175 (9th Cir. 2011).

Certification under Rule 23 is a two-step process. The party seeking certification must first satisfy the four threshold requirements of Rule 23(a). Specifically, Rule 23(a) requires a showing that: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23(a).

Next the party seeking certification must establish that one of the three grounds for certification applies. *See* Fed. R. Civ. P. 23(b). Plaintiffs seek certification under Rule 23(b)(2), which requires them to establish that "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2).

In the process of class-certification analysis, there "may entail some overlap with the merits of the plaintiff's underlying claim." *Amgen Inc. v. Connecticut Ret. Plans & Trust Funds*, 568 U.S. 455, 465–66 (2013) (internal quotation marks omitted). However, "Rule 23 grants courts no license to engage in free-ranging merits inquiries at the certification stage." *Id.* at 466. "Merits

questions may be considered to the extent—but only to the extent—that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied." *Id.*

**DISCUSSION**

Defendants argue that plaintiffs have failed to meet the commonality and typicality requirements under Rule 23(a) and the necessary requirements for a Rule 23(b)(2) type of class. They do not contest plaintiffs' showing of numerosity or adequacy under Rule 23(a), but I address those issues as part of the rigorous analysis required for class certification. Oppo. 6; Reply [Dkt No. 42] 1–2; *Mazza*, 666 F.3d at 588. For the reasons set forth below, I find that plaintiffs have met their burden for certification of both the USCIS Class and the ICE Referral Class.

**A.     Rule 23(a)**

**1.     Numerosity**

Rule 23(a)(1) requires that the "the class [be] so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). The party seeking certification "do[es] not need to state the exact number of potential class members, nor is a specific number of class members required for numerosity." *In re Rubber Chemicals Antitrust Litig.*, 232 F.R.D. 346, 350 (N.D. Cal. 2005). Courts generally find that numerosity is satisfied if the class includes forty or more members. *See Villalpando v. Exel Direct Inc.*, 303 F.R.D. 588, 605–06 (N.D. Cal. 2014); *In re Facebook, Inc., PPC Adver. Litig.*, 282 F.R.D. 446, 452 (N.D. Cal. 2012). Because plaintiffs seek injunctive and declaratory relief, "the numerosity requirement is relaxed and plaintiffs may rely on the reasonable inference arising from plaintiffs' other evidence that the number of unknown and future members of [the] proposed subclass . . . is sufficient to make joinder impracticable." *Sueoka v. United States*, 101 F. App'x 649, 653 (9th Cir. 2004).

Plaintiffs assert that their class is sufficiently numerous because they reasonably estimate hundreds, if not thousands, of attorneys and noncitizens constitute members of the USCIS Class and at least several hundred members of the ICE Referral Class. Mot. 11–13. Plaintiffs provide various declarations of immigration attorneys that itself show at least 173 A-File FOIA requests filed on behalf of noncitizens have been pending with USCIS for more than 30 business days without a determination, and at least 139 A-File FOIA requests that USCIS has referred to ICE

and have been pending for more than 30 business days. Mot. 11; Exs. A1–A14 (declarations of immigration attorneys attesting to the number of A-File FOIA requests they have pending with defendants and the chronic delays for nearly all their clients, ranging from around four to twelve months, and in some cases, over a year). Plaintiffs also point to the backlogs reported by DHS as evidence that defendants know the exact number of class members who have not received a timely determination. Mot. 11–13 (citing to DHS FOIA Report at 19). Defendants concede that in FY 2019, approximately 98 percent of requests submitted to USCIS sought A-File material. Ex. A, Eggleston Decl. [Dkt. No. 36-1] 3. I find that plaintiffs have sufficiently shown numerosity.

### 2. Commonality

Rule 23(a)(2) requires that there be "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). Plaintiffs must show that the class members have suffered "the same injury," meaning their claims "depend upon a common contention" that is of such a nature that "determination of its truth or falsity will resolve an issue that is central to the validity of each [claim] in one stroke." *Wal-Mart*, 564 U.S. at 350 (internal quotation marks and citation omitted). Plaintiffs must demonstrate not merely the existence of a common question, but rather "the capacity of classwide proceedings to generate common answers apt to drive the resolution of the litigation." *Id.* (internal quotation marks and emphasis omitted). For purposes of Rule 23(a)(2), "even a single common question will do." *Id.* at 359 (internal quotation marks and modifications omitted).

Commonality cannot be determined without a precise understanding of the nature of the underlying claims. *Parsons v. Ryan*, 754 F.3d 657, 676 (9th Cir. 2014); *Wal-Mart*, 564 U.S. at 338 ("[P]roof of commonality necessarily overlaps with respondents' merits contention that Wal-Mart engages in a pattern or practice of discrimination."). However, as the Ninth Circuit has clarified, "this does *not* mean that the plaintiffs must show at the class certification stage that they will *prevail* on the merits." *Parsons*, 754 F.3d at 676 n. 19 (emphasis in original).

Here, plaintiffs' underlying claim is that defendants engage in a pattern or practice of failing to make determinations on A-File FOIA requests within the statutorily-mandated deadline. Mot. 16. The Ninth Circuit has recognized a pattern or practice claim for unreasonable delay in

9

responding to FOIA requests. *See Hajro v. U.S. Citizenship & Immigration Servs.*, 811 F.3d 1086, 1103 (9th Cir. 2016); *Long v. U.S. I.R.S.*, 693 F.2d 907, 909–10 (9th Cir. 1982). While pattern or practice claims have been brought in individual FOIA lawsuits, this is the first class action lawsuit challenging the systematic failure by USCIS and ICE to comply with the FOIA statutory timeframe. Mot. 10. Pattern or practice claims in individual FOIA lawsuits do not address this systematic failure; such claims become moot when the noncitizen no longer has a threat of future harm because he or she has successfully received an immigration benefit or defended against removal. *See Hajro v. U.S. Citizenship & Immigration Servs.*, 811 F.3d 1086, 1107 (9th Cir. 2016).

To show injury in fact for pattern or practice claims in individual lawsuits, regardless of whether a plaintiff's specific FOIA requests have been mooted because the agency has responded to their request, a plaintiff must demonstrate three prongs: "(1) the agency's FOIA violation was not merely an isolated incident, (2) the plaintiff was personally harmed by the alleged policy, and (3) the plaintiff himself has a sufficient likelihood of future harm by the policy or practice." *Hajro*, 811 F.3d at 1103. The first prong is satisfied when a plaintiff provides evidence that he or she has been subjected to a FOIA violation more than once or provides affidavits of people similarly situated to the plaintiff who was also harmed by the pattern or practice. *Id.* at 1104. The second prong is satisfied when a plaintiff shows that he or she personally filed a FOIA request and that request was delayed. *Id.* 1105–06. The third prong on likelihood of future harm is most difficult to show, particularly in individually-filed cases because noncitizen's claims can become moot.

In *Hajro*, noncitizen Mirsad Hajro and an immigration attorney James R. Mayock claimed that USCIS engages in a pattern or practice of violating FOIA's time limit provisions. *Hajro v. U.S. Citizenship & Immigration Servs.*, 811 F.3d 1086, 1094 (9th Cir. 2016). Hajro was a lawful permanent resident who had his naturalization application denied based on evidence in his A-File that allegedly revealed false testimony. *Id.* at 1094. In preparation of his review hearing before an immigration officer, Hajro filed an A-File FOIA request from USCIS and requested expedited processing based on a 1992 settlement agreement between parties in *Mayock v. Nelson*, where

immigration attorney Mayock sued then-named Immigration and Naturalization Service ("INS") for systematic delays in responding to FOIA requests submitted by noncitizens. *Id.*[3]

The Ninth Circuit found Hajro met the first prong because he provided twenty-six declarations by immigration attorneys detailing USCIS' delays, and the second prong because USCIS responded to Hajro's A-File FOIA request well beyond the twenty-day limit prescribed by FOIA. *Hajro*, 811 F.3d at 1104–06. However, Hajro could not meet the third prong because he obtained citizenship during the course of the litigation, which meant he could not seek injunctive relief on his pattern or practice claim because it was unlikely that USCIS would impair his lawful access to information in the future. *Id.* at 1107. Mayock's pattern or policy claim was remanded to determine whether he could satisfy the second or third prongs as an immigration attorney. *Id.* at 1106. The Ninth Circuit then affirmed the district court's order to deny Mayock's motion to amend the complaint and found that Mayock lacked standing to bring a pattern or practice claim because he did not personally file a FOIA request when the complaint was originally filed. *Hajro v. United States Citizenship & Immigration Servs.*, 743 F. App'x 148, 149 (9th Cir. 2018). The Ninth Circuit also noted that because Hajro and Mayock did not bring their pattern or practice claim as a class action, they could not amend their complaint once their claims became moot. *Id.* at 150.

*Hajro* reveals that pattern or practice claims by individuals are especially susceptible to becoming moot. Plaintiffs here bring a class action challenging the systematic failure by USCIS and ICE to comply with the FOIA statutory timeframe. Mot. 10, 14. Unlike *Hajro*, all named plaintiffs satisfy the three-prong test. Plaintiffs have shown, through multiple declarations of immigration attorneys across the nation, that (1) defendants' violation of FOIA is not merely an isolated incident, (2) plaintiffs and many other similarly situated people have been personally harmed by the alleged practice, and (3) proposed class members include those who will be

---

[3] After remand from the Ninth Circuit in *Mayock v. Nelson*, 938 F.2d 1006 (9th Cir. 1991), parties entered into a settlement agreement, "in which INS agreed to implement expedited processing of a FOIA request where the requester demonstrates that an individual's life or personal safety would be jeopardized or that substantial due process rights of the requester would be impaired by the failure to process a request immediately." *Hajro*, 811 F.3d at 1093.

11

subjected to defendants' delays in the future when they file A-File FOIA requests. At this stage, plaintiffs are not required to show that they will prevail on their underlying pattern or practice claim, *Parsons*, 754 F.3d at 676 n. 19, but this showing is enough to establish commonality for class certification.

Defendants characterize plaintiffs' claims as an aggregation of many claims individuals have about the delays associated with their respective A-File FOIA requests. Oppo. 7. Defendants argue that delays are "not necessarily the same in every case because no two A-Files are the same." Oppo. 7. It follows, defendants assert, that plaintiffs have not shown a shared injury because delays in responding to each A-File FOIA request can range from a couple of months to over a year. Oppo. 8.

This argument rests upon a misunderstanding of plaintiffs' claims, which do not relate to the delay in any particular A-File FOIA request but instead to defendants' "widespread practice of failing to make determination within FOIA's statutory time fame" that can be resolved in a "single stroke." Mot. 3; *Parsons*, 754 F.3d at 676 (affirming class certification for plaintiffs who brought a "pattern or practice" claim against Arizona Department of Corrections for systematic deficiencies in prisoner treatment, and finding commonality existed notwithstanding individual prisoners' variations in harm). Plaintiffs have established commonality because the shared injury between plaintiffs and proposed class members is the delayed receipt of determinations on their A-File FOIA requests filed with USCIS, and, with respect to the ICE Referral class, subsequently referred by USCIS to ICE. Mot. 16. This delayed receipt is the result of defendants' alleged pattern and practice of failing to make determinations in A-File FOIA cases within the statutorily mandated time frame, making it the common contention, or the "glue," that holds each class member together. Mot. 16 (citing to *Wal-Mart*, 564 U.S. at 352). For these reasons, plaintiffs have made a sufficient showing to establish commonality.

### 3. Typicality

Commonality and typicality "tend to merge." *Gen. Tel. Co. of the Southwest v. Falcon*, 457 U.S. 147, 157 n.13 (1982). The test for typicality is "whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named

12

plaintiffs, and whether other class members have been injured by the same course of conduct." *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 984 (9th Cir. 2011) (internal quotation marks and citation omitted). "Typicality refers to the nature of the claim or defense of the class representative, and not to the specific facts from which it arose or the relief sought." *Id.* (internal quotation marks and citation omitted). Class certification is not appropriate if unique defenses threaten to preoccupy the class representatives and thus cause absent members to suffer. *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992).

Plaintiffs contend that they "challenge a uniform policy or practice and suffer injuries similar to those of the proposed class members, 'result[ing] from the same, injurious course of conduct.'" Mot. 17 (quoting *Armstrong v. Davis*, 275 F.3d 849, 869 (9th Cir. 2001), *abrogated on other grounds by Johnson v. California*, 543 U.S. 499 (2005)). Defendants argue that typicality does not exist because the individualized nature of each A-File create "factual disparities between the proposed class members [that] 'affect the outcome of the legal issues' and thus preclude certification." Oppo. 8 (citing *Califano v. Yamasaki*, 442 U.S. 682, 701 (1979)). According to defendants, the time required to make a determination on a given A-File "depends in large part on a variety of factors, including the A-File's physical location, size, content, and the amount of information that falls within one of the FOIA's exemptions." Oppo. 7 (citing to Ex. A, Eggleston Decl. ¶¶ 9, 10; Ex B, Fuentes Decl. ¶ 7).

Here, plaintiffs and proposed class members have filed or will file A-File FOIA requests to defendants who are required to make timely determinations pursuant to the timeframe set forth in 5 U.S.C. § 552(a)(6)(A)(i). Thus, plaintiffs seek the same relief that members of the proposed class would seek: the timely determination of their A-File FOIA requests. Defendants' focus on the individualized nature of each A-File is misguided. Regardless of the factors that go into determining how long a single FOIA request might take, defendants are mandated to make a determination within 20 business days, or at most 30 business days with an "unusual circumstances" exception. Both plaintiffs and purposed class members are harmed by or will be harmed by defendants' same course of conduct, namely the lack of determination on their A-File FOIA requests within the statutory timeline. *See, e.g.*, Ex. A1, Nightingale Decl. ¶ 13 (longer

13

1 detention time); Ex. A14, Phelps Decl. ¶ 5 (risk of deportation); Ex. A10, Hansen Decl. ¶ 7
2 (prolonged family separation); Ex. A6, Hall Decl. ¶ 10 (inability to travel); Ex. A10, Hansen Decl.
3 ¶ 8 (loss of access to public assistance); Ex. A7, Asch Decl. ¶ 8 (increased attorney costs).

Defendants make two additional arguments that also fail. First, defendants argue that proposed class members are not subject to the "same unlawful practice" because defendants do not "*egregiously* adhere to an *illegal* policy or practice" as "[n]either USCIS nor ICE have a policy of intentionally violating FOIA for any reason, including in order to delay determination on A-File FOIA requests." Oppo. 8 (citing to *Payne Enterprises, Inc. v. United States*, 837 F.2d 486, 494 (D.C. Cir. 1988) and *Judicial Watch v. U.S. Dep't of Homeland Sec.*, 895 F.3d 770, 780 (D.C. Cir. 2018)). However, as clarified in *Judicial Watch*, the court in *Payne* "did not require egregious agency action" to state a policy or practice claim," but rather the court stated that "even beyond a 'refusal to supply information,' an agency may engage in 'some other failure to abide by the terms of FOIA' that could be the basis for finding the agency has an unlawful policy or practice." *Judicial Watch*, 895 F.3d at 781–82 (quoting *Payne*, 837 F.2d at 491). An "informal agency conduct resulting in long delays in making requested non-exempt records available may serve as the basis for a policy or practice claim." *Id.* at 777–78. As the court characterized it, it would be "ironic" if a policy or practice claim could be based on misapplication of a FOIA exemption, as was the case in *Payne*, but not on an agency's "total disregard of the obligations mandated by Congress," such as the FOIA statutory deadlines at issue in *Judicial Watch*. *Id.* at 782. Therefore, plaintiffs are not required to show defendants' pattern or practice of failing to make timely determinations of A-File FOIA requests is result of an "egregious policy."

Second, defendants assert that "none of the FOIA's provisions setting forth time periods for making determinations is absolute." Oppo. 9. But multiple courts, including in this District, have found that violation of FOIA's statutory 20-day deadline constitutes a harm. *See Brown v. U.S. Customs & Border Prot.*, 132 F. Supp. 3d 1170, 1173 (N.D. Cal. 2015) ("[C]ourts have repeatedly found that an agency's failure to respond to a FOIA request within the statutory time limits violates FOIA and allows the aggrieved party to sue."); *Our Children's Earth Found. v. Nat'l Marine Fisheries Serv.*, No. 14-1130-SC, 2015 WL 4452136, at *7 (N.D. Cal. July 20, 2015)

("[A]n agency's failure to comply with the FOIA's time limits is, by itself, a violation of the FOIA.") (internal quotation marks and citation omitted); *Long v. U.S. I.R.S.*, 693 F.2d 907, 910 (9th Cir. 1982) ("[U]nreasonable delays in disclosing non-exempt documents violate the intent and purpose of the FOIA, and the courts have a duty to prevent these abuses."); *Payne Enterprises, Inc. v. United States*, 837 F.2d 486, 494 (D.C. Cir. 1988) (agreeing with the Ninth Circuit opinion in *Long*).

Defendants further claim that the FOIA statute "expressly contemplates that some determinations may take longer than the default time period of 20 business days" because it includes provisions that extend time under "unusual circumstances" and "exceptional circumstances." Oppo. 8. But, even under the "unusual circumstances" provision, an agency is excused for no more than 10 business days and must still provide timely written notice to the requester. 5 U.S.C. § 552(a)(6)(B)(i). Plaintiffs' proposed classes account for this additional time because they seek to certify those who have had their A-File FOIA requests pending with defendants "for more than 30 business days without a determination." Mot. 1. Additionally, the "exceptional circumstances" provision is only applicable once a requester has sought review of an agency's action or inaction by a federal district court.[4] *Citizens for Responsibility & Ethics in Washington v. Fed. Election Comm'n*, 711 F.3d 180, 185 (D.C. Cir. 2013) ("Once in court, however, the agency may further extend its response time if it demonstrates 'exceptional circumstances' to the court."). Thus, an agency cannot single-handedly invoke the "exceptional circumstances" provision to extend time.

Both the FOIA statutory timeline and defendants' violation of it are clear. "[T]he repeated, routine violation of these deadlines by agencies has been a continual source of concern for Congress." *Our Children's Earth Found*, at *8. Although courts have "recognized that agencies' resources are heavily taxed by the quantity and depth of FOIA requests (especially in light of budget constraints that limit the personnel and resources assigned to an agency), that does not

---

[4] The statute's definition of exceptional circumstance "does not include a delay that results from a predictable agency workload of requests under this section, unless the agency demonstrates reasonable progress in reducing its backlog of pending requests." 5 U.S.C. § 552(a)(6)(C)(ii).

grant the agency carte blanche to repeatedly violate congressionally mandated deadlines." *Id.* The irony should not be lost on anyone that the agencies that are delaying noncitizens' right to timely obtain copies of their A-Files are the same agencies pushing to accelerate proceedings in immigration cases. Recent immigration policy changes now encourage immigration judges to limit continuances and mandate that asylum application must be resolved within 180 days, detained cases within 60 days, and non-detained cases within one year.[5] Plaintiffs have met the typicality requirement for both of the proposed classes.

### 4. Adequacy

Finally, to establish adequacy under Rule 23(a)(4), named plaintiffs must show that they "will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). "To determine whether named plaintiffs will adequately represent a class, courts must resolve two questions: (1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Ellis*, 657 F.3d at 985 (internal quotation marks omitted).

Plaintiffs do not have any conflicts of interest because they have a "mutual goal" with proposed class members to "challenge Defendants' unlawful practices and obtain declaratory and injunctive relief that would not only cure this illegality but remedy the injury suffered by all current and future class member." Mot. 18. Both plaintiffs and proposed class members have a shared interest in ensuring that defendants make determinations in response to their A-File FOIA requests within the statutory time period. *Id.* Plaintiffs are represented by the American Immigration Council, the Northwest Immigrant Rights Project and Law Firm of Stacy Tolchin (collectively, "Class Counsel"). Class Counsel are experienced in protecting the interests of noncitizens and handling complex and class action litigation in the immigration field. Mot. 19

---

[5] *See* Presidential Memorandum on Additional Measures to Enhance Border Security and Restore Integrity to Our Immigration System (Apr. 2019), https://www.whitehouse.gov/presidential-actions/presidential-memorandum-additional-measures-enhance-border-security-restore-integrity-immigration-system; EOIR Memorandum on Case Priorities and Immigration Court Performance Measures (Jan. 2018), https://www.justice.gov/eoir/page/file/1026721/download; *Matter of L-A-B-R- et al.*, 27 I&N Dec. 405 (A.G. 2018).

16

(citing to Exs. B1–B4 [Dkt. Nos. 28-17–28-20]). Defendants do not dispute that plaintiffs satisfy the adequacy requirement. Oppo. 6; Reply 2. Therefore, I find plaintiffs and Class Counsel "will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4).

**B.     Rule 23(b)(2)**

Plaintiffs also must meet one of the requirements of Rule 23(b) for a class action to be certified. Here, plaintiffs seek class certification under Rule 23(b)(2), which requires them to show that "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2). The "key" is the "indivisible nature of the injunctive or declaratory remedy warranted–the notion that the conduct is such that it can be enjoined or declared unlawful only as to all of the class members or as to none of them." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 360 (2011) (internal citation and quotation marks omitted). In other words, Rule 23(b)(2) "applies only when a single injunction or declaratory judgment would provide relief to each member of the class." *Id.* There is "no reason to undertake a case-specific inquiry into whether class issues predominate or whether class action is a superior method of adjudicating" because both are "self-evident" in Rule 23(b)(2) classes. *Id.* 362–63. Rule 23(b)(2) requirements are "unquestionably satisfied when members of a putative class seek uniform injunctive or declaratory relief from policies or practices that are generally applicable to the class as a whole." *Parsons v. Ryan*, 754 F.3d 657, 688 (9th Cir. 2014) (internal citation omitted).

To establish a Rule 23(b)(2) class "in the context of challenging an agency's FOIA policy or practice," a plaintiff must "demonstrate that he or she has pending FOIA requests that are likely to implicate the policy or practice" or demonstrate a clear intent to continue filing FOIA requests with the defendant. *Gatore v. United States Dep't of Homeland Sec.*, 327 F. Supp. 3d 76, 104 (D.D.C. 2018) (internal quotation marks and citations omitted).

Here, plaintiffs have asserted that they had pending A-File FOIA requests that were pending with defendants for more than 30 days at the time the Complaint was filed. Mot. 8. Attorney plaintiffs have asserted they regularly file A-File FOIA requests on behalf of their clients

17

and that they will continue to file such requests in the future. Mot. 7–8. The declarations of immigration attorneys also show at least 173 A-File FOIA requests sent to USCIS and at least 139 A-File FOIA requests referred to ICE that have been pending for more than 30 days. Mot. 11–12 (citing to Exs. Nos. A1–14).

Plaintiffs seek an order (i) "declaring that Defendants' failure to make determinations on A-File FOIA requests within FOIA's statutory time frame is unlawful," (ii) "ordering Defendants to make determinations on A-File FOIA requests in the backlog within 60 days (or a time period set by the Court)," and (iii) "enjoining Defendants from further failing to adhere to the deadlines established by 5 U.S.C. § 552(a)(6)(A)(i). Reply 10; Mot. 20. Plaintiffs have sufficiently satisfied the requirement for a 23(b)(2) class in the FOIA context, such that "a single injunction or declaratory judgment would provide relief to each member of the class." *Wal-Mart Stores*, 564 U.S. at 360.

Defendants exaggerate what is required under Rule 23(b)(2). They argue that class-wide injunctive relief is inappropriate because "every plaintiff will have to make individualized factual arguments as to the unlawfulness of an agency delay related to that plaintiff's own unique A-File." Oppo. 12. But, as the Ninth Circuit has made clear, the inquiry "does not require a finding that all members of the class have suffered identical injuries." *Parsons*, 754 F.3d at 688 (internal citation omitted). A class may properly be certified under Rule 23(b)(2) if the opposing party's "[a]ction or inaction is directed to a class . . . even if it has taken effect or is threatened only as to one or few members of the class, provided it is based on grounds which have general application to the class." Fed. R. Civ. P. 23(b)(2) Advisory Committee's Note (1966).

Plaintiffs do not seek relief with respect to the determinations made on individual A-File FOIA requests. They "challenge Defendants' pattern or practice of refusing to timely make such determinations." Reply 11. Plaintiffs' pattern or practice claim is "central to the claims of all class members irrespective of their individual circumstances and the disparate effects of the conduct." *Garcia v. Johnson*, No. 14-CV-01775-YGR, 2014 WL 6657591, at *15 (N.D. Cal. Nov. 21, 2014) (internal citation omitted) (finding plaintiffs who brought class action challenging government's failure to provide timely reasonable fear interviews sufficiently alleged a pattern of

18

activity that is central to the claims of all class members). Certification, therefore, does not hinge on the complexities of each A-File requested but rather on the uniform untimeliness in responding to A-File FOIA requests.

Defendants further argue that plaintiffs seek an "obey the law" injunction, which is impermissible because Rule 65(d) requires an injunction order to "state its terms specifically" as well as "describe in reasonable detail . . . the act or acts restrained or required." Oppo. 13 (citing Fed. R. Civ. P. 65(d)(B)–(C)). They rely on the Hon. Edward M. Chen's decision in *Cuviello v. City of Oakland*, where plaintiffs sought an injunction permitting police officers to make only lawful arrests and restraining them from interfering with plaintiffs' free speech rights. No. C-06-5517-EMC, 2009 WL 734676, at *3 (N.D. Cal. Mar. 19, 2009). Unlike the injunction sought by plaintiffs here, plaintiffs in *Cuviello* sought a vague injunction that did not specify what act was being enjoined. In this case, plaintiffs seek an injunction that meets the Rule 65(d) specificity requirement because they specifically seek to order defendants to make a determination on outstanding A-File FOIA requests. Therefore, plaintiffs have met the requirement of Rule 23(b)(2). A single injunction or declaratory judgment would provide relief to each member of the proposed classes – the timely determination on their time-sensitive A-File FOIA requests.

## CONCLUSION

For the reasons set forth above, plaintiffs' motion for class certification is GRANTED as to both the USCIS Class and the ICE Referral Class.

**IT IS SO ORDERED.**

Dated: October 15, 2019

William H. Orrick
United States District Judge