1  Trina Realmuto (CA SBN 201088)
2  Mary Kenney (DC 1044695)*
   Tiffany Lieu (WA 55175)*
3  National Immigration Litigation Alliance
   10 Griggs Terrace
4  Brookline, MA 02446
   (617) 819-4447
5  trina@immigrationlitigation.org
   mary@immigrationlitigation.org
6  tiffany@immigrationlitigation.org

7  *(Additional Counsel for Plaintiffs Listed in Signature Block)*

8

9

10                 UNITED STATES DISTRICT COURT FOR THE

11                    NORTHERN DISTRICT OF CALIFORNIA

12                        SAN FRANCISCO DIVISION

13

| Zachary NIGHTINGALE; Courtney McDERMED; Cheryl DAVID; Pao LOPA; Maribel CARANDANG, | No. 3:19-cv-03512-WHO |
|---|---|
| Plaintiffs, | **Plaintiffs' Notice of Motion and Motion for Summary Judgment** |
| v. | |
| U.S. CITIZENSHIP AND IMMIGRATION SERVICES; U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT; U.S. DEPARTMENT OF HOMELAND SECURITY, | **Date:   December 9, 2020** **Time:  2:00 P.M.** **Judge William H. Orrick** |
| Defendants. | |

**REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED**

Plfs.' Summary J. Mx.                              Case No. 3:19-cv-03512-WHO

PLEASE TAKE NOTICE that on December 9, 2020, at 2:00 p.m. at the above-entitled court located at the San Francisco Courthouse, Courtroom 2 of the 17th floor, 450 Golden Gate Avenue, San Francisco, CA 94102, with the Honorable District Judge William H. Orrick presiding, Plaintiffs Zachary NIGHTINGALE, Courtney McDERMED, Cheryl DAVID, Pao LOPA, and Maribel CARANDANG will, and hereby do, move this Court for summary judgment and injunctive relief pursuant to Federal Rules of Civil Procedure 56 and 65.

This motion is based on the attached Memorandum of Points and Authorities, the pleadings, records and files in this action, and such other evidence and argument as may be presented at the time of hearing. A proposed order accompanies these filings.

Respectfully submitted,

*s/ Trina Realmuto*
Trina Realmuto (CA SBN 201088)
Mary Kenney*
Tiffany Lieu*
National Immigration Litigation Alliance
10 Griggs Terrace
Brookline, MA 02446
(617) 819-4447
trina@immigrationlitigation.org
mary@immigrationlitigation.org
tiffany@immigrationlitigation.or

Matt Adams (WSBA No. 28287)*
Northwest Immigrant Rights Project
615 Second Avenue, Suite 400
Seattle, WA 98104
(206) 957-8611
(206) 587-4025 (fax)
matt@nwirp.org

Claudia Valenzuela (IL 6279472)*
Emily Creighton (DC 1009922)*
American Immigration Council
1331 G Street NW, Suite 200
Washington, DC 20005
(202) 507-7540
(202) 742-5619 (fax)
cvalenzuela@immcouncil.org
ecreighton@immcouncil.org

Stacy Tolchin (CA SBN 217431)
Law Offices of Stacy Tolchin
634 S. Spring St., Suite 500A
Los Angeles, CA 90014
(213) 622-7450
(213) 622-7233 (fax)
Stacy@Tolchinimmigration.com

Admitted *pro hac vice*

Dated this 30th day of September, 2020.

Plfs.' Summary J. Mx.                                    Case No. 3:19-cv-03512-WHO

1

**TABLE OF CONTENTS**

2                                                                                    **Page**

3

I.       INTRODUCTION………………………………………………………...   1
4

II.      BACKGROUND………………………………………………………....   1
5

  A.  THE CERTIFIED CLASSES………………………………………………   1
6

  B.  DEFENDANTS' LEGAL OBLIGATIONS………………………………...   2
7

  C.  THE IMPORTANCE OF A-FILES AND HARM CAUSED BY DELAYED
8       RECEIPT………………………………………………………...............   3
9

III.     STANDARD OF REVIEW…………………………………………………   6
10

IV.      ARGUMENT…………………………………………………………….   7
11

  A.  USCIS AND ICE HAVE A PATTERN OR PRACTICE OF FAILING TO
12       MAKE TIMELY DETERMINATIONS ON A-FILE FOIA REQUESTS………   7
13

    1.  USCIS Has a Pattern or Practice of Failing to Comply with the FOIA Statute.   7
14

    2.  ICE Has a Pattern or Practice of Failing to Comply with the FOIA Statute…..   11
15

    3.  DHS Abdicated Its Responsibility to Oversee USCIS and ICE's FOIA
16       Compliance…………………………………………………………………   15
17

  B.  DEFENDANTS' EFFORTS TO INCREASE EFFICIENCIES ARE
18       INSUFFICENT………………………………………………………………   17
19

    1.  FIRST Does Not Resolve USCIS's Untimely FOIA Determinations…………...   17
20

    2.  The New Memorandum of Agreement Does Not Resolve the Problem………   19
21

  C.  A COMPREHENSIVE REMEDY IS NEEDED…………………………   21
22

V.       CONCLUSION…………………………………………………………...   25
23

24

25

26

27

28

Plfs.' Sum. J. Motion                                              Case No. 3:19-cv-03512-WHO

i

1

## TABLE OF AUTHORITIES

2

**Page**

**Cases**

3
*Ass'n of Civilian Technicians v. FLRA*, 22 F.3d 1150 (D.C. Cir. 1994) ........................................22

4
*Biodiversity Legal Found. v. Badgley*, 309 F.3d 1166 (9th Cir. 2002) ....................................22, 25

5
*Brown v. U.S. Customs & Border Prot.*, 132 F. Supp. 3d 1170 (N.D. Cal. 2015) ..................21, 23

6
*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986) ...................................................................................7

*Dent v. Holder*, 627 F.3d 365 (9th Cir. 2010) ...............................................................................5, 6

7
*Franco-Gonzalez v. Holder*, No. CV 10-02211 DMG (DTBx), 2013 WL 8115423 (C.D. Cal.

8
    Apr. 23, 2013) .............................................................................................................................4, 23

9
*Friends of the Earth, Inc. v. Laidlaw Env't. Servs. (TOC), Inc.*, 528 U.S. 167 (2000)..................20

*Garcia v. Johnson*, No. 4:14-CV-01775-YGR, 2015 WL 13387594 (N.D. Cal. Oct. 27,

10
    2015)...........................................................................................................................................23, 25

11
*Gilmore v. U.S. DOE*, 33 F. Supp. 1184 (N.D. Cal. 1998) ..............................................................2

12
*Hajro v. USCIS*, 811 F.3d 1086 (9th Cir. 2016)......................................................................21, 22

13
*Long v. U.S. IRS*, 693 F.2d 907 (9th Cir. 1982) ....................................................................21, 22

14
*Lopez v. Davis*, 531 U.S. 230 (2001)...............................................................................................22

*Matter of Benitez*, 19 I. & N. Dec. 173 (BIA 1984) .........................................................................6

15
*Matter of Henriquez Rivera*, 25 I. & N. Dec. 575 (BIA 2011) ........................................................6

16
*Mayock v. Nelson*, 938 F.2d 1006 (9th Cir. 1991) ........................................................................21

17
*Moreno Galvez v. Cuccinelli*, 387 F. Supp. 3d 1208 (W.D. Wash. 2019) ....................................23

18
*Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306 (1950) ..............................................24

19
*Nat'l Ass'n of Home Builders v. Defs. of Wildlife*, 551 U.S. 644 (2007) ......................................22

*Nozzi v. Hous. Auth.*, 806 F.3d 1178 (9th Cir. 2015) ..............................................................24, 25

20
*Our Child. Earth Found. v. Nat'l Marine Fisheries Serv.*, No. 14-1130 SC, 2015 U.S. Dist.

21
    LEXIS 94997 (N.D. Cal. July 20, 2015) ........................................................................................3

22
*Partridge v. Reich*, 141 F.3d 920 (9th Cir. 1998) ...........................................................................7

*Payne Enters. v. United States*, 837 F.2d 486 (D.C. Cir. 1988)............................................22, 23

23
*Pereira v. Sessions*, 138 S. Ct. 2105 (2018)....................................................................................3

24
*Renegotiation Board v. Bannercraft Clothing Co.*, 415 U.S. 1 (1974) .....................................21, 25

25
*Rosario v. USCIS*, 365 F. Supp. 3d 1156 (W.D. Wash. 2018)..............................................22, 23

26
*Rosebrock v. Mathis*, 745 F.3d 963 (9th Cir. 2014) ......................................................................20

27
*Telecommunications Research & Action Center v. F.C.C.*, 750 F.2d 70 (D.C. Cir.  1984) ..........25

*United States ex rel. Touhy v. Ragen*, 340 U.S. 462 (1951) ............................................................5

28
*Wilkinson v. Austin*, 545 U.S. 209 (2005) ....................................................................................24

Plfs.' Sum. J. Motion                                                          Case No. 3:19-cv-03512-WHO

ii

**Statutes**

5 U.S.C. § 552(a) ................................................................................................21

5 U.S.C. § 552(a)(6)(A) ..........................................................................................2

5 U.S.C. § 552(a)(6)(A)(i) ..................................................................................2, 22

5 U.S.C. § 552(a)(6)(B) ...........................................................................................2

5 U.S.C. § 522(a)(6)(B)(i) ..............................................................................2, 10, 22

8 U.S.C. § 1229a(b)(4)(A) .......................................................................................4

**Regulations**

6 C.F.R. § 5.4(g) ....................................................................................................9

6 C.F.R. § 5.4(d)(3) .................................................................................................2

6 C.F.R. § 5.4(g) .....................................................................................................2

6 C.F.R. §§ 5.41–5.45 .............................................................................................5

8 C.F.R. § 1.525(b)(1) ...........................................................................................23

8 C.F.R. § 1208.12(b) ..............................................................................................6

**Rules**

Fed. R. Civ. P. 56(a) ...............................................................................................6

**Other Authorities**

H. REP. NO. 93-876 (1974), *as reprinted in* 1974 U.S.C.C.A.N. 6267 ............................2

H. REP. NO. 104-795, *as reprinted in* 1996 U.S.C.C.A.N. 3448 ...................................3

H. REP. NO. 104-795, *as reprinted in* 1996 U.S.C.C.A.N. 3459 ...................................2

Ingrid Eagly & Steven Shafer, *Access to Counsel in Immigration Court*, AIC (Sept. 28, 2016) ....4

Sarah Pierce & Jessica Bolter, *Dismantling and Reconstructing the U.S. Immigration System: A Catalog of Changes under the Trump Presidency*, MIGRATION POLICY INST. (July 2020) .........6

## I.     INTRODUCTION

Plaintiffs and class members (hereinafter "Plaintiffs") are noncitizens and attorneys challenging the systemic failure of Defendants U.S. Citizenship and Immigration Services ("USCIS"), U.S. Immigration and Customs Enforcement ("ICE"), and U.S. Department of Homeland Security ("DHS") to respond to their requests for Alien Registration Files ("A-Files") within the statutory deadlines mandated by the Freedom of Information Act ("FOIA"). A-Files contain information critical to an individual's ability to legalize status, defend against deportation, obtain citizenship, and travel. Defendants serve both as the custodians of A-Files and as prosecutors in removal proceedings and adjudicators of applications for immigration benefits. Yet, Defendants' delays deprive Plaintiffs of the information they need to defend against removal, obtain benefits, and gain citizenship. Plaintiffs are not aware of any other agency that allows one party to unilaterally control evidence in an adversarial proceeding, depriving the other party of meaningful access to it. Defendants' recent changes to A-File FOIA processing do not resolve these issues.

Plaintiffs seek an order declaring this pattern or practice unlawful, permanently enjoining Defendants from violating FOIA, ordering the elimination of existing backlogs within thirty days, requiring regular reporting to class counsel, and providing any other relief the Court deems proper. Absent such relief, Defendants will continue to irreparably harm Plaintiffs' ability to represent their clients or themselves in defending against deportation and seeking immigration benefits.

## II.    BACKGROUND

### A.     THE CERTIFIED CLASSES

This class action challenges Defendants' pattern or practice of failing to comply with the statutory deadlines set forth in FOIA to respond to noncitizens' requests for A-Files. On October 15, 2019, this Court found that class certification was "appropriate in these extraordinary circumstances" and, accordingly, certified the following two classes:

Plfs.' Sum. J. Motion                                    Case No. 3:19-cv-03512-WHO

1

**USCIS Class**: All individuals who filed, or will file, A-File FOIA requests with USCIS which have been pending or will be pending, with USCIS for more than 30 business days without a determination.

**ICE Referral Class**: All individuals who filed, or will file, A-File FOIA requests with USCIS that USCIS has referred, or will refer, to ICE and which have been pending, or will be pending, for more than 30 business days from the date of the initial filing with USCIS without a determination.

ECF 47 at 2, 6, 19. Plaintiffs move for summary judgment as the record demonstrates Defendants' systematic failure to respond to A-File FOIA requests within the statutory timeframes.

**B.    DEFENDANTS' LEGAL OBLIGATIONS**

Through FOIA, Congress obligated agencies to make determinations on FOIA requests within, at most, thirty business days, including when USCIS refers all or a portion of the request to ICE. 5 U.S.C. §§ 552(a)(6)(A), (B); 6 C.F.R. §§ 5.4(d)(3), (g). The law is clear and unequivocal in its mandate. 5 U.S.C. § 552(a)(6)(A)(i) ("Each agency, . . ., shall—(i) determine within 20 days . . . after the receipt of any such request whether to comply with such request and shall immediately notify the person making such request . . ."); 5 U.S.C. § 552(a)(6)(B)(i) (stating that, in "unusual circumstances," an agency may extend its response time by "no more than ten working days," provided it sends the requestor "written notice").

Congress recognized the importance of timely conveying the information sought through FOIA. When Congress initially enacted a ten-day time limit for responding to FOIA requests, it recognized that "information is often useful only if it is timely" and that the purpose of the time limit was to require agencies "to respond to inquiries . . . within specific time limits." H. REP. NO. 93-876, at 126 (1974), *as reprinted in* 1974 U.S.C.C.A.N. 6267, 6271. When Congress extended the deadline to twenty business days, it again recognized "[l]ong delays in access can mean no access at all," and again urged agencies to "respond to requests in a timely manner." H. REP. NO. 104-795, at 16-23, *as reprinted in* 1996 U.S.C.C.A.N. 3459, 3466; *see also Gilmore v. U.S. DOE*, 33 F. Supp. 1184, 1187–88 (N.D. Cal. 1998) (discussing legislative history of FOIA deadlines);

Plfs.' Sum. J. Motion                                                    Case No. 3:19-cv-03512-WHO

2

*Our Child. Earth Found. v. Nat'l Marine Fisheries Serv.*, No. 14-1130 SC, 2015 U.S. Dist. LEXIS 94997, at *24–26 (N.D. Cal. July 20, 2015) (same). Although courts recognize that resources for FOIA compliance may be "heavily taxed," that excuse does not give agencies "carte blanche" to violate the statute. *Our Child. Earth Found.*, 2015 U.S. Dist. LEXIS 94997, at *27. Rather, it is incumbent on agencies to "inform Congress of the additional resources needed to fully comply with the FOIA." H. REP. NO. 104-795, *as reprinted in* 1996 U.S.C.C.A.N. 3448, 3472.[1]

## C.   THE IMPORTANCE OF A-FILES AND HARM CAUSED BY DELAYED RECEIPT

The FOIA deadlines imposed by Congress provide an essential safeguard for Plaintiffs who require a copy of their A-Files to pursue immigration benefits or defend themselves or their clients against removal.[2] *See generally* Exh. A1, Supplemental Declaration of Zachary Nightingale ("Supp. Nightingale Decl."); Exh. A2, Declaration of Matthew Hoppock ("Hoppock Decl."); Exh. A3, Declaration of Laura St. John ("St. John Decl."); Exh. A4, Declaration of Andrea Sáenz ("Sáenz Decl."); Exh. A5, Declaration of Sabrina Damast ("Damast Decl."); Exh. A6, Declaration of Hans Meyer ("Meyer Decl."); *see also* ECF 28-3–28-16. For example, A-Files include critical records of past interactions between the individual and DHS; records of prior entries, admissions, or removal orders; records of past statements; and records of past applications filed by the noncitizen or on the noncitizen's behalf. *See, e.g.*, Hoppock Decl. ¶¶9–12, 15–18; Damast Decl. ¶¶11–13, 15; Sáenz Decl. ¶¶8–9; St. John Decl. ¶6; Meyer Decl. ¶7; Supp. Nightingale Decl. ¶2. Where an individual is a victim of an immigration scam, *see, e.g.*, Hoppock Decl. ¶13, mentally

---

[1]    *Cf. Pereira v. Sessions*, 138 S. Ct. 2105, 2118–20 (2018) (rejecting the agency's invocation of "administrative realities of removal proceedings" to avoid compliance with clear statutory language, concluding, "[a]t the end of the day, given the clarity of the plain language, we apply the statute as it is written") (internal quotation marks omitted).

[2]    "An A-File, or Alien File, is the official Government record that contains information regarding noncitizens as they pass through the US immigration and inspection process." Exh. B, Compliance Review of U.S. Citizenship and Immigration Services, U.S. Department of Homeland Security Freedom of Information Act Program, at Bates 81744.

Plfs.' Sum. J. Motion                                        Case No. 3:19-cv-03512-WHO

3

incompetent, or suffering from extreme trauma, *see*, *e.g.*, St. John Decl. ¶¶5–6, 9; Sáenz Decl. ¶12, the A-File may be the only means available to discern their immigration history.

A-Files are especially critical to individuals in removal proceedings. A-File records inform whether detained individuals—most of whom are unrepresented—can contest charges of alienage or removability, are eligible for release on bond, and/or are eligible for relief from removal.[3] *See* Supp. Nightingale Decl. ¶¶2, 4, 16; Hoppock Decl. ¶¶9–12, 15; St. John Decl. ¶6; Sáenz Decl. ¶8; Damast Decl. ¶¶4, 5, 12; Meyer Decl. ¶¶6, 9. Indeed, without access to the information in A-Files, attorneys and pro se individuals are at a distinct disadvantage as the ICE prosecutor has access to and uses this information in prosecuting the case. Hoppock Decl. ¶14; Sáenz Decl. ¶¶9, 16; Supp. Nightingale Decl. ¶4. Consequently, attorneys either must seek continuances to await the results of the FOIA request or risk going to trial without the A-File. *Accord* Supp. Nightingale Decl. ¶6 (noting that ICE prosecutors oppose motions to continue to await response to A-File FOIA requests). For detained individuals, continuances result in longer detention, which, for some, is intolerable and leads them to forsake meritorious claims in order to end detention. St. John Decl. ¶¶10–12; Sáenz Decl. ¶13; Supp. Nightingale Decl. ¶16; Hoppock Decl. ¶26; Meyer Decl. ¶7. If the immigration judge ("IJ") denies the continuance, or the case moves forward without the A-File, attorneys and their clients must examine documents from the A-File for the first time at trial when DHS submits them. Hoppock Decl. ¶14; Damast Decl. ¶13.

Defendants admit the importance of A-Files. ███████████████████████████████
████████████████████████████████████████████████████████████████████

---

[3]     Notably, persons in removal proceedings are not entitled to appointed counsel, *see* 8 U.S.C. § 1229a(b)(4)(A), unless an IJ deems them incompetent, *Franco-Gonzalez v. Holder*, No. CV 10-02211 DMG (DTBx), 2013 WL 8115423, at *1–2 (C.D. Cal. Apr. 23, 2013). Thus, most must defend themselves pro se against a trained ICE prosecutor. *See* Ingrid Eagly & Steven Shafer, *Access to Counsel in Immigration Court*, AIC (Sept. 28, 2016), https://tinyurl.com/zogzjsw ("Nationally, only 37 percent of all immigrants secured legal representation in their removal cases. . . . Only 14 percent of detained immigrants acquired legal counsel.").

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████; Exh. E, DHS

FOIA Backlog Reduction Plan 2020-2023 (Nov. 8, 2019), at Bates 88274–75 ("Requestors need

[A-File] records for personally critical and often time-sensitive reasons—they might be applying

for benefits, facing deportation, or challenging their employment termination. . . . A-Files document

the life of immigrants in the United States.").[4] As Defendants acknowledge:



████████████████████████. The Ninth Circuit also recognizes the importance of A-Files,

concluding that: "We are unable to imagine a good reason for not producing the A-file routinely

without a request." *Dent v. Holder*, 627 F.3d 365, 375 (9th Cir. 2010). And Defendants have

implemented no process other than FOIA by which persons in removal proceedings can obtain their

immigration records.[5] Thus, to date, FOIA is the only mechanism for persons—even those placed

---

[4]     *See also* Exh. F, Deposition of James V.M.L. Holzer ("Holzer Depo.") at 56:10–57:16; Exh. C, Letter from Director of OGIS (Dec. 31, 2019), at Bates 3–4 (questioning "why FOIA is being used in immigration proceedings as the primary mechanism for accessing A-files"); ████████████ ██████████████████████████████████████████████████████████████████

[5]     Defendants' witnesses claim that noncitizens can access their A-Files via *Touhy* motions, subpoenas, and criminal proceedings. *See* Exh. G, Deposition of Catrina Pavlik Keenan (Aug. 12, 2020) ("Keenan Depo."), at 61:18–62:8; Exh. H, Deposition of Tammy Meckley (Sept. 3, 2020) ("Meckley Depo."), at 95:20–96:1; Holzer Depo. 130:10–12, 132:3–13, 139:3–16. However, *Touhy* motions are generally inapplicable to individuals facing removal in immigration proceedings. *See United States ex rel. Touhy v. Ragen*, 340 U.S. 462 (1951); 6 C.F.R. §§ 5.41– 5.45; *see also* Supp. Nightingale Decl. ¶¶7–10. In addition, attorney attempts to subpoena A-Files regularly are denied, *see, e.g.*, Hoppock Decl. ¶21, and criminal proceedings are not a source of A-Files as not all individuals have been in criminal proceedings and any such criminal records are not

Plfs.' Sum. J. Motion                                    Case No. 3:19-cv-03512-WHO

5

in removal proceedings—to obtain a complete copy of their A-File. Supp. Nightingale Decl. ¶¶3, 7–10; Hoppock Decl. ¶¶19, 42; St. John Decl. ¶¶8, 14; Sáenz Decl. ¶7; Damast Decl. ¶¶6–8; Meyer Decl. ¶5; ██████████████████████████████████████████████████████████████████████████████████████████████████████████ ██████; *see Dent*, 627 F.3d at 374 (stating government position that "the only way [a person in removal proceedings] would be entitled to get the [A-]file would be a [FOIA] request").[6]

Because there is no adequate substitute for an A-File, and it can only be accessed through FOIA, adherence to FOIA's timeframes is critical. This is especially true given Defendants' efforts to broaden the population of individuals subject to removal, *see* Sarah Pierce & Jessica Bolter, *Dismantling and Reconstructing the U.S. Immigration System: A Catalog of Changes under the Trump Presidency*, MIGRATION POLICY INST. 36–48 (July 2020) (listing the Trump administration's efforts to subject more individuals to removal and to increase immigration detention). Defendants' failure to timely respond to A-File FOIA requests creates an information asymmetry that precludes Plaintiffs from challenging unlawful removal orders or protracted detention.

## III.   STANDARD OF REVIEW

Summary judgment is warranted where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the burden of demonstrating that they are entitled to summary

---

necessarily complete A-Files. Moreover, notwithstanding the Ninth Circuit's recognition of the importance of A-Files, efforts to obtain documents under *Dent* have failed. Supp. Nightingale Decl. ¶5; Hoppock Decl. ¶20; St. John Decl. ¶¶14–16; Sáenz Decl. ¶7; Damast Decl. ¶¶6–8.

[6]     *See also* 8 C.F.R. § 1208.12(b) (stating that an asylum applicant may seek documents through a FOIA request, but is not entitled to conduct discovery directed towards federal agencies or officers); *Matter of Henriquez Rivera*, 25 I. & N. Dec. 575, 579 (BIA 2011) (rejecting IJ determination that DHS is required to provide the court with an applicant's complete record from USCIS); *Matter of Benitez*, 19 I. & N. Dec. 173 (BIA 1984) (noting that the immigration courts need not honor requests for discovery); Hoppock Decl. ¶21 (immigration court requires proof that an A-File FOIA request was submitted and records withheld before issuing a subpoena for A-File).

Plfs.' Sum. J. Motion                                    Case No. 3:19-cv-03512-WHO

6

judgment. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). Once the moving party has done so, the burden shifts to the nonmovant to make a "sufficient showing on an essential element of her case with respect to which she has the burden of proof" to survive summary judgment. *Id.* at 323. Where the only issue is a legal question, summary judgment is proper. *See, e.g.*, *Partridge v. Reich*, 141 F.3d 920, 923 (9th Cir. 1998) (agency's statutory interpretation is a question of law).

**IV.   ARGUMENT**

**A.   USCIS AND ICE HAVE A PATTERN OR PRACTICE OF FAILING TO MAKE TIMELY DETERMINATIONS ON A-FILE FOIA REQUESTS**

**1.   USCIS Has a Pattern or Practice of Failing to Comply with the FOIA Statute**

USCIS has a pattern or practice of failing to make timely determinations on A-File FOIA requests, reporting a backlog for each of the last eight years. As evidenced below, USCIS' backlog has increased in recent years—growing from 16,247 in FY2015 to 25,446 in August 2020.

**USCIS HISTORICAL BACKLOG**

| DATE | RECEIVED | BACKLOG | SOURCE[7] |
|---|---|---|---|
| FY2012 | 117,787 | 10,727 | FY2012 DHS FOIA Report at 19, 20, Exh. I1 |
| FY2013 | 132,797 | 3,394 | FY2013 DHS FOIA Report at 18, Exh. I2 |
| FY2014 | 143,794 | 5,026 | FY2014 DHS FOIA Report at 19, Exh. I3 |
| FY2015 | 162,986 | 16,247 | FY2015 DHS FOIA Report at 20, Exh. I4 |
| FY2016 | 166,732 | 35,763 | FY2016 DHS FOIA Report at 19, 20, Exh. I5 |
| FY2017 | 190,941 | 37,887 | FY2017 DHS FOIA Report at 19, Exh. I6 |
| FY2018 | 191,804 | 41,329 | FY2018 DHS FOIA Report at 21, Exh. I7 |
| June 19, 2019 – *Nightingale v. USCIS* filed | | | |
| September 2019 – USCIS invokes "unusual circumstances" in *all* Track 2 and 3 A-File FOIA Requests[8] | | | FY2018 DHS FOIA Report at 27, Exh. I8; Defs.' Resp. to Interrogatory ("ROG") (Dec. 13, 2019), ROG 16 at 9, Exh. J |
| FY2019 | 200,174 | 14,773 | FY2019 DHS FOIA Report at 14, 27, Exh. I8 |
| June 30, 2020 | | 21,160 | Defs.' Resp. to ROG (July 29, 2020), ROG 21 at 2–3, Exh. K |
| Aug. 31, 2020 | | 25,446 | Meckley Depo. 49:16. |

---

[7]   References to the "DHS FOIA Report" are to the Freedom of Information Report to the Attorney General of the United States and the Director of the Office of Government Information Services, which are available by fiscal year at https://www.dhs.gov/foia-annual-reports. The relevant portions of those reports accompany this motion as Exhibit I.

[8]   This policy change to USCIS' backlog calculation removed 2,338 cases from the FY2019 backlog. Exh. I8, FY2019 DHS FOIA Report at 27.

Plfs.' Sum. J. Motion

7

Case No. 3:19-cv-03512-WHO

As of August 31, 2020, USCIS had a FOIA backlog of approximately 25,446 cases. Meckley Depo. 49:16. Although USCIS has attempted to streamline FOIA processing through the Freedom of Information Act (FOIA) Immigration Records System ("FIRST"), discussed *infra* Section IV.B.1, it continues to carry a large FOIA backlog. In fact, from June through August 2020, USCIS' backlog increased by more than 6,000 cases. *Compare* ████████████████████████████████████████████████████████████████████████████████████████████████████████████, *with* ████████████████████████████████████████████████████████████████████████ ████████████████████████████.

Ninety-nine percent of the total FOIA requests USCIS receives are A-File FOIA requests, Meckley Depo. 49:1–5; 51:12–16, and, accordingly, A-File requests "account for the largest portion of DHS's FOIA backlog." Exh. N, Defs.' Resp. to Pls.' First Set of Requests for Admission, at 6–7. Over a year after this lawsuit was filed, USCIS processing times have not changed significantly for Track 2 cases, the complex track where USCIS processes most A-File requests. *Compare* ECF 1 at 6 ¶26 ("[T]he average processing time for an A-File FOIA request was between 55 and 90 days."), *with* Meckley Depo. at 152:8–15 ("[V]ery proud to say that . . . our average processing time for . . . Track 2 is 71 [days]."). FOIA requests for A-Files often take significantly longer than the average timeframe, typically languishing in the backlog for several months or over a year. *See* Supp. Nightingale Decl. ¶¶11, 14 (reporting over seven month delays); Hoppock Decl. ¶22 ("[M]any months or years."); St. John Decl. ¶8–9 (three to six months for "basic" requests, and often over a year); Sáenz Decl. ¶11 ("[M]onths or even years."); Damast Decl. ¶9 (six months to over a year); Meyer Decl. ¶5 (reporting "six months to over a year" for USCIS files and "twelve to twenty-four months" for ICE documents); *see also* ECF 28-3–28-16 (attorney declarations in support of class certification). .

Backlog reduction efforts over the last decade have been unsuccessful. USCIS has

Plfs.' Sum. J. Motion                                                                    Case No. 3:19-cv-03512-WHO

8

consistently relied on paying outside contractors to supplement its federal workforce to chip away

at the backlog. Meckley Depo. 86:1–9 ("[B]acklog contract. . . . has been in place for several

years."); *id.* at 190:4–7 (contracting for processing approximately 27,500 cases in fiscal year 2020);

██████████████████████████. When resources are available, USCIS has paid FOIA processors

overtime, Meckley Depo. 197:5–11; 200:7–9, but with limited success, Exh. P, USCIS 2017 FOIA

Backlog Reduction Plan, at Bates 47415 (reporting that unlimited FOIA overtime had "[n]o

discernable impact" or resulted in "[s]light increase in FOIA cases processed" over a two-month

period in 2017; mandatory overtime would have only "minimal impact" on the backlog).

   USCIS also has referred portions of the A-File to ICE, thereby allowing USCIS to close its

portion of the request. ████████████████████████████████████████

████████████████████████████████████████████████████████

████. In so doing, USCIS effectively moved its backlog to ICE because the FOIA deadline runs

from USCIS' receipt of the request and does not restart upon its referral to ICE. 6 C.F.R. § 5.4(g)

(2019). ██████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████ *See also infra* Section IV.B.2.

   In September 2019, USCIS changed the method by which it calculates the statutory period

for adjudicating FOIA requests, categorically invoking "unusual circumstances" in *all* Track 2 and

Track 3 A-File FOIA requests to give itself an extra ten business days to make a determination on

A-Files requests before they can fall into the backlog. Meckley Depo. 165:1–15; Exh. J, Defs. Resp.

to ROG 16 at 9. "For the month of September, 2019 (end of FY 2019), USCIS . . . invoked 'unusual

circumstances' 12,438 times."), USCIS now automatically allots an additional ten days to the base-

line twenty-day statutory period, interpreting a regulation with specific criteria establishing "unusual circumstances" to apply to all A-File requests. Meckley Depo. 165:1–15 (confirming that USCIS has "buil[t] in the 10-day extension automatically to Track 2 and Track 3 requests"). Congress could not have intended agencies to categorically invoke "unusual circumstances" under 5 U.S.C. § 522(a)(6)(B)(i), and, thus, effectively extend the twenty-day statutory deadline to thirty days.

The large number of FOIA requests to USCIS does not appear to be slowing. *See* USCIS Historical Backlog Chart, *supra* at 7. And chronic problems with no imminent solutions continue to slow the FOIA process. USCIS cannot, for example, quickly gather A-Files from the various field locations where they might be located when the FOIA request arrives. Meckley Depo. 226:13–227:20 (stating that some USCIS field offices do not have the technology to scan documents and thus must mail the file to the National Records Center where it is scanned prior to processing). In addition, the digitization of on-line immigration forms—a technological advancement USCIS claims will further streamline the A-File FOIA process—applies only to seven of approximately 150 USCIS forms and has no imminent timeline for completion. Meckley Depo. 135:16–136:10; 141:6–10.

Moreover, despite the ballooning backlog, USCIS does not include compliance with the timelines for FOIA adjudication in its yearly department goals or use statutory timeframes as a metric for evaluating employees' performances. Meckley Depo. 179:1–17. In fact, USCIS takes the position that setting goals to process FOIA requests within statutory timeframes is not an appropriate method for measuring success. Meckley Depo. 182:8–183:14. This approach to evaluating agency success extends to contract processors where, after outsourcing its FOIA processing to a private contractor, USCIS neither manages the contract staffs' day-to-day work nor evaluates staff performance. Meckley Depo. 190:15–21.

Plfs.' Sum. J. Motion                                                                 Case No. 3:19-cv-03512-WHO

10

These past unsuccessful approaches are the primary methods USCIS will use moving forward as it faces the backlog in the remainder of 2020 and into 2021. Meckley Depo. 86:1–87:21 (describing that current plans to address the backlog include "backlog contract" with outside vendor and continued "interface" with USCIS on-line forms). And USCIS now has added tens of thousands of A-File ICE documents to its caseload—committing, through the recently signed Agreement with ICE, *see infra* Section IV.B.2, to process all ICE A-File documents. Meckley Depo. 70:17–18 (USCIS sent 86,000 referrals to ICE in 2019); 71:1–8.

Moreover, USCIS is at the mercy of the public to fund its FOIA program. Unlike most agencies, 97 percent of USCIS's budget is from fees it charges individuals requesting immigration benefits. *See Budget, Planning and Performance*, USCIS (Feb. 24, 2020), https://www.uscis.gov/about-us/budget-planning-and-performance. Nearly all USCIS, including its FOIA program, is funded exclusively from fees received. As the Director of OGIS aptly stated: "In a time of reductions in agency budgets, we will likely see an increase in FOIA backlogs." Exh. C, at Bates 4.

USCIS's longstanding backlogs in processing A-File FOIA requests and Defendants' past conduct evince that, left to its own devices, USCIS will not remedy these harmful delays.

### 2.    ICE Has a Pattern or Practice of Failing to Comply with the FOIA Statute

ICE also has a years-long pattern or practice of failing to meet FOIA's statutory deadlines, as evidenced by its annual backlogs, which have increased steadily since FY2015. Unlike USCIS, ICE has not changed how it defines a backlogged FOIA request and defines it as one that has been pending for more than twenty business days without a determination. Keenan Depo. 109:9–10. While ICE has reported a fluctuating backlog at the close of every fiscal year since at least FY2012, as indicated below, the number of backlogged cases has ballooned out of control in recent years.

**ICE HISTORICAL BACKLOG**

| DATE | RECEIVED | BACKLOG | SOURCE[9] |
|------|----------|---------|-----------|
| FY2012 | 24,073 | 2,443 | FY2012 DHS FOIA Report at 19, Exh. I1 |
| FY2013 | 34,161 | 4,714 | FY2013 DHS FOIA Report at 18, Exh. I2 |
| FY2014 | 85,081 | 56,863 | FY2014 DHS FOIA Report at 19, Exh. I3 |
| FY2015 | 44,748 | 555 | FY2015 DHS FOIA Report at 20, Exh. I4 |
| FY2016 | 63,385 | 471 | FY2016 DHS FOIA Report at 19, 17, Exh. I5 |
| FY2017 | 47,893 | 391 | FY2017 DHS FOIA Report at 19, Exh. I6 |
| FY2018 | 70,267 | *(1,332)*[10] | FY2018 DHS FOIA Report at 21, Exh. I7 |
| FY2018 |  | 18,375 | Defs.' Response to ROG 21 at 2–3, Exh. K |
| June 19, 2019 - *Nightingale v. USCIS* filed | | | |
| FY2019 | 64,231 | *(1,493)*[11] | FY2019 DHS FOIA Report at 14, 27, Exh. I8 |
| FY2019 |  | 60,616 | Defs.' Response to ROG 22 at 3, Exh. K |
| June 30, 2020 |  | 62,471 | Defs.' Response to ROG 24 at 4, Exh. K |
| Aug. 11, 2020 |  | 56,661 | Keenan Depo. 179:15-19. |

As of August 11, 2020, ICE's backlog stood at 56,661 FOIA requests. Keenan Depo. 179:15–19. The "vast majority" of ICE's backlogged FOIA requests are for A-Files. Keenan Depo. 72:18–22. Currently, ICE's A-File backlog consists only of requests that were filed prior to June 1, 2020, the date on which USCIS and ICE implemented a new Memorandum of Agreement ("MOA"). *See* ██████████████████████████████████████████████████████████████████████████████████████████████; Keenan Depo. 178:1–4. All of ICE's backlogged A-File FOIA requests originated with USCIS as the custodian of A-Files. Keenan Depo. 78:13–22.

ICE readily admits that the volume of FOIA requests it receives is too great for its FOIA staff to handle. Keenan Depo. 114:16–18 ("Well, we've always had more cases than we have people to do."); *see also id*. 47:14–21. Every year, the ICE FOIA division has asked for additional funding to hire more FOIA staff, without success. Keenan Depo. 48:10–49:2; 188:8–189:3

---

[9]    *See supra* note 7.

[10]    DHS' annual report did not account for 17,043 referrals from USCIS. Exh. I7, FY2018 DHS FOIA Report at 6; Exh. K, Defs.' Resp. to ROG 21 at 2–3. The actual backlog was 18,375.

[11]    DHS' report did not account for 59,123 referrals from USCIS. Exh. I8, FY2019 DHS FOIA Report at 14; Exh. K, Defs.' Response to ROG 22 at 3. The actual backlog was 60,616.

(explaining that "FOIA is not an appropriated line item budget by Congress," and thus, requests for additional FOIA funding are viewed as "taking funds away from other parts of the mission of ICE"—"money . . . appropriated by Congress for Homeland Security investigations and enforcement and removal operations"). While an estimated seventy-seven staff would be needed to handle all FOIA requests, Keenan Depo. 48:10–18, ICE's FOIA staffing level has remained at about forty-two for at least the past five fiscal years. Keenan Depo. 28:3–8 (43 staff in FY2015); 43:1–5 (42 staff in FY2020).

Over the years, ICE has attempted to reduce the backlog through a patchwork of short-term fixes—overtime, staff detailed from other departments, and contract support—none of which have succeeded in the long-term. First, every year ICE budgets for overtime for processing backlogged FOIA cases, generally $50,000. Keenan Depo. 115:17–19. For FY2021, ICE doubled the budgeted amount for overtime. Keenan Depo. 116:12–14. ICE also has employed "tiger teams that will have a bunch of people pushing to get a whole bunch done in a shorter period of time." Keenan Depo. 113:21–114:2. ICE has never evaluated whether its use of overtime is a cost-effective method to address the backlog, Keenan Depo. 121:1–5, and its continued reliance on overtime has had no lasting impact on the backlog. Second, ICE periodically requests that ICE employees from other departments be detailed to work in the FOIA department. Keenan Depo. 197:11–198:14 (describing process). Recently, these requests have been unsuccessful. Keenan Depo. 197:12–14.

Finally, to supplement its in-house staff, ICE routinely contracts for assistance with FOIA processing. Faced with a backlog in FY2015 like the current one, ICE succeeded in reducing it to 555, but only with the assistance of 120 contractors at a cost of $6.2 million. Exh. T, Compliance Review of ICE FOIA, at Bates 73992, 73995–96, 74003. ICE did not employ anywhere near that many contractors in FY2019 or FY2020, and thus was not successful in reducing the backlog. Currently, for example, through three contracts, it has forty-one additional processors—███████

████████████████████ *See id.*; Exh. U, Def. ICE's Resp. to Pls.' Third Set of Interrogatories, ROG 5 at 4; ████████████████████████████████████████; Keenan Depo. 182:7–12; 200:4–11. Additionally, in 2020, DHS stepped in, permitting ICE to benefit from two of its contracts with a total assistance of thirty-two additional processors. Keenan Depo. 182:7–12; 200:4–15; 223:16–20. Thus, ICE had contract support from only forty-one processors in FY2020, as compared to 120 in FY2015.

Concerned about how this Court might rule in the present case, ICE made additional efforts to reduce the backlog beginning in the second half of FY2019. *See*, *e.g.*, ████████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████. In early 2020, the FOIA department propounded numerous suggestions for eliminating the current backlog "internally." Keenan Depo. 237:16–243:13; *see*, *e.g.*, ████████████████████; ██████. Ultimately, the MOA with USCIS and some assistance from DHS' contracts were the alternatives chosen. Keenan Depo. 243:16–20.

Despite ICE's enhanced efforts in FY2020, ICE projects that its backlog will not be eliminated until January 2022. Keenan Depo. 201:11–17. This projection depends entirely on both

Plfs.' Sum. J. Motion                                               Case No. 3:19-cv-03512-WHO

14

the success and renewal of the MOA with USCIS going forward. Furthermore, renewal of the MOA is entirely dependent on ongoing funding authorization, which is not guaranteed. If the MOA fails, ICE will not be able to keep up with future filings and will face a further increase in the backlog.

**3.      DHS Abdicated Its Responsibility to Oversee USCIS and ICE's FOIA Compliance**

DHS is responsible for the coordination, direction, and oversight of its component agencies with respect to their compliance, or failure to comply, with class members' requests under FOIA. Holzer Depo. 21:3–10; Exh. Y, Statement of James V.M.L. Holzer at Congressional Subcommittee Hearing, at 6–7. Indeed, DHS plays a particularly critical role given that A-Files are composed of records generated by component agencies within DHS. Exh. B, at Bates 81744; Keenan Depo. 79:9–14 (describing A-File as a "tri-bureau document" with records from USCIS, ICE and CBP). While USCIS is the designated custodian of A-Files, many documents in an A-File originate from ICE or CBP. Exh. B, at Bates 81744. For example, CBP generates documents of prior entries and exits, and ICE generates documents related to enforcement actions. *See*, *e.g.*, Keenan Depo. 94:9–13 (explaining how A-File records could belong to either ICE or CBP). Copies of prior applications and petitions generally are within USCIS's possession.

DHS concedes that "FOIA backlogs have continued to be a systemic problem at DHS" and that "[r]equests for A-file material comprise the vast majority of DHS's FOIA workload." Exh. E at Bates 88275–76; *see also* Exh. Z, Talking Points on FOIA Operations at DHS (June 5, 2019), at Bates 103827. Moreover, DHS acknowledges that allowing component agencies to individually attempt to respond to A-File requests exacerbates the problem: DHS has repeatedly pointed to "the challenges created by decentralized operations." Exh. E at Bates 88281; *see also* ██████████ ████████████████████████████████. Indeed, DHS admits that "[t]he solutions Components regularly rely on—hiring contractors, authorizing overtime, and initiating a surge as the end of the fiscal year draws near—only serve to improve statistics temporarily." Exh.

E at Bates 88279, █████████████████████████████████████████████

███████████████████. DHS further admits that these solutions simply push the backlog to other

agencies. *See* Holzer Depo. 161:15–17 ("It's kind of like the whack a mole problem, as it were,

that we were talking about there."); *id.* at 165: 11–13 ("So all you've done is push, like I said, you

push one backlog to another part of the Department."). "In order to improve . . . the DHS FOIA

program needs a unified approach that accounts for differences in the type and volume of requests

received across the agency." Exh. E at Bates 88281; Exh. Z at Bates 103831 ("Increased

centralization has also helped contain and reduce the backlog."). DHS is charged with the critical

role of mediating conflicting component agency approaches and ensuring greater coordination.

Holzer Depo. 109:5–113:1; Exh. Y at Bates 37 ("I think that we have played a vital role in having

those discussion over the years."); *cf.* █████████████████████████████.

DHS is thus responsible for directing and coordinating a response among its component

agencies that they will comply with the statutory timelines. This comes as no surprise to

Defendants, as they recognize that ███████████████████████████████████████

████████████████████████████████████████████████████████████████████

██████████████████████████████████ "This inability to control the backlog

has sparked seven Government Accountability Office (GAO) engagements, three Inspector

General engagements, eight OGIS engagements, two Congressional hearings, and countless media

stories." Exh. E at Bates 88280–81 (footnotes omitted). Despite these inquiries and the numerous

recommendations stemming from them, the FOIA backlogs continue to be a "systemic problem at

DHS." *Id.* at Bates 88276. And it is class members who continue to suffer, year after year, the

inevitable consequences of DHS's failure to ensure that component agencies timely produce A-

Files. *See* ████████████████████████████████████████████████████████

█████████████████████████████████. Ultimately, DHS shares responsibility

with its component agencies for the chronic failure to comply with the FOIA statute.

**B.     DEFENDANTS' EFFORTS TO INCREASE EFFICIENCIES ARE INSUFFICENT**

**1.     FIRST Does Not Resolve USCIS's Untimely FOIA Determinations**

In May 2018, USCIS introduced FIRST, a new system for submitting FOIA requests that USCIS claims will help decrease its FOIA backlog. *See* Press Release, USCIS, *USCIS Expands FIRST: A Fully Digital FOIA System* (June 25, 2019), https://tinyurl.com/y64akn9x. FIRST allows requestors to, after creating an account, submit A-File FOIA requests online and receive the results electronically. *See* Meckley Depo. at 52:9–10, 53:4–9. While FIRST is a step in the right direction, it does not resolve USCIS's processing delays because of its narrow focus and problems with its implementation.

While FIRST focuses on making the FOIA intake and delivery process more efficient, it fails to address what USCIS acknowledges is the most time-consuming steps in between: document retrieval and processing. Meckley Depo. 123:5–11; 229:16–230:1. When a FOIA request is received, an Intake Specialist uploads the request and locates the A-File. Meckley Depo. 166:7–167:7, 114:20–115:8. This does not take long. Meckley Depo. 122:6–18. Rather, it is the retrieval and processing of the A-File that is time-consuming. Documents may be stored in multiple locations across the country, including the National Records Center, off-site commercial storage vendors, or "hundreds of different field offices." Meckley Depo. 115:15–116:13, 123:5–11. Most of these documents are papers that must be scanned; yet, not all field offices have scanning capabilities and, thus, must mail the physical files to USCIS to be scanned.[12] Meckley Depo. 226:13–227:10; Exh. E at Bates 88275. The FOIA processor's work—reviewing the records for release or redactions—does not begin until all A-File records are scanned into FIRST. Meckley

---

[12]     Although USCIS contracts to transport these files, USCIS' witness did not know which courier it uses, even though shipment via FedEx, United Parcel Service, or the U.S. Postal Service likely impacts the time it takes to transport documents. Meckley Depo. 257:17–258:1; 261:1–10.

Plfs.' Sum. J. Motion                                                    Case No. 3:19-cv-03512-WHO

17

Depo. at 113:4–15. This FOIA processing also is time-consuming. Meckley Depo. 229:16–21 ("I can't even guess how long it takes from the time a processor has it in his or her queue till when it's completed"). Yet, FIRST does not reduce the inefficiencies in the retrieval process. Nor does it address the time it takes FOIA processors to review and redact information once it is received. *See* Meckley Depo. 114:6–14 (admitting that FIRST has not changed post-intake processing). Defendants could address those issues by, for instance, creating electronic records, ensuring that field offices have scanning capacity, or hiring more FOIA processors. Thus, while FIRST may introduce some efficiencies, it elides the main source of FOIA processing delays and, accordingly, is not alone sufficient to address USCIS's statutory violations.

FIRST's efficacy is also hampered by problems with its implementation. Namely, FIRST does not function as intended. Attorney Matthew Hoppock has "never been able to successfully submit a FOIA request through FIRST" despite numerous attempts to resolve the issue due to problems with USCIS's "poor password management system." Hoppock Decl. ¶¶27–36. FIRST is "inaccessible" and, due to the ongoing problems, Hoppock has continued to submit A-file FOIA requests via email. Hoppock Decl. ¶36. Internal USCIS reports further document problems with FIRST. *See*, *e.g.*, Exh. CC, USCIS FOIA Reduction Project (Apr. 7, 2020) ("FIRST slows down overall FOIA process," and USCIS must "[m]itigate FIRST risks with Dev Team and end user learning curve."); Exh. DD, USCIS FOIA Reduction Project (Feb. 11, 2020) (same). As of July 2020, internal reports stated that "FIRST development [was] slowed by remediation actions" and that "[a]dditional testing and code reviews" were required. Exh. EE, USCIS FOIA Reduction Project (July 7, 2020). In particular, USCIS reported that, due to a "FIRST data security incident," it had to request that 344 individuals return or destroy records. *Id*. Despite these problems, USCIS does not provide a mechanism to provide feedback on FIRST, and USCIS is unaware of any negative feedback from the requester community. Meckley Depo. 249:1–7; 253:1–4.

Plfs.' Sum. J. Motion                                                                Case No. 3:19-cv-03512-WHO

18

In addition, FIRST is largely underutilized due to USCIS's failure to involve the public and to adequately publicize it. USCIS did not solicit requestor input in developing FIRST, *compare* Meckley Depo. 246:4–8, *with* Meckley Depo. 253:1-4. And immigration attorneys continue to submit FOIA requests via email rather than FIRST. *See* Supp. Nightingale Decl. ¶¶11–14; Hoppock Decl. ¶36; Meyer Decl. ¶4. FOIA requests through FIRST made up only 28 percent of total requests in the first quarter of FY2020. Exh. DD. Thus, FIRST does not resolve USCIS's delays in responding to A-File FOIA requests.

### 2.     The New Memorandum of Agreement Does Not Resolve the Problem

On June 1, 2020, USCIS and ICE implemented the MOA to streamline processing ICE records within an A-File. ████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████

To the extent this MOA remains in place, it will—for FOIA requests filed after June 1, 2020—resolve one aspect of the agencies' delays in responding to A-File FOIA requests: ICE's delays in processing its own records. However, it does not address, much less resolve, ICE's existing, pre-June 1, 2020 backlog or USCIS' long-standing inability to timely process records within A-Files. Furthermore, there is nothing requiring the agencies to renew this agreement in future years and its continued existence is speculative, at best. *See* Meckley Depo. 131:19–132:10 (stating that USCIS was still planning its 2021 budget); *see also* Keenan Depo. 154:5–157:20.

First, the MOA does not resolve the situation for class members whose A-File FOIA requests are in ICE's backlog. As of August 11, 2020, ICE had a backlog of 56,661 FOIA requests,

the majority of which were for A-Files. Keenan Depo. 179:15–19. ICE admits that it cannot process

this entire backlog until January 2022. Keenan Depo. 201:11–19. Sixteen additional months is

entirely too long for ICE to process class members' A-File requests.  Second, the MOA does not

address the resource issues which led to USCIS' years-old backlog. *See supra* Section IV.A.1. To

the contrary, the MOA increases USCIS' workload by requiring that USCIS' FOIA processors now

also process ICE records. In fact, since implementing the MOA on June 1, 2020, USCIS' backlog

*grew* by almost ███████. *Compare* ████████████

████████, *with* ████████████████████████████. This is exactly the

"whack a mole" problem that DHS's witness identified. Holzer Depo. 161:15–16.

Finally, there is no guarantee that Defendants will continue the MOA beyond FY2021.

ICE's FY2022 budget, which is already set, does not allocate funding to implement the MOA.

Keenan Depo. 155:6–20; 201:6-7. ████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████. Given these

restrictions, the MOA is insufficient to defeat the need for injunctive relief. "It is well settled that

a defendant's voluntary cessation of a challenged practice does not deprive a federal court of its

power to determine the legality of the practice." *Friends of the Earth, Inc. v. Laidlaw Env't. Servs.*

*(TOC), Inc.*, 528 U.S. 167, 189 (2000) (internal quotation marks and citation omitted); *see also*

*Rosebrock v. Mathis*, 745 F.3d 963, 971 (9th Cir. 2014) ("We presume that a government entity is

Plfs.' Sum. J. Motion                                    Case No. 3:19-cv-03512-WHO

20

acting in good faith when it changes its policy . . . but when the Government asserts mootness based on such a change it still must bear the heavy burden of showing that the challenged conduct cannot reasonably be expected to start up again.").

## C.     A COMPREHENSIVE REMEDY IS NEEDED

Both declaratory and permanent injunctive relief is needed to provide sustainable relief. Defendants do not deny that there is a systemic problem and that USCIS and ICE fail to make timely determinations on A-File FOIA requests. *See supra* Part IV. However, despite three prior lawsuits raising similar nationwide pattern-or-practice claims in the immigration FOIA context, Defendants have not yet achieved compliance with the law, let alone sustainable compliance.[13]

District courts have broad, equitable powers to enforce the terms of FOIA. In *Renegotiation Board v. Bannercraft Clothing Co.*, the Supreme Court held that, "[w]ith the express vesting of equitable jurisdiction in the district court by [5 U.S.C.] § 552(a), there is little to suggest, despite the Act's primary purpose, that Congress sought to limit the inherent powers of an equity court." 415 U.S. 1, 20–21 (1974). The Court's conclusion was supported by the "broad language of the FOIA," "the truism that Congress knows how to deprive a court of broad equitable power when it chooses so to do," and the district court's role as the "enforcement arm" of FOIA. *Id.* at 19–20; *see also Long v. U.S. IRS*, 693 F.2d 907, 909–10 (9th Cir. 1982) (reversing the denial of prospective injunction prohibiting agency from continuing to withhold and delay disclosure of non-exempt documents and instructing the court to "carefully draft[]" an injunction to "insure against lengthy

---

[13]      *See Hajro v. USCIS*, 811 F.3d 1086, 1094 (9th Cir. 2016) (USCIS and DHS Secretary); *Mayock v. Nelson*, 938 F.2d 1006 (9th Cir. 1991) (Immigration and Nationality Service); *Brown v. U.S. Customs & Border Prot.*, 132 F. Supp. 3d 1170 (N.D. Cal. 2015) (DHS and U.S. Customs and Border Protection ("CBP")). In *Brown*, the parties agreed to settlement before the court adjudicated the motion for class certification, in large part because during the course of the litigation CBP reduced its backlog from 34,307 in FY2015 to 3,187 as of June 24, 2016. *See* Settlement Agreement, *Brown v. CBP*, No. 15-cv-01181-JD (N.D. Cal. 2016), https://tinyurl.com/y5qj3qur. Absent a permanent injunction, however, CBP's backlog subsequently increased to 10,466 requests as of FY2019. Exh. I8, FY2019 DHS FOIA Report at 29.

delays in the future"); *Payne Enters. v. United States*, 837 F.2d 486, 495 (D.C. Cir. 1988) (ordering, on remand, declaratory relief and consideration of prospective injunction to remedy the Air Force's practice of refusing to release bid abstracts in violation of FOIA); *Hajro v. USCIS*, 811 F.3d 1086, 1103 (9th Cir. 2016) (recognizing the viability of a FOIA pattern-or-practice claim).

As the Ninth Circuit has explained, courts may issue an injunction to cure an agency's refusal to abide by a deadline where that "injunction is necessary to effectuate the congressional purpose behind the statute." *Biodiversity Legal Found. v. Badgley*, 309 F.3d 1166, 1177 (9th Cir. 2002). In *Badgley*, the Ninth Circuit affirmed a district court's injunction mandating that the U.S. Fish and Wildlife Service comply with a twelve-month statutory deadline in the Endangered Species Act for determining whether to list a species as endangered. *Id.* at 1170, 1176–77; *see also Rosario v. USCIS*, 365 F. Supp. 3d 1156, 1160–63 (W.D. Wash. 2018) (issuing permanent injunction requiring USCIS to comply with deadline in a federal regulation, citing *Badgley*).

A permanent injunction is appropriate here because Congress' purpose is clear. Congress mandated that the public have timely access to information. *See supra* Section II.B. FOIA's deadlines are not discretionary, as the statute's text demonstrates. *See* 5 U.S.C. §§ 552(a)(6)(A)(i), (B)(i) (providing that agencies "shall" make a determination within twenty business days and may extend this deadline for "no more than ten working days" in "unusual circumstances"). Congress's use of "shall" imposes a "discretionless obligation[]," *Lopez v. Davis*, 531 U.S. 230, 241 (2001), and "generally indicates a command that admits of no discretion on the part of the person instructed to carry out the directive," *Nat'l Ass'n of Home Builders v. Defs. of Wildlife*, 551 U.S. 644, 661 (2007) (quoting *Ass'n of Civilian Technicians v. FLRA*, 22 F.3d 1150, 1153 (D.C. Cir. 1994)).

Where, as here, the text and purpose of FOIA creates mandatory deadlines, the Court should compel Defendants to comply with those deadlines and to make determinations on A-File FOIA requests in their backlogs within 20 business days, or 30 in unusual circumstances. *See, e.g., Long*,

Plfs.' Sum. J. Motion                                                        Case No. 3:19-cv-03512-WHO

22

693 F.2d at 909–10; *Payne Enters.*, 837 F.2d at 494–95; *Rosario*, 365 F. Supp. 3d at 1160-61.[14]

In addition, the Court should order Defendants to provide class counsel with regular reporting and/or status reports to allow class counsel to monitor compliance with any injunction. Such relief is common in nationwide class actions. *See, e.g.*, *Rosario*, 365 F. Supp. 3d at 1163 (requiring USCIS to "submit status report every six (6) months regarding the rate of compliance"); *Garcia v. Johnson*, No. 4:14-cv-01775-YGR, 2015 WL 13387594, at *2 & Exh. 1 (N.D. Cal. Oct. 27, 2015) (approving settlement agreement that "ICE shall regularly report to Plaintiffs information on the referral process"); *see also Franco-Gonzalez*, 2013 WL 8115423, at *2.

Finally, Plaintiffs request that the Court require Defendants to ensure that persons in removal proceedings are provided instruction as to how they may timely obtain copies of their A-Files under FOIA. As explained above, Defendants have acknowledged the serious harm that class members suffer absent timely delivery of their A-Files. *See supra* Section II.C. Other federal agencies with administrative claims proceedings provide open access to individual files. *See, e.g.*, U.S. Social Security Administration, *FOIA: Your Access to Social Security Administration Information* (June 26, 2020), https://www.ssa.gov/foia/ (directing people to go to local office to obtain a copy of their file); 8 C.F.R. § 1.525(b)(1) (permitting a veteran's representative to inspect claim files at the office where the claim is being processed). Moreover, individuals seeking records from those agencies are not detained.

Defendants rely heavily on websites to notify the public of the ability to request an A-File

---

[14]   *See, e.g.*, *supra* note 14 (discussing *Brown v. CBP*); *Rosario*, 365 F. Supp. 3d at 1163 (complying with thirty-day regulatory deadline for adjudicating employment applications for first-time asylum seekers after court ordered mandatory injunction in nationwide class action); *Garcia v. Johnson*, No. 4:14-CV-01775-YGR, 2015 WL 13387594 (N.D. Cal. Oct. 27, 2015) (settling nationwide class action seeking compliance with ten-day regulatory deadline to provide reasonable fear screenings after USCIS agreed to conduct interviews quickly and alter its policies and procedures); *Moreno Galvez v. Cuccinelli*, 387 F. Supp. 3d 1208, 1219 (W.D. Wash. 2019) (ordering USCIS to comply with statutory deadline requiring claims to be processed in 180 days).

through FOIA. Keenan Depo. 66:9–67:4 (citing websites and "most immigration attorneys know");

Meckley Depo. 105:1–106:7 (citing website and press release about FIRST). Individuals in

detention lack access to reliable internet, printers, or the ability to navigate in English. St. John

Decl. ¶13. For individuals without internet access, DHS' position is that they "have to submit [their]

request through the mail the old fashioned way . . ." Holzer Depo. 153:4–10. But Defendants cannot

answer how pro se or detained individuals would know to request their files. Holzer Depo. 155:17–

156:1 (disclaiming any knowledge of how a detainee in removal proceedings would learn about

the process for filing an A-File FOIA); Meckley Depo. 106:12–107:4 (replying that websites and

press releases are available "communications mechanisms" in response to question regarding how

a pro se or detained individual would learn about the option of filing an A-File FOIA request);

Keenan Depo. 68:7–11 (replying that she was "not 100 percent sure" whether web notices are in

language other than English). Neither ICE attorneys nor IJs advise noncitizens in removal

proceedings of their right to request their A-Files through FOIA. St. John Decl. ¶13; Hoppock Decl.

¶25; Supp. Nightingale Decl. ¶; Meyer Decl. ¶; Damast Decl. ¶14; *see also* Keenan Depo. 67:5–

68:5 (no knowledge of whether ICE prosecutors or IJs notify individuals). As such, Defendants do

not adequately inform pro se class members of this right. *See Mullane v. Cent. Hanover Bank &

Trust Co.*, 339 U.S. 306, 314 (1950); *Nozzi v. Hous. Auth.*, 806 F.3d 1178, 1194 (9th Cir. 2015)

(stating that notice "must be reasonably certain to actually inform the party, and in choosing the

means, one must take account of the capacities and circumstances of the parties to whom the notice

is addressed") (internal quotations marks and citations omitted). Defendants also fail to provide a

uniform mechanism that ensures that pro se class members in removal proceedings, especially those

who are detained, can exercise their statutory right to file an A-File FOIA. Because they have a

statutory right to request A-Files, class members are entitled to a meaningful avenue to obtain them.

*Cf. Wilkinson v. Austin*, 545 U.S. 209, 221 (2005) (stating that due process requires compliance

1    with fair procedures prior to any deprivation of a protected interest).

2        Injunctive relief compelling Defendants to timely notify individuals in removal proceedings

3    of their right to request A-Files through FOIA would ensure that Plaintiffs are "actually

4    inform[ed]." *Nozzi*, 806 F.3d at 1178. In addition, injunctive relief allowing detained or pro se class

5    members in removal proceedings to file an A-File FOIA request via a mechanism other than the

6    internet or U.S. mail, *e.g.*, by providing it to ICE at a removal hearing, would ensure that A-File

7    FOIA requests are filed and timely processed. This is especially true given that ICE prosecutors

8    generally possess the A-File during removal proceedings. Hoppock Decl. ¶14; Sáenz Decl. ¶¶9, 16.

9        In sum, comprehensive declaratory and injunctive relief is necessary to remedy Defendants'

10   pattern or practice of failing to comply with FOIA's deadline. This Court has broad equitable

11   powers to issue mandatory and prospective relief, including relief that ensures that class members

12   are able to exercise their statutory right to timely obtain their A-Files through a FOIA request. The

13   Court should employ that power in this case.[15]

14   **V.    CONCLUSION**

15       Defendants have a pattern or practice of violating FOIA's statutory mandate. Plaintiffs

16   ask this Court to retain jurisdiction and to: declare these actions unlawful; permanently enjoin

17   Defendants from violating FOIA; order Defendants to make determinations on requests in the

18   backlog within thirty days and to provide the Court and class counsel with quarterly reports; and

19   to order any additional relief that it deems proper, including, but not limited to, ordering

20   Defendants to provide notice and a uniform procedural mechanism that will ensure that class

21   members in removal proceedings can request and receive A-Files in a timely manner.

---

[15]    Because this Court can issue injunctive relief pursuant to *Bannercroft* and *Badgley*, it need not apply the six-factor test from *Telecommunications Research & Action Center v. F.C.C.* (*TRAC*), 750 F.2d 70 (D.C. Cir. 1984). Although applying the *TRAC* test is not appropriate here, since "Congress has specifically provided a deadline for performance," Plaintiffs could nevertheless demonstrate that an injunction is warranted even under *TRAC*. *Badgley*, 309 F.3d at 1177 n.11.

Plfs.' Sum. J. Motion                                              Case No. 3:19-cv-03512-WHO

25

Respectfully submitted,

*s/ Trina Realmuto*
Trina Realmuto (CA SBN 201088)
Mary Kenney*
Tiffany Lieu*
National Immigration Litigation Alliance
10 Griggs Terrace
Brookline, MA 02446
(617) 819-4447
trina@immigrationlitigation.org
mary@immigrationlitigation.org
tiffany@immigrationlitigation.or

Matt Adams (WSBA No. 28287)*
Northwest Immigrant Rights Project
615 Second Avenue, Suite 400
Seattle, WA 98104
(206) 957-8611
(206) 587-4025 (fax)
matt@nwirp.org

Claudia Valenzuela (IL 6279472)*
Emily Creighton (DC 1009922)*
American Immigration Council
1331 G Street NW, Suite 200
Washington, DC 20005
(202) 507-7540
(202) 742-5619 (fax)
cvalenzuela@immcouncil.org
ecreighton@immcouncil.org

Stacy Tolchin (CA SBN 217431)
Law Offices of Stacy Tolchin
634 S. Spring St., Suite 500A
Los Angeles, CA 90014
(213) 622-7450
(213) 622-7233 (fax)
Stacy@Tolchinimmigration.com

*Counsel for Plaintiffs and Class Members*

* Admitted *pro hac vice*
Dated: September 30, 2020

Plfs.' Sum. J. Motion                    Case No. 3:19-cv-03512-WHO

26