1  JEFFREY BOSSERT CLARK
   Acting Assistant Attorney General
2  ELIZABETH J. SHAPIRO
   Deputy Branch Director
3  CRISTEN C. HANDLEY, MO Bar No. 69114
   MATHEW SKURNIK, NY Bar No. 5553896
4  Trial Attorneys
   United States Department of Justice
5  Civil Division, Federal Programs Branch
   1100 L Street, NW
6  Washington, D.C. 20005
   (202) 305-2677
7  cristen.handley@usdoj.gov
8  *Counsel for Defendants*
9
                    **IN THE UNITED STATES DISTRICT COURT**
10
                **FOR THE NORTHERN DISTRICT OF CALIFORNIA**
11
                    **SAN FRANCISCO/OAKLAND DIVISION**
12

13

14 | Zachary NIGHTINGALE, *et al.*, | No. 3:19-cv-03512-WHO |
15 |          Plaintiffs, | **DEFENDANTS' NOTICE OF CROSS-MOTION AND CROSS-MOTION FOR SUMMARY JUDGMENT AND OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT; MEMORANDUM IN SUPPORT** |
16 |     v. | |
17 | U.S. CITIZENSHIP AND IMMIGRATION SERVICES, *et al.*, | |
18 | | |
19 |          Defendants. | **Hearing Date:  December 9, 2020**<br>**Time:  2:00 p.m.**<br>**Hon. William H. Orrick** |
20

21

22

23

24

25

26
                                      i
27

PLEASE TAKE NOTICE that on December 9, 2020 at 2:00 p.m., before the Honorable William H. Orrick of the United States District Court for the Northern District of California, Defendants will move this Court for summary judgment on all claims in the above-captioned matter. Defendants' cross-motion for summary judgment is being made pursuant to Rule 56(a) of the Federal Rules of Civil Procedure and Civil Local Rule 56.  The basis for this motion is set forth more fully in the accompanying Memorandum of Points and Authorities.

Dated:  October 21, 2020                    Respectfully submitted,

JEFFREY BOSSERT CLARK
Acting Assistant Attorney General

ELIZABETH J. SHAPIRO
Deputy Branch Director

/s/  *Cristen C. Handley*
CRISTEN C. HANDLEY, MO Bar No. 69114
MATHEW SKURNIK, NY Bar No. 5553896
Trial Attorneys
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, NW
Washington, D.C. 20005
(202) 305-2677
cristen.handley@usdoj.gov

*Counsel for Defendants*

1

## <u>TABLE OF CONTENTS</u>

INTRODUCTION ............................................................................................................. 1

BACKGROUND .............................................................................................................. 2

   I.   Statutory and Regulatory Framework ................................................................. 2

   II.  FOIA Requests for A-Files ................................................................................. 3

   III. Procedural History ............................................................................................. 7

LEGAL STANDARD ....................................................................................................... 8

ARGUMENT .................................................................................................................... 8

   I.   Defendants Are Not Engaged In An Unlawful Pattern or Practice of Violating FOIA ......... 8

      A.   Pattern or Practice Claims Under FOIA Require Repeated Delays That Are Unexplained and Unjustified. ................................................... 8

      B.   The Evidence Does Not Establish An Unlawful Pattern or Practice ..................... 12

   II.  Plaintiffs' Request for Injunctive Relief Should Be Denied ............................. 21

      A.   Injunctive Relief In Any Form Is Not Appropriate. ................................. 22

      B.   Plaintiffs' Requested Injunctions Are Not Appropriate ............................ 23

CONCLUSION ................................................................................................................ 25

1

## **TABLE OF AUTHORITIES**

2

**Cases**

3

*ACLJ v. State*,
4      289 F. Supp. 3d 81 (D.D.C. 2018) ........................................................................ 21, 22

5
*Am. Ctr. for Law & Justice v. State*,
6      249 F. Supp. 3d 275 (D.D.C. 2017) ....................................................................... 9, 21

7
*Am. Ctr. for Law  & Justice v. FBI*,
      No. CV 19-2643 (RC), 2020 WL 3605624 (D.D.C. July 2, 2020) ............................ 9
8

*Am. Hosp. Ass'n v. Price*,
9      867 F.3d 160 (D.C. Cir. 2017) .................................................................................... 24

10
*Am. Oversight v. EPA*,
11      386 F. Supp. 3d 1 (D.D.C. 2019) ................................................................................ 8

12
*Animal Legal Def. Fund v. FDA*,
      836 F.3d 987 (9th Cir. 2016) ....................................................................................... 8
13

*Biodiversity Legal Foundation v. Badgley*,
14      309 F.3d 1166 (9th Cir. 2002) ................................................................................... 23

15
*Brady v. Maryland*,
16      373 U.S. 83 (1963) ....................................................................................................... 4

17
*Cameranesi v. DOD*,
18      856 F.3d 626 (9th Cir. 2017) ....................................................................................... 2

19
*Cause of Action Inst. v. Eggleston*,
      224 F. Supp. 3d 63 (D.D.C. 2016) ............................................................................ 10
20

21
*Citizens for Responsibility & Ethics in Wash. v. FEC*,
      711 F.3d 180 (D.C. Cir. 2013) ............................................................................... 3, 21
22

*Cohen v. FBI*,
23      831 F. Supp. 850 (S.D. Fla. 1993) ............................................................................ 21

24

25

26

27

28

*Competitive Enter. Inst. v. EPA,*
  153 F. Supp. 3d 376 (D.D.C. 2016) ................................................................. 10

*Cuviello v. City of Oakland,*
  No. C-06-5517-MHP, 2009 WL 734676 (N.D. Cal. Mar. 19, 2009) ......................................... 24

*Dent v. Holder,*
  627 F.3d 365 (9th Cir. 2010) ................................................................... 5

*Exner v. FBI,*
  542 F.2d 1121 (9th Cir. 1976) .................................................................. 6

*Gardner v. Bureau of Land Mgmt.,*
  638 F.3d 1217 (9th Cir. 2011) ................................................................ 25

*Gill v. Whitford,*
  138 S. Ct. 1916 (2018) ......................................................................... 25

*Hajro v. USCIS,*
  811 F.3d 1086 (9th Cir. 2016) ............................................................. 9, 12

*Hart v. HHS,*
  676 F. Supp. 2d 846 (D. Ariz. 2009) ...................................................... 10, 15

*Judicial Watch, Inc. v. DHS,*
  211 F. Supp. 3d 143 (D.D.C. 2016), *rev'd & remanded,* 895 F.3d 770
  (D.C. Cir. 2018) ........................................................................... 9, 10

*Judicial Watch, Inc. v. DHS,*
  895 F.3d 770 (D.C. Cir. 2018) .......................................................... 9, 10, 11, 13

*Long v. IRS,*
  693 F.2d 907 (9th Cir. 1982) ......................................................... 12,13, 22, 23

*Mayock v. INS,*
  714 F. Supp. 1558 (N.D. Cal. 1989) .......................................................... 23

*Mayock v. Nelson,*
  938 F.2d 1006 (9th Cir. 1991) ......................................................... 11, 12, 23

*Mo. Coal. for the Env't v. Army Corps of Eng'rs,*
  369 F. Supp. 3d 151 (D.D.C. 2019) ........................................................ 22, 23

*Muckrock, LLC v. CIA*,
   300 F. Supp. 3d 108 (D.D.C. 2018)..................................................... 22

*Nat'l Sec. Counselors v. CIA*,
   898 F. Supp. 2d 233 (D.D.C. 2012)..................................................... 10

*Our Children's Earth Found. v. Nat'l Marine Fisheries Serv.*,
   2016 WL 234359 (N.D. Cal. Jan. 20, 2016)........................................ 22

*Our Children's Earth Found. v. Nat'l Marine Fisheries Serv.*,
   No. 14-1130-SC, 2015 WL 4452136 (N.D. Cal. July 20, 2015).................... 3

*Our Children's Earth Found. v. Nat'l Marine Fisheries Serv.*,
   2015 WL 6331268 (N.D. Cal. Oct. 21, 2015) ................................. 22, 23

*Payne Enters., Inc. v. United States*,
   837 F.2d 486 (D.C. Cir. 1988)................................................... 9, 10, 13

*Porup v. CIA*,
   No. 70-CV-72 (CRC), 2020 WL 1244928 (D.D.C. Mar.16, 2020) ............ 10

*S. Yuba River Citizens League v. Nat'l Marine Fisheries Serv.*,
   No. CIVS-06-2845 LKK/JFM, 2008 WL 2523819 (E.D. Cal. June 20, 2008)...... 10

*Sierra Club v. Ruckelshaus*,
   602 F. Supp. 892 (N.D. Cal. 1984)..................................................... 24

*United States ex rel. Touhy v. Ragen*,
   340 U.S. 462 (1951) ............................................................................. 4

**Statutes**

5 U.S.C. § 552............................................................... 2, 3, 14, 21

8 U.S.C. §1229a..................................................................................... 5

8 U.S.C. § 1356........................................................................................ 19

31 U.S.C. § 1341.................................................................................... 20

**Rules**

Fed. R. Civ. P. 26(a)(2)(C) ................................................................... 8

DEFENDANTS' NOTICE OF CROSS-MOTION AND CROSS-MOTION FOR SUMMARY JUDGMENT AND
OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT
No. 3:19-cv-03512-WHO

Fed. R. Civ. P. 56(a) .................................................................................................... 8

Fed. R. Crim. P. 16(a)(1) ............................................................................................ 4

**Regulations**

6 C.F.R. § 5.3 ............................................................................................................. 18

6 C.F.R. § 5.4 ............................................................................................................. 20

6 C.F.R. § 5.41 ............................................................................................................. 4

6 C.F.R. § 5.42 ............................................................................................................. 4

6 C.F.R. § 5.43 ............................................................................................................. 4

6 C.F.R. § 5.44 ............................................................................................................. 4

6 C.F.R. § 5.45 ............................................................................................................. 4

6 C.F.R. § 5.46 ............................................................................................................. 4

6 C.F.R. § 5.47 ............................................................................................................. 4

6 C.F.R. § 5.48 ............................................................................................................. 4

6 C.F.R. § 5.49 ............................................................................................................. 4

19 C.F.R. § 103.21 ....................................................................................................... 4

19 C.F.R. § 103.22 ....................................................................................................... 4

19 C.F.R. § 103.23 ....................................................................................................... 4

19 C.F.R. § 103.24 ....................................................................................................... 4

19 C.F.R. § 103.25 ....................................................................................................... 4

19 C.F.R. § 103.26 ....................................................................................................... 4

19 C.F.R. § 103.27 ....................................................................................................... 4

DEFENDANTS' NOTICE OF CROSS-MOTION AND CROSS-MOTION FOR SUMMARY JUDGMENT AND
OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT
No. 3:19-cv-03512-WHO

1

**Other Sources**

Cornish F. Hitchcock, *Guidebook to the Freedom of Information and Privacy Acts*,
§ 16:17 Pattern-or-Practice Claims (March 2020) ........................................................ 9

Matthew Hoppock, *Discovery in Removal Proceedings – When Is It Permitted?*
(Aug. 20, 2013), https://www.hoppocklawfirm.com/discovery-in-removal-proceedings-when/  5

*Strategies For Obtaining Documents From the Government During Removal Proceedings* (June
12, 2012), https://www.americanimmigrationcouncil.org/
sites/default/files/practice_advisory/dent_practice_advisory_6-8-12.pdf ................................... 5

1

2

**INTRODUCTION**

3          Plaintiffs ask this Court to issue nationwide injunctions against Defendants Department of

4   Homeland Security ("DHS"), United States Citizenship and Immigration Services ("USCIS"), and

5   Immigration and Customs Enforcement ("ICE") (collectively, "Defendants") for their alleged

6   "pattern or practice" of making delayed determinations on Freedom of Information Act ("FOIA")

7   requests for Alien Files ("A-Files").  Because this request for relief cannot be justified by either

8   record evidence or the relevant case law, the Court should deny Plaintiffs' motion for summary

9   judgment and enter summary judgment for Defendants.

10          First, Plaintiffs' claims fail because Defendants do not have a pattern or practice to violate

11   FOIA, much less one of the type required to achieve the relief Plaintiffs seek.  The law in this and

12   other circuits is clear:  to prove a pattern or practice claim, a plaintiff must establish not just that the

13   Government has failed to meet the FOIA's deadlines, but that the Government has engaged in

14   repeated delays that are unexplained and unjustified.  Plaintiffs have wholly failed to meet that

15   burden.  The summary judgment record demonstrates that the reason Defendants have not met

16   FOIA's deadlines 100% of the time is because they face the largest FOIA workload of any agency

17   in recent history and that nearly every year that workload increases in number, volume, and

18   complexity.  At the same time, the record also shows that Defendants have undertaken extensive and

19   continuing efforts to reduce their queues of pending FOIA requests, bolster their resources, and

20   optimize efficiencies in their processes—including investing $10 million to develop state-of-the-art

21   FOIA-processing software, and entering into an inter-agency agreement that eliminates future

22   additions to ICE's referral backlog.

23          These efforts have already borne fruit.  In the last three months, USCIS has achieved an

24   average processing time of 33 business days—barely over the relevant deadline—for individuals

25   scheduled to appear before an immigration judge.  As of the date of this filing, that average has

26   dropped to 26 business days.  ICE has recently reduced its backlog by 47% and anticipates that its

27

28

backlog will reach zero by the end of the current fiscal year (September 30, 2021), if not sooner. These facts show that the agencies, rather than maintaining a pattern or practice of non-compliance, are making every effort to improve the timeliness and overall quality of their FOIA operations.

Second, even if Plaintiffs could show an unlawful pattern or practice, the Court should decline to issue injunctive relief.  Equitable relief is discretionary, and courts routinely decline to issue injunctions even where a pattern or practice has been established.  Defendants already are doing everything practicable to comply with FOIA's deadlines, and Plaintiffs have not explained how, given ever increasing and more complex requests, an injunction would improve those efforts. If anything, the requested injunction would simply set the stage for further litigation when, inevitably, out of the deluge of requests Defendants receive every month, there are some they cannot possibly complete within 20 or 30 business days.  Injunctive relief simply is not appropriate.

## BACKGROUND

### I.    Statutory and Regulatory Framework

FOIA provides a means for the public to access federal records, subject to certain exemptions.  *See* 5 U.S.C. § 552.  Upon receipt of a properly submitted request, an agency generally must determine within twenty business days "whether to comply with such request" and then must notify the requestor of its determination and the reasons therefor.  *Id*. § 552(a)(6)(A)(i).  An agency may extend this deadline by ten business days in "unusual circumstances."  *Id*. § 552(a)(6)(B)(i).  In deciding how to comply with a given FOIA request, the agency must not consider the identity of the requester or their need for the information.  *See Cameranesi v. DOD*, 856 F.3d 626, 640 (9th Cir. 2017) ("We do not give weight to the FOIA requester's personal interest in obtaining information.").

The FOIA states that if an agency fails to make a determination within the relevant time period, the requestor "shall be deemed to have exhausted his administrative remedies with respect to such request," and may seek relief from a court to "order the production of any agency records

DEFENDANTS' NOTICE OF CROSS-MOTION AND CROSS-MOTION FOR SUMMARY JUDGMENT AND
OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT
No. 3:19-cv-03512-WHO

improperly withheld from the complainant." 5 U.S.C. § 552(a)(6)(C)(i), (a)(4)(B).  This Court has previously suggested, in the context of class certification, that failing to meet the 20- and 30-business-day deadlines amounts to "a violation of the FOIA."  Order Granting Class Cert. 15, ECF No. 47 (quoting *Our Children's Earth Found. v. Nat'l Marine Fisheries Serv.*, No. 14-1130-SC, 2015 WL 4452136, at *8 (N.D. Cal. July 20, 2015)).  Defendants respectfully disagree, and preserve for further review their position that the only "penalty" for failing to meet FOIA's deadlines "is that the agency cannot rely on the administrative exhaustion requirement to keep cases from getting into court."  *Citizens for Resp. & Ethics v. FEC*, 711 F.3d 180, 189 (D.C. Cir. 2013) ("*CREW*").

Once in court, "[i]f the Government can show exceptional circumstances exist and that the agency is exercising due diligence in responding to the request, the court may retain jurisdiction and allow the agency additional time to complete its review" with respect to that particular request. 5 U.S.C. § 552(a)(6)(C)(i).

## II.     FOIA Requests for A-Files

An Alien File, or "A-File," is the official government record of an individual's course through the U.S. immigration process.  Ex. 1, Declaration of Tammy M. Meckley ("Meckley Decl.") ¶ 13.  While USCIS is the official custodian of A-Files (approximately 70 million total), A-Files are tri-bureau documents, meaning they are created and contributed to by three DHS components: USCIS, ICE, and U.S. Customs and Border Protection ("CBP").  *Id.* ¶¶ 13-14.  Around 18 million A-Files are stored at the National Records Center ("NRC") in Lee's Summit, Missouri; still others are located among the hundreds of USCIS and ICE field offices around the country.  *Id.* ¶ 16-17.

As with people, no two A-Files are the same.  Depending on one's personal history, an A-File may include documents such as naturalization, birth, and marriage certificates; applications and other requests for immigration determinations or benefits; records of arrests or investigations; or

statements, reports, or other filings made with the U.S. immigration courts and other administrative or federal courts.  *Id.* ¶ 13.  A-Files also vary greatly in size; they average around 260 pages but can range from a handful of pages to, in some cases, thousands of pages, depending on the individual's history of transactions with the U.S. immigration system.  *Id.* ¶ 14.

The vast majority of A-File disclosures occur by means of FOIA requests to USCIS.  *E.g.*, Ex. 2, DHS 30(b)(6) Dep. 130:6-130:7.   In certain circumstances, however, there are other mechanisms available to access A-Files.  For instance, DHS has enacted so-called *Touhy* regulations (a reference to *United States ex rel. Touhy v. Ragen*, 340 U.S. 462 (1951)) that apply when a party to federal or state litigation seeks agency records—such as all or part of an A-File—by means of a subpoena or other request for information.  *See* 6 C.F.R. §§ 5.41-5.49 (DHS's *Touhy* regulations, which apply to USCIS and ICE); *see also* Ex. 2, DHS 30(b)(6) Dep. 130:11-130:17.  Additionally, for individuals subject to criminal proceedings, the Federal Rules of Criminal Procedure and the Supreme Court's decision in *Brady v. Maryland*, 373 U.S. 83 (1963), provide for the government's disclosure of certain documents, which may include all or part of an A-File.  *See* Fed. R. Crim. P. 16(a)(1)(B), (D), (E); *see also* Ex. 2, DHS 30(b)(6) Dep. 139:14-139:17.  Finally, if requested by a respondent in an immigration proceeding (such as a removal proceeding) within the jurisdiction of the Ninth Circuit, government attorneys may provide A-File materials where appropriate pursuant to the Ninth Circuit's holding in *Dent v. Holder*, 627 F.3d 365 (9th Cir. 2010) and the Immigration and Nationality Act ("INA"), 8 U.S.C. §§ 1229a(b)(1), (c)(2)(B).[1]

---

[1] *See also* American Immigration Council, Dent v. Holder *and Strategies For Obtaining Documents From the Government During Removal Proceedings*, 12 (June 12, 2012) (discussing removal proceedings and stating, "Some respondents have successfully obtained documents by making an informal request to DHS counsel for particular documents or for the entire A-file."), available at https://www.americanimmigrationcouncil.org/sites/default/files/practice_advisory/dent_practice_advisory_6-8-12.pdf; Matthew Hoppock, *Discovery in Removal Proceedings – When Is It Permitted?* (Aug. 20, 2013) ("A request under *Dent* directed to the DHS should result in a copy of the immigrant's 'alien file.'"), available at https://www.hoppocklawfirm.com/discovery-in-removal-proceedings-when/.

DEFENDANTS' NOTICE OF CROSS-MOTION AND CROSS-MOTION FOR SUMMARY JUDGMENT AND
OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT
No. 3:19-cv-03512-WHO

Individuals may submit a FOIA request to USCIS by mail, fax, email, or—for a faster response—through USCIS's pioneer software program, "FIRST." Ex. 1, Meckley Decl. ¶¶ 44, 48. FIRST was designed and developed by USCIS and implemented in March 2019. *Id.* ¶¶ 46, 54. It is the first-ever FOIA processing system permitting requesters to both submit requests and receive responses online. *Id.* ¶ 48. Described in greater detail below, *infra* p. 15-16, FIRST has numerous features that maximize efficiencies and speed up processing, including cloud-based infrastructure, custom-built redaction tools, advanced duplicate search functions, and auto-generated response letters. *Id.* ¶¶ 50-51; *see also* Ex. 6, Expert Declaration of Lindsay Steel ("Steel Decl.") ¶ 13 (expert opinion stating that "FIRST . . . provides additional efficiencies in processing FOIA requests").

Upon receipt of a FOIA request for an A-File, a USCIS intake specialist must first locate the file at either the NRC or a field office. Ex. 1, Meckley Decl. ¶ 17. If the file is located at the NRC, within three business days, the NRC is generally able to digitize the A-File using a high-speed scanner and ingest the file into FIRST. *Id.* Some USCIS field offices have similar capabilities; those that do not must mail the A-File to the NRC for scanning and ingesting into FIRST, which the NRC also generally does within three business days. *Id.*

Once the A-File is in FIRST, a USCIS FOIA processor reviews the document to determine whether any information should be withheld pursuant to one or more FOIA exemptions. Ex. 3, USCIS 30(b)(6) Dep. 229:11-14. Prior to June 2020, USCIS reviewed the documents within an A-File and referred documents with ICE equities to ICE for its own separate review and direct response to the requester. Ex. 4, Declaration of Fernando Pineiro ("Pineiro Decl.") ¶ 13. In June 2020, however, USCIS and ICE executed an inter-agency Memorandum of Agreement ("2020 MOA"), under which USCIS now reviews both USCIS and ICE documents within the A-File and provides a single, complete response to the requester. *See* 2020 Memorandum of Agreement, ECF Nos. 69-13 & 69-14 (Pls.' sealed Exs. FF and GG); Ex. 4, Pineiro Decl. ¶¶ 20–22. Given that the vast majority

(91%) of ICE's backlog consists of A-File referrals from USCIS, the 2020 MOA has enabled ICE to prevent additional increases in its referral backlog and to focus its resources singularly on eliminating that backlog, which it anticipates doing by the end of the current fiscal year (September 30, 2021), if not sooner. *See* Ex. 4, Pineiro Decl. ¶¶ 5, 11, 26–27.[2]

In addition to developing FIRST, USCIS has improved its own timelines for processing A-File FOIA requests. USCIS processes FOIA requests on a first-in/first-out basis using three different "tracks." Ex. 1, Meckley Decl. ¶¶ 20-21.[3]   Requests for limited, specific A-File documents are placed in track one as simple requests; requests for most or all of an A-File are placed in track two as complex requests; and requests for an A-File of an individual with a scheduled hearing before an immigration judge are placed in Track 3 as priority requests. *Id.* ¶ 21. Most significantly, in the last three months USCIS has reduced its processing time for Track 3 priority requests to 33 business days (from 38.67 business days on average in FY 2019), and even further to 26 business days on average as of the date of this filing. *Id.* ¶ 42. Thus, the requesters whom Plaintiffs say are most harmed by FOIA delays—individuals in immigration proceedings—are, on average, currently receiving their A-Files within or barely above the applicable 30-business-day timeline under the FOIA. Moreover, although USCIS is still working to improve its average processing time for Track 1 (simple) and Track 2 (complex) requests, according to the opinion of an expert designated in this case, "USCIS generally processes its FOIA requests in a reasonable amount of time under the circumstances and compared to other agencies." Ex. 6, Steel Decl. ¶ 14. Indeed, USCIS's current 60-business-day average for complex requests is well below the government-wide average of 157

---

[2] At the time of ICE's 30(b)(6) deposition, ICE anticipated that it would reach a zero backlog by January 2022. Ex. 5, ICE 30(b)(6) Dep. 201:11-17. With the help of 27 DHS Tech Ops contractors, ICE is now processing backlogged requests at a rate of approximately 8,000 cases per month and expects to reach its goal four months earlier, if not even sooner. Ex. 4, Pineiro Decl. ¶ 27.

[3] The Ninth Circuit has upheld this first-in/first-out system as consistent with the FOIA statute. *See Exner v. FBI*, 542 F.2d 1121, 1123 (9th Cir. 1976).

days in FY 2019, and the agency has remained below government-wide averages for simple requests in multiple years since FY 2013.  *Id.* ¶ 16; *see also* Ex. 1, Meckley Decl. ¶ 43.

### III.   Procedural History

The named Plaintiffs in this case are three immigration attorneys who regularly file FOIA requests for A-Files on behalf of their clients, as well as two non-citizens who have filed FOIA requests for their own A-Files.  Compl. ¶ 1, ECF No. 1.  They filed a putative class action complaint on June 19, 2019, alleging that Defendants have an unlawful pattern or practice of failing to make timely determinations on A-File FOIA requests.  Compl. ¶ 3.  The complaint sought declaratory relief and an injunction requiring Defendants to make, within 60 business days, determinations on A-File FOIA requests and referrals that have been pending for more than 30 business days, and further requiring Defendants to make determinations on future A-File FOIA requests and referrals within 20 business days.  *See* Compl., Prayer for Relief ¶¶ 3-6.

On October 15, 2019, the Court issued an Order certifying two classes:

(1) **USCIS Class:**  All individuals who filed, or will file, A-File FOIA requests with USCIS which have been pending, or will be pending, with USCIS for more than 30 business days without a determination.

(2) **ICE Referral Class:**  All individuals who filed, or will file, A-File FOIA requests with USCIS that USCIS has referred, or will refer, to ICE and which have been pending, or will be pending, for more than 30 business days from the date of the initial filing with USCIS without a determination.

*See* Order Granting Class Cert. 6.  Discovery followed, in which Defendants ultimately produced a total of approximately 107,000 pages of responsive documents, responded to multiple sets of Interrogatories and one set of Requests for Admissions, designated two experts pursuant to Federal Rule of Civil Procedure 26(a)(2)(C), and provided the testimony of three Rule 30(b)(6) deponents.

Plaintiffs now move for summary judgment, proving no more than what was already undisputed:  USCIS and ICE do not meet the FOIA's 20- and 30-business-day time periods 100%

of the time.  However, because delays alone do not constitute an unlawful pattern or practice, particularly where, as here, the Government can justify and explain those delays and point to significant efforts to increase efficiencies and improve its processing times, Plaintiffs' motion should be denied and summary judgment should be entered instead for Defendants.

## LEGAL STANDARD

"Most FOIA cases are resolved by the district court on summary judgment, with the district court entering judgment as a matter of law." *Animal Legal Def. Fund v. FDA*, 836 F.3d 987, 989 (9th Cir. 2016) (per curiam).  Summary judgment is appropriate if "there is no genuine dispute as to any material fact" and the moving party "is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "[I]n the context of a policy-or-practice claim, the plaintiff bears the burden of demonstrating that the alleged policy or practice exists and that it will impair his access to information under FOIA in the future."  *Am. Oversight v. EPA*, 386 F. Supp. 3d 1, 7 (D.D.C. 2019); *see also id.* at 7 n.3 ("Indeed, it would be nonsensical to expect the agency, without first any showing from the plaintiff, to *disprove* the existence of an alleged policy or practice.").  Thus, summary judgment should not be granted to a plaintiff who "fails to make a showing sufficient to establish the existence of an element essential to [his] case, and on which [he] will bear the burden of proof at trial."  *Id.* at 7-8.

## ARGUMENT

I. **Defendants Are Not Engaged In An Unlawful Pattern or Practice of Violating FOIA.**

    A. **Pattern or Practice Claims Under FOIA Require Repeated Delays That Are Unexplained and Unjustified.**

Ordinarily, FOIA lawsuits must be litigated based on individual FOIA claims, which become moot once the Government provides the requested documents.  *See Payne Enters., Inc. v. United States*, 837 F.2d 486, 490-91 (D.C. Cir. 1988).  In limited circumstances, however, some courts[4]

---

[4] Although a number of district courts have recognized pattern or practice claims in the FOIA context, the D.C. Circuit and Ninth Circuit are the only courts of appeals that have expressly

have recognized a narrow exception to that principle, in the form of a so-called "pattern or practice" claim (sometimes referred to as a "policy or practice" claim).  *See Hajro v. USCIS*, 811 F.3d 1086, 1103 (9th Cir. 2016).  Such claims have been permitted only where a plaintiff establishes that the agency has adopted some unlawful "policy or practice that will impair the party's lawful access to information in the future."  *Id.* (quoting *Payne Enters.*, 837 F.2d at 491).

As the case law from this circuit and others demonstrates, a plaintiff must clear an extraordinarily high bar to succeed on a pattern or practice claim under FOIA.  It is not enough for a plaintiff simply to demonstrate that an agency frequently suffers from delays in responding to FOIA requests.  *See, e.g.*, *Am. Ctr. for Law & Justice ("ACLJ") v. FBI*, No. CV 19-2643 (RC), 2020 WL 3605624, at *5 (D.D.C. July 2, 2020) (finding plaintiffs had failed to state a pattern or practice claim because "there is little, if anything, beyond the delays themselves that 'could signal the agency has a policy or practice of ignoring FOIA's requirements'" (citing *Judicial Watch, Inc. v. DHS*, 895 F.3d 770, 780 (D.C. Cir. 2018)); *ACLJ v. State*, 249 F. Supp. 3d 275, 283 (D.D.C. 2017) ("Courts have thus recognized a plaintiff 'cannot rest on the mere fact of delay alone to establish a [pattern or practice FOIA] claim.'" (quoting *Judicial Watch, Inc. v. DHS*, 211 F. Supp. 3d 143, 147 (D.D.C. 2016), *rev'd & remanded*, 895 F.3d 770 (D.C. Cir. 2018)); *Cause of Action Inst. v. Eggleston*, 224 F. Supp. 3d 63, 72 (D.D.C. 2016) ("'[D]elay alone, even repeated delay, is not the type of illegal policy or practice that is actionable[.]'").[5]  Rather, to prove a pattern or practice claim, a plaintiff must demonstrate repeated agency conduct that is "*wholly unjustified*" and "unexplained."  *See, e.g.*,

embraced such claims.  *See* Cornish F. Hitchcock, *Guidebook to the Freedom of Information and Privacy Acts*, § 16:17 Pattern-or-Practice Claims (March 2020).

[5] *See also Competitive Enter. Inst. v. EPA*, 153 F. Supp. 3d 376, 384 (D.D.C. 2016) (dismissing FOIA pattern or practice claim after identifying no "'broader policy or practice of delaying disclosure'"); *Hart v. HHS*, 676 F. Supp. 2d 846, 848 (D. Ariz. 2009) (acknowledging agency backlogs yet finding "[in]sufficient evidence of a pattern of delayed responses"); *cf. S. Yuba River Citizens League v. Nat'l Marine Fisheries Serv.*, No. CV-06-2845 LKK/JFM, 2008 WL 2523819, at *5 n.5 (E.D. Cal. June 20, 2008) ("Despite the court's treatment of 20 days as the presumptive date for supplying documents falling within FOIA's mandate, a test of reasonable delay may provide an appropriate measure of timeliness when dealing with thousands of documents.").

*Porup v. CIA*, No. 70-CV-72 (CRC), 2020 WL 1244928, at *3 (D.D.C. Mar.16, 2020) (quoting *Payne Enters.*, 837 F.2d at 491) ("The focus of the 'policy or practice' doctrine is '*wholly unjustified*' agency conduct."); *Judicial Watch, Inc.*, 895 F.3d at 780; *see also Nat'l Sec. Counselors v. CIA*, 898 F. Supp. 2d 233, 248 (D.D.C. 2012) ("[C]ourts have tended to accept such claims only when an accumulation of FOIA violations reasonably reveals some set of inopportune agency behaviors.").

The leading circuit cases confirm this principle.  For instance, in *Payne Enterprises*, for almost two years, officers at Air Force Logistics Command bases "refused to fulfill Payne's requests for copies of bid abstracts," even though the Secretary of the Air Force had determined that "no FOIA exemption applied."  837 F.2d at 494.  The officers were admonished by the Secretary's Office, but no firm action was taken to end their recalcitrance.  *See id.*  In concluding that a pattern or practice claim had been established, the D.C. Circuit emphasized "[t]he Secretary's inability to deal with AFLC officers' noncompliance with the FOIA," and the Air Force's repeated refusal to end a practice for which it offered "no justification."  *Id.*

The D.C. Circuit's more recent decision in *Judicial Watch* similarly demonstrates that a "policy or practice" claim is viable only in the wake of repeated, unexplained misconduct.  895 F.3d 770.  There, a divided panel of the D.C. Circuit held that "a plaintiff states a plausible policy or practice claim" where it alleges "prolonged, unexplained delays in producing non-exempt records that could signal the agency has a policy or practice of ignoring FOIA's requirements."  *Id.* at 780.  At issue were numerous requests to the Secret Service for information on the use of government funds for "VIP" travel.  *See id.* at 773.  The complaint described "nineteen travel-related FOIA requests submitted over a thirteen-month period" to which the Secret Service had not responded, as well as similar prior lawsuits concerning such records.  *Id.* at 773-74.  Critically, because the case was at the pleading stage, the Secret Service had not offered any justification or explanation for its delays.  In reversing the Rule 12(c) judgment on the pleadings, the D.C. Circuit highlighted

repeatedly the allegations of "prolonged, unexplained delays[.]"  *Id.* at 780; *see also id.* at 782

(describing "[t]he Secret Service's alleged practice of prolonged, repeated, and unexplained delay").

The court explained that, on remand, the Secret Service would "have the opportunity . . . to explain

its delays," *id.* at 784, but the parties ultimately settled before that occurred.  *See* Stipulation of

Dismissal, 1:15-cv-1983-RJL (D.D.C. June 12, 2020), ECF No. 37.

Leading cases from the Ninth Circuit also illustrate that pattern or practice claims under

FOIA require unjustified, unexplained agency misconduct.  In *Mayock v. Nelson*, for instance, the

district court had entered injunctive relief against the Immigration and Naturalization Service

("INS") on essentially the same claim Plaintiffs bring here:  that INS had a pattern or practice of

failing to make timely determinations on FOIA requests for certain immigration records.  938 F.2d

1006, 1006-07 (9th Cir. 1991).  The Ninth Circuit reversed, concluding that the district court had

failed to consider the government's evidence explaining the reasons for its delayed FOIA

determinations, which included declarations showing "an increasingly large workload" caused by a

"surge" in FOIA requests and staff vacancies.  *Id.* at 1007-08.  The court of appeals also found a

material factual dispute over whether INS had tried to obtain additional funding for its FOIA

program.  *Id.* at 1008.  The case settled on remand.  *See Hajro v. USCIS*, 811 F.3d 1086, 1093 (9th

Cir. 2016).

On the opposite end of the spectrum is *Long v. IRS*, evidently the only case in which a

plaintiff has successfully pursued a FOIA pattern or practice claim before the Ninth Circuit.  693

F.2d 907 (9th Cir. 1982).[6]  There, the court of appeals found that the district court had improperly

---

[6] To our knowledge, the only other Ninth Circuit case addressing a FOIA pattern or practice claim
is *Hajro v. USCIS*, 811 F.3d 1086 (9th Cir. 2016), which involved an attempt to enforce the 1992
settlement agreement reached in *Mayock v. Nelson*, 938 F.2d 1006 (9th Cir. 1991).  As in *Mayock*,
the Government prevailed and the Ninth Circuit vacated the district court's injunction on the pattern
or practice claim.  *See* 811 F.3d at 1098.  Although the Ninth Circuit ruled in the Government's
favor, the *Hajro* appeal is largely inapposite here, since the Ninth Circuit reached its conclusions on
jurisdictional grounds and did not address the merits of the pattern or practice claim.  *See id.* at 1107

denied plaintiffs injunctive relief on their pattern or practice claim against the IRS. *Id.* at 910. The court determined that the IRS had routinely and intentionally delayed releasing documents requested under FOIA despite conceding that the documents were not exempt from disclosure, and then voluntarily released such documents once a FOIA lawsuit was filed. *See id.* at 908. In holding that the district court should have enjoined this unlawful practice, the Ninth Circuit emphasized the absence of any explanation or justification for the agency's misconduct, which the court described as an "abuse" of the FOIA process that IRS expressly refused to cease. *Id.* at 908, 910.

**B.  The Evidence Does Not Establish An Unlawful Pattern or Practice.**

Unlike in *Payne*, *Judicial Watch*, and *Long*, the record here is brimming with evidence explaining Defendants' delays and the significant steps they are taking to address them. These include, on the one hand, the overwhelming increase in number and complexity of requests received along with a lack of adequate resources to match the increases in requests. And on the other hand, they include the major efforts undertaken by Defendants to improve their processing times, increase the number of pages processed, and create efficiencies despite constraints. In light of these facts, Plaintiffs cannot credibly contend, much less establish with record evidence, that the delays here are "unexplained," "wholly unjustified," or constitute an "abuse" of the FOIA process. *See supra* p. 10-12 (quoting *Judicial Watch*, 895 F.3d at 780; *Payne Enters.*, 837 F.2d at 489; *Long*, 693 F.2d at 910).

Consider USCIS. USCIS alone receives more FOIA requests than any other agency, more than one-fifth of the total number of requests received government-wide. Ex. 1, Meckley Decl. ¶ 30; *see also* Ex. 6, Steel Decl. ¶ 15 (stating that, in FY 2019, USCIS received 22.8% of all requests government-wide). On top of that, there has been a tremendous increase (nearly 70%) in the number of requests to USCIS in the last several years—from 117,787 in FY 2012 to a years-long high of

_____

(summarizing holdings).

200,174 in FY 2019, followed by a slight dip to around 195,731 in FY 2020.[7]  Ex. 1, Meckley Decl. ¶ 30.  Despite this massive increase in USCIS's workload, the agency has remained far below the government-wide average processing times for complex requests, which comprise the vast majority of USCIS's cases.  Ex. 6, Steel Decl. ¶ 16.  In FY 2019, USCIS processed complex requests on average more than twice as fast as the rest of the government, taking 66 days on average compared to the government-wide average of 157 days.  *Id.*  In multiple years, USCIS has also been below government-wide timelines for processing simple requests, processing requests around one to five days faster on average than the rest of the government in FY 2013 through FY 2016.  *Id.*

What is more, Plaintiffs fail to acknowledge USCIS's most relevant achievement specific to this case:  in the last three months, USCIS has reduced its average processing time for requests by individuals who are scheduled to appear before an immigration judge to 33 business days—barely over the applicable 30-business-day deadline—and that average as of the date of this filing has decreased even further to 26 business days.  *See* Ex. 1, Meckley Decl. ¶ 42.[8]  This represents a 33% reduction from last year, when the average processing time for such requests was 38.67 business days.  *Id.*  Thus, in addition to the fact that some respondents in immigration proceedings may receive their A-File records without filing a FOIA request, *see supra* p. 4, such individuals who do file FOIA requests (and provide the relevant documentation)[9] are on average receiving responses within or barely above the statutory deadline of 30 business days.[10]

---

[7] Data from FY 2020 on requests received and pages processed by USCIS is not yet finalized.  All FY 2020 figures for USCIS are approximations based on reporting data currently available.  Ex. 1, Meckley Decl. ¶ 30 n.2.

[8] On the date of USCIS's 30(b)(6) deposition (September 3, 2020), the average processing time for Track 3 requests was 18 days.  Ex. 3, USCIS 30(b)(6) Dep. 152:8-10.

[9] To qualify for Track 3, the requester must provide a copy of either their Form I-862 (notice to appear), Form I-122 (show cause order), I-863 (notice of referral), or a written notice of continuation of a future scheduled hearing before the immigration judge.  Ex. 1, Meckley Decl. ¶ 21.

[10] The FOIA's 30-business-day deadline applies here because Track 3 requests meet all three of the FOIA's factors for "unusual circumstances"—*i.e.* USCIS must locate and retrieve A-Files from other offices, A-Files are generally voluminous and contain numerous distinct records, and other DHS

As one would expect when an agency's workload increases nearly 70%, USCIS's backlog has increased in recent years, albeit to a lesser extent than its workload increase. From FY 2012 to FY 2019, USCIS's backlog increased from 10,727 to 14,773, an increase of approximately 38%, with some intervening fluctuations. *See* Ex. 1, Meckley Decl. ¶ 30; *see also* Ex. 6, Steel Decl. ¶ 18 (USCIS's "increasing backlog is consistent with the increasing number of requests that USCIS has received"). But a backlog itself does not accurately portray an agency's practices; it is merely a snapshot in time, untethered to facts showing the burdens the agency faces or the efforts the agency has undertaken in response to those burdens. Indeed, USCIS's backlog fails to reflect not only the increasing volume and complexity of A-File FOIA requests, but also that USCIS has responded by nearly tripling the number of pages processed since FY 2012. *See* Ex. 1, Meckley Decl. ¶¶ 30, 33 (explaining that in FY 2012, USCIS processed 16,929,280 pages in response to FOIA requests, whereas, in FY 2019, that number increased by 142%, to 40,972,039); Ex. 6, Steel Decl. ¶ 19 (noting that, despite USCIS's increasing backlog, "USCIS [is] generally keeping up with the demand of increasing numbers of requests received"). Although Plaintiffs repeatedly point to Defendants' backlogs in support of their pattern or practice claim, *e.g.*, Pls.' Mot. for Summ. J. ("Mot.") 7, they fail to acknowledge this staggering resulting increase in the number of pages processed. Nor do they recognize that this is the exact sort of evidence courts have found "[m]ost significant[]" in rejecting pattern or practice claims. *Hart v. HHS*, 676 F. Supp. 2d 846, 848 (D. Ariz. 2009).

FY 2020 is yet another example that backlog alone tells but a fraction of the story. In FY 2020, USCIS experienced a slight drop in requests received—195,731, around 4,500 less than the previous fiscal year—yet its backlog increased from 14,773 to 20,344. Ex. 1, Meckley Decl. ¶¶ 30, 35. Looking only at these data, one might mistakenly conclude that USCIS was less productive this past year despite having less requests to fulfill. But, as the Court is well aware, since earlier this

components (usually ICE and CBP) have substantial interest in A-File material. *See* 5 U.S.C. § 552(a)(6)(B)(iii).

year the world has been struck by a global pandemic that has had far-reaching impact on (among many other things) government operations, including USCIS's FOIA program. *See id.* ¶¶ 36-38. The pandemic forced USCIS to transition the vast majority of its FOIA staff to full-time telework beginning in March 2020, which created technical and logistical hardships that temporarily paused USCIS's normal operations and productivity. *Id.* ¶ 37. Contractor staff were likewise required to telework and experienced similar difficulties in the transition. *Id.* Around that same time, also due to the pandemic, USCIS saw a 50% drop in incoming immigration-related fees, which have since remained far below predicted amounts. *Id.* ¶ 38. This budget shortfall required USCIS to request $1.2 billion in emergency funds from Congress and to take all remedial measures possible to avert an administrative furlough of more than 13,000 employees (around 70% of the agency's workforce), including aggressive spending cuts and a hiring freeze. *Id.* As a result, USCIS was unable to authorize overtime for the majority of FY 2020. *Id.*

Despite the significant and unprecedented constraints USCIS has faced this year, the agency still managed to process more pages than any previous fiscal year other than FY 2019, and its backlog is still significantly less than in fiscal years prior to FY 2019. *See id.* ¶ 30. This progress is all the more acute given that USCIS has operated with proportionately less personnel, and at less cost, than the rest of the government. Ex. 6, Steel Decl. ¶ 17 (stating that "in FY 2019, USCIS faced 22.8% of all FOIA requests with only 7.04% of the government's FOIA staff, and still achieved better than average processing times for complex requests"). Based on this and other evidence, Defendants' expert concludes that "USCIS generally processes its FOIA requests in a reasonable amount of time under the circumstances and compared to other agencies, and that any delays in processing its requests do not indicate an illegal pattern or practice of delay." *Id.* ¶ 20.

In order to attain these results, USCIS has implemented technological advancements related to FOIA processing unparalleled by any other government agency. As detailed in USCIS's

declaration, USCIS underwent extensive research and development to improve its FOIA-processing software after increases in the volume and complexity of its FOIA requests revealed inefficiencies in its existing system. Ex. 1, Meckley Decl. ¶¶ 45-47. Unsatisfied with the products available in the private market, USCIS invested around $10 million to develop and deploy its own system, called "FIRST." *Id.* ¶ 46. USCIS held workshops and interviews, both with government officials and the FOIA requester community, to identify flaws and improve best practices. *Id.* ¶ 47; *see also* Ex. 3, USCIS 30(b)(6) Dep. 246:4-8 ("[USCIS] held a stakeholder engagement call where not only did we talk about FIRST, we even provided the public with a demonstration of how FIRST would operate."). These efforts resulted in USCIS's creation of the first-ever fully automated FOIA-processing system, meaning that FOIA requests are filed online directly into the processing pipeline, and requesters in turn access the responsive records through that same online portal. Ex. 1, Meckley Decl. ¶ 48.

Not only is FIRST more accessible, it also enables USCIS to process requests more quickly. Its online submission and response structure eliminates the time required to ingest paper-based FOIA requests into the system, manually enter data, and mail responses to requesters. *Id.* ¶ 48. Plus, its cloud-based infrastructure allows for streamlined workflows, automated case movement, and custom-built features that speed up processing, including optimized redaction tools, a duplicate search feature, and auto-generated response letters. *Id.* ¶ 50. With these enhancements, FIRST has reduced the average processing time from 1 hour 14 minutes to 51 minutes, 30 seconds. *Id.* ¶ 52.

USCIS acknowledges that FIRST does not loosen every knot in the FOIA system that causes delayed determinations on certain A-Files. That is why USCIS has around 10 developers working on additional enhancements to FIRST, has made over 1,900 system improvements since processors began testing FIRST in March 2019, and is continually searching for ways to increase functionality and improve the quality and speed of USCIS's overall FOIA program. *Id.* ¶¶ 53-56. For instance,

while Plaintiffs make the obvious point that FIRST—an online software program—does not reduce the time it takes to physically scan paper A-Files, they disregard the multi-million dollar project USCIS pursued to digitize existing paper A-File records. *Id.* ¶ 15. After years of costly efforts, a rigorous study in 2016 concluded that the digitization project was not cost-efficient and that the better option was to focus on decreasing the amount of paper records created and relied upon in the future by increasing the use of electronic records. *Id.* In response, USCIS developed separate technology allowing some of its most frequently used immigration applications to be filed online, which in turn has sped up the process of locating and retrieving documents. *Id.* ¶ 78. In any event, Plaintiffs' complaints about timeliness in locating and scanning A-Files are misplaced for the independent reason that, as noted above, *supra* p. 5, the NRC is generally able to scan and ingest A-Files within three business days. *Id.* ¶ 17.

Plaintiffs admit that "FIRST is a step in the right direction." Mot. 17. Yet they fault the pioneer system for its imperfections and complain of "poor password management" because, according to the declaration of Matthew Hoppock, users are locked out after one or more unsuccessful attempts to log in. *See* Hoppock Decl. ¶ 29, ECF No. 71-2. It should come as no surprise that, like any other secure online platform where private or sensitive information is exchanged, users will become locked out of FIRST after enough attempts to log in using incorrect credentials. Ex. 1, Meckley Decl. ¶ 58. A customer service feature is prominently displayed on the FOIA website where users can seek assistance. *Id.* While USCIS regrets that Mr. Hoppock has evidently had difficulty using FIRST, USCIS has received no reports of system-wide issues of the kind Mr. Hoppock describes, *id.*, and in fact the percentage of incoming requests submitted through FIRST has skyrocketed from around 4% to 50% since the system launched in June 2019, *id.* ¶ 57.

Equally specious is Plaintiffs' assertion that users are dissuaded from submitting requests via FIRST because it requires providing different or additional biographical information from what is

otherwise required, such as country of birth, birth date, or parents' names.  *See* Hoppock Decl. ¶ 37-38; Nightingale Decl. ¶ 20, ECF No. 70-1.  That is not so.  Whether a request is submitted through FIRST or another means, DHS regulations require FOIA requesters to provide, to the extent possible, "specific information that may assist a component in identifying the requested records," which for obvious reasons would include certain biographical information.  6 C.F.R. § 5.3(b).  Besides, requests that do not include this information are still processed to the extent USCIS is able to reasonably identify the requested records, although that is generally impossible without, at a minimum, the requester's name and date of birth.  Ex. 1, Meckley Decl. ¶ 59.

Plaintiffs cannot undermine these achievements by pointing to USCIS's staffing and budget. Mot. 10-11.  USCIS has made every effort to utilize and expand its resources.  Since 2010, USCIS's FOIA office has grown from 48 government information specialists to 162, a 237% increase in staff who are responsible for responding to FOIA requests.  *See* Ex. 1, Meckley Decl. ¶ 69.  Contrary to Plaintiffs' characterization, these employees must meet timeliness and accuracy performance metrics, including a requirement that they process requests at a minimum productivity rate per hour. *Id.* ¶ 70.  And, while USCIS's contractors are responsible for overseeing their own quality-assurance programs, USCIS reviews every case completed by its contractors and returns any unsatisfactory work.  *Id.* ¶¶ 72-74.  As to USCIS's budget, which was $36.3 million in FY 2019, *id.* ¶ 26, the fee-funded structure is by Congressional design and is largely outside of USCIS's control.  *See* 8 U.S.C. § 1356(m), (n).  In fact, USCIS recently tried to increase its fees through a new regulation that could have added more resources to its FOIA budget, but that effort is currently preliminarily enjoined in this district.  *See* Order, *Immigrant Legal Res. Ctr. v. Wolf*, 4:20-cv-5883 (N.D. Cal.), ECF No. 98.

ICE has also seen a significant rise in incoming FOIA requests in recent years—from 47,893 in FY 2017 to 112,925 in FY 2020, a 135% increase.  Ex. 4, Pineiro Decl. ¶ 10.  Importantly, however, this increase has been primarily due to an increase in the number of A-File referrals

submitted to ICE from USCIS.  *Id.* ¶ 11.  In FY 2015, for instance, USCIS referred approximately 44,889 cases to ICE; that number rose by 93% in FY 2019, to 86,815.  *Id.*  Of the 27,836 cases in ICE's current backlog, 91% (25,344) are USCIS referrals.  *Id.*  Pursuant to the 2020 MOA, USCIS now processes all ICE documents that are contained within an A-File rather than referring those documents to ICE for processing.  *Id.* ¶ 13.  This structural shift has enabled ICE to prevent any future increases to its referral backlog and to focus its resources singularly on eliminating its existing backlog of 27,836 cases.  *Id.* ¶¶ 11, 26.  ICE has already had considerable success on that front; since the inter-agency agreement went into effect on June 1, 2020, ICE has reduced its backlog by around 62%, from 73,158 to 27,836.  *Id.* ¶ 26.  ICE anticipates that it will reach a zero backlog by the end of the current fiscal year (September 30, 2021), if not sooner.  *Id.*

Plaintiffs acknowledge that the 2020 MOA "resolve[s] . . . ICE's delays in processing its own records."  Mot. 19.  Still, Plaintiffs are not satisfied because they speculate that the agreement will not be renewed beyond its current expiration date of September 30, 2021.  *See id.* at 20.  As Defendants have previously explained to Plaintiffs, and as they repeat here in sworn testimony to this Court, Defendants are committed to renewing the agreement for years to come.  Ex. 4, Pineiro Decl. ¶ 23; Ex. 1, Meckley Decl. ¶ 65.  The expiration date incorporated into the 2020 MOA does not undermine that intent; rather, as with other inter-agency agreements involving agency funds, this MOA must contain an expiration date in order to comply with (among other laws) the Anti-Deficiency Act, which prohibits agencies from authorizing expenditures of agency funds in advance of those funds being appropriated by Congress for that purpose.  *See* 31 U.S.C. § 1341(a)(1)(B); *see also* Ex. 4, Pineiro Decl. ¶ 23; Meckley Decl. ¶ 65.  The expiration date is thus a necessary, standard provision, and Plaintiffs have put forward no facts undermining the agencies' good-faith representations or otherwise suggesting that USCIS and ICE, after having developed and implemented this agreement and reaped its benefits, would revert to their previous, less effective

means for responding to these types of FOIA requests.

Plaintiffs fare no better by asserting that DHS, the headquarters of a de-centralized organization that is neither directly responsible for maintaining A-Files nor for responding to FOIA requests for A-Files, is somehow engaging in its own independent pattern or practice of violating the FOIA.  *See* 6 C.F.R. § 5.4(a) (subject to exceptions that do not apply here, "the component that first receives a request for a record and maintains that record is the component responsible for responding to the request"); *see also* Ex. 7, Declaration of James Holzer ("Holzer Decl.") ¶¶ 4-6 (describing the de-centralized organization of DHS's and its components' FOIA programs).  By design, DHS components have their own FOIA offices, and DHS headquarters generally is not involved in the direct processing of FOIA requests received by its components.  Ex. 7, Holzer Decl. ¶¶ 4-5.  To be clear, DHS is responsible for providing oversight of its components' FOIA programs. *Id.* ¶ 7.  DHS performs this function in several meaningful ways, most notably by at times deploying its own resources to directly assist components with FOIA processing to reduce their outstanding backlogs.  *Id.* ¶ 8; *see also id.* ¶¶ 9-12 (identifying other oversight activities by DHS).  DHS is currently providing such assistance to ICE, and in FY 2020 processed over 7,000 cases in ICE's referral backlog, totaling more than 175,000 pages.  *Id.* ¶ 5.

While Plaintiffs attempt to muddy the water by ignoring Defendants' successes and spotlighting their imperfections, this much is clear:  the FOIA cannot be read without some recognition of the realities of the burdens imposed on agencies and agencies' good faith efforts to overcome those burdens.  Were it otherwise, the vast majority of federal agencies would presumably be subject to liability for patterns or practices of violating FOIA, given the undisputed existence of government-wide FOIA backlogs.[11]  Indeed, in the opinion of Defendants' expert, "it is generally

---

[11] *See ACLJ v. State*, 289 F. Supp. 3d 81, 84 (D.D.C. 2018) ("Although the Freedom of Information Act requires agencies to issue decisions on requests for documents within twenty working days, few departments consistently meet this deadline."); *CREW v. FEC*, 711 F.3d 180, 189 (D.C. Cir. 2013)

1  not possible for agencies to meet the FOIA's 20 and 30 working day deadlines 100% of the time, or

2  for many agencies, even a majority of the time (in particular for complex requests)." Ex. 6, Steel

3  Decl. ¶ 4.

4          At bottom, all Plaintiffs have shown is the undisputed, unremarkable fact that,

5  notwithstanding diligent and continuing efforts, Defendants are unable to make determinations on

6  100% of A-File FOIA requests within 20 or 30 business days. The case law demands more.

7  **II.    Plaintiffs' Request for Injunctive Relief Should Be Denied.**

8          If Plaintiffs were to prevail on the merits despite the extensive record of Defendants' good

9  faith efforts, the Court should enter only a declaratory remedy, not injunctive relief. While equitable

10 remedies are available under the FOIA, *see* 5 U.S.C. § 552 (a)(4)(B), they do not issue as a matter

11 of course. Courts have discretion to grant equitable relief, and should only do so where

12 "appropriate." *Long*, 693 F.2d at 909. In pattern or practice cases in particular, courts routinely

13 deny injunctive relief after granting a declaratory remedy. *See, e.g.*, *Mo. Coal. for the Env't v. Army*

14 *Corps of Eng'rs*, 369 F. Supp. 3d 151, 162 (D.D.C. 2019); *Muckrock, LLC v. CIA*, 300 F. Supp. 3d

15 108, 137 (D.D.C. 2018). In deciding whether to issue an injunction in a pattern or practice case,

16 although the primary concern should be "the effect on the public of disclosure or nondisclosure,"

17 courts should "seriously consider" the "likelihood of recurrence, weighing the good faith of any

18 expressed intent to comply," the "effectiveness, if any, of the discontinuance" and "the character of

19 past violations." *Long*, 693 F.2d at 909.

20

21

22 ("[I]t would be a 'practical impossibility' for agencies to process all [FOIA] requests completely
23 within twenty days. . . . We are intimately familiar with the difficulty that FOIA requests pose for
   executive and independent agencies."); *Cohen v. FBI*, 831 F. Supp. 850, 853-54 (S.D. Fla. 1993)
24 (courts "cannot focus on theoretical goals alone, and completely ignore the reality that these agencies
   cannot possibly respond to the overwhelming number of requests received within the time
25 constraints imposed by FOIA"); *cf. ALCJ*, 249 F. Supp. 3d at 278 ("Even if Rome could not be built
   in a day, Plaintiff American Center for Law and Justice believes that the government should be able
26 to assess Freedom of Information Act requests in twenty.").

27

28

**A. Injunctive Relief In Any Form Is Not Appropriate.**

Here, the relevant considerations weigh heavily against an injunction. There is no genuine dispute that Defendants have taken any and all steps reasonably available to them to improve processing times, reduce backlogs, and comply with the 20- and 30-business-day deadlines—including implementing a new inter-agency agreement (the 2020 MOA), and a state-of-the-art software system (FIRST). Any delays in meeting the FOIA's deadlines are the product not of unexplained, unjustified neglect, but rather the inescapable mathematics of ever increasing and more complex requests and finite resources. Under these circumstances, no injunction is necessary to coerce Defendants to comply with FOIA's deadlines—they are already doing everything in their power to do so. *See ACLJ v. State*, 289 F. Supp. 3d 81, 91 (D.D.C. 2018) (finding "no need" for an injunction in light of the Government's "good faith efforts to come up with ways to reduce its back-log and respond promptly, as well as the absence of malice in its delays"); *Our Children's Earth Found.*, 2015 WL 6331268, at *8–9 (declining to issue injunction on pattern or practice claim where agency instituted an "updated process . . . using modern software, additional personnel, and policy changes"); *Our Children's Earth Found. v. Nat'l Marine Fisheries Serv.*, 2016 WL 234359, at *5 (N.D. Cal. Jan. 20, 2016) (Orrick, J.) (after reassignment to this Court, again finding injunctive relief not warranted "[i]n light of significant improvements and structural changes"). Worse, an injunction may very well prove counterproductive, as it would require Defendants to re-direct resources from FOIA processing to providing updates to the Plaintiffs and Court regarding compliance with any injunction. *See Our Children's Earth Found.*, 2015 WL 6331268, at *9 (recognizing that agency "will need to take even more of its time" to answer "inquiries of the Court").

Plaintiffs point to three prior FOIA cases as evidence that an injunction is necessary, Mot. 21 n.13, but those cases are inapposite to the remedy issues presented here. One of them involved an injunction that the Ninth Circuit reversed, *see Mayock v. INS*, 714 F. Supp. 1558, 1566 (N.D. Cal.

- 22 -

1989), rev'd sub nom., *Mayock v. Nelson*, 938 F.2d 1006 (9th Cir. 1991); one was settled, *see Brown v. CBP*, No. 15-cv-01181-JD (N.D. Cal. 2016), ECF Nos. 64-65; and *none* involved ICE.  Moreover, all three cases preceded the 2020 MOA between ICE and USCIS, USCIS's creation and implementation of FIRST, ICE's substantial backlog reduction, and USCIS's achievements related to Track 3 requests.  To the extent these prior suits show anything at all, it is that in the absence of broad injunctions Defendants still have made every effort to meet their obligations under the FOIA.

Plaintiffs' reliance on *Biodiversity Legal Foundation v. Badgley*, 309 F.3d 1166, 1178 (9th Cir. 2002), is no more persuasive.  That case involved the Endangered Species Act, in which Congress had removed "the usual discretion possessed by a court of equity," thus compelling the district court to issue an injunction.  *Id.* (citations omitted).  Under the FOIA, however, district courts indisputably retain their discretion to decline injunctive relief.  *See Long*, 693 F.2d at 909; *Mo. Coal.*, 369 F. Supp. 3d at 162.  Accordingly, even if Plaintiffs could prove their pattern or practice claim, injunctive relief should not be granted.  Rather, in light of Defendants' massive FOIA workload and their extensive and ongoing efforts to improve efficiencies, declaratory relief is sufficient.

## B.  Plaintiffs' Requested Injunctions Are Not Appropriate.

The specific injunctions Plaintiffs request present a host of problems that make them unworkable.  First, Plaintiffs seek an injunction ordering Defendants to comply with the FOIA's 20- and 30-business day deadlines.  Mot. 22.  Even if this were not an impermissible "obey the law" injunction,[12] *see Cuviello v. City of Oakland*, No. C-06-5517-MHP, 2009 WL 734676, at *2-3 (N.D. Cal. Mar. 19, 2009), and even if it did not effectively write the "exceptional circumstances" provision out of the statute, *see* 5 U.S.C. § 552(a)(6)(C)(i), compliance would likely be impossible.  *See* Ex. 1, Meckley Decl. ¶ 82.  Despite making every effort to adhere to the FOIA's deadlines, Defendants—like most of the rest of the federal government, *see* Ex. 6, Steel Decl. ¶ 4—simply do not have the

---

[12] Defendants recognize that this Court already has rejected this argument in its class certification order, *see* Class Cert. Order 19, and respectfully include it here for preservation purposes only.

resources to meet the 20- and 30-day deadlines 100% of the time.  Inevitably, among the thousands of requests Defendants receive every month, there would be some that Defendants could not process within 20 or 30 business days.  The Court should not set up Defendants for failure when the record reflects that Defendants already are making every effort to meet FOIA's deadlines.  *See Am. Hosp. Ass'n v. Price*, 867 F.3d 160, 167 (D.C. Cir. 2017) ("[A] court may not require an agency to render performance that is impossible."); *Sierra Club v. Ruckelshaus*, 602 F. Supp. 892, 898–99 (N.D. Cal. 1984) (same).

Second, Plaintiffs ask that Defendants be ordered to make determinations on requests in the backlog within 30 days.  Mot. 25.  Previously, Plaintiffs took the position that such requests should be made within 60 days—a position this Court relied on in granting class certification.  *See* Order Granting Class Cert. 18, ECF No. 47.  Whether 30 days or 60 days, full compliance with such an injunction again is likely impossible.  *See, e.g.*, Ex. 1, Meckley Decl. ¶ 82.  Plaintiffs do not even attempt to explain how Defendants could reduce their backlogs to zero within 30 or 60 days while at the same time responding to every one of the thousands of incoming requests within 20 or 30 business days.  Defendants share Plaintiffs' desire to eliminate their backlogs.  *See id.* ¶ 10; Ex. 4, Pineiro Decl. ¶ 26; Ex. 7, Holzer Decl. ¶ 13.  But to do so within 30 or 60 days in every case simply is not realistic, and Plaintiffs offer no reason to think otherwise.

Third, without having raised it previously, Plaintiffs now demand that Defendants be ordered to provide additional notice of the right to file A-File FOIA requests to individuals in removal proceedings.  Mot. 23–25.  To start, the Court lacks jurisdiction to grant this surprise request, which would redress no injury by the named plaintiffs or the certified class.  *See Gill v. Whitford*, 138 S. Ct. 1916, 1933, 1934 (2018) ("A plaintiff's remedy must be tailored to redress the plaintiff's particular injury.").  Each of the named plaintiffs is either an immigration attorney who regularly submits A-File FOIA requests or an individual who already has submitted an A-File FOIA request.

Compl. ¶¶ 13–17.  And the two certified classes cover only individuals who "filed, or will file," A-File FOIA requests.  Class Cert Order 6.  Thus, every named plaintiff and, by definition, every class member, already knows or will know that A-Files are available through the FOIA.

Redressability aside, the FOIA nowhere requires the additional notice Plaintiffs now seek. Although they cite case law concerning the Due Process Clause, *see* Mot. 24–25, Plaintiffs have not brought due process claims, only FOIA claims, *see* Compl. ¶¶ 73–80 (raising two FOIA claims). Congress could have enacted the notice requirements Plaintiffs seek, but it has not done so, and there is no basis to invent such a requirement now.  *See Gardner v. Bureau of Land Mgmt.*, 638 F.3d 1217, 1221–22 (9th Cir. 2011) ("[The] ability to compel agency action is carefully circumscribed to situations where an agency has ignored a specific legislative command.") (citation omitted).  Finally, even if an injunction requiring additional notice were somehow proper, no Rule 23(b)(2) class has been certified for that form of relief.  *See* Class Cert. Order 18 (finding that Plaintiffs satisfied Rule 23(b)(2) for the relief requested in their complaint, which does not include the notice requirement). Thus, any injunction on this topic would properly be confined to the named plaintiffs only, who, again, already know they can file FOIA requests for A-Files.

In sum, Plaintiffs' proposed injunctions are unworkable, unwarranted, and they exceed what the FOIA requires and what this Court has jurisdiction to enforce.  For these reasons, injunctive relief should be denied.

## **CONCLUSION**

For the foregoing reasons, Defendants respectfully request that the Court grant their Motion for Summary Judgment and deny Plaintiffs' Motion for Summary Judgment.

Dated:  October 21, 2020                     Respectfully submitted,

JEFFREY BOSSERT CLARK
Acting Assistant Attorney General

- 25 -

1

2

ELIZABETH J. SHAPIRO
Deputy Branch Director

3

/s/  *Cristen C. Handley*

4

CRISTEN C. HANDLEY, MO Bar No. 69114
MATHEW SKURNIK, NY Bar No. 5553896

5

Trial Attorneys
United States Department of Justice

6

Civil Division, Federal Programs Branch
1100 L Street, NW

7

Washington, D.C. 20005

8

(202) 305-2677
cristen.handley@usdoj.gov

9

10

*Counsel for Defendants*

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

- 26 -

DEFENDANTS' NOTICE OF CROSS-MOTION AND CROSS-MOTION FOR SUMMARY JUDGMENT AND
OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT
No. 3:19-cv-03512-WHO