**IN THE UNITED STATES DISTRICT COURT**

**FOR THE NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO/OAKLAND DIVISION**

| | |
|---|---|
| Zachary NIGHTINGALE, *et al.*, | No. 3:19-cv-03512-WHO |
| Plaintiffs, | |
| v. | |
| U.S. CITIZENSHIP AND IMMIGRATION SERVICES, *et al.*, | |
| Defendants. | |

# EXHIBIT 1
# Declaration of Tammy M. Meckley

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO/OAKLAND DIVISION**

| | |
|---|---|
| Zachary NIGHTINGALE, *et al.*, | |
| Plaintiffs, | No. 3:19-cv-03512-WHO |
| v. | **DECLARATION OF**<br>**TAMMY M. MECKLEY** |
| U.S. CITIZENSHIP AND IMMIGRATION SERVICES, *et al.*, | |
| Defendants. | |

I, Tammy M. Meckley, pursuant to 28 U.S.C. § 1746, hereby declare as follows:

1.      I currently serve as a Senior Executive for U.S. Citizenship and Immigration Services (USCIS) as the Associate Director of the Immigration Records and Identity Services Directorate (IRIS).  I am responsible for providing stakeholders with timely and appropriate access to trusted immigration information and services in support of the missions and goals of USCIS and the Department of Homeland Security (DHS).

2.      I have over 20 years of experience with the U.S. Federal Government in the Departments of Homeland Security and Justice, as well as key executive positions in the private sector.  Currently, I lead nearly 1,000 federal employees across three divisions: Verification, Identity and Information Management, and the National Records Center (NRC).  The NRC manages and operates the Freedom of Information and Privacy Act (FOIA/PA) Program of USCIS.

3.      Through the exercise of my official duties as Associate Director, I am personally familiar with USCIS's standard processes for responding to FOIA requests, including search

procedures for locating agency records and the processing of responsive records.  I am also familiar with all of the agency's policies and practices, both formal and informal, concerning responses to FOIA requests. Further, I am familiar with the FOIA office's efforts to increase efficiencies and reduce the backlog, including information related to budget, staffing, resources, training, and technology.

4.     This declaration is submitted in support of Defendants' Motion for Summary Judgment in this matter, and it serves two purposes.  First, this declaration provides the Court with information explaining USCIS's delays in responding to the Alien File (A-File) FOIA requests that are the subject of this lawsuit, and confirms how USCIS has implemented, is presently implementing, and in the future will continue to implement process efficiencies to enable the agency to more timely process records in response to FOIA requests.  In doing so, I describe USCIS's policies and practices for processing FOIA requests for access to agency records, and the limitations USCIS faces, including complexity of requests and staffing and resource constraints of the FOIA program.

5.     Second, this declaration offers my opinion as an expert witness designated in this case pursuant to Rule 26(a)(2)(C) that:  (1) USCIS has undertaken any and all reasonable efforts available to it to reduce its backlog, improve its processing times, and carry out its responsibilities in a manner that is fair, expeditious, and in accordance with the FOIA's provisions; (2) the efficiencies that USCIS has adopted have enabled USCIS to reduce its backlog of A-File FOIA requests and, based on current projections, will continue to do so; and (3) as compared to other government agencies that process FOIA requests, USCIS's FOIA processing system is one of the most efficient and technologically advanced systems.

6.     The statements contained in this declaration are made in my official capacity and based on my personal knowledge, my review of relevant documents kept by USCIS in the course of

ordinary business, and upon information provided to me by other USCIS employees in the course of my official duties.

## USCIS DOES NOT HAVE A POLICY OR PRACTICE OF VIOLATING THE FOIA

7.     USCIS's policy and practice is to fully comply with the FOIA.

8.     USCIS does not have a policy or practice, either formal or informal, of issuing determinations in response to FOIA requests beyond the statutory timeframes set forth in the FOIA statute.  5 U.S.C. § 552(a)(6)(A), (B).

9.     USCIS does not have a policy or practice, either formal or informal, of otherwise violating the FOIA for any reason.

10.     Since joining USCIS in 2010, my core mission for the FOIA program has been to eliminate the FOIA backlog.  I continuously challenge FOIA staff to set goals for efficiency, productivity, and innovation to meet that mission.

11.     USCIS's delays in processing A-File FOIA requests are not the result of any policy or practice by USCIS to violate the FOIA, but instead are due to the external factors and challenges faced by the USCIS FOIA program.  Namely, those external factors and challenges are:  the agency's substantial FOIA caseload, increased file size and complexity of agency records, and delays in obtaining responsive paper-based A-Files housed at field offices around the country.  In the face of these factors, USCIS has implemented numerous efficiencies during my tenure to improve its FOIA review processes and reduce FOIA delivery times.  These efforts and the challenges facing the agency are described in more detail below.

### FOIA Requests for A-File Records

12.     USCIS is a component of DHS, and is responsible for administering the nation's lawful immigration system.  USCIS is also responsible for maintaining custody of A-Files on behalf of DHS and its other component agencies.

- 3 -
DECLARATION OF TAMMY M. MECKLEY
No. 3:19-cv-03512-WHO

13.     An A-File is the official government record that contains information regarding transactions involving an individual as he or she passes through the U.S. immigration and inspection process.  Although USCIS is the official custodian of all A-Files and the system manager for the Alien File/Central Index System, both the files and systems are shared with U.S. Immigration and Customs Enforcement ("ICE") and U.S. Customs and Border Protection ("CBP"), both of which create and contribute documents to A-Files.  A-Files generally consist of, among other things, information relating to the adjudication of benefits, investigation of immigration violations, and enforcement actions.  The content of A-Files varies greatly depending on the person, and may contain a wide variety of documents, including but not limited to: naturalization certificates; birth and marriage certificates; applications, petitions, and requests for immigration determinations or agency action under the immigration and nationality laws; reports of arrests and investigations; statements; other reports; records of proceedings before or filings made with the U.S. immigration courts and any administrative or federal district court or court of appeal; correspondence; and memoranda.  *See generally* 82 Fed. Reg. 43556 (Sept. 18, 2017).

14.     USCIS is the custodian for approximately 70 million A-files.  The average A-File includes around 260 pages, but the size of A-Files varies significantly based on the number of interactions with U.S. officials, as well as the amount of material that the individual submits to the government.  An A-File could be as small as a few pages or, in some cases, consist of thousands of pages, depending on the individual's immigration history, criminal history, employment history, and prior immigration proceedings.

15.     A-Files and the records maintained in them are mostly paper-based.  Previously, USCIS undertook efforts to digitize A-file records, and invested approximately $25 - $30 million into the digitization project.  However, after a rigorous study in 2016, the agency concluded that continuing digitization efforts on existing paper records was not cost efficient.  The agency determined that the better option would be to focus on decreasing its reliance on paper records in the

future, by increasing the use of electronic records from intake of an application through the agency's determination of that application.

16.     Many A-Files are stored at the NRC in Lee's Summit, Missouri.  The NRC is the central repository of active A-Files for USCIS, ICE and CBP.  The NRC currently houses over 18 million A-Files on open storage shelving.

17.     While many A-Files are stored at the NRC, an A-File might alternatively be located at one of the hundreds of USCIS or ICE field offices around the country.  If the A-File is located at the NRC, within three business days, the NRC is generally able to digitize the A-File using a high-speed scanner and ingest the A-File into USCIS's FOIA-processing system, named "FIRST."  If the A-File is located at a field office, depending on its scanning capabilities and resources, the field office will either digitize the A-File and ingest it into FIRST itself or else physically mail the paper file to NRC for scanning and ingesting into FIRST (which NRC also generally does within three business days).   USCIS mails A-Files through United Parcel Service, the U.S. Postal Service, and Federal Express.

18.     Requests for A-File material comprise the vast majority of USCIS's FOIA workload. In fiscal year ("FY") 2020, approximately 99% of the FOIA/PA requests submitted to USCIS sought A-File material.  These requesters are seeking copies of information about themselves previously submitted to the government or records that document their interactions with government officials. There are also many attorneys who request A-Files on behalf of clients for purposes of the clients' immigration proceedings.

19.     The extent of review and redaction required before producing an individual's responsive records from their A-File varies considerably depending on the number, size, and content of the documents identified.  FOIA exemptions typically applied to A-File material include 5 U.S.C. § 552(b)(5), (b)(6), (b)(7)(C), and (b)(7)(E), though this also varies greatly depending on the contents of the file.

20.     Given the significant number of FOIA requests received by USCIS, and in an effort to process FOIA requests in a manner designed to be fair and expeditious and in accordance with law, USCIS has adopted a policy of processing such requests on a first-in/first-out basis.  This first-in/first-out system has been upheld by the U.S. Court of Appeals for the Ninth Circuit as consistent with the FOIA statute.  *See Exner v. FBI*, 542 F.2d 1121, 1123 (9th Cir. 1976).

21.     This process is further enhanced by the implementation of a regulation at 6 C.F.R. 5.5(e) providing for expedited processing of requests under certain circumstances, and the adoption of a multi-track system of processing at 6 C.F.R. 5.5(b). Through these regulations, USCIS is permitted not only to process requests on a first-in/first-out basis within each track, but also to respond to relatively simple requests more quickly than requests involving complex and/or voluminous records.  Track one consists of requests seeking very specific or very limited records. Track two consists of complex requests, or those that are seeking more than a few pages of documents.  Track three consists of requests from individuals who can demonstrate that they have an upcoming scheduled immigration hearing.  To qualify for track three, the requester must provide a copy of either their Form I-862 (notice to appear), Form I-122 (show cause order), I-863 (notice of referral), or a written notice of continuation of a future scheduled hearing before the immigration judge.

22.     The time it takes to process all or part of an A-File varies significantly due to the individualized nature of FOIA requests and the wide variety of records that may be included within an A-File.  For example, a simple request for records within an A-File containing solely USCIS application material may be processed faster due to the agency's familiarity with the subject material and smaller file size.  By contrast, an A-File pertaining to an individual with interactions with multiple DHS components is likely to be much larger, more complex, and require consultations with third-party agencies and law enforcement personnel, thereby taking a longer period of time to process.

23.     Processing an A-File for release requires significant attention to detail and an understanding of a variety of types of documents—largely benefit and enforcement records. Processors must keep in mind the FOIA's purpose of promoting government transparency, but also recognize that files often contain extremely sensitive law enforcement information or information impacting national security.   The inadvertent disclosure of this information could have grave consequences.

## USCIS's FOIA Resources

24.     As the Associate Director of IRIS, I am responsible for submitting to the Director of USCIS an annual operating plan that describes the base funds that IRIS, including the NRC, needs to cover the reoccurring costs of operations, including FOIA operations.  If IRIS wants to make new investments, I submit cost estimates and justifications for additional funding for those investments, referred to as "enhancement requests," to the USCIS Director.

25.     To develop IRIS's annual operating plan, I weigh competing demands from all of the program areas within my responsibility.  Every year since becoming Associate Director in 2010, I have requested increases or enhancements to the FOIA budget and most of those have been granted. These requests for increases or enhancements have been in addition to IRIS's base budget to run the program.  Some examples of additional funding allotments that have been approved in recent years include approval to hire more personnel in the FOIA program, approval for overtime to process FOIA requests, approval to hire an outside contractor, and approval for additional money to build an entire end-to-end automated FOIA processing system (called "FIRST" and described in greater detail below), and continuous technological improvements.

26.     The FOIA budget within IRIS in FY 2019 was $36.3 million.  USCIS operations are funded almost exclusively through fees the agency charges applicants or petitioners requesting immigration or naturalization benefits.  *See* 8 U.S.C. 1356(m), (n). Those exam fees fund about 97

percent of USCIS operations, including the FOIA program.[1]  In other words, USCIS does not receive an appropriation from Congress for its FOIA operations; the agency must rely on its own generated income.

27.     Recently, USCIS attempted to increase its fees for immigration or naturalization benefits through a new regulation, but that effort has been subject to litigation and currently is preliminarily enjoined.  *See* Order Granting Motion for Preliminary Injunction, *Immigrant Legal Resource Center v. Wolf*, 4:20-cv-5883 (N.D. Cal.), Dkt. 98.

28.     While the FOIA statute allows the agency to collect a modest amount of fees from requestors, USCIS ordinarily does not charge filing fees for FOIA requests.  Moreover, if fees were collected, they would not be returned to USCIS, but to the U.S. Treasury.

**USCIS's FOIA Caseload and Backlog Reduction Efforts**

29.     USCIS's FOIA resources have been increasingly burdened by the increased number and complexity of requests, which impact USCIS's ability to make timely determinations on FOIA requests.

30.     USCIS receives more requests than any other agency.  In fact, USCIS receives more than one-fifth of the total requests received government-wide.  As demonstrated in the table below, from FY 2012 to FY 2020,[2] there has been a steady rise in FOIA requests submitted to USCIS.

| DATE | REQUESTS RECEIVED | BACKLOG | PAGES PROCESSED |
|---|---|---|---|
| FY2012 | 117,787 | 10,727 | 16,929,280 |
| FY2013 | 132,797 | 3,394 | 18,234,725 |
| FY2014 | 143,794 | 5,026 | 20,787,743 |
| FY2015 | 162,986 | 16,247 | 20,978,501 |
| FY2016 | 166,732 | 35,763 | 21,988,287 |
| FY2017 | 190,941 | 37,887 | 28,968,460 |
| FY2018 | 191,804 | 41,329 | 31,040,373 |
| FY2019 | 200,174 | 14,773 | 40,972,039 |
| FY2020 | 195,731 | 20,344 | 34,286,826 |

[1] USCIS's E-Verify program makes up almost all of the remaining 3 percent, which comes from Congressional appropriations.
[2] Data from FY 2020 on number of requests received and pages processed is not yet finalized.  These figures represent the approximate totals based on reporting data currently available.

DECLARATION OF TAMMY M. MECKLEY
No. 3:19-cv-03512-WHO

31.     In September 2019, USCIS changed the method by which it calculates the statutory period for adjudicating FOIA requests.  In accordance with the FOIA and consistent with DHS procedures, USCIS incorporated the 10-day allotment allowed for unusual circumstances under the FOIA, thereby reflecting a more accurate measurement of the USCIS FOIA backlog.  As a result, approximately 2,300 requests are no longer part of the backlog.

32.     Generally, as FOIA requests have steadily increased, so too have the number of USCIS's FOIA responses and the number of pages processed.  For example, during FY 2016, USCIS received 166,732 FOIA requests.  That number increased to 190,941 in FY 2017; to 191,804 in FY 2018; to 200,174 in FY 2019.

33.     In addition to the growing number of requests, the total page volume that USCIS reviews and processes has significantly increased.  From FY 2015 to FY 2019, the total number of pages processed by USCIS in response to FOIA requests has nearly doubled in volume, ballooning from 20,978,501 pages in FY 2015 to 40,972,039 pages in FY 2019.  More recently, from FY 2018 to FY 2019, the number of pages processed increased from 31,040,373 to 40,972,039, a nearly 32% increase.

34.     Despite consistently processing larger and larger volumes of records, USCIS's backlog has fluctuated as a result of the increasing number and complexity of incoming requests. The backlog generally increased from 5,026 in FY 2014 to 41,329 in FY 2018, before decreasing sharply to 14,773 in FY 2019.  As of October 1, 2020, USCIS's backlog is 20,344.

35.     In FY 2020, USCIS received a total of 195,731 requests, which represents a slight decrease from the 200,174 requests received in FY 2019.  However, despite the decrease in requests received, USCIS's backlog increased from 14,773 requests in FY 2019 to 20,344 requests in FY 2020.  Further, the total amount of pages processed also decreased from 40,972,039 pages processed in FY 2019 to 34,286,826 pages processed in FY 2020.

36.     While these numbers might appear to indicate a decrease in productivity, the figures from FY 2020 in fact are an anomaly, and are a result of unprecedented external factors that the agency faced this year that affected all of our operations, including FOIA processing.

37.     Specifically, since March 2020, the majority of USCIS employees, including the vast majority of those in my directorate and the FOIA office, were forced to transition to full-time telework due to the COVID-19 pandemic.  This was a significant and unexpected change, and the transition involved some technical and logistical challenges that needed to be addressed in order to resume normal operations and productivity.  Contractor staff were required to telework as well, and experienced similar technological and connectivity issues during the transition.  Additionally, USCIS currently has 12,760 pending FOIA requests that are seeking records or files located at the Federal Records Center ("FRC"), which has been closed since March as a result of COVID-19 and, according to its website, is now gradually re-opening and responding to records requests on a case-by-case basis.  *See* https://www.archives.gov/frc/temporary-closure-faq.  The FRC is managed by the National Archives and Records Administration ("NARA"), which USCIS does not control.  The inability to access these files from FRC has directly impacted USCIS's FOIA backlog.

38.     Additionally, during FY 2020, USCIS was faced with a potential administrative furlough of more than 13,000 employees, which represents approximately 70% of the agency's workforce.  As explained above, *supra* ¶ 26, the majority of USCIS operations rely on fees paid by applicants and petitioners, not appropriated or taxpayer funds.  Due to the impact of COVID-19, USCIS saw a 50% drop in receipts and incoming fees starting in March, and application and petition receipts remained well below predicted amounts throughout the majority of the fiscal year.  As a result of the decrease in incoming fees, in May 2020, USCIS notified Congress of a projected budget shortfall and requested emergency funding of $1.2 billion.  This budget shortfall required the agency to take all remedial measures possible to avert an administrative furlough.  In August 2020, USCIS announced that it would be able to maintain operations through the end of fiscal year 2020 as a result

of aggressive spending reduction measures, including through the descoping of federal contracts and a hiring freeze.  As a result of these reductions, USCIS's FOIA office was unable to authorize overtime for the majority of FY 2020.  These reductions have significantly impacted all operations, and will continue to result in increased backlogs and wait times across the board.  *See* https://www.uscis.gov/news/news-releases/uscis-averts-furlough-of-nearly-70-of-workforce.

39.     However, despite these significant and unprecedented external factors, USCIS has worked diligently to reduce its FOIA backlog and, as noted, has made significant progress in particular years, such as FY 2019.  While USCIS's efforts have not eliminated USCIS's backlog, they have prevented the backlog from ballooning despite the increased volume of requests and pages processed.  The agency has undertaken and continues to undertake any and all reasonable efforts available to it to reduce its backlog and improve its processing times.

40.     Further, the backlog itself does not provide an accurate representation of the agency's timeliness in responding to FOIA requests.  The backlog is simply a snapshot in time, and without more information does not fully reveal either the burdens facing the agency or the efforts the agency has taken in response to those burdens.  Indeed, even a steady backlog, in the fact of increasing requests, indicates that an agency is taking steps to improve its processes and respond to the state of requests.  USCIS has faced significant increases to its workload due to increases in the volume and complexity of requests, but remains committed towards evaluating processes and incorporating innovation in the attempt to offset those increases.

41.     Significantly, despite the fluctuating backlog, the majority of USCIS's requests are closed within 90 business days of receipt.  For example, in FY 2020, USCIS responded to 89% of all requests within 90 business days of receipt.  Less than .03% of requests were open for more than a year after receipt.

42.     Of particular interest in this litigation is the average processing time for requests in Track 3.  As noted above, *supra* ¶ 21, Track 3 is an accelerated track for processing requests from

individuals who are scheduled to appear before an immigration judge.  In FY 2019, the average processing time for those cases was 38.67 business days.  In part due to the pandemic-related factors discussed above, *supra* ¶ 37-38, that number increased to an average of 54.75 business days in FY 2020, although in the last three months it has returned to a lower average of 33 business days.  As of the date of this declaration, the average processing time for those cases is 26 business days, which satisfies the FOIA's applicable 30-day deadline.  This number takes into account the time needed to locate and scan the responsive records but does not take into account the one day required for the request letter to be scanned if the request is submitted by paper via postal mail; requests submitted through FIRST are ingested immediately.

43.     Additionally, as of the date of this declaration, the average processing time for Track 1 (simple) requests is 48 business days, and the average processing time for Track 2 (complex) requests is 60 business days.  These numbers likewise take into account the time needed to locate and scan the responsive records but do not take into account the one day required for the request letter to be scanned if the request is submitted by paper via postal mail.  Again, requests submitted through FIRST are ingested immediately.

**Implementation of USCIS's FOIA Processing System, FIRST**

44.     When I became Deputy Associate Director in November 2010, USCIS was using a FOIA processing system called FIPS.  FIPS had not been designed to handle the volume of requests that the USCIS FOIA program began to receive, which led to significant downtime and delays. As request volumes increased, the system became increasingly unstable and would often lock up or crash, hindering staff's ability to process timely FOIA responses.  Additionally, with FIPS, USCIS could only accept FOIA requests by mail, fax, and email, rather than directly through its FOIA processing system, and requesters could only receive their documents on a CD or printed to paper by mail.

45.     To address these challenges, USCIS began to research alternative platforms that

would make FOIA processing more efficient.  After determining the particular requirements USCIS would need, the agency looked extensively for a commercial, off-the-shelf, processing system.  After evaluating other systems, test-piloting a system, and engaging with several private industry companies to prototype a system, I determined that there was no existing product that would meet USCIS's unique FOIA operational requirements.

46.     In 2017, I decided the best solution was to build USCIS's own system, FIRST, which would deliver on both current and future requirements.  USCIS spent about $10 million to develop and deploy FIRST and is still spending millions of dollars to continue to gain efficiencies in that system through continuous and incremental enhancements.

47.     USCIS involved internal and external users in the design process from the very beginning to make the system as user-friendly and efficient as possible.  Internal users consisted of USCIS's FOIA processors and staff, and external users consisted of immigration attorneys who were identified as frequent requesters who could provide user input and feedback.  Throughout the process, USCIS had internal and external users test functionality and made necessary adjustments based on their feedback.  Workshops were held to identify the key features of the system and to define the guiding principles that would be followed throughout the development process.  Conceptual interviews were conducted with government officials and the requester community to identify areas for improvement and best practices.

48.     FIRST is the first-ever FOIA processing system with "end-to-end automation" capacity, something no other government entity has been able to develop and deploy.  This automation allows requesters to file requests online directly with FIRST, and removes any need to physically mail paper requests, which must then be ingested into the system, followed by manual data entry to initiate the request.  Eliminating this mail-in process means the FOIA request is received, ingested and acknowledged faster.

49.     By eliminating the mail-in process, FIRST also reduces the time requesters must wait

for a request to be ingested and to receive records responsive to the request. Now, by submitting a request through FIRST, requesters are able to submit a request directly into the processing pipeline. Once the request has been processed, requesters can then access their records online instantly, without having to wait for the agency to mail them out.

50.     In addition to eliminating the mail-in process, FIRST also improved the steps involved in document processing. Specifically, FIRST has streamlined workflows, automated case movement, and reduced the amount of downtime and system degradation, due to its cloud-based infrastructure. One of the key improvements of FIRST over the prior system is the creation of shortcut keys, which were built into FIRST to enable processors to perform previously complex actions with the click of a single button. For example, processors were previously required to review each page of a file to mark pages that were not responsive to a request as "out-of-scope." FIRST has a built- in shortcut functionality that allows processors to perform a single action to designate a range of pages as "out of scope," which significantly cuts down on the page-by-page review process. Additionally, FIRST has a custom-built redaction tool that allows for optimized redaction creation and exemption application.

51.     In addition to shortcut keys, the overall process has been improved through automation functions in FIRST. As one example, letters to requesters are now auto-generated in the system both to ensure accuracy in providing requesters with details regarding case processing and to eliminate the time previously spent on manual letter creation. There is also a custom-built duplicate search feature to minimize time spent processing requests for the same records.

52.     As a result of FIRST's system enhancements, USCIS has reduced the amount of time it takes to process cases. For example, in FY 2018, the average time to process a case was 1 hr. 14 min. Following the implementation of FIRST in FY 2019, the average time to process a case was reduced to 51 minutes, 30 seconds, resulting in a time savings of 22 minutes 30 seconds to process each case.

53.     Most importantly, the deployment of FIRST is part of a continual effort to improve the processing system.  Recognizing the ever-changing challenges and external factors facing its FOIA program, USCIS developed FIRST with the technical infrastructure to allow the agency to continuously develop and make changes to the program.  This is an ongoing endeavor, and the agency currently has approximately 10 developers working on additional enhancements to FIRST.

54.     A number of enhancements already have been made to FIRST since its launch in March 2019.  FIRST has been linked to software systems outside of FIRST to automate retrieval of digital A-Files from those systems.  USCIS field offices have been granted remote file upload capabilities to speed up file delivery times. The process for requesting files has been reworked and streamlined.  And FIRST has been modified to provide ICE access to the system to perform its responsibilities pursuant to the 2020 memorandum of agreement between USCIS and ICE (discussed more fully below).

55.     Based on feedback, USCIS has made over 1,900 system updates and improvements since FOIA processors began to use FIRST in March 2019.

56.     Prior to deploying FIRST to the public in June 2019, USCIS embarked on an extensive marketing campaign to communicate the benefits of this new FOIA-processing platform and encourage public usage.  As part of this marketing strategy, USCIS revised its FOIA website to draw attention to the more efficient process and encourage requesters to use FIRST.

57.     Within one month after deploying FIRST's online filing capabilities, approximately 4% of requesters submitted FOIA requests online through the portal.  This figure has steadily increased since that time.  Currently, approximately 50% of all requests are submitted using the online portal.

58.     Much like any other secure online platform where sensitive information is stored, individuals will become locked out of FIRST if they make a certain number of unsuccessful attempts to log in using an incorrect password or username.  However, USCIS has not experienced or received

reports of any system-wide password-management issue with FIRST. Moreover, a customer service feature is prominently displayed on the FOIA website. If users have difficulty with the process, they can ask for assistance.

59.     Requesters are required to provide the same information when submitting a request through FIRST that they would have to provide if the request were submitted by email or paper. All requesters must provide enough information about the records sought in order to allow USCIS to reasonably identify the requested records, which USCIS is generally unable to do without, at a minimum, the subject of record's name and date of birth.

60.     Outside entities with expertise in FOIA have evaluated USCIS's FOIA program and generally found it to be an effective and efficient program. The most recent evaluation was performed by the National Archives and Records Administration's Office of Government Information Services in 2018. That office made three primary findings: 1) "strong management practices contribute to an efficient FOIA process;" 2) "improvements to technology can further improve efficiency and customer service;" and 3) "USCIS customer service supports an efficient FOIA process." Since that evaluation, USCIS has adopted significant improvements to its technology, including the adoption of FIRST.

**USCIS and ICE Intra-Agency Memorandum of Agreement (MOA)**

61.     Another process efficiency USCIS recently implemented was an intra-agency Memorandum of Agreement ("2020 MOA") between USCIS and ICE. The 2020 MOA is an agreement with ICE that allows USCIS to process ICE documents that are contained in A-Files, rather than referring them to ICE for processing. The 2020 MOA first went into effect on June 1, 2020 and has since been renewed to last until September 20, 2021. This MOA will create efficiencies—namely, a reduction in the amount of time a requester must wait to receive a complete A-File record when the A-File contains both USCIS and ICE records. Initially, however, USCIS experienced delays in processing times caused by the necessary training and time it takes processors

to become proficient in processing ICE law enforcement records.

62.     Pursuant to the 2020 MOA, USCIS processes all ICE records within A-Files responsive to FOIA requests received by USCIS. The processing of ICE records is completed in accordance with training and guidance provided to USCIS by ICE. Once the processing is complete, ICE has 48 hours to review, incorporate any additional withholdings, as appropriate, and approve the release of ICE records. Once approved, or at the expiration of 48 hours, whichever occurs first, ICE records are electronically delivered to USCIS for final approval, close out, and delivery to the FOIA requester. In the event ICE records warrant further review, ICE notifies USCIS within the first 36 hours of receipt, and completes its review and provides its response back to USCIS no later than 24 hours beyond the original 48 hours allotted. This occurs on a case by case basis and is not considered common practice.  This entire process is completed using one single FOIA processing system, FIRST.

63.     In 2019, USCIS referred part or all of 86,815 FOIA requests to ICE.  Under the 2020 MOA, USCIS no longer refers such requests to ICE.  While the 2020 MOA may ultimately increase the number of pages and redactions that USCIS itself must process and apply, entering the MOA will produce efficiencies overall for Defendants.  The 2020 MOA reduces multiple wait times for FOIA requesters, does away with the duplication of requests in both agencies' processing queues, and provides the requester with a consolidated response.  It is my understanding that since entering into the MOA, ICE has reduced its backlog of referred requests significantly, and anticipates eliminating that backlog by the end of FY 2021.

64.     Implementing the 2020 MOA was made possible by the deployment of FIRST, which allows ICE real time access to documents processed by USCIS within FIRST.  The agreement, combined with the technology, eliminates the need to physically refer documents to ICE for handling.

65.     USCIS is fully committed to ensuring that the 2020 MOA stays in place for years to

come.  The expiration date incorporated into the 2020 MOA is required under the Anti-Deficiency Act, which prohibits agencies from making or authorizing expenditures of agency funds in advance of those funds being appropriated by Congress for that purpose.  *See* 31 U.S.C. § 1341(a)(1)(B). Moreover, the MOA is authorized under the Economy Act, which provides that any obligated appropriations that are not spent by the end of their available period are automatically de-obligated. *See* 31 U.S.C.A. § 1535(d).  The renewal/renegotiation provision on page five of the 2020 MOA is standard language in compliance with these statutes, and the termination clause is required under a DHS Management Directive.

66.     Prior to the 2020 MOA, starting around October 2011 there was an agreement between USCIS and ICE regarding processing of A-File FOIA requests. That agreement did not allow for ICE to review pages prior to release by USCIS.  The 2012 MOA was terminated by ICE in March 2012.

67.     The 2020 MOA is broader than the 2012 MOA because during the 2012 MOA, USCIS would still refer to ICE portions of records that were deemed law enforcement and/or investigatory in nature.  The 2020 MOA permits USCIS to process all ICE records, including records that are deemed law enforcement and/or investigatory in nature.  Due to the deployment of FIRST, ICE is able to review all pages prior to release, resolving previous concerns related to improper releases.

68.     In fact, in an effort to increase the efficiencies within the FOIA process throughout the federal government, USCIS has entered into agreements with seven different entities, all of which have equities within the A-File.  These entities include ICE, Customs and Border Patrol, Department of State, Bureau of Prisons, Health and Human Services, Defense Counterintelligence and Security Agency, and Office of Biometric Identity Management.

1

**Other Efficiencies**

2

69.     USCIS has taken additional steps to make its FOIA process more efficient and helpful

3

to requesters.  At the time of my hiring in November 2010, the FOIA office had 48 Government

4

Information Specialists (GISs), who were responsible for responding to all FOIA requests, including

5

both requests for A-File records and non A-File records.  Today, of USCIS FOIA's 219 authorized

6

staff, 162 are GIS, representing a 237% increase in FOIA staff responsible for responding to FOIA

7

requests.  In addition to this significant increase in hiring, the structure of the office has changed to

8

better align roles and responsibilities of the staff and improve the processing of FOIA requests.  For

9

example, previously, training, mentoring, and case approval were all separate functions that operated

10

within a silo, which often created inconsistencies that slowed down the process.  In order to better

11

coordinate these efforts, we've developed the Knowledge Management Group, which is a team of

12

experienced processors and subject matter experts that can address the training, mentoring, and case

13

approval functions in a consistent manner for all teams.  They are also able to identify reoccurring

14

trends and to provide remedial training as needed.

15

70.     At all levels of the FOIA operation, employees must meet timeliness and accuracy

16

performance metrics. For example, as a member of the Senior Executive Service, I am rated on my

17

business acumen and my ability to lead people, lead change, build coalitions, and deliver results.

18

Often, a metric specific to FOIA is included in my performance rating.  In turn, any bonus I receive

19

is directly tied to my performance rating.  Individual FOIA processers are similarly held accountable.

20

They must process at a minimum productivity per hour rate, in accordance with the employee's

21

grade level, which is measured by an average minimum number of pages per hour.   For instance, a

22

GS-11 must process an average of 122 pages per hour to achieve expectations.  If an employee fails

23

to meet this standard, the employee is placed on a Performance Improvement Plan.  If the employee

24

does not improve performance to the required standard, the employee is subject to termination.

25

26

27

28

- 19 -
DECLARATION OF TAMMY M. MECKLEY
No. 3:19-cv-03512-WHO

71.     In addition to the GISs that are employed full-time by the USCIS FOIA office, USCIS has also entered into a number of contracts to retain FOIA processors to process backlogs throughout the years.   Contracts typically contain a base period of one year and several option years.

72.     The work done by contractor staff must meet performance standards as well.  While the agency does not evaluate contractor staff performance directly, it does review each of their cases and returns work that is inaccurate.

73.     Specifically, the current contract provides that the contacting company is responsible for developing and administering a quality assurance program. Government employees are required to confirm Contractor case quality, and to inspect 100% of the Contractor's FOIA/Privacy Act cases processed.

74.     Casework is rejected and returned to the Contractor for correction, as needed.  For the purposes of performance measurement, the Acceptable Quality Level (AQL) for cases submitted for review and approval is 95%, with a Maximum Error Rate (MER) of 5%.  Quality and production are reviewed on a monthly basis.

75.     Federal procurement rules limit the tasks a contractor may perform under FOIA.  In addition, federal employment regulations generally require that day-to-day federal operations be performed by full time government employees, not contractor staff.  Consequently, contractor staff are authorized to work backlogged cases only, as that is a distinct workload that can be separated from incoming FOIA requests.

76.     As part of these backlog contract efforts, 63,952 requests have been processed by contract staff since 2015.  Additionally, under the current fiscal year contract, the contractor will process 27,600 requests.

77.      USCIS has also authorized overtime in an effort to address the backlog.  For example, in FY 2019, overtime work resulted in nearly 44,000 hours of additional processing of A-

DECLARATION OF TAMMY M. MECKLEY
No. 3:19-cv-03512-WHO

file records.  While overtime is not a panacea solution, if the agency had not authorized overtime, the backlog today would be significantly larger.

78.     USCIS has also developed technology to allow some of its most frequently used applications to be filed online, and developed the means for FIRST to directly interface with those on-line applications.  This increases efficiencies in at least two significant ways.  First, an individual who files an application for an immigration benefit online will have immediate access to all records sent to USCIS and all notices and correspondence sent to the applicant related to the application.  Second, when a FOIA request is filed, USCIS can pull electronic documents from USCIS systems directly into FIRST for processing.  Put differently, USCIS does not have to search for, retrieve, or input those electronic records; FIRST can interface directly with USCIS's electronic systems to pull the documents in for processing.

79.     USCIS has also thought strategically in selecting which applications to make available online first.  USCIS has intentionally started with some of the most commonly submitted applications and is continuing to develop the capacity to put more files online.  Currently the I-90, I-130, I-539, N-336, N-400, N-565, and N-600/K applications are available online.  These form types represent approximately 30 percent of total application receipts.

**Impact of Efforts and Future Plans**

80.     As Associate Director, I prioritize good government and have directed USCIS's FOIA to continuously explore new ways to allow the agency to meet the FOIA's statutory time frames.  While I have described in this declaration some of the more significant efforts that USCIS has undertaken to meet this challenge, it is important to stress that this is an on-going process in which we are always looking for efficiencies and innovations from all involved in the FOIA process.

81.     I visit the NRC one or two times a year and always meet with employees at all levels to better understand the challenges they face and their ideas for a better process.  I also have weekly engagements with NRC leadership.  About one and one-half years ago, I formalized this process by

asking all FOIA employees to submit their ideas for improvements to the FOIA process.  USCIS evaluated these ideas and implemented many of them.  USCIS tracked and reported back to all employees on the implementations for one year.  Not only did this result in operational improvements, it gave employees an opportunity to be heard.

82.     Given all of the external factors that are out of USCIS's control, such as the number of requests, the increasing size and complexity of requests, whether or not the requestor community avails itself of the most efficient processes that the agency has developed, USCIS's fee-funded structure, and the other variable factors that impact USCIS's workload, it is nearly impossible to guarantee that USCIS will always meet the statutory deadline to fulfill requests.  But the agency will continue to innovate, make improvements to the process, and adjust its efforts in order to address these external factors to the best of its ability.

83.     As demonstrated throughout my tenure, USCIS places the highest priority on achieving efficiencies wherever its process allows.  This is an ongoing effort that will continue regardless of the outcome of this litigation.


I declare under penalty of perjury that the foregoing is true and correct.

Dated:  October 21, 2020

TAMMY M MECKLEY

Digitally signed by TAMMY M MECKLEY
Date: 2020.10.21 16:54:20 -04'00'

TAMMY M. MECKLEY
Associate Director
Immigration Records and Identity Services Directorate (IRIS)
U.S. Citizenship and Immigration Services (USCIS)