1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO/OAKLAND DIVISION

| | |
|---|---|
| Zachary NIGHTINGALE, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> U.S. CITIZENSHIP AND IMMIGRATION SERVICES, *et al.*, <br><br> Defendants. | No. 3:19-cv-03512-WHO |

# EXHIBIT 4
# Declaration of Fernando Pineiro

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO/OAKLAND DIVISION

| | |
|---|---|
| Zachary NIGHTINGALE, *et al.*,<br><br>　　　　　　Plaintiffs,<br><br>　　v.<br><br>U.S. CITIZENSHIP AND IMMIGRATION SERVICES, *et al.*,<br><br>　　　　　　Defendants. | No. 3:19-cv-03512-WHO<br><br>**DECLARATION OF FERNANDO PINEIRO** |

I, Fernando Pineiro, pursuant to 28 U.S.C. § 1746, hereby declare as follows:

　　1.　　I am the Acting Freedom of Information Act ("FOIA") Officer of the Freedom of Information Act Office (the "ICE FOIA Office") at U.S. Immigration and Customs Enforcement ("ICE"). The ICE FOIA Office is responsible for processing and responding to all FOIA, 5 U.S.C. § 552, and Privacy Act, 5 U.S.C. § 552a, requests received at ICE.

　　2.　　My official duties and responsibilities include the general management, oversight, and supervision of the ICE FOIA Office. In that capacity, I am the ICE official immediately responsible for supervising ICE responses to requests for records under the FOIA, the Privacy Act, and other applicable records access statutes and regulations. I manage and supervise a staff of ICE FOIA Paralegal Specialists and contractors, who report to me regarding the processing of FOIA and Privacy Act requests received by ICE. Due to my experience and the nature of my official duties, I am familiar with ICE's procedures for responding to requests for information pursuant to provisions of the FOIA and the Privacy Act.

3. I have held this position since July 10, 2019.  Prior to this position, I was the Deputy FOIA Officer of the ICE FOIA Office from December 29, 2013 to July 9, 2019.  Prior to that, I was the FOIA Officer for three years at the Office for Civil Rights and Civil Liberties at the U.S. Department of Homeland Security ("DHS").

4. I make this declaration in my official capacity based on my personal knowledge, my review of records kept in the ordinary course of business, and information provided to me in the course of my official duties.

5. The purpose of this declaration is to provide the Court with information explaining ICE's policies and practices in responding to the A-File FOIA requests that are the subject of this lawsuit, and to confirm how ICE has implemented process efficiencies that have enabled the agency to eliminate the growth of its backlog of A-File referrals from USCIS as well as to execute its plan to eliminate its remaining backlog of 27,836 (as of October 15, 2020, the date of ICE's latest weekly progress report) by the end of the current fiscal year (September 30, 2021), if not sooner.

**BACKGROUND ABOUT ICE AND ICE'S MISSION**

6. ICE is the principal investigative arm of DHS and the second largest investigative agency in the federal government. Created in 2003 through a merger of the investigative and interior enforcement elements of the U.S. Customs Service and the Immigration and Naturalization Service, ICE now has more than 20,000 employees and offices in all 50 states and 48 foreign countries.

7. ICE's mission is to protect America from the cross-border crime and illegal immigration that threaten national security and public safety.  This mission is executed through the enforcement of more than 400 federal statutes and focuses on smart immigration enforcement, preventing terrorism, and combating the illegal movement of people and goods.

**THE ICE FOIA OFFICE AND THE ICE FOIA OFFICE'S WORKLOAD**

8. As mentioned, the ICE FOIA Office is responsible for processing and responding to all FOIA requests received by ICE or referred to ICE by other DHS components or other agencies.

9. The ICE FOIA Office receives requests for ICE records directly from myriad requesters, including but not limited to individuals (on their own behalf and attorneys on behalf of clients), media outlets, nonprofit organizations, and researchers.

10. There has been a significant increase in the number of FOIA requests received by or referred to ICE over the last several years, and ICE's backlog has increased as a result. For instance, between FY 2017 and FY 2020, the ICE FOIA Office experienced an approximately 135% increase in FOIA requests or referrals, from 47,893 to 112,925. Specifically, in Fiscal Year ("FY") FY 2015, ICE FOIA received or was referred 44,748 FOIA requests, and had a backlog of approximately 841 FOIA requests carried over into FY 2016. In FY 2016, ICE FOIA received or was referred 63,385 FOIA requests, and had a backlog of approximately 621 FOIA requests carried over into FY 2017. In FY 2017, ICE FOIA received or was referred 47,893 FOIA requests, and had a backlog of approximately 535 FOIA requests carried over into FY 2018. In FY 2018, ICE FOIA received or was referred 70,267 FOIA requests, and approximately 3,628 FOIA requests carried over into FY 2019. In FY 2019, ICE FOIA received or was referred 123,254 FOIA requests, and approximately 61,048 FOIA requests carried over into FY 2020. Most recently, for FY 2020, ICE received or was referred 112,925 FOIA requests and had a backlog of approximately 34,538 requests carried over into FY 2021.

11. This dramatic increase in ICE FOIA's workload, and the corresponding increasing backlog, are primarily attributed to the significant number of referrals ICE has received from U.S. Citizenship and Immigration Services ("USCIS"). In FY 2015, for example, ICE received 44,889 referrals from USCIS. That number rose to 86,815 in FY 2019, an increase of 93%. As of the

date of ICE's most recent weekly progress report (October 15, 2020), 27,836 cases are currently in ICE's backlog, and 25,344 of those cases (91%) are referrals from USCIS.

12. Referrals to ICE from USCIS typically consist of documents with ICE equities from Alien Files, or "A-Files," which record an individual's interactions with the U.S. immigration system.

13. Up until June 1, 2020, ICE was responsible for processing ICE documents in A-Files referred by USCIS, and then responding directly to the requesters. On June 1, 2020, however, USCIS and ICE entered into a Memorandum of Agreement (discussed in greater detail below), under which USCIS processes entire A-Files, including documents with ICE equities, and no longer refers A-File records to ICE. *See infra* ¶¶ 20-28.

14. Pages of an A-File referred to ICE from USCIS could vary drastically. The size could range from 1 page to over 400 pages. The records often include sensitive or protected information, such as information relating to Asylum, the Violence Against Women Act, Special Agricultural Worker status, Victims of Human Trafficking status, or Victims of Criminal Activity status. Each page in each file thus had to be carefully reviewed by an ICE FOIA processor.

15. The ICE FOIA Office tracks all of the requests it receives, both directly and through referral, through a case-management software system called FOIAXpress. ICE also keeps track of its FOIA backlog, which it defines as any FOIA request that has not been responded to within the statutory time frame set forth in 5 U.S.C. § 552, as tracked in FOIAXpress.

**ICE DOES NOT HAVE A POLICY OR PRACTICE OF VIOLATING THE FOIA**

16. ICE's policy and practice is to fully comply with the FOIA.

17. ICE does not have a policy or practice, either formal or informal, of issuing determinations in response to FOIA requests beyond the statutory timeframes set forth in the FOIA statute, 5 U.S.C. § 552(a)(6)(A), (B), or of otherwise violating the FOIA for any reason.

18. ICE has made significant efforts in recent years to improve its FOIA processes, to bolster the resources available to process FOIA requests, and to reduce the backlog of FOIA requests.

These efforts are consistent with ICE's policy to fully comply with the FOIA and have enabled ICE to achieve a significant backlog reduction in recent months and to develop a plan to eliminate its backlog by the end of the current fiscal year, if not sooner. These efforts and achievements are discussed more fully below.

**IMPLEMENTATION OF NEW MOA WITH USCIS**

19. From October 2011 to March 31, 2012, USCIS had an agreement with ICE, whereby USCIS would process certain types of non-investigatory ICE records located within an A-File without having to refer those documents to ICE in response to a FOIA request. However, during the course of FY 2012, that agreement changed, and USCIS began referring ICE records contained in an A-File to ICE for processing and direct response to the requestor. As noted above, *supra* ¶ 11, this referral system contributed to a dramatic increase in ICE's FOIA workload and backlog. The MOA ended on March 21, 2012, after a cost analysis conducted by ICE revealed that it was more cost-effective to open the Orlando ICE FOIA office and have contractors there work through the USCIS A-File referrals than it was to pay USCIS to continue processing the records via the MOA.

20. In early 2020, ICE and USCIS entered into discussions regarding a potential new Intra-Agency MOA, pursuant to which USCIS would again process ICE records located within A-Files. The purpose of these discussions was to reach an agreement that would eliminate growth to ICE's referral backlog and help further reduce the agency's respective backlogs.

21. The parties ultimately reached this agreement, which began on June 1, 2020, pursuant to which USCIS would process all ICE records located within A-files. The 2020 MOA is broader than the 2012 MOA because during the 2012 MOA, ICE FOIA was still being referred portions of the records that were deemed law enforcement and/or investigatory in nature. The 2020 MOA includes all ICE records, even records that are deemed law enforcement and/or investigatory in nature.

22. The 2020 MOA was renewed on October 1, 2020 and shall run through September 30, 2021.

23. ICE FOIA is committed to keeping the 2020 MOA in place indefinitely. The limited term of the MOA is required under the Anti-Deficiency Act, which prohibits federal agencies from making or authorizing expenditure of agency funds in advance of those funds being appropriated by Congress for that purpose. *See* 31 U.S.C. § 1341(a)(1)(B). Additionally, the MOA is authorized under the Economy Act, which provides that any obligated appropriations that are not spent by the end of their available period are automatically de-obligated. *See* 31 U.S.C.A. § 1535(d). The renewal/renegotiation provision on page five of the 2020 MOA is standard language in compliance with these statutes, and the termination clause is required under a DHS Management Directive.

24. Pursuant to the 2020 MOA, USCIS's processing of ICE records shall be completed in accordance with training and guidance provided to USCIS by ICE. Once USCIS's processing is complete, ICE will have 48 hours to review, incorporate any additional withholdings, as appropriate, and approve the release of ICE records. Once approved, or at the expiration of 48 hours, whichever occurs first, ICE records will be electronically delivered to USCIS for final approval, close out, and delivery to the FOIA requester. In the event ICE records warrant further review, ICE will notify USCIS within the first 36 hours of receipt, complete its review, and provide its response back to USCIS no later than 24 hours beyond the original 48 hours allotted. This will occur on a case-by-case basis and will not be considered common practice.

25. Before implementing the MOA, ICE provided training to the USCIS FOIA staff on May 12, 2020, which included sharing ICE's procedures for redacting law enforcement sensitivities from ICE records. In turn, USCIS provided ICE with training on the use of their FOIA-processing system, called "FIRST," on June 1, 2020. ICE and USCIS continue to routinely share feedback on the quality of the redactions applied to the records and best practices for use of

the software system.  Since the 2020 MOA went into effect on June 1, 2020, ICE has successfully reviewed approximately 18,283 FOIA cases handled by USCIS pursuant to the MOA.

26.     Implementing the 2020 MOA has enabled ICE to focus its resources singularly on eliminating its existing FOIA backlog.  Indeed, in the nearly five months since the MOA went into effect, ICE has reduced its referral backlog by approximately 62%, from 73,158 to 27,836, as of the date of ICE's most recent weekly progress report (October 15, 2020).  ICE estimates that it will reduce its referral backlog to zero by the end of the current fiscal year (September 30, 2021), if not sooner.

27.     ICE will reach this goal by mobilizing its existing resources.  Specifically, ICE has 5 full-time employees processing backlogged cases; 16 full-time employees reviewing backlogged cases originally processed by contractors and who also process simple and complex backlogged requests when the number of contractor-cases for review decreases; and 27 DHS Tech Ops employees supporting ICE FOIA.  Given that the USCIS MOA has been renewed through September 30, 2021, that the 27 DHS Tech Ops employees have been funded through December 31, 2020 (which ICE is considering extending through September 30, 2021), and that the rate of processing for ICE's A-File FOIA referral backlog has thus far been approximately 8,000 cases per month, ICE FOIA expects to clear the A-File FOIA referral backlog by September 30, 2021. In addition, with the 2020 MOA in place, this should alleviate any future A-File FOIA referral backlogs for ICE.

I declare under penalty of perjury that the forgoing is true and correct.

Signed this 21st day of October, 2020.

FERNANDO PINEIRO JR
Digitally signed by FERNANDO PINEIRO JR
Date: 2020.10.21 10:51:23 -04'00'

Fernando Pineiro, Acting FOIA Officer
Freedom of Information Act Office
U.S. Department of Homeland Security
U.S. Immigration and Customs Enforcement
500 12th Street, S.W., Stop 5009
Washington, DC 20536-5009