1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

UNITED STATES DISTRICT COURT FOR THE

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| Zachary NIGHTINGALE; Courtney McDERMED; Cheryl DAVID; Pao LOPA; Maribel CARANDANG,<br><br>     Plaintiffs,<br><br>       v.<br><br>U.S. CITIZENSHIP AND IMMIGRATION SERVICES; U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT; U.S. DEPARTMENT OF HOMELAND SECURITY,<br><br>     Defendants. | **No. 3:19-cv-03512-WHO**<br><br>**JOINT STATUS REPORT**<br><br>**Status Conference:**<br>**Date:   January 4, 2022**<br>**Time:   2:00 p.m.**<br>**Before: Hon. William H. Orrick** |

Plaintiffs and Defendants respectfully submit the following joint status report regarding the injunction issued against Defendants in the above-captioned matter.  This case involves a certified class action under the Freedom of Information Act ("FOIA") in which this Court held that U.S. Citizenship and Immigration Services ("USCIS"), U.S. Immigration and Customs Enforcement ("ICE"), and U.S. Department of Homeland Security ("DHS") engaged in an unlawful pattern or practice of failing to make timely determinations on FOIA requests for "A-Files."  On December 17, 2020, following briefing and oral argument, this Court entered summary judgment in favor of Plaintiffs on their FOIA pattern or practice claims and issued a nationwide injunction against Defendants. *See* ECF Nos. 89 at 27 & 90 at 1-2.  The injunction set forth the following:

a. Adhere to FOIA Timing Requirements: Defendants are permanently enjoined from further failing to adhere to the statutory deadlines for adjudicating A-File FOIA requests, as set forth in 5 U.S.C.§§ 552(a)(6)(A) and (B);

b. Eliminate the Backlogs: **Within sixty (60) days of this order,** defendants shall make determinations on all A-File FOIA requests in USCIS's and ICE's backlogs; [and]

c. Quarterly Compliance Reports: Until further order, defendants shall provide this court and class counsel with quarterly reports containing information regarding the number and percentage of A-File FOIA requests that were filed and timely completed as well as the number and percentage of cases that remain pending beyond the twenty or thirty-day statutory periods, respectively 5 U.S.C. §§ 552(a)(6)(A) and (B). The first compliance report is due **within ninety (90) days** of this order.

ECF No. 89 at 27 (emphasis in the original); ECF No. 90 at 1-2 (emphasis in the original).

Since the injunction issued in December 2020, Defendants have filed four compliance reports, the parties have filed four joint status reports (this filing being the fourth), and the court has held two case management conferences, with a third to be held on January 4, 2022.

### Plaintiffs' Position

Defendants' Fourth Compliance Report and accompanying Sixth Declaration of Tammy M. Meckley demonstrate that Defendant USCIS is not in compliance, let alone substantial compliance, with the Court's order enjoining USCIS from further failing to adhere to the statutory deadlines for adjudicating A-File FOIA requests, as set forth in 5 U.S.C.§§ 552(a)(6)(A) and (B). The following chart demonstrates the agency's performance over the last four compliance reports:

| Compliance Report | USCIS A-File Backlog | Total new requests | Total of new requests completed | Total of new requests *timely* completed | Timely completion rate | Currently pending A-File requests |
|---|---|---|---|---|---|---|
| First, ECF 97 (Dec. 20, 2020-Mar. 16, 2021) | 574 | 49,0001 | 32,588 | 23,488 | Approx. 72% | 16,413 and 574 beyond statutory deadline |
| Second, ECF 104 (Mar. 17-June 15, 2021) | 244 | 62,844 | 46,338 | 46,004 | 99.3% | 16,444 and 244 beyond statutory deadline |
| Third, ECF 113 (June 15-Sept. 14) | 92 | 67,918 | 47,965 | 47,551 | 99.14% | 19,906 and 92 beyond statutory deadline |
| Fourth, ECF 119 (Sept. 15-Dec. 14, 2021) | 2,978 | 65,612 | 41,545 | 21,374 | 51.4% | 21,122 and 2,978 beyond statutory deadline |

3

Defendants offer the following five reasons allegedly beyond USCIS' control to excuse its lack of compliance: (1) lack of overtime funding; (2) end-of-year staffing shortages due to USCIS' "use or lose" leave policy; (3) "substantial increase in FOIA requests compared to the same period in prior years"; (4) competition for resources and staffing within USCIS; and (5) the FOIA department's failure to retain and hire adequate staff. ECF 119 at 4-7; ECF 119-1 at 3-7.  Plaintiffs are concerned that many, if not all, of these alleged impediments were predictable and are the same the agency has faced in the past and that led to this Court issuing a permanent injunction. The dramatic decrease in compliance is a result of USCIS failing to adequately address these persistent challenges and prioritize this Court's injunction.

Furthermore, Plaintiffs submit that Defendants' lack of compliance during this reporting period underscores the importance of quarterly reports to this Court, both to monitor USCIS' compliance with the existing injunction and to monitor USCIS' contention that the agency is taking curative actions to remedy its violation of the injunction. Plaintiffs welcome a discussion of this matter at the next status conference on January 4, 2022.

Finally, Plaintiffs would also welcome the opportunity to discuss a briefing schedule for their forthcoming motion for fees and costs at that status conference. On October 19, 2021, pursuant to the parties' request, the Court suspended the briefing schedule as negotiations were progressing at that time. ECF 118.  However, on December 21, 2021, negotiations broke down and the parties are unable to agree to terms of settlement of attorneys' fees and costs for litigating this case to completion. In light of this recent development, Plaintiffs will be requesting that the Court lift the stay and set a briefing schedule.

### Defendants' Position

I.      **Compliance in the Fourth Reporting Period**

4

As explained in Defendants' Fourth Compliance Report, as of the end of the day on December 14, 2021, ICE's A-File referral backlog remained at zero, USCIS's A-File backlog consisted of approximately 2,978 requests, and USCIS's timely completion rate was approximately 51.45%.  ECF No. 119 (citing Sixth Declaration of Tammy M. Meckley ("6th Meckley Decl.") ¶¶ 6, 8).  While these figures represent decreased compliance compared to recent reporting periods, this Court has clarified that it does not require "100% compliance," but rather "substantial compliance."  ECF No. 89 at 24.  The Ninth Circuit has explained that substantial compliance "is not susceptible of a mathematically precise definition," *Jeff D. v. Otter*, 643 F.3d 278, 284 (9th Cir. 2011) (citation omitted), and instead turns on "a holistic view of all the available information," *Lab./Cmty. Strategy Ctr. v. L.A. Cnty. Metro. Transp. Auth.*, 564 F.3d 1115, 1122 (9th Cir. 2009).  For the reasons set forth below, Defendants respectfully submit that, notwithstanding the change in their reported data, they remain in substantial compliance with the Court's injunction.

*First*, despite USCIS's recent increased backlog, Defendants' current figures still represent an enormous improvement over the agencies' figures at the time the injunction issued.  Namely, since entry of the Court's injunction, ICE's backlog has decreased from approximately 19,885 requests to zero—a 100% decrease—and USCIS's backlog has decreased from approximately 21,986 requests to approximately 2,978 requests—an approximately 86.46% decrease.  6th Meckley Decl. ¶ 8. And this is in addition to the fact that in the prior two quarters the Defendants reported *de minimis* backlogs and near-perfect compliance.  *See* ECF Nos. 104, 113.  The substantial compliance inquiry "cannot be satisfied by reference to one particular figure, while ignoring alternative information," *Lab./Cmty. Strategy Ctr.*, 564 F.3d at 1122, and here it is clear the agencies have made overwhelming improvement since the Court's order.

5

*Second*, the Defendants on average are just barely missing the statutory deadlines.  For requests seeking specific or limited records (*i.e.*, Track 1 requests), USCIS on average processed the requests in 21.3 business days, and for complex requests, or those seeking more than a few pages of documents (*i.e.*, Track 2 requests), USCIS on average processed the requests in 31.89 business days.  6th Meckley Decl. ¶ 6(a)-(b).  Accordingly, on average USCIS is only exceeding the applicable 20- or 30-business-day deadlines by less than two business days.  Moreover, for the requesters the Plaintiffs have repeatedly highlighted as the most vulnerable—those with an upcoming scheduled immigration hearing (*i.e.*, Track 3 requests)—USCIS on average processed the requests in only 11.97 business days, well in advance of any statutory deadlines.  *Id.* ¶ 6(c).  The Ninth Circuit has cautioned that the substantial compliance inquiry must "do more than simply count the number of technical deviations from the decree," *Lab./Cmty. Strategy Ctr.*, 564 F.3d at 1122, and here the 51.45% timely completion rate simply does not capture the actual impact to processing times, which has not been significant.

*Third*, USCIS has already taken steps to address its increased backlog, and, based on its projections, anticipates reporting lower backlog totals by the next compliance report.  6th Meckley Decl. ¶ 13.  Critically, after several months of unavailable or limited overtime, the USCIS FOIA office has now been authorized to approve overtime for the rest of the fiscal year, until September 30, 2022.  *Id.* ¶ 9(a).  Given that USCIS previously averaged around 4,800 overtime hours per month, the agency will now have substantial additional resources available for processing requests.  *Id.*  USCIS has also recently obtained additional support from ICE and DHS, in the form of two ICE detailees and two DHS contractors.  *Id.* ¶ 10(b).  And it expects that employees' use of leave will decrease in the new year.  *Id.* ¶ 9(b).  Accordingly, assuming the volume of incoming requests is consistent with USCIS's projections and

6

expected resources do not change, the agency anticipates its backlog will be lower by the next compliance report. *Id.* ¶ 13.

*Fourth*, USCIS continues to face increasing demands on its limited pool of resources. Over this compliance period, the number of incoming A-File requests has increased significantly, by 44.2% from the same period in 2020 and 23.51% from the same period in 2019. *Id.* ¶ 9(d). At the same time, USCIS faces competing national priorities, including up to 125,000 refugee admissions authorized for Fiscal Year 2022; Operation Allies Welcome, which supported the humanitarian parole of more than 50,000 Afghans entering the United States; and support of DHS efforts on the southwest border. *Id.* ¶ 9(c). While these additional priorities do not excuse USCIS from complying with the Court's injunction, a "holistic view of all the available information" must account for the full range of constraints facing the agency. *Lab./Cmty. Strategy Ctr.*, 564 F.3d at 1122.

In short, when viewed in context, the latest compliance figures do not demonstrate a lack of substantial compliance. Rather, they demonstrate a change in compliance that merits serious attention but is likely temporary and that the agencies have already made efforts to address. In light of Defendants' prior near-perfect compliance, their undeniable progress since the Court's Order and Judgment, and their continued efforts, they remain in substantial compliance with the Court's injunction.

## II.      Request to Defer Consideration of Attorney's Fees

Defendants respectfully request that the Court continue to defer consideration of attorney's fees and costs, including any briefing on those issues, until all litigation in this matter has concluded. Although the parties previously reached "an agreement in principle as to an award of fees and costs, subject to the parties finalizing the language of the settlement agreement document and Defendants securing final approval," Stipulation, ECF No. 117,

negotiations among the parties have now reached an impasse.  The Plaintiffs in response request a briefing schedule on attorney's fees and costs, but their request should be denied. While the Court has entered a judgment against Defendants, this case is not over: the Defendants must still submit quarterly compliance reports, the parties must still submit quarterly joint status reports and appear for case management conferences, and there may be future motion practice related to enforcing, modifying, or lifting the injunction.  In light of these ongoing proceedings, it would be premature at this time to consider the Plaintiffs' claim for attorney's fees and costs.

This is particularly the case because the Plaintiffs will not agree to forgo seeking fees for their future time spent litigating this case.  That is, although the Plaintiffs seek to have the Court address attorney's fees and costs now, they will not foreclose the possibility of bringing an additional motion for attorney's fees and costs in the future.  While Defendants do not concede that Plaintiffs would be eligible for or entitled to an award of fees for their future work, it would waste the parties' and the Court's time to brief fee issues multiples times in piecemeal fashion.

This Court has the inherent authority to "control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936). Pursuant to that authority, the Court has previously deferred consideration of attorney's fees and costs while this litigation has proceeded.  *See* Order, ECF No. 92 (deferring consideration of fees and costs pending appeal).  More generally, courts routinely defer fee issues while litigation is ongoing, particularly where doing so "avoids the possibility that multiple fee applications will be necessary."  *Karuk Tribe of Cal. v. U.S. Forest Serv.*, 2006 WL 228943, at *2 (N.D. Cal. Jan. 30, 2006) (staying fee petition pending appeal in light of risk of multiple petitions) (citation omitted); *see Glaxo Grp. Ltd. v. Apotex,*

*Inc.*, 272 F. Supp. 2d 772, 779 (N.D. Ill. 2003) (staying fee petition where the petition could be "altered by the time spent on [] additional proceedings").   In light of the continued proceedings in this case and the Plaintiffs' unwillingness to forgo additional fee motions based on those proceedings, consideration of fees should be deferred until the litigation has concluded.

Respectfully submitted,

s/*Trina Realmuto*
Trina Realmuto (CA SBN 201088)
Mary Kenney*sa
Tiffany Lieu*
National Immigration Litigation Alliance
10 Griggs Terrace
Brookline, MA 02446
(617) 819-4447
trina@immigrationlitigation.org

Matt Adams (WSBA No. 28287)*
Northwest Immigrant Rights Project
615 Second Avenue, Suite 400
Seattle, WA 98104
(206) 957-8611

Emily Creighton (DC 1009922)*
American Immigration Council
1331 G Street NW, Suite 200
Washington, DC 20005
(202) 507-7540

Stacy Tolchin (CA SBN 217431)
Law Offices of Stacy Tolchin
634 S. Spring St., Suite 500A
Los Angeles, CA 90014
(213) 622-7450

*Counsel for Plaintiffs*

*Admitted pro hac vice*

BRIAN M. BOYNTON
Acting Assistant Attorney General

ELIZABETH J. SHAPIRO
Deputy Branch Director

/s/*Matthew Skurnik*
MATTHEW   SKURNIK,   NY   Bar   No. 5553896
Trial Attorney
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, NW
Washington, D.C. 20005
(202) 616-8188
matthew.skurnik@usdoj.gov

*Counsel for Defendants*

Dated: December 28, 2021

Joint Status Report

Case No. 3:19-cv-03512-WHO