Trina Realmuto (CA SBN 201088)
Mary Kenney (DC 1044695)*
National Immigration Litigation Alliance
10 Griggs Terrace
Brookline, MA 02446
(617) 819-4447
trina@immigrationlitigation.org
mary@immigrationlitigation.org
*(Additional Counsel for Plaintiffs Listed in Signature Block)*

# UNITED STATES DISTRICT COURT FOR THE

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

|  |  |
|---|---|
| Zachary NIGHTINGALE; Courtney McDERMED; Cheryl DAVID; Pao LOPA; and Maribel CARANDANG, | No. 3:19-cv-03512-WHO |
| Plaintiffs, | |
| v. | **Plaintiffs' Opposition to Defendants' Motion for Partial Stay of Injunction** |
| U.S. CITIZENSHIP AND IMMIGRATION SERVICES; U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT; U.S. DEPARTMENT OF HOMELAND SECURITY, | **Date:   October 25, 2022 Time:  2:00 p.m. Judge William H. Orrick** |
| Defendants. | |

# TABLE OF CONTENTS

**Page**

I.   INTRODUCTION……………………………………………………….......   1

II.   BACKGROUND……………………………………………………….......   2

   A.  The Court's Summary Judgement Order and Permanent Injunction ……………   2

   B.  A-File FOIA Processing Since the Court's Permanent Injunction Order ………...   3

III.  LEGAL STANDARD …………………………………………………...   7

IV.  ARGUMENT…………………………………………………………...   8

   A.  Rule 60(b), Not 5 U.S.C. § 552(a)(6)(C), Governs Defendants' Motion………..   8

   B.   Under Either Rule 60(b) or 5 U.S.C. § 552(a)(6)(C), Relief from the Injunction
        Is Unwarranted……………………………………………………...   11

      1.  Compliance With the Injunction Is Less Onerous Now than When This Court
          First Ordered It in December 2020………………………………………...   12

      2.  The Increase in A-File FOIA Requests in the Past Six-Months Was Both
          Predictable and Consistent with Past Increases………………………….   14

      3.  Defendants' Mismanagement and Delay Have Impeded Compliance…………   16

      4.  Relief from the Injunction Would Harm Plaintiffs and Class Members……….   19

V.   CONCLUSION…………………………………………………….......   21

Plfs.' Opp. to Dfs.' Mx. for Partial Stay Inj.                    No. 3:19-cv-03512-WHO

i

1
2
3

**TABLE OF AUTHORITIES**

**Page**

4

**Cases**

5

*Bd. of Ed. of Oklahoma City Public Schools v. Dowell*, 498 U.S. 237 (1991) ....................... 12

6

*Agostini v. Felton*, 521 U.S. 203 (1997) ................................................................................. 16

7

*Bellvue Manor Assocs.*, 165 F.3d 1249 (9th Cir. 1999) ........................................................... 8

8

*Flores v. Rosen*, 984 F.3d 720 (9th Cir. 2020) ................................................................. 8, 12

9

*Gen. Signal Corp. v. Donallco, Inc.*, 787 F.2d 1376 (9th Cir. 1986) ....................................... 9

10

*Hernandez v. Taqueria El Grullense*, No. 12-cv-03257-WHO, 2014 WL 2611214 (N.D.

11

    Cal. June 11, 2014) ........................................................................................................ 11

12

*Horne v. Flores*, 557 U.S. 433 (2009) ............................................................................... 8, 19

13

*Kelly v. Wengler*, 822 F.3d 1085 (9th Cir. 2016) .................................................................... 9

14

*Kemp v. United States*, 142 S. Ct. 1856 (2022) ...................................................................... 7

15

*Munger, Tolles & Olson LLP v. U.S. Dep't of Army*, 58 F. Supp. 3d 1050 (C.D. Cal. 2014)  19

16
17

*Open America v. Watergate Special Prosecution Force*, 547 F.2d 605 (D.C. Cir. 1976) ...... 11

18

*Rufo v. Inmates of Suffolk Cty. Jail*, 502 U.S. 367 (1992) ........................................ 8, 9, 12, 19

19

*SEC v. Coldicutt*, 258 F.3d 939 (9th Cir. 2001) ................................................................... 12

20

*Sharp v. Weston*, 233 F.3d 1166 (9th Cir. 2000) .................................................................... 8

21

*Stone v. City & Cty. of San Francisco*, 968 F.2d 850 (9th Cir. 1992) ...................................... 9

22

**Statutes**

23

5 U.S.C. § 552(a)(6)(C) ..................................................................................................... passim

24
25

U.S.C. § 552(a)(6)(C)(i) ........................................................................................................ 10

26

U.S.C. § 552(a)(6)(C)(iii) ...................................................................................................... 10

27
28

Plfs.' Opp. to Dfs.' Mx. for Partial Stay Inj.          No. 3:19-cv-03512-WHO

ii

**Federal Rules**

Fed. R. Civ. P. 60(b) ................................................................................................................. passim

Fed. R. Civ. P. 60(b)(1) ..................................................................................................................... 7

Fed. R. Civ. P. 60(b)(5) ................................................................................................................ 7, 9

Fed. R. Civ. P. 60(b)(6) ................................................................................................................ 7, 9

Fed. R. Civ. P. 60(c)(1) ................................................................................................................. 7, 9

Plfs.' Opp. to Dfs.' Mx. for Partial Stay Inj.                                        No. 3:19-cv-03512-WHO

iii

# I.      INTRODUCTION

Nearly two years ago, this Court issued a permanent injunction ordering Defendants U.S. Citizenship and Immigration Services (USCIS), U.S. Immigration and Customs Enforcement (ICE), and U.S. Department of Homeland Security (DHS) to cease their pattern or practice of failing to respond to Plaintiffs' and class members' requests for Alien Registration Files (A-Files) within the statutory deadlines mandated by the Freedom of Information Act (FOIA). Defendants now seek relief from their legal obligations under that injunction for Track 1 and Track 2 requests for half a year, and, as such, seek a reprieve from the mandatory directives of the FOIA statute. Defendants' motion is governed by Federal Rule of Civil Procedure 60(b) and corresponding case law, and not, as Defendants contend, 5 U.S.C. § 552(a)(6)(C). That FOIA provision provides only a defense to FOIA processing during active litigation, and this Court already rejected its applicability here. Defendants do not cite, nor are Plaintiffs aware of, any legal authority allowing a losing party to re-invoke an already rejected legal defense after issuance of a final judgment and order.

Under either standard, however, the Court should deny the motion on the merits. Defendants have not demonstrated that temporary relief from the injunction's mandate—that Defendants comply with the statute and timely process A-File requests—is warranted. Defendants' arguments regarding the practical difficulties of complying with the statute simply repeat themes that this Court previously addressed when granting the injunction, and they do not in any way justify relief from complying with the FOIA statute. First, the work to comply with the injunction is less onerous now as ICE has no backlog and USCIS has more staff and funding. Second, Defendants cannot show that the increase in A-File FOIA requests was unanticipated or unpredictable as the agency has experienced similar percentage increases in the past. Third, Defendants' mismanagement—including Defendant ICE's failure to route over 13,500 requests

Plfs.' Opp. to Dfs.' Mx. for Partial Stay Inj.                    No. 3:19-cv-03512-WHO

1

to USCIS for processing and Defendant USCIS' ongoing failure to adequately staff A-File FOIA processing—are largely responsible for Defendants' inability to maintain substantial compliance with the injunction. Most importantly, relief from this Court's injunction would harm Plaintiffs and the tens of thousands of class members who depend on timely receipt of their Track 1 or Track 2 A-File FOIA requests. This Court should not grant Defendants leave to return to their practice of disregarding the statutory timeline that is so critical for Plaintiffs' access to essential documents.

Defendants alone bear responsibility for their failure to comply with the injunction, and none of the circumstances on which they rely, individually or collectively, warrant relief from the injunction which this Court ordered nearly two years ago.

## II.      BACKGROUND

### A.      The Court's Summary Judgment Order and Permanent Injunction

As this Court has held, "[c]ompliance with FOIA's deadlines is especially important in the immigration context: it provides an essential safeguard to plaintiffs who require a copy of their A-Files to pursue immigration benefits or defend themselves or their clients against removal." ECF 89 at 5. This Court recognized that Defendants have systemically failed to comply with the FOIA deadlines imposed by Congress and, consequently, concluded that "[a] comprehensive remedy is needed and long overdue." ECF 89 at 1. The Court ordered that comprehensive remedy as part of its summary judgment order nearly two years ago, in December 2020. Specifically, the Court issued a permanent injunction, ordering Defendants to: (a) cease failing to adhere to FOIA's statutory deadlines; (b) "substantially compl[y]" with eliminating both USCIS' and ICE's backlogs within 60 days of the order, i.e., by February 17, 2021; and (c) provide the Court and class counsel with quarterly compliance reports until further order of the Court. ECF No. 89 at 24, 27; ECF No. 90 at 1-2. Defendants appealed the Court's order to the

U.S. Court of Appeals for the Ninth Circuit, *see* ECF Nos. 94 & 95, but subsequently voluntarily dismissed that appeal, *see* ECF 110. As such, the Court's December 2020 summary judgement decision and permanent injunction order constitute a final judgment in this case.

**B.      A-File FOIA Processing Since the Court's Permanent Injunction Order**

Defendants recap USCIS' and ICE's FOIA processing statistics and efforts as reported in their quarterly compliance reports, ECF 138 at 4-5, but their recap does not paint the complete picture of what the agency has been doing with respect to A-File processing and why it has been unable to achieve substantial compliance during the majority of the 1 year and nine months that the Court's order has been in effect. The following chart demonstrates the agency's reporting over the last seven compliance reports:

| Compliance Report | USCIS A-File Backlog | Total new requests | Total of new requests completed | Total of new requests *timely* completed | Timely completion rate | Currently pending A-File requests |
|---|---|---|---|---|---|---|
| First, ECF 97 (Dec. 20, 2020-Mar. 16, 2021) | 574 | 49,001 | 32,588 | 23,488 | Approx. 72% | 16,413 and 574 beyond statutory deadline |
| Second, ECF 104 (Mar. 17-June 15, 2021) | 244 | 62,844 | 46,338 | 46,004 | 99.3% | 16,444 and 244 beyond statutory deadline |
| Third, ECF 113 (June 15-Sept. 14, 2021) | 92 | 67,918 | 47,965 | 47,551 | 99.14% | 19,906 and 92 beyond statutory deadline |
| Fourth, ECF 119 (Sept. 15- Dec. 14, 2021) | 2,978 | 65,612 | 41,545 | 21,374 | 51.4% | 21,122 and 2,978 beyond statutory deadline |
| Fifth, ECF 125 (Dec. 15, 2021-Mar. 14, 2022) | 120 | 63,973 | 40,174 | 28,978 | 72.13% | 23,685 and 120 beyond statutory deadline |

Plfs.' Opp. to Dfs.' Mx. for Partial Stay Inj.                No. 3:19-cv-03512-WHO

3

| Sixth, ECF 132 (Mar. 15 – June 14, 2022) | 1,884 (excluding the 13,597 misrouted requests) | 80,000[1] | 49,551 | 29,852 | 60.25% *(excluding 13,597 misrouted requests)* | 29,035 and 3,250[2] beyond statutory deadline |
| Seventh, ECF 138 & 138-1 at ¶5 (June 15- Sept. 14, 2022) | 5,361 | 84,484 | 57,385 | 31,915 | 55.62% | 21,779 and 5,361 beyond statutory deadline |

Following Defendants' First Compliance Report, ECF 97, the Court indicated that it was pleased with Defendants progress "although [it] recogniz[ed] that additional improvement is still necessary," ECF 100. Although Plaintiffs requested that the Court order Defendants provide more detailed compliance reports, including data specifying the completion and percentage of A-File FOIA requests processed within the twenty-day statutory period, *see* ECF 98 at 5-6, the Court declined to do so, ECF 100. Following Defendants' Second Compliance Report, ECF 104, the Court congratulated Defendants on achieving a substantial compliance rate of 99.3%, ECF 107.

In its Third Compliance Report, Defendants achieved a similar compliance rate of 99.14% and informed the Court that ICE's backlog "remains at zero" as ICE and USCIS renewed their memorandum of agreement whereby USCIS processes A-File FOIA requests received by ICE and/or containing documents in which ICE has equity. ECF 114 at 3. The Court again congratulated Defendants on achieving substantial compliance and cancelled the case management conference. ECF 116.

Defendants' Fourth Compliance Report indicated that their compliance rate had dropped

---

[1]      Defendants claimed that "excluding requests recently transferred by ICE, USCIS received approximately 80,000 additional requests for A-Files." ECF-132 at 6; ECF 132-1 at 2. Unlike in prior reports, Defendants provided an approximation, not an exact number.

[2]      Defendants reported that USCIS' A-File FOIA backlog, excluding the misrouted requests, is 1,884. ECF 132 at 6; ECF 132-1 ¶5. But this number failed to account for the 1,366 misrouted requests that were still "in process," all of which are well beyond the statutory deadline. *See* ECF 132 at 5; ECF 132-1 at 4. Thus, the correct backlog number is 3,250.

Plfs.' Opp. to Dfs.' Mx. for Partial Stay Inj.                              No. 3:19-cv-03512-WHO

4

markedly to 51.45%. ECF 119 at 3. Defendants provided five reasons allegedly beyond USCIS' control for the drop: (1) lack of overtime funding; (2) end-of-year staffing shortages due to USCIS' "use or lose" leave policy; (3) "substantial increase in FOIA requests compared to the same period in prior years"; (4) competition for resources and staffing within USCIS; and (5) the FOIA department's failure to retain and hire adequate staff. ECF 119 at 4-7; ECF 119-1 at ¶9. Plaintiffs expressed concern that many, if not all, of these reasons were predictable and are the same reasons that led the Court to issue a permanent injunction. ECF 120 at 4. The Court later "express[ed] disappointment," but noted that Defendants told the Court that "the decrease reflects a temporary setback and that steps have been taken to markedly improve the compliance rate." ECF 122. Absent improvement, the Court put the Defendants on notice that "other measures . . . will need to be considered." *Id*.

Defendants subsequently reported in their Fifth Compliance Report that they increased the compliance rate to 72.13%. ECF 125 at 4. Defendants reported that USCIS was converting 25 temporary one-year positions to permanent positions and seeking to hire 24 full-time, permanent positions. *Id*. at 4-5. Defendants indicated that they had utilized overtime funding, temporarily assigned employees from USCIS' Refugee, Asylum, and International Operations Directorate (RAIOD) and from within USCIS to FOIA processing. *Id*. Plaintiffs expressed concern that these types of stop-gap measures, which USCIS has long utilized, failed to sustain substantial compliance rates in the past and necessitated the permanent injunction and that Defendants still remained significantly behind achieving substantial compliance. ECF 126 at 3-4. The Court was pleased with Defendants improvement. ECF 130.

On May 9, 2022, Defendants notified the Court that three weeks earlier, in mid-April, Defendant ICE "discovered that approximately 10,00 FOIA requests for A-Files had been improperly submitted to ICE and then inadvertently not forwarded to USCIS." ECF 131 at 2.

Plfs.' Opp. to Dfs.' Mx. for Partial Stay Inj.                    No. 3:19-cv-03512-WHO

5

Defendants did not state for how long A-File FOIA requests had been accumulating before ICE noticed the error.

In Defendants' Sixth Compliance Report, Defendants indicated that the actual number of mismanaged requests was 13,597, i.e., over 3,000 more than the initial approximation. ECF 132 at 4. Yet again, the compliance rate dropped, this time from 72.13% to 60.25%. ECF 132 at 6. At the July 5, 2022 Case Management Conference, the Court "caution[ed] the government that the current compliance rate is not adequate" and despite its good faith actions to improve compliance, "the amount of improvement is inadequate given that access to A Files, which are necessary for appropriate due process, can only be gained via FOIA request." ECF 135.

On July 25, 2022, following notice and comment, Defendant USCIS changed the form used for requesting A-Files (Form G-639), and, on information and belief, also changed the interface on its FOIA Immigration Records System (FIRST) web portal for requesting A-Files. Plaintiffs' believe that these changes discourage FOIA requestors from asking for A-Files in two ways: (1) by informing requestors that A-File requests take longer (notwithstanding that the injunction mandates that such requests take no more than 30 business days); and (2) by omitting a check off box option to request the entire contents of an A-File while including options to request certain types of documents/applications within A-Files (which is particularly problematic for pro se requestors who may not understand that requesting their entire A-File is an available option). *Compare* Exh. A (p. 2; Part 3 of the prior Form G-639, dated June 20, 2019) *with* Exh. B (p. 3; Part 1, Q2 of current Form G-639, dated July 25, 2022); *see also* Exh. C (screenshot of FOIA FIRST).[3] This development is concerning, particularly given Defendants' acknowledgement that A-Files are by far the most frequently requested USCIS record, *see* ECF 75-2 at ¶18; 71-26 at 6-

---

[3]    On information and belief, the FOIA FIRST interface previously had a check box option to request the entire A-File but subsequently eliminated that option.

7, and their repeated representations that FOIA FIRST was intended to expedite A-File

processing. *See*, *e.g.*, ECF 75 at 5 ("FIRST has numerous features that maximize efficiencies and

speed up processing"), 15-16.

The Ninth Meckley Declaration, attached to Defendants' Seventh Compliance Report,

evidences a compliance rate of just 55.62%. ECF 138-1 at ¶14. Defendants' attempt to justify this

rate and to further move to obtain relief from the permanent injunction for *all* "Track 1" and

"Track 2" requests based on alleged changed circumstances, including: (a) the number of A-File

FOIA requests received; (b) USCIS failure to predict an increase in A-File FOIA requests; (c) its

inability to thus far hire, retain, and train sufficient permanent staff to process requests in a timely

manner. ECF 138 at 7-8, 11-12. Moreover, Defendants explain that they have employed the same

types of stop-gap measures, such as overtime, detailing other DHS personnel, and extending an

external contract, ECF 138 at 7-8, none of which stabilized processing rates in the past and

similarly failed to do so in this most recent compliance period.

## III.   LEGAL STANDARD

Rule 60(b) governs when a party seeks relief from a district court's judgment, order, or

proceeding. Fed. R. Civ. P. 60(b). The Rule enumerates certain grounds for relief, including, as

relevant here, "excusable neglect," where prospective application is "no longer equitable," and a

catch-all ground for "any other reason that justifies relief." Fed. R. Civ. P. 60(b)(1), (5), (6). A

Rule 60(b)(6) motion—the catch-all ground—"is available only when Rules 60(b)(1) through

(b)(5) are inapplicable." *Kemp v. United States*, 142 S. Ct. 1856, 1861 (2022). All Rule 60(b)

motions "must be made within a reasonable time," and a motion based on "excusable neglect"

cannot be filed "more than a year after the entry of the judgment or order or the date of the

proceeding." Fed. R. Civ. P. 60(c)(1). A Rule 60(b) motion "does not affect the judgment's

finality or suspend its operation." Fed. R. Civ. P. 60(c)(2).

Plfs.' Opp. to Dfs.' Mx. for Partial Stay Inj.                                    No. 3:19-cv-03512-WHO

7

To prevail, the party seeking relief must demonstrate that "the statutory or decisional law has changed to make legal what the decree was designed to prevent." *Rufo v. Inmates of Suffolk Cty. Jail*, 502 U.S. 367, 388 (1992); *Sharp v. Weston*, 233 F.3d 1166, 1170 (9th Cir. 2000) ("A party seeking modification or dissolution of an injunction bears the burden of establishing that a significant change in facts or law warrants revision or dissolution of the injunction.") If, as here, the moving party alleges a change of factual circumstances, it must demonstrate (1) that "changed factual conditions make compliance with the decree substantially more onerous"; (2) that "a decree proves to be unworkable because of unforeseen obstacles"; or (3) that "enforcement of the decree without modification would be detrimental to the public interest." *Rufo*, 502 U.S. at 384. In addition, the moving party must demonstrate that the change in facts was significant and unanticipated. *Id*. at 385; *see also Bellvue Manor Assocs.*, 165 F.3d 1249, 1257 (9th Cir. 1999) ("[W]e hold that the *Rufo* standard applies to all Rule 60(b)(5) petitions brought on equitable grounds."); *see also Horne v. Flores*, 557 U.S. 433, 447-50 (2009) (applying *Rufo* to enforcement of injunction issued after trial and affirming a "flexible approach" to Rule 60(b)(5) motions where the injunction binds state and local officials due to heightened federalism concerns); *Flores v. Rosen*, 984 F.3d 720, 740-44 (9th Cir. 2020) (applying *Rufo* to government's Rule 60(b)(5) motion seeking termination of class action settlement agreement regarding the immigration detention of accompanied children).

**IV.     ARGUMENT**

**A.     Rule 60(b), Not 5 U.S.C. § 552(a)(6)(C), Governs Defendants' Motion**

As set forth above, Rule 60(b) governs because Defendants are seeking relief in the form of a partial stay of 6 months from this Court's permanent injunction order and judgment, ECF 89, 27; ECF 90. That this stay request is partial and temporary in nature does not alter the indisputable fact that Defendants are seeking this Court's permission to relieve them of the legal

Plfs.' Opp. to Dfs.' Mx. for Partial Stay Inj.                                    No. 3:19-cv-03512-WHO

8

obligations to which they are bound.[4] Defendants title their motion as a partial stay of the injunction, but their stay request is nothing more than a request for relief from the permanent injunction. As such, the plain language of Rule 60(b) governs Defendants' motion. There is no argument that "the statutory or decisional law has changed to make legal what the decree was designed to prevent." *Rufo*, 502 U.S. at 388. To the contrary, the law that Defendants continue to violate remains clear. Instead, Defendants recycle arguments regarding the difficulties of practical implementation, notwithstanding the fact that they previously demonstrated to the Court their ability to achieve substantial compliance, timely adjudicating more than 99% of class members' FOIA requests. *See* ECF 104 at 3; ECF 114 at 3. Instead, Plaintiffs submit that the Defendants' motion is predicated on alleged "excusable neglect," and as such, the Court should summarily deny the motion as untimely because it comes "more than a year," indeed almost two years, after the final order and judgement. Fed. R. Civ. P. 60(c)(1). Should the Court construe the motion based on Rule 60(b)(5) or (6), the Court should deny the motion on the merits as discussed below.

The Court should reject Defendants' effort to have this Court apply the standard set forth in the FOIA statute at 5 U.S.C. § 552(a)(6)(C).[5] As an initial matter, Plaintiffs preserve the

_____

[4]    Defendants presumably seek to avoid a finding of civil contempt which a district court is entitled to find where a party, as here, has not substantially complied with the court's order. *See generally Gen. Signal Corp. v. Donallco, Inc.*, 787 F.2d 1376 (9th Cir. 1986); *Stone v. City & Cty. of San Francisco*, 968 F.2d 850 (9th Cir. 1992); *Kelly v. Wengler*, 822 F.3d 1085 (9th Cir. 2016).

[5]    That statute provides:

(i) *Any person* making *a request* to any agency for records under paragraph (1), (2), or (3) of this subsection shall be deemed to have exhausted his administrative remedies with respect to *such request* if the agency fails to comply with the applicable time limit provisions of this paragraph. If the Government can show exceptional circumstances exist *and* that the agency is exercising due diligence in responding to *the request*, the court may retain jurisdiction and allow the agency additional time to complete its review of the records. Upon any determination by

_____

Plfs.' Opp. to Dfs.' Mx. for Partial Stay Inj.                              No. 3:19-cv-03512-WHO

9

argument that the statute's references to "any person," "a person," "a request," "the request," and "such request" indicate that Congress intended the provision to apply to individual requests, not pattern or practice claims in which a class has been certified. 5 U.S.C. § 552(a)(6)(C)(i), (iii). However, Plaintiffs recognize that this Court's summary judgment decision "assume[s] that the 'exceptional circumstances' and 'due diligence' defenses are applicable to the pattern or practice claims in this case," while also noting that Ninth Circuit case law on this point is unclear. ECF 89 at 15 & n.10. That said, the Court's prior assumption does not mean Defendants can invoke the defense indefinitely and certainly not after issuance of a final judgment and permanent injunction order.

This defense—which requires a showing of both exceptional circumstances and due diligence—is invoked during *active* litigation. Indeed, this Court already considered, and rejected, Defendants arguments that the defense applies. *See* ECF 89 at 15-16 (stating that "a reasonable fact finder could only conclude that defendants' increasing workload was predictable" and "the record [does not] demonstrate reasonable progress in reducing the backlog of pending requests"). Defendants cite to no case that supports the proposition it asks the Court to accept here: that §

---

an agency to comply with *a request* for records, the records shall be made promptly available *to such person making such request*. Any notification of denial of any request for records under this subsection shall set forth the names and titles or positions of each person responsible for the denial of *such request*.

(ii) For purposes of this subparagraph, the term "exceptional circumstances" does not include a delay that results from a predictable agency workload of requests under this section, unless the agency demonstrates reasonable progress in reducing its backlog of pending requests.

(iii) Refusal by *a person* to reasonably modify the scope of *a request* or arrange an alternative time frame for processing a request (or a modified request) under clause (ii) after being given an opportunity to do so by the agency to whom the person made *the request* shall be considered as a factor in determining whether exceptional circumstances exist for purposes of this subparagraph.

5 U.S.C. § 552(a)(6)(C) (emphasis added).

Plfs.' Opp. to Dfs.' Mx. for Partial Stay Inj.                          No. 3:19-cv-03512-WHO

552(a)(6)(C) applies to an *injunction* post-judgment. All the cases on which Defendants rely, including *Open America v. Watergate Special Prosecution Force*, 547 F.2d 605 (D.C. Cir. 1976), involve invoking the defense against enforcement of the schedule of production as to specific documents prior to final judgment. *See* ECF 138 at 9-11 (citing cases). Simply stated, Defendants cannot now invoke an already-rejected litigation defense *after* the litigation has concluded, and a permanent and a final judgment issued. *Cf. Hernandez v. Taqueria El Grullense*, No. 12-cv-03257-WHO, 2014 WL 2611214 (N.D. Cal. June 11, 2014) (denying motion to reconsider attorney fee order without addressing movant's already-addressed arguments, noting "[i]t is not necessary to repeat what the Order already says"). This would be especially inappropriate where, as here, Rule 60(b) specifically addresses the relief that Defendants now seek.

## B.   Under Either Rule 60(b) or 5 U.S.C. § 552(a)(6)(C), Relief from the Injunction Is Unwarranted

Defendants fail to demonstrate a change in facts warranting relief from the injunction under either Rule 60(b) or—even if it were applicable—5 U.S.C. § 552(a)(6)(C). Defendants' sole claim is that they have been unable to keep up with the increase in FOIA requests over the last six months and need relief from the injunction to allow them to catch up. In fact, however, the increase in FOIA filings during the past six months is neither out of the ordinary nor unpredictable, and Defendants' inability to stay on top of incoming FOIA requests stems as much from their own mismanagement as from the increase. Notably, after demonstrating substantial compliance for the first six months, Defendants compliance rates dramatically declined—from over 99% in September of 2021 to 51% and 72% over the next two quarterly reports—*even though the total number of new FOIA requests declined* from just under 68,000 to just under 64,000, making clear that Defendants' failure to comply with the injunction is not a function of unforeseeable increases in A-File FOIA requests. *Compare* ECF 113 at 3 *with* ECF 119 at 3 and ECF 125 at 4.

Plfs.' Opp. to Dfs.' Mx. for Partial Stay Inj.                          No. 3:19-cv-03512-WHO

11

Moreover, relieving Defendants of their obligation to comply with the injunction would be detrimental to the public, particularly the tens of thousands of class members who are dependent on receipt of their A-Files for life-changing immigration benefits. Indeed, Defendants repeated failure to achieve substantial compliance for more than half the time the injunction has been in place is reason alone to deny the motion. *Cf. Bd. of Ed. of Oklahoma City Public Schools v. Dowell*, 498 U.S. 237, 249 (1991) ("[I]n deciding whether to modify or dissolve a desegregation decree, a school board's compliance with previous court orders is obviously relevant."); *SEC v. Coldicutt*, 258 F.3d 939, 942-43 (9th Cir. 2001) (examining compliance record in determining whether defendant might resume violations if injunction was terminated).

Accordingly, whether the Court applies the Rule 60(b) standard or 5 U.S.C. § 552(a)(6)(C), the Court should deny the motion on the merits.

### 1. Compliance With the Injunction Is Less Onerous Now Than When This Court First Ordered It in December 2020

The recent increase in A-File FOIA requests has not made compliance with the injunction more onerous and is not, as Defendants claim, ECF 138, an exceptional circumstance. *See Flores*, 984 F.3d at 743 ("The government has failed to demonstrate that the recent increase in family migration has made complying with the Agreement's release mandate for accompanied minors 'substantially more onerous,' 'unworkable,' or 'detrimental to the public interest.'") (quoting *Rufo*, 502 U.S. at 384).

To the contrary, compliance was more difficult for Defendants when the injunction first issued, as this Court ordered both USCIS and ICE to clear their years-old backlog within 60 days, while at the same time adhering to statutory deadlines for all newly filed FOIA requests. ECF 89 at 27; ECF 90 at 1. For USCIS, this backlog was almost 22,000, while for ICE it was almost 20,000. ECF 138 at 15. Moreover, USCIS was still in the early stages of its roll-out of FIRST, *see* ECF 75 at 17 (indicating that only 50 percent of FOIA requests were being submitted through

Plfs.' Opp. to Dfs.' Mx. for Partial Stay Inj.                    No. 3:19-cv-03512-WHO

12

FIRST); USCIS and ICE had only just begun operating under the Memorandum of Agreement which was intended to streamline A-File FOIA processing., *id*. at 5-6.; and USCIS had not begun the extensive hiring process it has since undertaken. *See*, *e.g.*, ECF 125-1 ¶10 (attesting that, as of March 2022, USCIS had converted 25 one-year positions to permanent positions and was authorized to hire 24 full-time permanent positions); ECF 132-1 ¶¶16-17 (attesting that, as of June 2022, the 25 positions were filled and 24 new full-term positions "have been announced"). Notwithstanding these major obstacles, Defendants were able to substantially comply with the injunction in the first six months it was in effect. Notably, Defendants achieved a compliance rate of 99.14% in the third quarter, during which period they received 67,918 requests. ECF 113 at 3.

In contrast, the work to comply with the injunction is less onerous now. Most significantly, ICE has no backlog, and USCIS has more funding and more resources at its disposal. Indeed, for the 25 positions that were converted from one-year to permanent positions, USCIS reported that all 25 staff started by the end of June 2022. ECF 132-1 ¶16. Despite reporting in March 2022 that it had received authorization for 24 additional FOIA staff positions, ECF 125-1 ¶10(e), USCIS only hired for 13 of the positions in the following six months, ECF 138-1 ¶23. That USCIS has not prioritized completing the hiring of 11 additional full-time FOIA processers does not excuse its obligation to comply with the injunction, particularly given the availability of those additional, and significant, staffing resources.

The six-month increase in FOIA filings to which Defendants attach so much significance, ECF 138 at 12-14, has not made compliance with the injunction more onerous than it was in December 2020, when USCIS and ICE had to address *both* new filings *and* a huge backlog of pending requests. To the contrary, USCIS' own statistics demonstrate that it has the current capacity to keep up with the new filings, even without the full on-boarding of staff it has hired and is in the process of hiring. ECF 138-1 ¶5 (indicating that, in the past quarter, USCIS

Plfs.' Opp. to Dfs.' Mx. for Partial Stay Inj.                    No. 3:19-cv-03512-WHO

13

processed almost 4,000 more A-File FOIA requests than it received in the same period). This

alone indicates that compliance is not "substantially more onerous" than when first ordered.

**2.    The Increase in A-File FOIA Requests in the Past Six-Months Was Both Predictable and Consistent with Past Increases**

Contrary to Defendants' claim, the recent uptick in A-File FOIA requests was entirely

foreseeable and is consistent with prior annual increases. As shown below, the number of A-File

FOIA requests has grown every fiscal year—more than quadrupling over the past 13 years—

except for fiscal year 2020, during the height of the Coronavirus pandemic (COVID-19).

**Annual Increases in A-File FOIA Requests**

| Year | New A-File Receipts | Percentage Change | Source |
|------|---------------------|-------------------|--------|
| FY 2009 | 71,429 | -- | FY2009 DHS FOIA Report at 5[6], Exh. D |
| FY 2010 | 91,503 | +28.10% | FY2010 DHS FOIA Report at 3, Exh. E |
| FY 2011 | 115,545 | +26.27% | FY2011 DHS FOIA Report at 3; Exh. F |
| FY 2012 | 117,787 | +1.94% | FY2012 DHS FOIA Report at 19, 20; ECF 71-14 |
| FY 2013 | 132,797 | +12.74% | FY2013 DHS FOIA Report at 18; ECF 71-15 |
| FY 2014 | 143,794 | +8.28% | FY2014 DHS FOIA Report at 19; ECF 71-16 |
| FY 2015 | 162,986 | +13.35% | FY2015 DHS FOIA Report at 20; ECF 71-17 |
| FY 2016 | 166,732 | +2.30% | FY2016 DHS FOIA Report at 19, 20; ECF 71-18 |
| FY 2017 | 190,941 | +14.52% | FY2017 DHS FOIA Report at 19; ECF 71-19 |
| FY 2018 | 191,804 | +0.45% | FY2018 DHS FOIA Report at 21; ECF 71-20 |
| FY 2019 | 200,174 | +4.36% | FY2019 DHS FOIA Report at 14, 27; ECF 71-21 |
| FY 2020 | 195,930[7] | -2.21% | FY2020 DHS FOIA Report at 15, Exh. G |
| FY 2021 | 235,210 | +20.05% | FY2021 DHS FOIA Report at 15, Exh. H |
| FY 2022 | 294,012 | +25.00% | ECF 138-1 ¶10[8] |

[6]    References to "DHS FOIA Reports" are to Freedom of Information Act Reports to the Attorney General of the United States, which are available by fiscal year at https://www.dhs.gov/foia-annual-reports.

[7]    Defendants previously reported the number of requests received as 195,930 in their Cross-Motion for Summary Judgment but acknowledged at the time that this figure was not yet finalized. ECF 75 at 13 n.2.

[8]    With only two weeks remaining in the fiscal year at the time they filed their motion, Defendants nevertheless assert that the percentage increase in FOIA filings in FY 2022 could be as high as 30%. ECF 138-1 at ¶10. Defendants provide no factual support for this assertion. *Id*. Instead, Defendants' Fourth through Seventh Compliance Reports—which cover a year period which starts and ends only two weeks earlier than Defendants' fiscal year—support an estimate

Plfs.' Opp. to Dfs.' Mx. for Partial Stay Inj.                    No. 3:19-cv-03512-WHO

14

1

2  As the Office of Government Information Services (OGIS) highlighted, USCIS' FOIA receipts

3  climbed by 133 percent during the seven-year period between fiscal years 2009 and 2016. ECF

4  71-7 at 5. Since then, they have continued to climb significantly, a total of 311 percent during the

5  entire 13-year period. "It is not clear what is driving the increase in requests that USCIS receives.

6  According to USCIS FOIA leadership the agency has not been able to find a correlation between

7  the increase in FOIA requests and applications for immigration and citizenship benefits."

8  ECF 71-7 at 5.

9

10         Notably, however, this rise in requests has not followed a steady pattern; instead, the

11  annual percentage changes have fluctuated wildly from year to year, from a low of .45 percent

12  between fiscal years 2017 and 2018 to a high of 28.10 percent between fiscal years 2009 and

13  2010. *See supra*, p.14. Because of this wide fluctuation year to year, any reliable prediction of

14  future workloads must be based upon review of the total number of requests received over a span

15  of years and must contemplate large fluctuations from year to year. Defendants' view starts only

16  in fiscal year 2012, thus excluding the two years in which there were the greatest percentage

17  increases. *See* ECF 138-1 ¶8 (averaging annual increases between fiscal year 2012 to 2017 and

18  relegating to a footnote mention of fiscal years 2010 and 2011).

19

20         Taking a long-term view negates Defendants' claim that the recent uptick in A-File

21  receipts is "unparalleled," ECF 138 at 12; to the contrary, an equivalent or higher increase

22  occurred twice before, in fiscal years 2010 and 2011. *See supra*, p.14. Moreover, as Defendants

23  themselves acknowledge, it was predictable that the number of FOIA requests would spike

24  following the downturn experienced due to COVID-19, *see* ECF 138-1 ¶10 ("USCIS anticipated

25  receipts would increase as the country began to rebound from the pandemic."), and Defendants

26

27

28  of a 25% increase, as the total requests filed during these four reporting periods was 294,069. *See*
ECF 119 at 3 (65,612); ECF 125 at 2 (63,973); ECF 132 at 6 (80,000); ECF 138-1 at ¶5 (84,484).

Plfs.' Opp. to Dfs.' Mx. for Partial Stay Inj.                                No. 3:19-cv-03512-WHO

should have predicted that this increase would be higher in FY 2022 given that so few people had filed requests in FY 2020. *Accord Agostini v. Felton*, 521 U.S. 203, 215-16 (1997) (rejecting a claim of changed factual circumstances based on the "exorbitant costs of complying," because both parties were "aware that additional costs would be incurred" due to the court's judgment). With the exception of FY 2020, Defendants experienced increases in numbers of A-File FOIA requests each year, and significant double digit percentage increases in multiple years. Further, as noted, the compliance rates began to fall not because of some unexpected dramatic increase in FOIA requests. To the contrary, they began to fall at the same time the number of FOIA requests began to fall. *Compare* ECF 113 at 3 (showing 67,918 requests received and a compliance rate of 99.14%) *with* ECF 119 at 3 (showing 65,612 requests received and a compliance rate of 51.14%) and ECF 125 at 4 (showing 63,973 requests received and a compliance rate of 72.13%).

In short, as this Court previously found, "a reasonable fact finder could only conclude that defendants' increasing workload was predictable." ECF 89 at 15.

### 3. Defendants' Mismanagement and Delay Have Impeded Compliance

Agency management has in large part caused the increased backlog. Most significantly, ICE's mismanagement of approximately 13,597 A-File FOIA requests earlier this fiscal year significantly impacted USCIS' ability to stay current. ECF 132-1 ¶5. Defendants blamed this mistake on "staffing shortfalls, significant personnel turnover, and a surge of new [non-A-File] FOIA requests submitted to ICE." ECF 132 at 3-4. As Defendants explained in their Sixth Compliance Report, as a result of this mismanagement, USCIS had to "first review each request to determine whether it was a duplicate of a request that USCIS had previously received in the same timeframe," which according to Defendants was "time-consuming." ECF 132 at 4; ECF 132-1 ¶10. Following this, the non-duplicate files—approximately 5,918—had to be added to USCIS' current workload. ECF 132 at 5; ECF 132-1 ¶¶10-12. ICE's mismanagement of this

significant number of files "stretched USCIS's limited resources and reduced the time available to complete other FOIA cases in line for processing within the statutory timeframe." ECF 138-1 ¶10 n.3. These files necessarily contributed to the increase in the current backlog.

Defendants' failure to prioritize and secure adequate staffing for A-File FOIAs has also contributed to their failure to comply with the injunction. Following the Court's order, during the first compliance period, Defendants reported engaging approximately 116 staff from DHS components and 20 non-FOIA employees from USCIS, instructed all FOIA staff to focus on A-File processing, and approved approximately 15,105 hours of overtime. ECF 97 at 4; ECF 97-1 ¶¶15-19. Since then, Defendants have reported a fluctuating pattern of full-time staff dedicated to A-File FOIA processing. The following chart illustrates USCIS' full-time staffing since the injunction issued.

**Full-Time FOIA Processing Staff**

| Date (Compliance Period) | Permanent Positions (Authorized in Jan. 2021) | 1-Year MOA Positions (Made Permanent in 2022) | Additional New Permanent Positions | Source |
|---|---|---|---|---|
| Dec. 20, 2020-Mar. 16, 2021 (First) | 8 of 22 filled, 14 vacant | 6 of 25 filled, 19 offers made | | ECF 97-1 ¶15(b), (c) |
| Mar. 17-June 15, 2021 (Second) | 17 of 22 filled, 5 vacant | 19 of 25 filled, 6 offers made | | ECF 104-1 ¶14(a), (b) |
| June 15-Sept. 14, 2021 (Third) | 21 of 22 filled, 1 vacant | 21 of 25 filled, 3 offers made, 1 vacant | | ECF 113-1 ¶9(a), (b) |
| Sept. 15- Dec. 14, 2021 (Fourth)[9] | 11 of 22 filled, 11 vacant | 15 of 25 filled, 4 offers made, 6 vacant | | ECF 119-1 ¶9(e) |
| Dec. 15, 2021-Mar. 14, 2022 (Fifth)[10] | Not reported | Not reporting number of positions filled/vacant; only reporting that all 25 | 24 additional permanent full-time positions "authoriz[ed]" | ECF 125-1 ¶10(c), (e) |

---

[9]     During this compliance period, 2 ICE employees and 2 DHS Privacy Office contractors also were detailed to FOIA processing. ECF 119-1 ¶10(b).

[10]     During this compliance period, 18 USCIS employees were detailed to FOIA processing. ECF 123-1 ¶10(b).

Plfs.' Opp. to Dfs.' Mx. for Partial Stay Inj.                    No. 3:19-cv-03512-WHO

17

| | | converted to permanent positions | | |
|---|---|---|---|---|
| Mar. 15 – June 14, 2022 (Sixth) | Not reported | All 25 set to start by end of June 2022 | Positions "announced" and "hiring process . . . started" | ECF 132-1 ¶¶16, 17 |
| June 15-Sept. 14, 2022 (Seventh)[11] | Not reported | "All hiring . . . has now been completed." | 13 of 24 "completed the hiring process"; Supervisory position created but not yet filled | ECF 138-1 ¶¶23, 26 |

As illustrated here, Defendants waited a full year after the injunction both to convert the short-term positions under the Memorandum of Agreement between USCIS and ICE to full-time positions and to approve 24 additional full-time positions. ECF 125-1 ¶10(c), (e). At the same time, Defendants also stopped reporting the number of staff filling the 22 permanent positions in USCIS' FOIA office authorized to be filled in January 2021. ECF 125-1; ECF 132-1; ECF 138-1. Defendants attest that in the last three months, seven FOIA staff members "retired, accepted another position, or left the FOIA program" and that 31 "new staffers have entered on duty" and 10 will start "shortly" after the end of the reporting period. ECF 138-1 ¶¶23-24.[12] It is unclear if these staff departed from the positions authorized to be filled in 2021. However, in the 31 alleged new staffers, USCIS appears to count some of the 25 staff (between 10-14 people) who were previously on one-year contracts which were later converted to permanent positions. Defendants do not explain why these existing FOIA processers are treated as "newly-hired" and must "undergo substantial training before they can operate at full capacity." ECF 138 at 17 (citing ECF 138-1 ¶26).

Furthermore, Defendants report a budget enhancement set to begin on October 1, 2022,

---

[11]    During this compliance period, 6 RAIO and 2 DHS contract staff were detailed to FOIA processing. ECF 138-1 ¶19.

[12]    It is not clear from the report which positions the 10 staff who will start "shortly" will fill.

Plfs.' Opp. to Dfs.' Mx. for Partial Stay Inj.                          No. 3:19-cv-03512-WHO

18

ECF 138 at 7, but offer no explanation as to why it took Defendant USCIS almost two years since the injunction to approve this budget item. *See* ECF 138-1 ¶31 (noting that USCIS FOIA office "[r]ecently" requested additional funding which the USCIS Director "approved" on September 14, 2022, a day before Defendants filed their motion). Given Defendants' poor track record when operating with the injunction, without the Court's injunction in place, it is likely USCIS processing times will slip further and 2023 enhancements will be devoted to eradicating backlogs and attempting to regain what limited successes have been achieved under the injunction. Where Defendants' own actions have made compliance with an injunction more difficult, relief from the injunction is not warranted.[13]

### 4.  Relief from the Injunction Would Harm Plaintiffs and Class Members

Last, but not least, this Court's injunction provides relief to Plaintiffs and tens of thousands of class members who depend on receipt of their Track 1 or Track 2 A-File FOIA requests. As the Supreme Court reiterated in *Horne*, "Rule 60(b)(5) . . . provides a means by which a party can ask a court to modify or vacate a judgment or order if 'a significant change either in factual conditions or in law' renders continued enforcement 'detrimental to the public interest.'" 557 U.S. at 447 (quoting *Rufo,* 502 U.S. at 384). As such, granting the motion would be unwarranted even if there had been a dramatic increase in FOIA requests that was not foreseeable—which Plaintiffs have demonstrated did not occur, *see supra* § IV.B.2. Continued enforcement is both necessary to protect the public interest, namely the interests of persons requiring copies of their A-files in order to pursue or maintain lawful immigration status in this

---

[13]     Similarly, even were 5 U.S.C. § 552(a)(6)(C) applicable, Defendants cannot show either reasonable efforts or due diligence towards reducing the backlog when the increase in the backlog is a result of their own mismanagement. *See, e.g.*, *Munger, Tolles & Olson LLP v. U.S. Dep't of Army*, 58 F. Supp. 3d 1050, 1056 (C.D. Cal. 2014) (refusing to "excuse the Army's excessive delay simply because it has not created efficient mechanisms for referring FOIA requests to the appropriate entity").

country.

Importantly, for those who are not in removal proceedings (and for those who are, but fail to attach proof of those proceedings to their FOIA requests for any variety of reasons), the results of A-File FOIA requests in Track 1 or Track 2 are critical to: (a) assessing and demonstrating eligibility for immigration benefits, such as immigration applications to gain, maintain, or change legal status or to seek protection from persecution or torture; (b) timely responding to immigration agency requests for further evidence or a notice of intent to deny an immigration benefit; (c) assessing and demonstrating eligibility for U.S. citizenship; and/or (d) facilitating travel. *See* ECF 70 at 3-4.

In sum, having already recognized the importance of A-Files and the function they serve in the immigration context, *see* ECF 89 at 1, 5-6, the Court should not relieve Defendants of their obligation to comply with the injunction, which would harm Plaintiffs and class members by depriving them of timely access to the records they need for life-changing immigration benefits.

Plfs.' Opp. to Dfs.' Mx. for Partial Stay Inj.                    No. 3:19-cv-03512-WHO

20

1

## V.     CONCLUSION

2

For the foregoing reasons, the Court should deny Defendants' motion for partial relief

3

from the permanent injunction and award Plaintiffs' counsel attorneys' fees for time spent

4

responding to the motion.

5

6

Respectfully submitted,

7

*s/ Trina Realmuto*

8

| | |
|---|---|
| Trina Realmuto (CA SBN 201088) | Emily Creighton (DC 1009922)* |
| Mary Kenney* | American Immigration Council |
| National Immigration Litigation Alliance | 1331 G Street NW, Suite 200 |
| 10 Griggs Terrace | Washington, DC 20005 |
| Brookline, MA 02446 | (202) 507-7540 |
| (617) 819-4447 | (202) 742-5619 (fax) |
| trina@immigrationlitigation.org | cvalenzuela@immcouncil.org |
| mary@immigrationlitigation.org | ecreighton@immcouncil.org |
| | |
| Matt Adams (WSBA No. 28287)* | Stacy Tolchin (CA SBN 217431) |
| Northwest Immigrant Rights Project | Law Offices of Stacy Tolchin |
| 615 Second Avenue, Suite 400 | 634 S. Spring St., Suite 500A |
| Seattle, WA 98104 | Los Angeles, CA 90014 |
| (206) 957-8611 | (213) 622-7450 |
| (206) 587-4025 (fax) | (213) 622-7233 (fax) |
| matt@nwirp.org | Stacy@Tolchinimmigration.com |

9

10

11

12

13

14

15

16

17

*Counsel for Plaintiffs and Class Members*

18

19

* Admitted *pro hac vice*

20

Dated: September 29, 2022

21

22

23

24

25

26

27

28