UNITED STATES DISTRICT COURT FOR THE

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| Zachary NIGHTINGALE; Courtney McDERMED; Cheryl DAVID; Pao LOPA; Maribel CARANDANG, | **No. 3:19-cv-03512-WHO** |
| Plaintiffs, | **JOINT STATUS REPORT** |
| v. | |
| U.S. CITIZENSHIP AND IMMIGRATION SERVICES; U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT; U.S. DEPARTMENT OF HOMELAND SECURITY, | |
| Defendants. | |

Plaintiffs and Defendants respectfully submit the following joint status report regarding the injunction issued against Defendants in the above-captioned matter.  This case involves a certified class action under the Freedom of Information Act ("FOIA") in which this Court held that U.S. Citizenship and Immigration Services ("USCIS"), U.S. Immigration and Customs Enforcement ("ICE"), and U.S. Department of Homeland Security ("DHS") engaged in an unlawful pattern or practice of failing to make timely determinations on FOIA requests for "A-Files."  On December 17, 2020, following briefing and oral argument, this Court entered summary judgment in favor of Plaintiffs on their FOIA pattern or practice claims and issued a nationwide injunction against Defendants. *See* ECF Nos. 89 at 27 & 90 at 1-2.  The injunction set forth the following:

a. <u>Adhere to FOIA Timing Requirements</u>: Defendants are permanently enjoined from further failing to adhere to the statutory deadlines for adjudicating A-File FOIA requests, as set forth in 5 U.S.C.§§ 552(a)(6)(A) and (B);

b. <u>Eliminate the Backlogs</u>: **Within sixty (60) days of this order,** defendants shall make determinations on all A-File FOIA requests in USCIS's and ICE's backlogs; [and]

c. <u>Quarterly Compliance Reports</u>: Until further order, defendants shall provide this court and class counsel with quarterly reports containing information regarding the number and percentage of A-File FOIA requests that were filed and timely completed as well as the number and percentage of cases that remain pending beyond the twenty or thirty-day statutory periods, respectively 5 U.S.C. §§ 552(a)(6)(A) and (B). The first compliance report is due **within ninety (90) days** of this order.

ECF No. 89 at 27 (emphasis in the original); ECF No. 90 at 1-2 (emphasis in the original).

Since the injunction issued in December 2020, Defendants have filed sixteen compliance reports, the parties have filed thirteen joint status reports (this filing being the thirteenth), and the Court has held eleven case management conferences, most recently on December 3, 2024.

### **Plaintiffs' Position**

As expressed in the last joint status report, Plaintiffs are concerned that Defendants continue to rely on overtime and additional contract work to comply with the permanent injunction in this case, *see*, *e.g.*, ECF No. 173-1 at ¶¶ 14, 15. Plaintiffs also are extremely concerned that the current administration's immigration enforcement actions, both those that have been implemented to date as well as future enforcement actions, will increase the already critical importance of access to A-Files to noncitizens and their counsel who are members of the certified class.[1] Furthermore, the newly authorized Department of Government Efficiency and/or similar efforts of the current administration to cut government expenses likely will not prioritize the resources for FOIA processing and compliance.[2]

However, Plaintiffs remain committed to discussions with Defendants to reduce the expenditure of resources by the agency and this Court with respect to the permanent injunction. To that end, Plaintiffs' position is as follows:

---

[1]    *See* Executive Orders of Donald J. Trump, Securing Our Borders (Jan. 20, 2025); Protecting the Meaning and Value of American Citizenship (Jan. 20, 2025); Realigning the United States Refugee Admissions Program (Jan. 20, 2025); Clarifying the Military's Role in Protecting the Territorial Integrity of the United States (Jan. 20, 2025); Declaring a National Emergency at the Southern Border of the United States (Jan. 20, 2025); Protecting the American People Against Invasion (Jan. 20, 2025); Guaranteeing the States Protection Against Invasion (Jan. 20, 2025); Protecting the United States from Foreign Terrorists and Other National Security and Public Safety Threats (Jan. 20, 2025); Designating Cartels and Other Organizations as Foreign Terrorist Organizations and Specially Designated Global Terrorists (Jan. 20, 2025); and Restoring the Death Penalty and Protecting Public Safety (Jan. 20, 2025), *available at* https://www.whitehouse.gov/presidential-actions; *see also* U.S. Dep't of Homeland Sec., DHS Reinstates Migrant Protection Protocols, Allowing Officials to Return Applicants to Neighboring Countries (Jan. 21, 2025); U.S. Dep't of Homeland Sec., Statement from a DHS Spokesperson on Directives Expanding Law Enforcement and Ending the Abuse of Humanitarian Parole (Jan. 21, 2025); U.S. Immigration and Customs Enforcement Directive 11072.3, Civil Immigration Enforcement Actions In or Near Courthouses (Jan. 21, 2025); and Memorandum from Acting Deputy Attorney General to All Department of Justice Employees, Interim Policy Changes Regarding Charging, Sentencing, and Immigration Enforcement (Jan. 21, 2025), *available at* https://www.dhs.gov/news-releases/press-releases; U.S. Dep't of Homeland Sec., Designating Aliens for Expedited Removal (Jan. 21, 2025), *available at* https://public-inspection.federalregister.gov/2025-01720.pdf.

[2]    Establishing and Implementing the President's "Department of Government Efficiency (Jan. 20, 2025), *available at* https://www.whitehouse.gov/presidential-actions.

- **Joint Status Reports and Status Conferences**: Plaintiffs are willing to waive all future status conferences, which would also alleviate the need for the parties to prepare and submit a joint case management statement in advance of each conference. Plaintiffs are willing to forego these requirements based on the last two years of Defendants' substantial compliance. Plaintiffs ask the Court to reject Defendants' proposal to preclude the parties from requesting a status conference to raise compliance-related disputes with the Court unless compliance falls below 85% for two consecutive reporting periods. The proposal would effectively deprive Plaintiffs of the opportunity to raise compliance issues with the Court for a year (two compliance reporting periods). Furthermore, Plaintiffs strongly disagree that 85% is the appropriate standard for substantial compliance. Rather, Plaintiffs believe that either party should have the ability to request a status conference with the Court to raise any disputes or concerns after the parties have made a good faith effort to resolve them.

- **Compliance Reporting:** Plaintiffs contend that the Court should continue to have access to reports to monitor compliance with the permanent injunction. Plaintiffs believe that compliance reports in the form of the previously filed declarations should continue to be filed with the Court biannually for at least 5 years, at which point Plaintiffs will agree to meet and confer to discuss whether and, if so, how, compliance reporting should continue. Plaintiffs also ask the Court to reject Defendants' proposal to provide less compliance information and to provide it directly to Plaintiffs' counsel, rather than the Court, and placing the onus of distribution on Plaintiffs' counsel. As an initial matter, a change of data and format of compliance reports would make it harder for Plaintiffs and this Court to compare past compliance rates with future compliance rates should there be a need for Court intervention, for example, if compliance rates dip in the future due to lack of prioritization, staffing, funding, etc. Indeed, reporting *only* to Plaintiffs' counsel also would prevent the Court from monitoring compliance. It would also eliminate broader public access to the information that is available when compliance reports appear on, and are accessible via, the Court's docketing system, as is consistent with FOIA's purpose of promoting government transparency. Finally,

maintaining the status quo in terms of compliance reporting via a sworn declaration requires only an additional marginal effort, if any, to providing compliance data directly to Plaintiffs' counsel; in both situations, Defendants must generate compliance rate data. However, a sworn declaration provides the Court, Plaintiffs' counsel, class members, and the public with the added assurance that the accuracy of the data produced has been verified under penalty of perjury pursuant to 28 U.S.C. § 1746.

Finally, Plaintiffs strongly oppose any dissolution of the permanent injunction given that the critical role the injunction plays in ensuring timely access to A-Files for noncitizens and their counsel is even more critical under the current administration. Accordingly, contrary to Defendants' position, Plaintiffs submit that the "potential dissolution of the injunction and full resolution of the litigation" is not appropriate, and the Court should reject Defendants' request for an order compelling the parties to meet and confer in one year.

### Defendants' Position

As previously noted, the record for at least the last two years demonstrates Defendants' consistent and ongoing commitment to satisfying their FOIA obligations. *See* ECF No. 168 at 4. Specifically, in each of the eight quarterly compliance reports submitted since December 2022, USCIS has maintained an A-File FOIA backlog of between two and 33 requests at the end of a given reporting period.[3] In that same two-year period, USCIS has maintained a timely completion rate of between 88.51% and 99.81%, with the majority of rates in that period falling

---

[3] *See* Ninth Compliance Report ¶ 5, ECF No. 151 (backlog of 3 requests); Tenth Compliance Report ¶ 5, ECF No. 155 (backlog of 6 requests); Eleventh Compliance Report ¶ 5, ECF No. 156 (backlog of 2 requests); Twelfth Compliance Report ¶ 4, ECF No. 163 (backlog of 10 requests); Thirteenth Compliance Report ¶ 4, ECF No 167 (backlog of 11 requests); Fourteenth Compliance Report ¶ 4, ECF No. 171 (backlog of 14 requests); Fifteenth Compliance Report ¶ 4, ECF No. 173 (backlog of 22 requests); Sixteenth Compliance Report ¶ 4, ECF No. 178 (backlog of 33 requests).

above 99%.[4]  Moreover, USCIS has continued to consistently provide requesters with the greatest need for A-Files—*i.e.* those in Track 3—responses well within the statutory timelines.[5]

Given this record of substantial compliance with the Court's injunction, and with the Court's encouragement, the parties have exchanged offers and engaged in discussions regarding a possible resolution of this matter.  Defendants believe that an appropriate settlement agreement would fully resolve the litigation through dissolution of the injunction and dismissal of the action, in exchange for Defendants providing information to Plaintiffs to enable them to monitor compliance for an agreed-upon period of time.  Defendants acknowledge, however, that in the December 3, 2024 case management conference, the Court indicated that, while it does not anticipate the injunction staying in place permanently, it is not inclined to dissolve the injunction imminently.  Accordingly, and in light of Plaintiffs' representation that they are not willing to discuss dissolving the injunction, Defendants propose that the below modifications to the injunction be entered at this time, and Defendants further propose that the Court order the parties to confer in one year to discuss a potential dissolution of the injunction and full resolution of the litigation.

- **Joint Status Reports and Status Conferences:**  Defendants agree with Plaintiffs that all future joint status reports and status conferences should be waived.  Defendants further propose that no party may request a status conference to raise compliance-

---

[4] *See* Ninth Compliance Report ¶ 6, ECF No. 151 (99.81% timely completion); Tenth Compliance Report ¶ 6, ECF No. 155 (99.64% timely completion); Eleventh Compliance Report ¶ 6, ECF No. 156 (88.51% timely completion); Twelfth Compliance Report ¶ 5, ECF No. 163 (99.27% timely completion); Thirteenth Compliance Report ¶ 5, ECF No. 167 (99.31% timely completion); Fourteenth Compliance Report ¶ 5, ECF No. 171 (98.07% timely completion); Fifteenth Compliance Report ¶ 5, ECF No. 173 (99.62% timely completion); Sixteenth Compliance Report ¶ 5, ECF No. 178 (98.59% timely completion).

[5] *See* Eighth Compliance Report ¶ 7, ECF No. 147 (10.44 business days for Track 3); Ninth Compliance Report ¶ 6, ECF No. 151 (7.82 business days for Track 3); Tenth Compliance Report ¶ 6, ECF No. 155 (8.4 business days for Track 3); Eleventh Compliance Report ¶ 6, ECF No. 156 (8.5 business days for Track 3); Twelfth Compliance Report ¶ 5, ECF No. 163 (8.26 business days for Track 3); Thirteenth Compliance Report ¶ 5, ECF No. 167 (7.42 business days for Track 3); Fourteenth Compliance Report ¶ 5, ECF No. 171 (4.46 business days for Track 3); Fifteenth Compliance Report ¶ 5, ECF No. 173 (4.39 business days for Track 3); Sixteenth Compliance Report ¶ 5, ECF No. 178 (4.13 business days for Track 3).

related disputes with the Court unless compliance falls below 85% for two consecutive reporting periods (which the parties agree should be biannual rather than quarterly), at which time the parties should be required to confer before any party seeks a status conference. Defendants submit this proposal in an effort to create clear, reliable parameters for when compliance-related disputes may arise, and to allow USCIS time to correct any compliance issues on its own before such issues are brought to the Court.

- **Compliance Reporting:** Defendants propose that, in lieu of filing quarterly compliance reports with the Court, the following compliance-related information be provided directly to Plaintiffs' counsel every six months for a period of three years: (i) the number of new A-File FOIA requests received, completed, and still pending during the reporting period; (ii) the number and percentage of those new A-File FOIA requests that were timely completed; and (iii) the number and percentage of those requests that remain pending beyond the statutory period (which will reflect USCIS's backlog at that time). To illustrate, Defendants would provide Plaintiffs a written statement at the end of each biannual reporting period stating as follows (with the relevant dates and numbers to be filled in):

> "From [date], through end of day [date], USCIS received approximately _____ new FOIA requests for A-Files and completed processing approximately _____ of those new A-File requests, _____ of which were timely completed, reflecting a completion rate of approximately _____ percent. Of those A-File requests that remain pending as of the end of the day on _____, there are approximately ____ FOIA requests for A-Files that remain pending beyond the statutory period, consisting of approximately ___% of pending requests."

Under this proposal, Plaintiffs could make this information available to the public and could raise compliance-related issues with the Court should the information reflect lower than 85% timely completion rates for two consecutive biannual reporting periods, per Defendants' proposal above. Accordingly, the Court would have access to any information that Plaintiffs make publicly available should the Court choose to monitor compliance, and it would have access to any information that any party files in this case as part of any compliance-related dispute. Plaintiffs' concerns regarding Court monitoring and public access to information are thus misguided. Moreover, Defendants' proposal would alleviate the burdens of preparing and

7

filing compliance reports and supporting declarations while still providing Plaintiffs all categories of compliance information required under the injunction.

Notably, Plaintiffs' request that the Court now affirmatively require Defendants to file "compliance reports in the form of the previously filed declarations," *see supra* at 4, goes beyond what the Court required in its injunction, which requires only that Defendants provide to the Court the same numeric information that Defendants have proposed to provide directly to Plaintiffs, *see* ECF No. 90 at 1-2 (ordering "quarterly reports containing information regarding the number and percentage of A-File requests that were filed and timely completed as well as the number and percentage of cases that remain pending beyond the twenty or thirty-day statutory periods"). While USCIS has voluntarily provided the Court through declarations additional information beyond that required in the injunction, such voluntary efforts should not be penalized by adding to USCIS's required burdens going forward. Plaintiffs' request that the Court *order* Defendants to provide this additional information would *increase* the injunction's requirements, and it is thus inconsistent with Plaintiffs' asserted commitment to discuss ways "to *reduce* the expenditure of resources by the agency and this Court with respect to the permanent injunction." *See supra* at 3 (emphasis added). At most, should compliance reporting to the Court continue, it should be under the same terms as the injunction issued in December 2022.

As a final note, Plaintiffs express concern regarding USCIS's reliance on contract work and overtime as well as the recent change in Administration. *See id.* at 3, 5. Ultimately, however, there is no dispute that Defendants have remained in substantial compliance with the injunction for a significant period of time, and should serious issues arise in the future regarding Defendants' compliance, Defendants' proposals provide an appropriate mechanism by which those issues may be raised with the Court.

Respectfully submitted,

| | |
|---|---|
| */s/Trina Realmuto* | BRETT A. SHUMATE |
| Trina Realmuto (CA SBN 201088) | Acting Assistant Attorney General |

8

1

Mary Kenney*
National Immigration Litigation Alliance
2    10 Griggs Terrace
Brookline, MA 02446
3    (617) 819-4447
4    trina@immigrationlitigation.org

5    Matt Adams (WSBA No. 28287)*
Northwest Immigrant Rights Project
6    615 Second Avenue, Suite 400
Seattle, WA 98104
7    (206) 957-8611

8
Raul Pinto (NC No. 42310)*
9    American Immigration Council
PMB2026
10   2001 L Street N.W., Suite 500Washington,
DC 20036
11   (202) 507-7549

12
Stacy Tolchin (CA SBN 217431)
13   Law Offices of Stacy Tolchin
634 S. Spring St., Suite 500A
14   Los Angeles, CA 90014
(213) 622-7450
15

16   *Counsel for Plaintiffs*

17   *Admitted pro hac vice*

18   Dated: January 24, 2025

19

20

21

22

23

24

25

26

27

28

Civil Division

ELIZABETH J. SHAPIRO
Deputy Branch Director

*/s/Cristen C. Handley*
CRISTEN C. HANDLEY, MO Bar No. 69114
Trial Attorney
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, NW
Washington, D.C. 20005
(202) 305-2677
Cristen.Handley@usdoj.gov

*Counsel for Defendants*

9