UNITED STATES DISTRICT COURT FOR THE

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| Zachary NIGHTINGALE; Courtney McDERMED; Cheryl DAVID; Pao LOPA; Maribel CARANDANG,<br><br>　　　Plaintiffs,<br><br>　　　v.<br><br>U.S. CITIZENSHIP AND IMMIGRATION SERVICES; U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT; U.S. DEPARTMENT OF HOMELAND SECURITY,<br><br>　　　Defendants. | No. 3:19-cv-03512-WHO<br><br>**JOINT STATUS REPORT**<br><br>**Status Conference**<br>**Date:  January 6, 2026**<br>**Time:  2:00 p.m.**<br>**Before:  Hon. William H. Orrick** |

Pursuant to this Court's September 23, 2025 Minute Order, ECF No. 191, Plaintiffs and Defendants respectfully submit the following joint status report. This case involves a certified class action under the Freedom of Information Act ("FOIA") in which this Court held that U.S. Citizenship and Immigration Services ("USCIS"), U.S. Immigration and Customs Enforcement ("ICE"), and U.S. Department of Homeland Security ("DHS") engaged in an unlawful pattern or practice of failing to make timely determinations on FOIA requests for "A-Files."  On December 17, 2020, following briefing and oral argument, this Court entered summary judgment in favor of Plaintiffs on their FOIA pattern or practice claims and issued a nationwide injunction against Defendants. *See* ECF Nos. 89 at 27 & 90 at 1-2. The injunction set forth the following:

   a. <u>Adhere to FOIA Timing Requirements</u>: Defendants are permanently enjoined from further failing to adhere to the statutory deadlines for adjudicating A-File FOIA requests, as set forth in 5 U.S.C.§§ 552(a)(6)(A) and (B);

   b. <u>Eliminate the Backlogs</u>: **Within sixty (60) days of this order,** defendants shall make determinations on all A-File FOIA requests in USCIS's and ICE's backlogs; [and]

   c. <u>Quarterly Compliance Reports</u>: Until further order, defendants shall provide this court and class counsel with quarterly reports containing information regarding the number and percentage of A-File FOIA requests that were filed and timely completed as well as the number and percentage of cases that remain pending beyond the twenty or thirty-day statutory periods, respectively 5 U.S.C. §§ 552(a)(6)(A) and (B). The first compliance report is due **within ninety (90) days** of this order.

ECF No. 89 at 27 (emphasis in the original); ECF No. 90 at 1-2 (emphasis in the original).

Since the injunction issued in December 2020, Defendants have filed twenty compliance reports, the parties have filed fifteen joint status reports (this filing being the sixteenth), and the Court has held thirteen case management conferences, most recently on September 23, 2025. The next case management conference is scheduled for January 6, 2026.

**Plaintiffs' Position**

In the wake of the December 19, 2025, whistleblower disclosure, entitled "Protected Whistleblower Disclosure Regarding USCIS Violations of the Freedom of Information Act, Regulations, and *Nightingale* Court Order" Dkt. 193-1, Plaintiffs have serious concerns about the credibility and reliability of Defendants' Twentieth Compliance Report, Dkt. 192, and Fifth Declaration of M. David Arnold, Dkt. 192-1. As the disclosure stated:

> In its December 15, 2025 compliance report, USCIS claimed that since its September 15, 2025 submission the agency has reduced its A-File FOIA backlog by 99.96% to only two cases and attributed this success to staffing measures. This purported elimination occurred while the agency lost roughly one-quarter of its FOIA personnel and endured a 43-day federal shutdown that impacted the availability of external support from other components of the Department of Homeland Security (DHS). These circumstances alongside Mr. Armstrong's disclosures suggest the reported reduction does not reflect timely, good-faith FOIA processing but rather mass closures of requests and other procedural mechanisms that remove requests from the pending inventory without reasonable searches or release of responsive records.

Dkt. 193-1 at 1 (footnote omitted). Numerous immigration attorneys, including some of the named Plaintiffs and undersigned counsel, confirm experiencing the types of rejections and redactions reported in the disclosure.

Due to the seriousness of the allegations in the disclosure, Plaintiffs wish to seek compliance discovery, including, but not limited to, copies of the policies in the disclosure and any related staff instructions or manuals. On December 29, 2025, Plaintiffs received the 47 exhibits referenced in the disclosure. Defendants have requested that Plaintiffs delay submitting the exhibits with the Court until Defendants have had an opportunity to make a determination whether to move to seal any of the exhibits. While Plaintiffs oppose any motion to seal the exhibits, as a courtesy to Defendants, Plaintiffs will wait for Defendants to advise later this week whether Defendants will move to seal any of the exhibits.

In addition, Plaintiffs request that the Court order monthly or quarterly compliance reports going forward. Plaintiffs welcome the opportunity to discuss compliance discovery with the Court at the January 6 case management conference. Depending on how discovery develops and whether a motion to enforce the injunction and/or motion for sanctions is needed,

Plaintiffs may request that the Court appoint a special master to monitor future compliance with the permanent injunction.

### Defendants' Position

Over the last five years, Defendants have consistently demonstrated their good-faith commitment to satisfying their FOIA obligations and maintaining substantial compliance with this Court's injunction. The record shows long periods of uninterrupted compliance, for instance, in each of the nine reporting periods from December 2022 to March 2025, USCIS maintained an A-File FOIA backlog of between just two and 33 requests at the end of a given period.[1] In that same nearly 2.5-year period, USCIS maintained a timely completion rate of between 88.51% and 99.81%, with the majority of rates in that period falling above 99%.[2] The record also shows limited instances when compliance has temporarily decreased.[3] In each of those instances, Defendants candidly informed the Court of their compliance status and the reasons therefor, and undertook significant efforts to swiftly improve compliance.[4]

---

[1] *See* Ninth Compliance Report ¶ 5, ECF No. 151 (backlog of 3 requests); Tenth Compliance Report ¶ 5, ECF No. 155 (backlog of 6 requests); Eleventh Compliance Report ¶ 5, ECF No. 156 (backlog of 2 requests); Twelfth Compliance Report ¶ 4, ECF No. 163 (backlog of 10 requests); Thirteenth Compliance Report ¶ 4, ECF No 167 (backlog of 11 requests); Fourteenth Compliance Report ¶ 4, ECF No. 171 (backlog of 14 requests); Fifteenth Compliance Report ¶ 4, ECF No. 173 (backlog of 22 requests); Sixteenth Compliance Report ¶ 4, ECF No. 178 (backlog of 33 requests); Seventeenth Compliance Report ¶ 4, ECF No. 182 (backlog of 9 requests).

[2] *See* Ninth Compliance Report ¶ 6, ECF No. 151 (99.81% timely completion); Tenth Compliance Report ¶ 6, ECF No. 155 (99.64% timely completion); Eleventh Compliance Report ¶ 6, ECF No. 156 (88.51% timely completion); Twelfth Compliance Report ¶ 5, ECF No. 163 (99.27% timely completion); Thirteenth Compliance Report ¶ 5, ECF No. 167 (99.31% timely completion); Fourteenth Compliance Report ¶ 5, ECF No. 171 (98.07% timely completion); Fifteenth Compliance Report ¶ 5, ECF No. 173 (99.62% timely completion); Sixteenth Compliance Report ¶ 5, ECF No. 178 (98.59% timely completion); Seventeenth Compliance Report ¶ 5, ECF No. 182 (99.39% timely completion).

[3] *See* Fourth Compliance Report ¶¶ 4-5, ECF No. 119 (backlog of 2,978 requests and 51.45% timely completion); Sixth Compliance Report ¶¶ 14-15, ECF No. 132 (backlog of 1,884 requests and 60.25% timely completion); Seventh Compliance Report at 6, ECF No. 138 (backlog of 5,361 requests and 55.62% timely completion); Eighteenth Compliance Report ¶¶ 4-5, ECF No. 183 (backlog of 12,741 and 59.39% timely completion); Nineteenth Compliance Report ¶ 4, ECF No. 188 (backlog of 4,831 requests).

[4] *See supra* n.3.

These efforts were on display this year.  As the Court knows, Defendants' compliance decreased from approximately 99.39% reported on March 17, 2025 to approximately 59.39% reported on June 16, 2025, and the backlog increased from approximately 9 requests to approximately 12,741 requests in that period.  *Compare* Seventeenth Compliance Report ¶¶ 4-5, ECF No. 182, *with* Eighteenth Compliance Report ¶¶ 4-5, ECF No. 183.  This was due to the significant staffing and other resource constraints explained in Defendants' report and supporting declaration.  *See* Eighteenth Compliance Report ¶ 6, ECF No. 183; Third Declaration of M. David Arnold ¶¶ 10-13, ECF No. 183-1.  Over the six months following the June 2025 report, through USCIS efforts including a staffing reorganization, assistance from other agency components, initiating new hiring, and maximizing overtime hours, compliance rose to approximately 99.6% in the December 15, 2025 report, and the backlog decreased to approximately two requests.  *See* Twentieth Compliance Report ¶¶ 4-6, ECF No. 192; Fifth Declaration of M. David Arnold ¶¶ 5-7, 12, 13-18, ECF No. 192-1.

On December 19, 2025, Plaintiffs filed a Notice of "Protected Whistleblower Disclosure Regarding USCIS Violations of the Freedom of Information Act, Regulations, and *Nightingale* Court Order," along with the accompanying Whistleblower Disclosure.  *See* ECF Nos. 193 & 193-1.  The Disclosure contains allegations by a USCIS employee related to the reliability of Defendants' December 15, 2025 compliance report, including that the data provided in the report reflects "apparent efforts by NRC [i.e. National Records Center] leadership to manufacture compliance" with this Court's injunction.  *See* ECF No. 193-1 at 1.  In support, the Disclosure alleges that "NRC leadership implemented policy changes," which the Disclosure cites as occurring between March 2024 and December 2025, that "result[ed] in the premature closing of possibly thousands of FOIA requests, often despite the existence or identification of responsive records."  *See id.* at 1-2; *see also id.* at 5-15 (describing alleged policy changes).

Defendant USCIS is preparing a response to Plaintiffs' Notice, including a response to the allegations in the Disclosure.  As will be explained in that response, USCIS has not taken

any actions, through "policy changes" or otherwise, with the purpose or intent of manufacturing or avoiding compliance with this Court's injunction. To the contrary, USCIS has made tremendous, good-faith efforts to maximize the productivity of its FOIA program and to comply with its obligations under the injunction. Nonetheless, Defendants take the allegations in the Disclosure very seriously. The Disclosure is lengthy, and it references 47 exhibits (totaling 272 pages), which counsel for the Government Accountability Project (which represents the whistleblower) provided counsel for the parties at approximately 9:45pm ET yesterday. Defendant USCIS will endeavor to review those exhibits in preparing its response to Plaintiffs' Notice, which it anticipates filing by the end of this week in advance of the January 6, 2026 status conference.

Regarding Plaintiffs' above-mentioned intent "to seek compliance discovery," *see supra* at 3, in an effort to demonstrate their good faith, Defendants are amenable to providing Plaintiffs any available, non-privileged copies of the "policies," "guidance," and similar materials alleged in the Disclosure (some of which may already be contained within the exhibits mentioned above). Defendants are further amenable to reviewing any requests for additional information that Plaintiffs wish to submit, and negotiating in good faith with Plaintiffs over those requests. Accordingly, Defendants propose that Plaintiffs submit their anticipated discovery requests to Defendants, and that the parties attempt to swiftly resolve those requests through negotiation in order to avoid or minimize the need for discovery-related motion practice. As to Plaintiffs' request that the Court "order monthly or quarterly compliance reports going forward," *see supra* at 3, the Court has already ordered quarterly compliance reports, which Defendants will continue to submit.

Respectfully submitted,

| | |
|---|---|
| */s/Trina Realmuto* | BRETT A. SHUMATE |
| Trina Realmuto (CA SBN 201088) | Assistant Attorney General |
| Mary Kenney* | Civil Division |
| National Immigration Litigation Alliance | |
| 10 Griggs Terrace | ELIZABETH J. SHAPIRO |

| | |
|---|---|
| Brookline, MA 02446<br>(617) 819-4447<br>trina@immigrationlitigation.org<br><br>Matt Adams (WSBA No. 28287)*<br>Northwest Immigrant Rights Project<br>615 Second Avenue, Suite 400<br>Seattle, WA 98104<br>(206) 957-8611<br><br>Raul Pinto ((DC Bar No. 90013180)*<br>American Immigration Council<br>PMB2026<br>2001 L Street N.W., Suite 500Washington,<br>DC 20036<br>(202) 507-7549<br><br>Stacy Tolchin (CA SBN 217431)<br>Law Offices of Stacy Tolchin<br>634 S. Spring St., Suite 500A<br>Los Angeles, CA 90014<br>(213) 622-7450<br><br>*Counsel for Plaintiffs*<br><br>**Admitted pro hac vice*<br><br>Dated: December 30, 2025 | Deputy Branch Director<br><br>*/s/Cristen C. Handley*<br>CRISTEN C. HANDLEY, MO Bar No. 69114<br>Trial Attorney<br>United States Department of Justice<br>Civil Division, Federal Programs Branch<br>1100 L Street, NW<br>Washington, D.C. 20005<br>(202) 305-2677<br>Cristen.Handley@usdoj.gov<br><br>*Counsel for Defendants* |