IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO/OAKLAND DIVISION

| | |
|---|---|
| Zachary NIGHTINGALE, *et al.*,<br><br>    Plaintiffs,<br><br>  v.<br><br>U.S. CITIZENSHIP AND IMMIGRATION SERVICES, *et al.*,<br><br>    Defendants. | No. 3:19-cv-03512-WHO<br><br>**SIXTH DECLARATION OF M. DAVID ARNOLD** |

I, M. David Arnold, pursuant to 28 U.S.C. § 1746, hereby declare as follows:

  1.  I currently serve as Director of the National Records Center ("NRC") for U.S Citizenship and Immigration Services ("USCIS").

  2.  I have almost 30 years of experience with the U.S. Federal Government serving USCIS as the NRC Director since August 15, 2021, preceded by more than 25 years of distinguished service with the U.S. Air Force. In my current role as NRC Director, I am responsible for leading a team of over 300 federal and 400 contract personnel at the NRC. The NRC manages and operates USCIS's Freedom of Information and Privacy Act ("FOIA/PA") Program.

  3.  I make this declaration in my official capacity based on my personal knowledge, my review of records kept in the ordinary course of business, and information provided to me in the course of my official duties.

  4.  The purpose of this declaration is to address Plaintiffs' Notice of "Protected Whistleblower Disclosure Regarding USCIS Violations of the Freedom of Information Act, Regulations, and *Nightingale* Court Order," filed on December 19, 2025 (hereinafter "Notice"), and

accompanying December 19, 2025 Government Accountability Project letter to Congress (hereinafter "Letter"). *See* ECF Nos. 193 & 193-1.

5. Plaintiffs' Notice states that the Letter "contains an alarming description of USCIS' efforts to 'fake' compliance with this Court's permanent injunction." ECF No. 193 at 1. USCIS has taken no such efforts. To the contrary, each action that USCIS has undertaken to implement the FOIA has been made in a good faith attempt to comply with the FOIA, the Privacy Act, and DHS regulations, and to protect the privacy interests of individuals and increase the efficiency of its FOIA program and the timeliness of responses to A-File FOIA requests.

6. This declaration represents my best attempt to address the allegations set forth in the Letter in order to provide the Court information in advance of the January 6, 2026 status conference in this case.

7. This declaration is not intended to be a comprehensive response to all of the Letter's statements, nor does it constitute any response USCIS may make to Congress regarding the Letter. It is intended only for providing this Court information in this litigation, and I reserve the right to supplement this declaration as appropriate if additional information becomes available.

8. As an initial matter, the Letter alleges that the agency's reduction of its FOIA backlog to only two cases as reported in its December 15, 2025 compliance report "occurred while the agency lost roughly one-quarter of its FOIA personnel and endured a 43-day federal shutdown that impacted the availability of external support from other components of the Department of Homeland Security ("DHS")." *See* ECF No. 193-1 at 1. The USCIS FOIA Office reported loss of approximately a quarter of its staff in its June 2025 compliance report, but also reported the actions taken to mitigate that loss over the following several months. *See e.g.*, Third Declaration of M. David Arnold ¶¶ 10-11;14-18, ECF No. 183-1 ("3rd Arnold Decl."); Fourth Declaration of M. David Arnold ¶¶ 14-22, ECF No. 188-1 ("4th Arnold Decl."); and Fifth Declaration of M. David Arnold ¶¶ 7; 13-18, ECF

No. 192-1 ("5th Arnold Decl."). Further, the processing of A-File FOIA requests was largely unimpacted by the government shutdown since the USCIS FOIA Office is fee-funded and no USCIS FOIA staff were furloughed during that time.

9. The Letter also alleges several "policy changes" by the USCIS FOIA office between March 2024 and November 2025. I address each of these alleged changes in sequential order below.

### March 2024 Allegations

10. The Letter alleges that, "on March 4, 2024, FOIA leadership issued a new policy directive that required USCIS to close requests from Cuban nationals as 'no record' when a requester seeks certain documents to confirm entry or admission to the United States such as an I-94 arrival or departure record, or parole document, notwithstanding the fact that a Memorandum of Understanding exists between USCIS and CBP requiring USCIS to process such requests and provide responsive documentation." *See* ECF No. 193-1 at 5.

11. This allegation appears to assert that USCIS is in violation of its Memorandum of Understanding ("MOU") with CBP. That is incorrect. That MOU provides, in relevant part, that "USCIS will process all CBP A-file documents responsive to a FOIA request." *See* Intra-Agency Memorandum of Agreement at 2, attached hereto as Exhibit A. In other words, the MOU does not require USCIS to process *any* FOIA request it receives that is seeking *any* CBP records; the CBP records must be part of a requested A-File in order for the MOU to apply. *Id*.

12. I-94s are arrival and departure records that are issued by CBP at U.S. ports of entry. They are CBP records, not USCIS records, *see, e.g.*, *Privacy Impact Assessment Update for the I-94 Website Application* at 1-4, DHS/CBP PIA-016(b) (Oct. 12, 2021), and they are maintained by CBP. While it is possible that an I-94 may have been placed in an A-File as part of another process or a benefit request, it is not the standard procedure for CBP to send these records to USCIS for maintenance within the A-File. If an I-94 is maintained within an A-File in USCIS's possession,

USCIS processes the I-94 as part of the A-File in accordance with the MOU.  However, if a request seeks only the I-94, or other related arrival/departure, entry/exit, and/or parole documents (which are maintained by CBP), USCIS directs the requester to CBP, which has an automated system through which a requester may seek access to these materials.

13.   In January and February 2024, USCIS saw a significant influx of FOIA requests by Cuban nationals seeking copies of their I-94s and related CBP records.  In March 2024, after conferring with CBP and determining that USCIS does not generally maintain records for this population of requests, the USCIS FOIA office issued guidance to its FOIA processors to close requests as "No Record" where the requester seeks only a copy of their I-94 or related CBP documents.  *See* March 4, 2024 FOIA Alert at 1-2, attached hereto as Exhibit B.  Consistent with the above, and as shown in Exhibit B, that guidance explained that requests for the I-94 or related CBP documents "and any other additional documents or the entire A-File" should be "process[ed] as normal."  *See id.* at 2.  In other words, if a requester seeks CBP documents that are part of an A-File, USCIS processes that request in accordance with the MOU.  Additionally, in an effort to provide good customer service, USCIS included information in its responses to requesters advising that copies of I-94s could be obtained online at a CBP public website link and provided that link to them, specifically https://i94.cbp.dhs.gov/I4/#/recent-search.  *See id.*

### May 2025 allegations

14.   The Letter alleges three "policy changes" implemented by NRC in May 2025.  *See* ECF No. 193-1 at 5-6.  First, the Letter alleges a May 2025 change that "resulted in FOIA processors redacting entire forms from immigration A-Files citing (b)(6) and (b)(7) privacy and law enforcement exemptions, even though the withheld information was initially provided to DHS by the noncitizen." *Id*. at 5.  These withholdings include, according to the Letter, "marriage certificates, joint bank statements, tax forms, portions of immigration court hearing transcripts and enforcement

documents such as Form I-213 (Record of Deportable/Inadmissible Alien)." *Id.* Second, the Letter alleges a May 2025 change "direct[ing] the withholding of any correspondence that is not directly to or from the requester, even correspondence sent by or to their attorney from USCIS." *Id.* at 5-6. Third, the Letter alleges a May 2025 change "direct[ing] USCIS to inappropriately designate certain documents as 'out of scope,'" such as "documents provided by the noncitizen that are in the language of their country of origin and not translated into English." *Id.* at 6.

15. These allegations appear to refer primarily to revisions made between April and May 2025, to the USCIS FOIA Office's FOIA processing guidance on the handling and processing of third-party personally identifying information ("PII") in A-Files. *See* April 2025 email & FOIA Guidance, attached hereto as Exhibit C. None of those revisions were made in an attempt to "manufacture compliance" with this Court's injunction. *See* ECF No. 193-1 at 6. Rather, the revisions were implemented based upon direction and guidance from the DHS Privacy/FOIA office to ensure that USCIS FOIA was treating third-party PII in a manner that would best ensure that individual privacy interests were appropriately protected under FOIA exemptions 6 and/or 7(C). These revisions were premised upon certain well-settled FOIA principles, including that individual privacy interests belong to the individual and not to the Agency and that a FOIA requestor's particular knowledge of information reflected in Agency records is generally irrelevant to whether that information can be disclosed by the Agency in response to a FOIA request.

16. Contrary to the allegations in the Letter, responsive documents are not withheld in full simply because third-party privacy interests are implicated. Rather, as shown in Exhibit C, third-party information contained in immigration records is generally redacted when the third party does not provide consent for release of their information. *See id.* at 1, 3. If protected information from third-party individuals is inextricably intertwined with the information of the subject of record, such as in joint tax returns, utility bills, or birth certificates of a third party, the information will be

withheld in full because it cannot be reasonably segregated from the subject's information. *See id.* at 4-5. There may also be instances in which a particular document within the responsive records is withheld in full because, for example, it consists entirely of a third-party's PII subject to the FOIA privacy exemptions or the applicability of other FOIA exemptions. *Id.*

17. In the April/May 2025 guidance*,* USCIS correspondence addressed to a third party is identified as "WIF" (Withhold in Full) for individuals that do not provide verification of identity ("VOI") and consent within the request documents. *Id.* at 3-4. This includes attorney correspondence to the extent there is no evidence in the file that the attorney is representing the individual in the matter. I understand that a May 5, 2025 Questions & Answers document, submitted as an attachment to the Letter as exhibit 2, extended the April/May guidance to letters submitted by or directed to the subject's attorney. *See* ECF No. 193-1 at 6 n.13. This was an error, and guidance clarifying this issue will be issued expeditiously.

18. Finally, regarding foreign language documents, the USCIS FOIA Office advised processors by e-mail on June 11, 2025 that the FOIA guidance would be updated to provide for the designation as "out-of-scope" for untranslated foreign language documents originating with non-U.S. Government entities, and it sent further clarification by e-mail on August 18, 2025. *See* June 11, 2025 & August 18, 2025 emails, attached hereto as Exhibit D. Specifically, the August 2025 e-mail clarified that, when a responsive foreign-language document has both an English translation and an untranslated version, "only the untranslated version will be OOOs'd [i.e. out of scoped]." *See id.* at 2. When a responsive document contains both English and a foreign language, the e-mail explained, "the document will be processed for release." *Id.* This update was made following the termination of the USCIS contract for foreign language translation services in March 2025. The purpose was "to ensure that [USCIS] process[es] and release[s] documents in English." *Id.* Doing

so helps ensure the protection of third-party privacy interests that may not be detected without translation services.

19.     This revision is consistent with DHS regulations.  Instead of placing the burden on the agency to provide translation services, DHS regulations require that "[a]ny document containing foreign language submitted to USCIS shall be accompanied by a full English language translation which the translator has certified as complete and accurate, and by the translator's certification that he or she is competent to translate from the foreign language into English."  *See* 8 C.F.R. § 103.2(b)(3).

20.     The Letter also alleges that, "on May 27, 2025, a supervisor on the FOIA policy team sent an email stating, 'Here's a way to close 99% of FOIA requests as failure to comply[]'" and citing "a 2022 regulatory change requiring requesters to specify their country of citizenship and residency."  *See* ECF No. 193-1 at 6; *see also* 5 C.F.R. 5.21(e).  This email was presumably submitted in response to encouragement provided to all FOIA staff to provide ideas and suggestions on ways to improve the FOIA program and create efficiencies.  The email represents merely a suggestion for consideration.  The employee was encouraged to "keep [the ideas] coming" and garnered some marginal support as the employee did identify a regulatory VOI requirement that was not being satisfied, although the proffered idea ultimately was not implemented.

21.     For further context on the cited regulatory change, in November 2022, DHS regulations were amended to add country of citizenship or residency to the VOI requirements for FOIA and Privacy Act requests.  *See* 87 Fed. Reg. 68599-01 (Nov. 16, 2022).  Specifically, "[w]hen an individual makes a request for access to their own records, their identity must be verified.  The individual must provide their full name, current address, date and place of birth, and country of citizenship or residency."  *See* 6 C.F.R. 5.21(e).  "In order to help the identification and location of

requested records, an individual may also voluntarily include other identifying information that are relevant to the request (*e.g.*, passport number, Alien Registration Number (A-Number))." *Id.*

22.  To be clear, notwithstanding the suggestion offered in the May 2025 email correspondence, and although the 2022 regulatory amendments require FOIA requesters to provide their country of citizenship or residency, the FOIA Office has not previously and does not currently close FOIA requests for failure to provide such information as this is not a field required in the current Form G-639 or digital FOIA intake process. With that said, the USCIS FOIA Office is currently in the process of adding a required field for country of citizenship or residency to the Form G-639 and digital intake form to ensure compliance with DHS VOI regulations.

### September 2025 allegations

23.  The Letter alleges several "policy changes" in September 2025 that, according to the Letter, "have resulted in FOIA requests being closed for 'failure to comply' or citing no responsive records even when FOIA staff have located a responsive record." *See* ECF No. 193-1 at 7. First, the Letter alleges "a policy change communicated via email on September 19, 2025 [that] requires requests that provide either no address or their attorneys' address to be closed for failure to comply." *Id.* at 8. Second, the Letter refers to "September guidance" that purportedly "requires closure where the requester's surname information does not exactly match USCIS's records." *Id.* Third, the Letter refers to (presumably the same) "September 2025 guidance" purportedly providing that "a request should be closed citing no responsive record if a requester provides an erroneous 'Alien Registration Number' (A-Number) despite matches to other verification of identity information." *Id.* Fourth, the Letter alleges that "[t]he September guidance enables the closure of requests as '[f]ailure to [c]omply' when the month and date of the requester's birth date are inverted." *Id.* Finally, the Letter alleges that, "under the September policy guidance, FOIA Assistants and Case Processors are to

close requests citing no responsive records for minor discrepancies in" optional verification-of-identity information "even when a responsive record exists." *Id.* at 9.

24. These allegations appear to refer to an e-mail the USCIS FOIA office sent to its processors on September 16, 2025, providing revised guidance regarding treatment of VOI and voluntarily provided information submitted with a FOIA request. *See* September 16, 2025 email, attached hereto as Exhibit E.

25. Discussed further below, each of these revisions was made in good faith in order to ensure adherence to DHS regulations, protect personal privacy, and increase processing efficiency and timeliness. They were not made with any intent to manufacture the appearance of compliance with this Court's injunction.

26. To constitute a proper FOIA request, the request must be made in accordance with an agency's "published rules stating the time, place, fees (if any), and procedures to be followed." *See* 5 U.S.C. § 552(a)(3)(A). As noted above, *see supra* ¶ 21, when an individual seeks access to their own records, identity must be verified and DHS regulations require the individual to provide their "full name, current address, date and place of birth, and country of citizenship or residency." *See* 6 C.F.R. § 5.21(e). Failure to provide this information (other than country of citizenship or residency for reasons noted *supra* ¶ 22) constitutes a failure to comply with DHS regulations, and the FOIA request is properly closed for that reason.

27. The Letter appears to allege that these regulatory VOI requirements need not be enforced when no address is provided, an attorney's address is provided instead of the individual's address, or an incomplete or inaccurate name or date of birth is provided. *See* ECF No. 193-1 at 7-8. But the above regulation plainly requires individuals who are seeking their own records to provide their "full name, current address, [and] date and place of birth." *See* 6 C.F.R. § 5.21(e). Providing an attorney's address as the address for that individual does not satisfy the requirement that an

individual provide their own current address, although the FOIA Office recognizes exceptions for certain types of sensitive cases, as noted in the Letter.  *See* ECF No. 193-1 at 8.  Although the Letter claims that USCIS's "past practice" was "to accept an attorney's address as the address for the requester," *see id.*, USCIS's current practice to require the address of the individual who is seeking their own records is in accordance with the regulation.  *See* 6 C.F.R. § 5.21(e).

28. Similarly, DHS regulations require an individual to provide their "full name" and "date and place of birth."  *See id.*  In the attempt to assist the requester to properly provide this required information and avoid confusion, the current Form G-639 and digital intake process provides a format for submission that seeks "Family name (Last Name)" followed by "Given Name (First Name)" and then "Middle Name" and, for place of birth, seeks "country of birth" with an explanation to provide the name of the country where the subject of record was born, and for date of birth, requests information be provided in "mm/dd/yyyy" format.  *See* Form G-639, Freedom of Information Act Request, attached hereto as Exhibit F.  Failure to follow the format instructions results in inaccurate information and constitutes a failure to comply with the DHS VOI regulations, properly resulting in the FOIA request being closed for that reason.

29. Separate from the VOI requirements, the Letter also alleges that the FOIA Office is improperly closing FOIA requests for no responsive records when the requester provides optional but erroneous identifying information, such as an erroneous Alien Registration Number ("A-number"), erroneous or improperly identified names of parents, or mismatching parents' names.  *See* ECF No. 193-1 at 8.

30. This voluntary information is provided pursuant to DHS regulations that allow an individual to "voluntarily include other identifying information that are relevant to the request (*e.g.,* passport number, Alien Registration Number (A-Number))" in order to "help the identification and location of requested records."  *See* 6 C.F.R. § 5.21(e).  Pursuant to this stated purpose, the FOIA

Office revised its guidance to ensure it is locating the <u>right</u> record requested, thereby protecting against the improper dissemination of records, which may result in the agency being required to submit a significant incident report ("SIR") due to an improper disclosure of an individual's personal privacy protected information. To assist in this process, the FOIA Office seeks accurate voluntary information regarding parents' names mostly in the same format as it seeks the name of the subject of record, that is, "Family Name (Last Name)" followed by "Given Name (First Name)" and then "Middle Name" except for the mother, in which case the form seeks "Family Name (Last Name)" followed by "Maiden Name, or previous last names" and then "Given Name (First Name), and finally, "Middle Name." *See* Exhibit F.

31. These changes were implemented in response to the USCIS FOIA Office being subject to multiple SIRs in Fiscal Year 2025 for the improper release of the wrong records. While the investigation underlying the SIRs revealed that improper disclosure in some of the cases were due to mismatches of required VOI information (which is in part why it is important for USICS to enforce those requirements) or A-File tracking/filing issues, in many of the cases, the FOIA Office would have learned that the improperly disclosed record was the wrong record based, at least in part, by identifying a mismatch of the voluntary information. For example, the USCIS FOIA Office was subject to the following SIRs in Fiscal Year 2025 for releasing the wrong record under the following circumstances:

- October 2024: nearly identical name and identical date of birth and country of birth. Parents names were not a match.

- October 2024: Date of birth and parent's name were not a match.

- November 2024: same first and last name, country of birth and date of birth. Parents' names were not provided in the request, but were a mismatch between the records.

- November 2024: records misfiled into third-party Alien file and identities of multiple people with nearly identical names and date of birth improperly merged into one file.

- February 2025: same first and last name, country of birth, date of birth and parent's names. The two individuals had different middle names.

- February 2025: same country of birth and date of birth and a close, but not exact name match. Parent's name was not a match. Requester did not provide an Alien number.

- May 2025: same name, date of birth and country of birth. Parent, spouse and child names were not a match.

- June 2025: nearly identical name, same country of birth and date of birth. Mother's name was not match.

- July 2025: same first and last name and country of birth, but different date of birth. Parents' names were not located within the records, and the alien number was for the wrong person.

- July 2025: same name, date of birth and country of birth. Parents' names and alien number did not match.

- August 2025: same first and last name, country of birth and date of birth. Parent's names and alien number did not match.

- September 2025: name was not a complete match and parents name did not match.

32. In an attempt to strike the right balance between prompt disclosure, while still protecting against improper disclosure, and as noted in the Letter, *see* ECF No. 193-1 at 9, the FOIA Office issued numerous exceptions in November 2025 when looking for matching parent names in the responsive record set, to include the use of hyphens, use of "de" as an indicator of a married name in Spanish, spacing variations, when a maiden name for the mother is provided, when there are name-length or character-limit truncation issues, and for "sounds like" spelling variations. *See* November 18, 2025 email & Quick Guide to New VOI Guidance, attached hereto as Exhibit G. And

the FOIA Office notifies the requester when a request is denied because parents' names do not match the names within the records, so the requester may submit a new request with accurate information.

33. While the Letter implies that additional exceptions should be included and that inaccurate parent names or A-numbers should be disregarded, *see* ECF No. 193-1 at 8-9, this disagreement with USCIS's guidance does not undermine the FOIA Office's good faith attempt to ensure that the right record is going to the right individual, which is the reason for the issuance of these processing changes. The FOIA Office is continually working towards finding the proper balance in ensuring it is identifying the right record while also continuing to maintain efficient, timely responses.

34. The Letter also alleges that the USCIS FOIA Office closed more cases for failure to comply or no records found following the September 2025 guidance than it did prior to the issuance of that guidance. *See* ECF No. 193-1 at 10-11. While the Letter is accurate that the FOIA Office has closed significantly more cases for failure to comply with DHS regulations since September 2025, *id*., this is not surprising given the September 2025 change to more strictly adhere to DHS regulations and because the FOIA Office processed more cases during the last reporting period than in any previous reporting period since our June 2021 report. As indicated in the Letter, the number of cases closed for no record found has not experienced a significant change following the September 2025 guidance. *Id*. at 11.

35. Based on my preliminary review of the reasons for A-File cases being closed during the last reporting period, it appears most were due to failure to provide the individual's own address, combined with other missing VOI information required by DHS regulations (other than country of citizenship or residency, *see supra* ¶ 22). *See* 6 C.F.R. § 5.21(e).

**November 2025 allegations**

36.     Finally, the Letter alleges that "[o]n November 17, 2025, USCIS NRC leadership redefined its FOIA tracks to significantly narrow what qualifies as "simple" requests in an alleged attempt to move more requests into slower tracks to create the appearance of meeting statutory timelines. *See* ECF No. 193-1 at 15.  Specifically, the Letter states that the FOIA Office narrowed what qualifies as a "simple" request (i.e. a Track 1 request) to "only a single-document request, and only if the document is located at the NRC or available electronically." *Id*.

37.     It is accurate that the USCIS FOIA Office has revised its guidance regarding the types of requests that fall within Tracks 1 and 2 over the years, although Track 1 has typically consisted of requests for very specific or limited records, while Track 2 has typically consisted of complex requests or those seeking more than a few pages of documents, as reported in USCIS's compliance reports.  *See*, e.g., 5th Arnold Decl., ¶ 10, ECF No. 192-1.

38.     It is also accurate that when a request requires a record from a field facility or other establishment separate from the NRC that is not available electronically, meaning the records generally take more time to deliver, the USCIS FOIA Office invokes "unusual circumstances" pursuant to 5 U.S.C. § 552(a)(6)(B)(iii), which allows for an additional 10 business days to process the request, and the request is considered complex and placed in Track 2.  This makes sense as the processing of the request requires additional time because the records are located off site, which can take several days and, depending on the circumstances, even weeks to deliver. *See id.* (providing the criteria for unusual circumstances).

39.     The most recent date the USCIS FOIA Office revised its guidance regarding the assignment of FOIA tracks was in June 2023, not in November 2025, as the Letter alleges. *See* June 20, 2023 Email & Attachments, attached hereto as Exhibit H; ECF No. 193-1 at 15; ECF No. 193-1 at 15.  In that June 2023 guidance, the FOIA Office clarified its three-track processing framework

and the types of requests in each track. *See* Exhibit H at 1. The FOIA Office explained that "Track 1 includes requests for one specific document where the record is physically located at the NRC or is available electronically. Track 2 includes requests for one specific document where the record is not physically located at the NRC or available electronically, requests for more than one document, and requests for full A-files. Track 3 is for individuals in removal proceedings who have a future hearing date." *Id*. at 2.

40. The FOIA Office explained its reasons for this guidance. Specifically, the Office explained that "requests for 'related' docs and requests for 'supporting' docs" were being handled differently, whereby the former were treated as Track 1 while the latter were treated as Track 2. *See id.* at 1. "This didn't make sense," the Office explained, because both types of requests "require additional work to scan/prepare the record for processing," and it is "confusing for Case Creators" because requestors do not always use the terms "related" versus "supporting" when describing their requested documents. *See id*. Thus, to streamline the process and avoid processors needing to interpret requesters' terminology to distinguish "related" from "supporting" documents, the guidance clarified that "a request for *one specific document plus related or supporting documents* is not a Track 1 (simple track) request and should be considered a Track 2 (complex track) request." *Id*. (emphasis in the original). FOIA employees were instructed to follow this guidance (detailed further in Exhibit H) "[u]ntil a FIRST enhancement is developed and deployed that ensures the blue top ribbon in FIRST correctly displays the track number." *See id*.

41. The November 17, 2025 "policy" to which the Letter is referencing, *see* ECF No. 193-1 at 15, reflects the FIRST enhancement mentioned in the June 2023 guidance. *See* November 14, 2025 email & Track Change Step by Step Process Guidance, attached hereto as Exhibit I. That enhancement did not change the June 2023 guidance for assigning FOIA requests to tracks that was already in place, but, instead, was merely to inform staff of technical process changes when creating

a FOIA case that would allow the correct tracks to be displayed within the FIRST system.

## Conclusion

42.     USCIS has been, and will remain, committed to complying with this Court's injunction and with its obligations under the FOIA.  USCIS has not taken any actions, whether the actions alleged in the Letter or otherwise, with the purpose or intent of avoiding or imitating compliance with the injunction.  Rather, USCIS has undertaken significant, good-faith efforts to maximize the productivity and efficiency of its FOIA program, and to comply with all of its legal obligations, including the injunction.

I declare under penalty of perjury that the foregoing is true and correct.

Dated: January 5, 2025

                                                                                   M. DAVID ARNOLD JR.
Director, National Records Center
Immigration Records and Identity Services Directorate (IRIS)
U.S. Citizenship and Immigration Services (USCIS)