UNITED STATES DISTRICT COURT FOR THE

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| Zachary NIGHTINGALE; Courtney McDERMED; Cheryl DAVID; Pao LOPA; Maribel CARANDANG,<br><br>    Plaintiffs,<br><br>    v.<br><br>U.S. CITIZENSHIP AND IMMIGRATION SERVICES; U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT; U.S. DEPARTMENT OF HOMELAND SECURITY,<br><br>    Defendants. | **No. 3:19-cv-03512-WHO**<br><br>**JOINT STATUS REPORT**<br><br>**Status Conference**<br>**Date:  February 3, 2026**<br>**Time:  2:00 p.m.**<br>**Before:  Hon. William H. Orrick** |

Pursuant to this Court's January 7, 2026 Minute Order, ECF No. 198, Plaintiffs and Defendants respectfully submit the following joint status report. This case involves a certified class action under the Freedom of Information Act ("FOIA") in which this Court held that U.S. Citizenship and Immigration Services ("USCIS"), U.S. Immigration and Customs Enforcement ("ICE"), and U.S. Department of Homeland Security ("DHS") engaged in an unlawful pattern or practice of failing to make timely determinations on FOIA requests for "A-Files." On December 17, 2020, following briefing and oral argument, this Court entered summary judgment in favor of Plaintiffs on their FOIA pattern or practice claims and issued a nationwide injunction against Defendants. *See* ECF Nos. 89 at 27 & 90 at 1-2. The injunction set forth the following:

a. <u>Adhere to FOIA Timing Requirements</u>: Defendants are permanently enjoined from further failing to adhere to the statutory deadlines for adjudicating A-File FOIA requests, as set forth in 5 U.S.C.§§ 552(a)(6)(A) and (B);

b. <u>Eliminate the Backlogs</u>: **Within sixty (60) days of this order,** defendants shall make determinations on all A-File FOIA requests in USCIS's and ICE's backlogs; [and]

c. <u>Quarterly Compliance Reports</u>: Until further order, defendants shall provide this court and class counsel with quarterly reports containing information regarding the number and percentage of A-File FOIA requests that were filed and timely completed as well as the number and percentage of cases that remain pending beyond the twenty or thirty-day statutory periods, respectively 5 U.S.C. §§ 552(a)(6)(A) and (B). The first compliance report is due **within ninety (90) days** of this order.

ECF No. 89 at 27 (emphasis in the original); ECF No. 90 at 1-2 (emphasis in the original).

Since the injunction issued in December 2020, Defendants have filed twenty compliance reports, the parties have filed sixteen joint status reports (this filing being the seventeenth), and the Court has held fourteen case management conferences, most recently on January 6, 2026. The next case management conference is scheduled for February 3, 2026.

**Plaintiffs' Position**

Plaintiffs have reviewed, and are continuing to review, the whistleblower complaint, Dkt. 193-1, and supporting exhibits, Dkts. 199-1 to 199-36, as well as Defendants' response, including the Sixth Declaration of M. David Arnold (Arnold Decl.), Dkt. 196-1, and exhibits thereto, Dkts. 196-2 to 196-10. On January 22, 2026, in response to Defendants' willingness to engage in informal discovery, Plaintiffs submitted a letter request to Defendants seeking further information and documentation to assist with their assessment of the whistleblower's complaint and Defendants' response. Plaintiffs are deeply concerned that Defendants also have failed to advise the public of the policy changes identified by the whistleblower. Additionally, at this juncture, without the benefit of informal or formal discovery, Plaintiffs have the following concerns regarding Defendants' compliance with the injunction:

**I.     March 4, 2024 Policy Changes** (Dkt. 193-1 at 5)

The whistleblower complaint identified that U.S. Citizenship and Immigration Services (USCIS) issued a new policy on March 4, 2024, to close out requests with a "no record" response for any records requests from Cuban nationals specifically seeking entry records, including Form I-94, that were created by U.S. Customs and Border Protection (CBP). Dkt. 193-1 at 5; Dkt. 199-1 (Ex. 1, March 4, 2024 FOIA Alert - Cuban I-94 Specific Document Requests and Case Create No Record Policy Change). Yet, Defendant USCIS has a Memorandum of Understanding with CBP requiring USCIS to process any CBP records that are contained in the A-file. The Arnold response acknowledges this policy was targeted at Cubans specifically to address an "influx" of Freedom of Information Act (FOIA) requests. Dkt 196-1 ¶ 13. The policy memo, attached to Arnold's declaration, does not offer any justification for why it only targets requests by Cuban nationals with respect to entry documents. More importantly, Arnold concedes that the "USCIS FOIA office issued guidance to its FOIA processors to close requests as 'No Record' where the requester *seeks only* a copy of their I-94" or other entry documents. *Id.* (emphasis added). This is true even if entry documents are contained in the A-file. Under this policy, the FOIA officer simply closes out the request without even conducting a search. The March 4, 2024 memo, attached as Exhibit

B to the Arnold declaration, lays out three scenarios, making clear that if an individual asks for entry documents in their A-file, but does not ask for the any other documents or does not ask for the entire A-file, the request will be immediately closed and marked "No Record," even if there are in fact entry records in the A-file. *See* Dkt. 196-3 at 1-3 (Ex. B, March 4, 2024 FOIA Alert – Cuban I-94 Specific Document Requests and Case Create No Record Policy Change"). However, if the request seeks an additional document, the memo instructs the FOIA officer to produce any entry documents found in the A-file. *Id.* at 3.

Thus, on its face the March 4, 2024 policy demonstrates that Defendant USCIS has adopted a policy instructing its officers not to conduct a reasonable search when dealing with records requests made by Cuban nationals, specifically in response to an "influx" of FOIA requests. This guidance violates the agency's obligation to perform an "adequate" or "reasonable" search. *See Hamdan v. U.S. Dep't of Just.*, 797 F.3d 759, 770 (9th Cir. 2015); *Wilbur v. Cent. Intel. Agency*, 355 F.3d 675, 678 (D.C. Cir. 2004); *see also Edelman v. Sec. & Exch. Comm'n*, 172 F. Supp. 3d 133, 144 (D.D.C. 2016) ("An agency has an obligation under FOIA to conduct an adequate search for responsive records."). This standard requires that an agency conduct a search that is "reasonably calculated to uncover all relevant documents." *Hamdan*, 797 F.3d at 770 (quoting *Lahr v. Nat'l Transp. Safety Bd.*, 569 F.3d 964, 986 (9th Cir. 2009)); *Edelman*, 172 F. Supp. 3d at 144 (quoting *Valencia–Lucena v. U.S. Coast Guard*, 180 F.3d 321, 325–26 (D.C. Cir. 1999)). To the contrary, the March 4, 2024 policy instructs FOIA officers *not* to perform any search in order to facilitate the closure requests submitted by Cuban nationals.

**II.   May 2025 Policy Redacting Entire Forms Based on Third Party or Law Enforcement Privacy** (Dkt. 193-1 at 5)

The whistleblower complaint identifies a May 2025 policy requiring USCIS to redact entire forms based on third-party information. Dkt. 193-1 at 5; Dkts. 199-2 (Ex. 2, May, 5, 2025 Internal FOIA Guidance), 199-31 (Ex. 41, Forms and Definitions Governing Records of Proceedings from Freedom of Information Act and Privacy Act Case Processing Guide, May

4

16, 2025). The Arnold response states that third-party information is redacted when there has been no consent from the third party, even when it is a joint document. Dkt 196-1 ¶¶ 15-16; Dkt. 196-4 (Ex. C, April 2025 email and FOIA guidance). That position violates the FOIA and Privacy Act statute regarding third party exemptions. There is a two-part test to the invocation of these exemptions, and Arnold's justification, and the memorandum on which he relies, neglect the second part of the requisite test and fail to carry Defendants' burden of proving that disclosure would constitute an unwarranted invasion of personal privacy.

The FOIA provision at 5 U.S.C. § 552(b)(6) exempts disclosure of third-party material and law enforcement material "which would constitute a clearly unwarranted invasion of personal privacy." *Cameranesi v. U.S. Dep't of Def.*, 856 F.3d 626, 637 (9th Cir. 2017) (quoting 5 U.S.C. § 552(b)(6)); *Am. Immigr. Laws. Ass'n v. Exec. Off. for Immigr. Rev.*, 830 F.3d 667, 673 (D.C. Cir. 2016) (same); *see also* 5 U.S.C. § 552(b)(7)(C) (exempting disclosure of "law enforcement records" that "could reasonably be expected to constitute an unwarranted invasion of personal privacy"). Under the two-part test in *American Immigration Lawyers Association*, it is not enough that the first part of the test is met, i.e., information pertains to a third party or law enforcement. 830 F.3d at 673. Rather, the second part of the test must also be satisfied, which requires showing an "unwarranted invasion of personal privacy." *Id.* Further, "[i]n order to withhold information from disclosure under Exemption 6, the agency must specifically invoke the exemption and must carry the burden of proving that disclosure would constitute a clearly unwarranted invasion of personal privacy." *Cameranesi*, 856 F.3d at 637.

There can be no such unwarranted invasion of personal privacy under either exemption when the FOIA requestor themself is responsible for the submission of the information in the file. This would include the majority of third-party documentation in an A-File, usually consisting of government forms, tax returns, birth certificates, etc. If the FOIA requestor *is* the individual to whom the A-File pertains, the requestor themselves has provided this documentation. And, in that situation, there cannot be an unwarranted invasion of personal

privacy to provide the documentation under FOIA. Nonetheless, the May 2025 policy exempts applications, birth certificates, tax returns, and supporting documentation that are integral to the requestor's immigration history. As such, Defendants' policy cannot satisfy their burden of proving the disclosure is an unwarranted invasion of personal privacy.

Further, the whistleblower complaint states that Form I-213 (Record of Deportable/Inadmissible Alien) also will be redacted in its entirety. Dkts. 193-1 at 5; *see, e.g.*, Dkt. 199-31 (Ex. 41, Forms and Definitions Governing Records of Proceedings from Freedom of Information Act and Privacy Act Case Processing Guide, May 16, 2025). The Arnold response does not explicitly address this issue, but it is subsumed by the privacy discussion. As noted above, § 552(b)(7)(C) also requires a showing of "an unwarranted invasion of personal privacy" before records are exempt. *Cameranesi*, 856 F.3d at 638 n.15 (quoting 5 U.S.C. § 552(b)(7)(C)). But Form I-213 is a critical document outlining the immigration and criminal history of the individual that is created by the U.S. Department of Homeland Security (DHS) prior to the initiation of a removal proceeding; it also includes the justification for any arrest made by immigration officers. *See, e.g.*, *Lopez-Rodriguez v. Mukasey*, 536 F.3d 1012, 1014 (9th Cir. 2008) (noting such information is included in Form I-213). There can be no unwarranted invasion of personal privacy that justifies the redaction of the entire document to the subject of the Form. This is particularly true because Form I-213 is often produced by DHS for a removal proceeding to go forward before an immigration judge and is produced in the record of proceeding. *See, e.g.*, 8 C.F.R. § 1240.17(c) (mandating DHS to submit Form I-213 to the immigration court when a respondent is referred to the court for removal proceedings after a credible fear interview by USCIS). Even limited redaction is not appropriate absent an actual unwarranted invasion of privacy, which is not present when the requestor is the subject of the record or their counsel. Certainly, there is no justification to redact the *entire* document.

Plaintiffs' position is that this policy is unlawful on its face and cannot be employed to expedite processing of A-File FOIA requests in order to comply with this Court's injunction.

Plaintiffs position is that USCIS must produce an unredacted version of Form I-213 when processing A-File FOIA requests.

**III.   May 2025 Policy Withholding Attorney Correspondence** (Dkt. 193-1 at 5-6)

The whistleblower complaint states a May 2025 policy change provides for the withholding of attorney correspondence. Dkt. 193-1 at 5-6; *see, e.g.*, Dkt. 199-2 (Ex. 2, May 5, 2025 Internal USCIS FOIA Policy Guidance - Defining/Applying "Out of Scope" Determinations). Arnold's response concedes that applying the exemption to the subject's attorney was an "error," and that USCIS would issue clarifying guidance "expeditiously." Dkt. 196-1 ¶ 17. Plaintiffs have requested confirmation of the policy change as well as a copy of guidance.

**IV.   May 2025 Policy Changes Regarding Designation of Records as "Out of Scope"** (Dkt. 193-1 at 6)

In June and August 2025, USCIS instructed processors that untranslated foreign language documents originating with non-U.S. government entities were to be designated "out-of-scope" (OOS). Dkt. 193-1 at 6. Arnold's response is that any document that is designated OOS is not processed. Dkt. 196-1 ¶ 18; *see also* Dkt. 196-5 (Ex. D, June 11, 2025 & August 18, 2025 emails and attachments). Unlike documents that are withheld, USCIS does not inform the FOIA requester of the existence of a document that is designated OOS. Defendants attempt to justify the new policy as consistent with 8 C.F.R. § 103.2(b)(3), Dkt. 196-1 ¶ 19; however, that regulation pertains to the submission of evidence to USCIS to establish benefit eligibility and is unrelated to FOIA.[1] This issue is particularly critical as A-Files often contain key

---

[1] The regulation at 8 C.F.R. § 103.2(b)(3) provides:

> § 103.2 Submission and adjudication of benefit requests . . . (b) Evidence and processing — . . . Translations. Any document containing foreign language submitted to USCIS shall be accompanied by a full English language translation which the translator has certified as complete and accurate, and by the translator's certification that he or she is competent to translate from the foreign language into English.

7

Joint Status Report                                                                                         Case No. 3:19-cv-03512-WHO

identity documents in the requestor's native language, such as birth certificates, marriage certificates, divorce decrees, and identity documents from their native country.

Plaintiffs contend that this policy change conflicts with 5 U.S.C. § 552(a)(8), which allows only for withholding information that falls within a statutory exemption. It further violates 6 C.F.R. § 5.6(d), which requires DHS components, including USCIS, to notify a FOIA requester in writing of any "adverse determination denying a request in any respect." *See also* 6 C.F.R. § 5.6(e) (addressing the content of the denial notice). Plaintiffs have requested additional information from Defendants regarding the use of "out of scope," including how it is defined.

**V.     Regulatory Change Regarding Country of Citizenship or Residency** (Dkt. 193-1 at 6-7)

The whistleblower complaint points out that USCIS did not change either Form G-639 (Freedom of Information/Privacy Act Request) or its digital portal after a November 2022 regulatory change to add citizenship or residency to the requirements regarding verification of identity, 87 Fed. Reg. 68599-01 (Nov. 16, 2022), amending 6 C.F.R. § 5.21(e). *See* Dkt. 193-1 at 6-7. Defendants claim that the FOIA office "has not previously and does not currently close FOIA requests for failure to provide . . . information" that is not a field on the Form G-639 or digital FOIA intake process, and that USCIS is currently amending both to add a field for requiring country of citizenship or residency. Dkt. 196-1 ¶¶ 21-23. Plaintiffs have requested records to confirm this statement, i.e., records relating to USCIS' instruction to FOIA staff (including intake processors and FOIA processors) for processing a request that either includes or omits country of citizenship or residency and have requested information the status of the amendments to Form G-639 and the digital FOIA intake process. This information will help Plaintiffs confirm this statement with class members and provide them with notice of this upcoming change.

**V.     Second Round of Policy Changes: Closing Cases at Case Creation/Intake Stage**

    **A.     Closing Requests for Use of Attorney's Address** (Dkt. 193-1 at 7-8)

As of September 16, 2025, Defendants implemented a new policy that "[a] representative's address, such as an attorney, is insufficient to verify the [subject of record]'s identity." *See* Dkt. 199-4 (Ex. 5, September 16, 2025 Internal FOIA Directive Instructing Staff to Close FOIA Cases Based on Attorney Mailing Addresses); *see, e.g.*, Dkt. 199-19 (Ex. 26, Case Closure Example Involving Attorney Address). Requests that include a representative's address will be closed without processing. *See* Dkt. 199-4. Although the Arnold response claims this complies with DHS regulations, Dkt. 196-1 ¶¶ 25-27, this policy is unlawful. Under 6 C.F.R. § 5.21(g), "if a third party requests records about a subject individual, the third party requester must provide verification of the subject individual's identity in the manner provided in paragraph (e)." The plain text of 6 C.F.R. § 5.21(e) requires "[t]he individual . . . provide their . . . current address." However, the regulation does not define "current address." Further, current Form G-639 provides that a subject of record "may list *a* valid residence," "commercial address," or "post office address (PO Box) *if that is how the subject receives their mail*." Dkt. 196-7 at 5 (Ex. F, Form G-639, Dec. 12, 2024 edition) (emphasis added). Notably, Form G-369 does not require *the subject's* residence or commercial address. So, requesters comply with the regulation and Form G-639 when they provide an attorney's address. *Cf. Madrid-Mancia v. Att'y Gen.*, No. 21-2291, 2025 WL 18094, at *2 (3d Cir. Jan. 2, 2025) (reasoning that, under an Immigration and Nationality Act provision, "'an address' where the [noncitizen] 'may be contacted' means just that: a place where a person can be contacted. The [noncitizen]'s current residential address. Or her cousin's. Or a PO box. So long as that address exists, it is sufficient.").

Defendants' failure to advise the public of this new requirement is particularly alarming given that the USCIS FOIA office has historically accepted an attorney's address as the requestor's address, which further evidences an intent to close requests without processing them. *See* Dkt. 193-1 at 8. The USCIS System of Records Notices (SORN) do not include any update that reflects this current practice. Dep't of Homeland Sec., *System of Records Notices (SORNs)*, https://www.dhs.gov/system-records-notices-sorns (last visited Jan. 28, 2026).

Indeed, attorneys commonly list their address to receive their clients' legal documents and the court's filings. *See* Dkt. 193-1 at 8 n.24 (referencing Federal Rule of Civil Procedure 5(b)(1)). Thus, because the regulation is silent as to the type of address required and Form G-639 permits use of an attorney's address, Defendants' policy change is unlawful and appears to have been adopted in bad faith. To that end, Plaintiffs have requested Defendants produce guidance or training regarding requests that contain attorneys' addresses.

### B. Closing Cases for Providing Multiple Last Names (Dkt 193-1 at 8)

Under the September guidance, FOIA processors close FOIA requests where the requester's surname information does not exactly match USCIS's records, including where USCIS's records reflects one surname (e.g., "Santos") but the requester provides their full surname (e.g., "Santos Perez"), or vice versa, even if there is a match between the A-number of the requestor and the A-number in the file. Dkt. 193-1 at 8; Dkt. 199-5 at 4-5 (Ex. 6, September 2025 Verification of Identity (VOI) policy guidance). This violates 6 C.F.R. § 5.21(e), which provides the subject must provide "their full name," and the Form G-639 requires the "Family Name (Last Name)," Dkt. 196-7 at 5 (Ex. F, Form G-639, Dec. 12, 2024 edition). Here, requestors include the subjects' full name as required by the regulation and Form G-639, and yet, when they do so, USCIS penalizes requestors for providing more information than required to verify identity. While Defendants claim the "[f]ailure to follow the format instructions" as the reason for closing the FOIA request, Dkt. 196-1 ¶ 28, in fact, requestors are complying with both the regulations and Form G-639 by providing their full name and being penalized for it.

Further, under 5 U.S.C. § 552(a)(3)(A), an agency "shall make . . . records promptly" available" when they are "reasonably describe[d]" and the request "is made in accordance with published rules . . . and procedures." Per 6 C.F.R. § 5.21(c), "[a] requester must describe the records sought in sufficient detail to enable [DHS] personnel to locate the system of records covering them with a reasonable amount of effort." "A request reasonably describes records if the agency is able to determine precisely what records are being requested.'" *Legal Eagle,*

*LLC, v. U.S. Dep't of Just.*, No. 24-CV-3316 (CRC), 2026 WL 35261, at *5 (D.D.C. Jan. 6, 2026) (quoting *Evans v. Fed. Bureau of Prisons*, 951 F.3d 578, 583 (D.C. Cir. 2020)). "More specifically, a reasonably-described request 'enable[s] a professional employee of the agency who was familiar with the subject area of the request to locate the record with a reasonable amount of effort.'" *Legal Eagle, LLC*, 2026 WL 35261, at *5 (quoting *Shapiro v. Cent. Intel. Agency*, 170 F. Supp. 3d 147, 155 (D.D.C. 2016)). Further, if the FOIA processor knows that the person is known by different names, as here, a reasonable search would require searches of variations of the names that are partial matches. *See Canning v. U.S. Dep't of Just.*, 919 F. Supp. 451, 461 (D.D.C. 1994) (holding that, where authorities knew at the time of the search that subject of record was known by two different names, "an adequate search should have produced files listed under both names"); *Utahamerican Energy, Inc. v. Mine Safety & Health Admin.*, 725 F.Supp.2d 78, 84 (D.D.C. 2010) ("As in *Canning*, omitting from the search an alternative name by which the subject of the search is known renders the search inadequate . . . ."). Here, FOIA staff can locate the subject's record with a reasonable amount of effort, as searchers can check the A-number provided in the request against the A-number in the file. *See* Dkt. 199-5 at 4-5. Moreover, the ICE Online Detainee Locator System only requires an individual's A-number and Country of Birth to identify an individual, indicating that the government agency can locate individuals without their last names, and with their A-numbers. *See* https://locator.ice.gov/odls/#/search. Thus, Plaintiffs' position is that Defendants' policy is unlawful and in bad faith. Plaintiffs have requested Defendants produce any records, including guidance or training, regarding closing cases where the name is not an exact match.

      **C.**    **Closing Cases for Requesters' Failure to Provide Optional Information (Dkt. 193-1 at 8-13)**

          *1.*    *A-number discrepancy even when providing documentation with correct A-number* (Dkt. 193-1 at 8)

The whistleblower complaint identifies Defendants' new policy requiring closure of FOIA requests where there is a discrepancy between the A-number in the FOIA request and

11

the file, even where the requestor provides documentation with the correct A-number. Dkt. 193-1 at 8. Defendants' justification for this policy—"the FOIA Office's good faith attempt to ensure that the right record is going to the right individual"—is unacceptable. Dkt. 196-1 ¶ 33. USCIS guidance requires that staff close FOIA requests citing no responsive record if a requester provides an erroneous A-number, despite matches to other VOI information. Dkt. 199-23 at 2 (Ex. 32, Message re: erroneous A-number data entry). Thus, even if a requester provides DHS-created documentation with their correct A-number, providing clear evidence through a government record that a responsive file must exist, FOIA staff will close the request simply because the requestor made a typographical error in listing their A-number on the request form. *See id.*; Dkt. 193-1 at 8.

Under 6 C.F.R. § 5.21(e), "[i]n order to help the identification and location of requested records, an individual may also voluntarily include other identifying information that are relevant to the request," including their A-number. Under 6 C.F.R. § 5.21(c), "[a] requester must describe the records sought in sufficient detail to enable Department personnel to locate the system of records covering them with a reasonable amount of effort." Where an agency conducts a FOIA records search using only a typographical error, where it has evidence of correct VOI information, the search is inadequate. *See, e.g.*, *Kleinert v. Bureau of Land Mgmt.*, 132 F. Supp. 3d 79, 87-88 (D.D.C. 2015) (finding that, even though the requestor misspelled the subject's last name in its initial request, and only misspelled it *once* in the amended request, if the agency "conducted [its] search using *only* the wrong spelling [of a person's last name], the search was inadequate" (emphasis added)); *Eban v. U.S. Dep't of Def.*, No. CV 23-2516 (LLA), 2025 WL 2760982, at *8 (D.D.C. Sept. 29, 2025) (finding that, if the agencies conducted the FOIA request search us ng only the wrong spelling of the subject of record's name, the search was inadequate).

Here, Defendants' policy is antithetical to the purpose of the implementing regulation, 6 C.F.R. § 5.21(e), that the A-number is only used to "help" locate requested records and that requesters can provide the A-number "voluntarily." Indeed, the policy leads to a strange result

that had requester not provided the A-number, the request would be processed. Moreover, as in *Kleinert* and *Eban*, Defendants' policy of using only an A-number that is clearly a typographical error, where it has clear evidence of the correct number in DHS-created documentation, leads to inadequate searches. For this reason, Plaintiffs' position is that Defendant's policy is unlawful and in bad faith. Plaintiffs have requested confirmation of the policy change as well as a copy of any training or guidance regarding this policy. Moreover, because Defendants have attempted to justify these changes by referencing Significant Incident Reports (SIRs) in Fiscal Year 2025, Plaintiffs have requested records explaining the SIRs' circumstances and whether the new policies were implemented to address the SIRs.

> 2.  *Discrepancies when requesters choose to provide parents' names* (Dkt. 193-1 at 8-13)

Likewise, regulations regarding the VOI information do not require requesters to provide their parents' names when making a request. *See* 6 C.F.R. § 5.21(e). Form G-639 makes clear to requesters that "You are not required to respond to every item." Dkt. 196-7 at 2 (Ex. F, Form G-639, Dec. 12, 2024 edition). Arnold's response confirms that the information about parents' names is "voluntary." Dkt. 196-1 ¶ 30. Yet, the new policy has led to case closures when there is not an exact match of requesters' parents' names even in cases where USCIS identified responsive records. Dkt. 193-1 at 8-13. This is particularly concerning because requesters may not always know exactly how their parents' names may appear in their immigration records. Again, Defendants' justification for this policy as "the FOIA Office's good faith attempt to ensure that the right record is going to the right individual" is unacceptable. Dkt. 196-1 ¶ 33. If the record has been identified, the requester has met the requirements under FOIA and the implementing regulation, as they have "describe[d] the records sought in sufficient detail to enable Department personnel to locate the system of records covering them with a reasonable amount of effort." 6 C.F.R. § 5.21(c). The agency's closure of requests when optional information contains minor discrepancies that do not impact the agency's ability to locate the records contravenes the agency's duties under FOIA. Plaintiffs have requested confirmation of

the policy change as well as a copy of any training or guidance regarding this policy. Moreover, because Defendants have attempted to justify these changes by referencing SIRs in Fiscal Year 2025, Plaintiffs have requested records explaining the SIRs' circumstances and whether the new policies were implemented to address the SIRs.

### D.   Closing Cases for Date Inversion (Dkt. 193-1 at 8)

The whistleblower identified Defendants' new policy of closing cases for inversion of the month and date in the subject of record's date of birth in FOIA requests. Dkt. 193-1 at 8. USCIS guidance now requires FOIA staff to close the request as failure to comply if the month and date of the date of birth are inverted. Dkt. 199-23 at 2 (Ex. 32, Message Clarifying Case Example Involving Erroneous A-number Data Entry). Defendants' justification for this policy as requestors' "[f]ailure to follow the format instructions results in inaccurate information and constitutes a failure to comply with the DHS VOI regulations" is unacceptable. Dkt. 196-1 ¶ 28. The implementing regulation 6 C.F.R. § 5.21(e) requires the individual provide their date of birth but does not specify the format (*i.e.*, mm/dd/yyyy) or (dd/mm/yyy); only Form G-639, Dkt. 196-7 at 4, and USCIS' FOIA Portal, i.e., FIRST, specify the format. Thus, when requestors provide the date of birth of the subject of record with month and date inverted, they are complying with the black-letter language of the regulation itself.

### **Defendants' Position**

As previously explained, over the last five years, Defendants have consistently demonstrated their good-faith commitment to satisfying their FOIA obligations and maintaining substantial compliance with this Court's injunction. *See, e.g.*, ECF No. 195 at 4 (summarizing the record of long periods of uninterrupted compliance). Defendants have also been candid with Plaintiffs and the Court in the limited instances when compliance has temporarily decreased, including most recently the decrease in compliance that occurred beginning in March 2025, which was followed by an increase in compliance as reported in December 2025. *See id.* at 4-5; *see also* Twentieth Compliance Report ¶¶ 4-6, ECF No. 192; Fifth Declaration of M. David Arnold ¶¶ 5-7, 12, 13-18, ECF No. 192-1.

On December 19, 2025, Plaintiffs filed a Notice of "Protected Whistleblower Disclosure Regarding USCIS Violations of the Freedom of Information Act, Regulations, and *Nightingale* Court Order," along with the accompanying Whistleblower Disclosure. *See* ECF Nos. 193 & 193-1. On January 5, 2026, in an effort to demonstrate USCIS's good faith and provide the Court with information in advance of the January 6, 2026 status conference, Defendants filed a response to Plaintiffs' Notice along with a Sixth Declaration of M. David Arnold, which addressed the principal allegations in the Disclosure and explained that USCIS has acted in good faith in all of its efforts to comply with the Court's injunction. *See* ECF Nos. 196 & 196-1. Above, Plaintiffs raise numerous legal disputes with actions alleged in the Disclosure concerning USCIS's implementation of the FOIA. But the claims in this case, and the Court's injunction, are about the timeliness of FOIA responses, not the substance or scope of those responses or the policies adopted to prepare those responses. *See* ECF No. 1 ¶ 75 (alleging a "pattern or practice of failing to make determinations regarding A-File FOIA requests within the statutory time period'); *see id.* ¶ 80 (similar); *see also* ECF No. 90 at 1 (enjoining Defendants "from further failing to adhere to the statutory deadlines for adjudicating A-File FOIA requests"). Moreover, none of Plaintiffs' legal disputes suggest that USCIS has acted in bad faith in implementing the Court's injunction, particularly in light of the good faith and transparency that USCIS has demonstrated over the many years since the injunction issued.

Following the January 6, 2026 status conference, Defendants conferred with counsel for Plaintiffs and for the whistleblower regarding the 47 exhibits cited in the Disclosure which the whistleblower's counsel provided counsel for the parties. *See* ECF No. 196 at 3 n.1. Based on the agreements reached in those conferrals, on January 22, 2026, Defendants filed a Joint Notice submitting 36 of those exhibits to the public docket, with redactions for certain personally identifying information ("PII") of Government employees and third parties. *See* ECF No. 199. Following that filing, the parties further conferred and agreed that 4 additional exhibits may be filed publicly, with similar PII redactions, and filed a second Joint Notice submitting those 4 exhibits to the public docket on January 30, 2026 (the same date as this

filing). *See* ECF No. 200. As to the remaining 7 exhibits, Defendants anticipate moving the Court for leave to file some or all under seal, although Defendants are in the process of conferring with Plaintiffs in an attempt to reach agreement as to versions of those exhibits which may be filed publicly with redactions for privilege and PII.

Finally, as previously noted, in order to minimize or avoid the need for discovery-related motion practice, Defendants are amenable to reviewing any requests for additional information that Plaintiffs wish to submit, and negotiating in good faith with Plaintiffs over those requests. *See* ECF No. 195 at 6; ECF No. 196 at 3. On January 22, 2026, Plaintiffs sent Defendants the attached letter enclosing their requests. *See* Exhibit A. Defendants' review of those requests is ongoing, and Defendants will confer with Plaintiffs over any additional objections they have in response to the requests, but as an initial matter, Defendants note that many of the requests broadly seek "any records" regarding various topics addressed in the Disclosure and/or the Sixth Arnold Declaration. *See id.* at 2-3. Plaintiffs ask that the term "records" be "give[n] the broadest meaning" and include essentially any type of document ranging from policies and manuals to "texts, electronic communications via any platform," "videotapes, audiotapes, e-mails, faxes," and "notes." *See id.* at 1. Such requests are akin to formal discovery requests, which these informal negotiations are intended to avoid. Defendants will not provide "any records" but will provide responsive, non-privileged, electronic files or information that can reasonably be obtained without lengthy electronic-database searches and collections.

Given the breadth of Plaintiffs' requests and that the requests were submitted just last week, Defendants do not currently have an anticipated timeframe for their responses. Defendants expect that many of the documents that Plaintiffs seek contain PII of third parties and government officials and other information that is subject to the requirements of the Privacy Act, 5 U.S.C. § 552a, *et seq.*, and other applicable laws and regulations, and thus will need to be designated as confidential under the Protective Order in this case. *See* ECF No. 56; *see also id.* ¶ 1(a) ("This Order shall govern the use and disclosure of *any* document or

information in connection with the Litigation that" is subject to the Privacy Act and other applicable laws, regulations, and policies) (emphasis added). Defendants further expect that many of the documents that Plaintiffs seek will contain privileged information, which Defendants will need to redact where feasible. Defendants will endeavor to provide responsive, non-privileged information to Plaintiffs as quickly as practicable and on a rolling basis over the coming weeks as information becomes available.

Respectfully submitted,

| | |
|---|---|
| /s/Trina Realmuto<br>Trina Realmuto (CA SBN 201088)<br>Mary Kenney*<br>National Immigration Litigation Alliance<br>10 Griggs Terrace<br>Brookline, MA 02446<br>(617) 819-4447<br>trina@immigrationlitigation.org<br><br>Matt Adams (WSBA No. 28287)*<br>Northwest Immigrant Rights Project<br>615 Second Avenue, Suite 400<br>Seattle, WA 98104<br>(206) 957-8611<br><br>Raul Pinto ((DC Bar No. 90013180)*<br>American Immigration Council<br>PMB2026<br>2001 L Street N.W., Suite 500<br>Washington, DC 20036<br>(202) 507-7549<br><br>Stacy Tolchin (CA SBN 217431)<br>Law Offices of Stacy Tolchin<br>634 S. Spring St., Suite 500A<br>Los Angeles, CA 90014<br>(213) 622-7450<br><br>*Counsel for Plaintiffs*<br><br>*Admitted pro hac vice<br><br>Dated: January 30, 2026 | BRETT A. SHUMATE<br>Assistant Attorney General<br>Civil Division<br><br>ELIZABETH J. SHAPIRO<br>Deputy Branch Director<br><br>/s/Cristen C. Handley<br>CRISTEN C. HANDLEY, MO Bar No. 69114<br>Trial Attorney<br>United States Department of Justice<br>Civil Division, Federal Programs Branch<br>1100 L Street, NW<br>Washington, D.C. 20005<br>(202) 305-2677<br>Cristen.Handley@usdoj.gov<br><br>*Counsel for Defendants* |