**IN THE UNITED STATES DISTRICT COURT**

**FOR THE NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO/OAKLAND DIVISION**

| | |
|---|---|
| Zachary NIGHTINGALE, *et al.*,<br><br>              Plaintiffs,<br><br>     v.<br><br>U.S. CITIZENSHIP AND IMMIGRATION<br>SERVICES, *et al.*,<br><br>              Defendants. | No. 3:19-cv-03512-WHO<br><br>**SEVENTH DECLARATION OF<br>M. DAVID ARNOLD** |

I, M. David Arnold, pursuant to 28 U.S.C. § 1746, hereby declare as follows:

     1.     I currently serve as Director of the National Records Center ("NRC") for U.S Citizenship and Immigration Services ("USCIS").

     2.     I have almost 30 years of experience with the U.S. Federal Government serving USCIS as the NRC Director since August 15, 2021, preceded by more than 25 years of distinguished service with the U.S. Air Force. In my current role as NRC Director, I am responsible for leading a team of over 300 federal and 400 contract personnel at the NRC. The NRC manages and operates USCIS's Freedom of Information and Privacy Act ("FOIA/PA") Program.

     3.     As the NRC Director, I am responsible for overseeing all policy, planning, management, and execution functions for USCIS's FOIA/PA Program. I make this declaration in my official capacity based on my personal knowledge, my review of the records discussed herein and kept in the ordinary course of business, and information provided to me in the course of my official duties.

4.      The purpose of this declaration is to explain the information that is subject to the attorney-client and deliberative process privileges within 7 exhibits first provided by the Government Accountability Project ( "GAP") on December 29, 2025, to both Plaintiffs' counsel and Defendants' counsel and referenced in the December 19, 2025 GAP Letter ("Letter") to Congress, which was filed in this litigation as part of Plaintiffs' Notice of "Protected Whistleblower Disclosure Regarding USCIS Violations of the Freedom of Information Act, Regulations, and *Nightingale* Court Order," ( "Notice").  *See* ECF Nos. 193 & 193-1.

5.      To assist in the Court's review, those 7 exhibits are being lodged under seal as attachments to this declaration in the form in which they were provided by GAP (i.e. with redactions for certain personally identifiable information ("PII"), but with no redactions for privilege).  These sealed exhibits are accompanied by cover sheets identifying the exhibit numbers assigned by GAP, with the annotation "GAP's Exhibit," for clarity.  Additionally, in the interest of publicly disclosing non-privileged information, this declaration is accompanied by publicly filed versions of each of the 7 exhibits, with redactions for the privileged information discussed herein, as well as additional redactions of PII of government employees and third-party individuals (including the whistleblower).  The sealed versions of these exhibits contain transparent, "redline" redactions identifying the information that is redacted in the public versions.

### Exhibit 3

6.      Exhibit 3 is bates stamped by GAP as pages 12 through 15, was provided by GAP with certain PII already redacted, and consists of internal email communication between USCIS NRC leadership and FOIA Office personnel dated May 27, 2025 through June 4, 2025.  Specifically, Exhibit 3 consists of internal, pre-decisional communications reflecting deliberations regarding a proffered idea from a FOIA Office employee to  NRC leadership that was never implemented, and deliberations between NRC leadership and FOIA Office leadership regarding methods and/or

approaches for enforcement of a DHS regulation requiring FOIA requesters to provide their country of citizenship or residency for verification of identity ("VOI"), which has not been finalized. *See* 6 C.F.R. § 5.21(e).

7.    As noted in my prior declaration, the email in which a FOIA Office employee suggested "a way to close 99% of FOIA requests as failure to comply" was presumably submitted to NRC leadership in response to encouragement provided to all FOIA staff to provide ideas and suggestions on ways to improve the FOIA program and create efficiencies. *See* Sixth Declaration of M. David Arnold ¶ 20, ECF No. 196-1 ("6th Arnold Decl."). While the employee was encouraged to "keep [the ideas] coming" and received some marginal support as the employee identified a regulatory VOI requirement that was not being satisfied, the proffered idea to use the suggestion to close 99% of FOIA requests as failure to comply was not implemented. *Id*. The suggestion, however, did lead to other internal, pre-decisional discussions regarding thoughts, ideas, proposals and suggestions for enforcement of the DHS regulation that were not implemented and preceded the agency's proposed final action regarding enforcement, which also has not yet been implemented. *Id*. at ¶ 22.

8.    To aid the Court's review, this declaration is accompanied by a sealed copy of Exhibit 3 as provided by GAP, which should not be filed publicly, and a public copy of Exhibit 3 with redactions for the privileged information described herein, as well as additional redactions for PII. *See supra* ¶ 5.

9.    The following information contained within Exhibit 3 is subject to the deliberative process privilege:

a.    Page 12 of Exhibit 3 consists of an email string containing two emails. The first May 27, 2025 email on page 12 is the suggestion from a FOIA Office employee to NRC leadership stating "Here's a way to close 99% of FOIA requests as failure to comply[.]" The

second email is the May 27, 2025 response from NRC leadership to the FOIA Office employee who was encouraged to "keep [the ideas] coming [ ][.]" Information within these emails that has not already been officially publicly disclosed in my January 5, 2026 declaration is subject to the deliberative process privilege. *See* 6th Arnold Decl. ¶¶ 20-22. Specifically, except for the date and time emails were sent, the agency component in the signature line of an email, a portion of the FOIA Office employee's suggestion that was already publicly disclosed, the citation to 6 C.F.R. § 5.21 (e) and the content of that provision, and the response by NRC leadership to the suggestion, which also has already been publicly disclosed, the remaining information in these emails is subject to the deliberative process privilege. *Id*. Certain information was publicly disclosed in my prior declaration in an effort to respond as thoroughly as possible to the specific allegations in the Letter citing and purporting to quote language from this Exhibit, while preserving the privileged information in the rest of the Exhibit.

b.      The remaining information in the May 27, 2025 through June 4, 2025 emails contained on pages 13 through 15 of Exhibit 3 is also subject to the deliberative process privilege, except for the date and time emails were sent, the agency component in the signature line of the emails, and my title.

10.      This information reflects the deliberative, pre-decisional back-and-forth discussions essential to the decision-making process in which ideas or suggestions are proffered, analyzed, probed and, as often is the case, rejected and/or used as a springboard for other suggestions, thoughts, or ideas. This deliberative information is also pre-decisional because the suggestion by the FOIA Office employee was proposed for future implementation, although the suggestion was never implemented. Similarly, the suggestions, ideas, and discussions regarding the enforcement of the VOI regulation were for future potential implementation, and final action is still pending.

11.     Public disclosure of this information would jeopardize USCIS's ability to engage in decision making by discouraging future candid discussion and debate within USCIS. USCIS personnel would be reluctant to make suggestions or share their opinions for or against a particular idea or suggested course of action if those pre-decisional comments were subject to disclosure and to future use for the purpose of challenging the final decision and/or the process by which it was achieved.

12.     It is reasonable to expect that, if the Court elects to make these deliberations and discussion public, it will influence the future actions of USCIS personnel to the detriment of the decision-making process and the ability to make well-informed decisions at USCIS and, particularly, within the NRC and its FOIA/PA program. Specifically, disclosure would chill NRC and FOIA Office personnel from proffering suggestions and recommendations regarding the implementation of the FOIA/PA program or offering candid evaluations, thoughts, or ideas regarding those suggestions and recommendations or about the FOIA/PA program and its policies. If NRC and FOIA Office personnel are aware that their opinions, ideas, deliberations, and recommendations may be subject to public disclosure—and the scrutiny and criticism that may follow—the candor of their views would be chilled. This is especially true when those opinions or suggestions may be taken out of context or not understood in the full context in which they were made or intended.

13.     Public disclosure of this information would also confuse the issues and mislead the public. Specifically, public dissemination of these deliberative communications would suggest reasons and rationales for the enforcement of the DHS regulation that are not in fact the reasons underlying the final action taken, if any. Moreover, since the agency has not yet taken any final action regarding the enforcement of the DHS regulation, disclosure would confuse the public into thinking certain actions or decisions have already been implemented.

**Exhibit 7**

14.    Exhibit 7 is bates stamped by GAP as pages 29 through 35, was provided by GAP with certain PII already redacted, and contains internal email communications from September 16, 2025 through October 2, 2025 among USCIS NRC and FOIA Office personnel and USCIS Office of Chief Counsel ("OCC") attorneys.

15.    Exhibit 7 contains internal, pre-decisional, deliberative communications reflecting the viewpoints, opinions, ideas, suggestions, and reasoning of USCIS personnel probing and evaluating FOIA guidance as part of the pre-decisional deliberative process of determining whether to change or refine the then-current guidance or its implementation.  As one of the largest FOIA programs in the federal government, the USCIS FOIA/PA program is continuously undergoing a process of examining and refining guidance implementing its program.  And like many government organizations, this process is often triggered by suggestions, recommendations, viewpoints, or ideas submitted by the organization's personnel, which are evaluated, debated, probed, and discussed.

16.    To aid the Court's review, this declaration is accompanied by a sealed copy of Exhibit 7 as provided by GAP, which should not be filed publicly, and a public copy of Exhibit 7 with redactions for the privileged information described herein, as well as additional redactions for PII. *See supra* ¶ 5.  I will address the emails in chronological, rather than bates stamped paginated order, to describe the information subject to privilege within Exhibit 7 as follows:

    a.    Page 31 of Exhibit 7 contains an email chain consisting of two emails.  The first (sent on September 16, 2025) from the FOIA Officer account consists of FOIA guidance for processing FOIA requests, which is not privileged.  The second consists of a September 19, 2025 email from an NRC employee to FOIA Office leadership flagging and inquiring about certain provisions of the FOIA Office's then-current processing guidance and providing the employee's thoughts, opinions, and viewpoint regarding those provisions.

A portion of the subject line revealing the type of guidance being flagged, along with the employee's thoughts, opinions, and viewpoint regarding those provisions are all subject to the deliberative process privilege.

b.    Page 29 of Exhibit 7 contains three emails and the header information of the September 19, 2025 email addressed above. *See supra* ¶ 16(a). The chronologically first September 19, 2025 email of the remaining three emails on this page reflects FOIA Office leadership's response to the NRC employee's email flagging, opining, and inquiring about certain provisions of the then-current FOIA guidance. In that email, FOIA leadership states the next steps towards responding and reasons for the next steps. The chronologically next September 23, 2025 email is from the NRC employee to another member of FOIA Office leadership reflecting the NRC employee's thoughts regarding the flagged provisions of the FOIA guidance. The chronologically last September 23, 2025 email on this page is a response from FOIA Office leadership to the NRC employee in which FOIA Office leadership provides thoughts and reasoning regarding the flagged FOIA guidance provisions. A portion of the subject line for all four of these emails that would identify the particular FOIA guidance provisions flagged are subject to the deliberative process privilege. The NRC employee's general thoughts about the flagged guidance provisions in the September 23, 2025 email from the employee are also subject to the deliberative process privilege. Finally, in the last email, the information identifying the flagged FOIA guidance and FOIA leadership's thoughts, reasoning, and impressions regarding the flagged guidance, all of which is part of the deliberative process involved when evaluating and probing existing agency policy or guidance for potential change or revision, are subject to the deliberative process privilege.

c.      Page 30 of Exhibit 7 contains the chronologically final September 23, 2025 email from FOIA Office leadership addressed above. *See supra*, ¶ 16(b).  It also contains the NRC employee's response to that email sent the same day, on September 23, 2025.  The NRC employee's response provides the employee's viewpoint, opinion, and reasoning regarding the flagged guidance provisions being considered for change or revision and seeks additional input as part of those deliberations.  A portion of the subject line in this September 23, 2025 email that would identify the particular FOIA guidance provisions flagged and the thoughts, opinions, and viewpoint of the NRC employee regarding those provisions are all subject to the deliberative process privilege.

d.      Page 32 of Exhibit 7 contains the NRC employee's September 23, 2025 response to FOIA Office leadership already addressed above. *See supra* ¶ 16(c).  It also contains a September 28, 2025 email from the NRC employee to a USCIS OCC attorney.  The September 28, 2025 email seeks legal advice and describes the provisions of the FOIA guidance flagged for deliberative discussion regarding potential change or revision, along with the NRC employee's viewpoint, reasoning, thoughts, and opinions regarding those provisions and a suggested potential action as part of those deliberations.  The subject line of the September 28, 2025 email is subject to both the attorney-client and deliberative process privileges, as it would reveal the particular guidance that is the subject of deliberations regarding potential change or revision and the request for legal advice.  The remainder of the email, other than the date and time the email was sent and the agency component in the signature line of the email, is also subject to both of these privileges.

e.      Page 33 of Exhibit 7 consists of two emails and part of the header of a third September 28, 2025 email addressed above. *See supra* ¶ 16(d).  The chronologically next October 1, 2025 email of the remaining two emails is from an OCC attorney to the NRC employee

explaining reasons for the attorney's involvement in responding to the request for legal advice, asserting certain inquiries to better understand the posture of the legal issue for which legal advice was sought, and providing initial thoughts regarding the scope of individuals to be included in the legal discussion. The email is stamped "***Warning***Attorney/Client Privilege***Attorney Work Product***" and includes a notation explaining, in part, that "[t]his communication . . . may contain confidential and legally privileged information" and to "[p]lease consult with the . . . Office of Chief Counsel before disclosing any information contained in this email." The chronologically last October 1, 2025 email on this page is the response from the NRC employee addressing the OCC attorney's questions, explaining the reasons for seeking legal advice and the employee's understanding of the FOIA Office leadership's viewpoint, thoughts, opinions, and suggestions regarding the flagged provisions as part of the deliberations to either change or revise the provisions, along with the employee's own viewpoint, thoughts, opinions and ideas. Information in both of these October 1, 2025 emails is subject to the attorney-client and deliberative process privileges. Specifically, the subject of the October 1, 2025 email from the OCC attorney is subject to both privileges as it would reveal the particular guidance that is the subject of deliberations regarding potential change or revision and the request for legal advice. Similarly, the remainder of both emails, other than the date and time the emails were sent, the agency component in the signature line of the emails and the legend affixed to the bottom of the October 1, 2025 email sent from the OCC attorney, are also subject to both privileges.

   f.   Page 35 of Exhibit 7 consists of a partial email containing only the header information for that email, and two other September 30, 2025 and October 2, 2025 emails. The email with a partial subject line is already redacted by GAP to withhold the sender and recipient of the email, leaving only the date and time fields and the subject field of the email remaining.

The following September 30, 2025 email appears to forward the prior email to an NRC leader, stating only "FYSA."  The final October 2, 2025 email on this page is a response from the NRC leader to the NRC employee.  The subject line in all three of these emails is subject to the deliberative process and attorney-client privileges as the subject line would reveal the particular guidance that is the subject of deliberations regarding potential change or revision and the request for legal advice.

g.  Finally, Page 34 of Exhibit 7 contains two emails, including the NRC leader's October 2, 2025 response addressed above.  *See supra* ¶ 16(f).  The remaining October 2, 2025 email consists of a response from the NRC employee to the NRC leader acknowledging the instructions on how to proceed regarding the flagged provisions of the FOIA guidance.  The subject line of this email is subject to the attorney-client and deliberative process privileges as it reveals the particular guidance that is the subject of deliberations regarding potential change or revision and the request for legal advice.  Information in the body of this email that would reveal the specific guidance provisions flagged and that are the subject of the deliberative discussions regarding potential change or revision is also subject to the deliberative process privilege.

17.    The information in the subject line of the emails identified in paragraphs 16(d) through 16(g), *supra*, are subject to the attorney-client privilege because disclosure would reveal the subject matter of the legal advice sought.  The information identified within the September 28, 2025 and October 1, 2025 emails in paragraphs 16(d) and 16(e), *supra*, are subject to the attorney-client privilege because they involve confidential attorney-client communications regarding the specific subject matter for which legal advice was sought.

18.    In the September 28, 2025 email identified in paragraph 16(d), *supra*, the NRC employee is requesting legal advice about the flagged FOIA guidance provisions and is sharing

information about those provisions and the deliberative discussions surrounding those provisions which are the basis for the request for legal guidance.  In the October 1, 2025 emails identified in paragraph 16(e), an OCC attorney asks background questions about the legal issue associated with the legal advice sought and provides thoughts regarding the scope of individuals that should be involved in the legal discussions.  The NRC employee responds by answering those questions posed by the OCC attorney, providing reasons for seeking legal advice, and again summarizing the deliberative conversations regarding the flagged FOIA guidance provisions.

19.    This information is subject to the attorney-client privilege and should be redacted because it consists of confidential information shared between an attorney and his or her client relating to the flagged FOIA guidance for which the NRC employee was seeking legal advice.  The information is confidential as it was shared only among those USCIS employees involved in the deliberative discussions or those who supervise those individuals and OCC attorneys.

20.    To compel the disclosure of this type of information would have an immediate impact and drastic chilling effect on interactions between USCIS attorneys and USCIS employees.  Specifically, disclosure would chill frank discussion between legal counsel and its client, cause confusion since the emails do not represent final agency action and impair legal analysis as counsel would be hesitant to address potential weaknesses, recommend changes, or provide alternative legal avenues for discussion.

21.    The information I identified as being subject to the deliberative process privilege in Exhibit 7, *see supra* ¶¶ 16(a-g), should also be redacted because it reflects the deliberative, pre-decisional back-and-forth discussions essential to the decision-making process in which existing agency policy is flagged, probed, evaluated, and analyzed for potential changes.  While the emails may contain some purported factual information, that information is interwoven into the reasoning, thoughts, opinions, and viewpoints regarding the flagged provisions, all of which is subject to the

deliberative process privilege. These deliberative discussions also address who or what entities should be involved in the decision-making process. This deliberative information is pre-decisional as the discussions concern potential future changes or revisions to then-current guidance that had not yet been implemented and thoughts regarding the scope of future deliberations.

22.    Public disclosure of this information would jeopardize USCIS's ability to engage in decision making by discouraging future candid discussion and debate within USCIS regarding its policies. USCIS personnel would be reluctant to flag concerns, make suggestions, or share their opinions for or against a particular idea or suggested course of action regarding agency policies if those pre-decisional comments were subject to disclosure, and to future use for the purpose of challenging the final decision and/or the process by which it was achieved.

23.    It is reasonable to expect that, if the Court elects to make these deliberations and discussion public, it will influence the future actions of USCIS personnel to the detriment of the decision-making process and the ability to make well-informed decisions at USCIS and, particularly, within the NRC and its FOIA/PA program. Specifically, disclosure would chill NRC and FOIA Office personnel from flagging and providing candid thoughts, opinions, evaluations, suggestions, and back-and-forth discussions regarding existing agency policies and the decision-making process to allow for the potential change or refinement of those policies. If NRC and FOIA Office personnel are aware that their evaluations, opinions, deliberations, and recommendations may be subject to public disclosure—and the scrutiny and criticism that may follow—the candor of their views would be chilled. This is especially true when those opinions may be taken out of context or not understood in the full context in which they were made or intended.

24.    Public disclosure of this information would also confuse the issues and mislead the public. Specifically, public dissemination of these communications would suggest reasons and rationales for the decision either for or against changing agency guidance, that may not accurately

or fully represent the reasons underlying the final action taken, if any. Moreover, the discussions may confuse the public into believing certain actions have been taken or certain changes have been implemented due to the scope of the discussions involved.

**Exhibit 13**

25.     Exhibit 13 is bates stamped by GAP as pages 64 through 67, was provided by GAP with certain PII already redacted, and consists of an internal October 30, 2025 email from NRC leadership to NRC Associate Center Directors ("ACDs") sharing the preliminary, draft Fiscal Year ( "FY") 2026 Immigration Records and Identity Services ("IRIS") Directorate, NRC Division, and NRC Branch strategic goals that were submitted by the ACDs' teams across the NRC, and not just the FOIA/PA program, for consideration by NRC leadership, and eventually, IRIS leadership for final approval. The goals are draft, preliminary goals as the email seeks questions or concerns regarding the draft goals and notes that the goals contain certain information that will be removed when distributed to the floor. Moreover, to date, the goals have not yet been finalized.

26.     These preliminary, draft goals provided by the NRC teams for consideration by NRC and, eventually, IRIS leadership are part of the deliberative process undertaken to assess, formulate, and finalize strategic goals for IRIS, the NRC, and the NRC branches. This email reflects the draft target goals proposed by the NRC ACDs' teams, the reasons they believe the goals are important and their proposed benchmarks for measuring progress towards achieving the goals. This is part of the on-going, back-and-forth deliberations necessary when proposing, reviewing, debating, and refining strategic goals for final approval.

27.     While the draft strategic goals contain some purported factual information, that information is interwoven into the proposed benchmarks for achieving the draft strategic goals and disclosure of that information would reveal information about the draft, proposed preliminary goals, and the draft proposed benchmarks for achieving those goals that were under discussion.

28.     The draft preliminary strategic goals and the NRC team that submitted the goals are subject to the deliberative process privilege as that information would reveal the number of goals being considered by each team; thoughts and opinions regarding why the teams considered the draft goals to be important; and the proposed benchmarks for achieving those goals.  Information regarding the targeted distribution date of the strategic goals is also subject to the deliberative process privilege as that information is intertwined into the decision-making process by suggesting a targeted completion date in the future, which was pre-decisional and ultimately changed.

29.     To aid the Court's review, this declaration is accompanied by a sealed copy of Exhibit 13 as provided by GAP, which should not be filed publicly, and a public copy of Exhibit 13 with redactions for the privileged information described herein as well as additional redactions for PII. *See supra* ¶ 5.

30.     The information I identified as being subject to the deliberative process privilege in Exhibit 13 above, *see supra* ¶¶ 25-28, reflects the deliberative, pre-decisional back-and-forth discussions essential to the decision-making process in which agency strategic goals, their importance, and benchmarks for achieving the goals are developed.  The information reflects the internal deliberative process of review, discussion, and development of ideas associated with the development of the FY 2026 strategic goals that, to date, have not yet been finalized.

31.     Public disclosure of this information would jeopardize USCIS's ability to engage in the decision-making process by discouraging future candid discussion and debate within USCIS. USCIS personnel would be reluctant to propose their candid thoughts regarding suggested goals, associated benchmarks and their thoughts regarding why they believe the suggested goals are important if those pre-decisional thoughts, suggestions, proposals, and ideas were subject to disclosure, and to future use for the purpose of challenging the final decision and/or the process by which it was achieved or to challenge other initiatives.

32.     It is reasonable to expect that, if the Court elects to make these deliberative, draft discussions and proposals public, it will influence the future actions of USCIS personnel to the detriment of the decision-making process and the ability to make well-informed decisions at USCIS and, particularly, within the NRC and its branches.  Specifically, disclosure would chill NRC and branch personnel from providing candid proposals, suggestions, reasoning, and back-and-forth discussions expressing viewpoints, ideas, opinions, and recommendations regarding USCIS strategic goals.  If personnel within the NRC and its branches are aware that their suggestions, reasoning, evaluations, opinions, deliberations, and recommendations may be subject to public disclosure—and the scrutiny and criticism that may follow—the candor of their proposals, views, and ideas would be chilled.  This is especially true when the disclosed material consists of preliminary, non-final proposals, ideas, and reasoning subject to change before being finalized.

33.     Public disclosure of this information would also confuse the issues and mislead the public.  Specifically, public dissemination of this preliminary, draft information may lead the public to believe that these draft goals and benchmarks represent final agency action, resulting in misplaced reliance or lack of reliance on those preliminary, draft goals.  Moreover, disclosure may suggest reasons and rationales associated with the goals and benchmarks that may not in fact represent the reasoning behind the final goals and benchmarks implemented.

### Exhibit 23

34.     Exhibit 23 is bates stamped by GAP as pages 112 through 113, was provided by GAP with certain PII already redacted, and consists of two emails dated November 17, 2025 and November 19, 2025.

35.     Exhibit 23 consists of internal, pre-decisional, deliberative communications reflecting the viewpoints, opinions, ideas, suggestions, and reasoning of USCIS personnel probing

and evaluating then-current FOIA guidance as part of the pre-decisional, deliberative process of determining whether to change or refine the guidance or its implementation.

36.    To aid the Court's review, this declaration is accompanied by a sealed copy of Exhibit 23 as provided by GAP, which should not be filed publicly, and a public copy of Exhibit 23 with redactions for the privileged information described herein, as well as additional redactions for PII. *See supra* ¶ 5.  For clarity, I will address the emails within Exhibit 23 in chronological, rather than bates stamped paginated, order as follows:

a.    Page 113 of Exhibit 23 contains a November 17, 2025 email from an NRC leader to an NRC employee reflecting the leader's thoughts about timing for potential updates in guidance and next steps for implementation of guidance while awaiting the updates.  The particular type of guidance at issue and for which NRC was awaiting updates is subject to the deliberative process privilege because disclosure of this information will reveal the flagged provisions that are part of the deliberative discussions regarding potential change or revision.

b.    The second, November 19, 2025 email contained on page 112 through the top of page 113 of Exhibit 23 consists of the NRC employee's response to the NRC leader following the issuance of the updated guidance.  The email reflects the provisions of the then-current FOIA Office guidance flagged for potential change or revision, as well as the employee's viewpoint, reasoning, thoughts, and ideas regarding those provisions, all of which is subject to the deliberative process privilege.  The email also contains discussion and inquiries regarding the future decision-making process, as well as next steps for potential changes or clarification of guidance, which are also subject to the deliberative process privilege.  While the email contains some purported factual information, that information is

interwoven into the NRC employee's reasoning, thoughts, opinions, and viewpoint regarding the flagged provisions, all of which is subject to the deliberative process privilege.

37.    The information identified as being subject to the deliberative process privilege in Exhibit 23 above, *see supra* ¶¶ 36(a) & (b), reflects the deliberative, pre-decisional back-and-forth discussions essential to the decision-making process in which existing agency policy is flagged, probed, evaluated, and analyzed for potential changes.  Here, this information reflects the internal deliberative process associated with the identification, evaluation, analysis, and deliberative discussion of the flagged provisions of the FOIA guidance for potential change or revision.  This information is pre-decisional as the deliberations for potential changes to the then-current guidance were for the future and had not yet been implemented, if at all, and the inquiries regarding the decision-making process was also for future implementation, if at all.

38.    Public disclosure of this information would jeopardize USCIS's ability to engage in decision making by discouraging future candid discussion and debate within USCIS regarding its policies.  USCIS personnel would be reluctant to flag concerns, make suggestions, or share their opinions for or against a particular idea or suggested course of action regarding agency policies if those pre-decisional comments were subject to disclosure, and to future use for the purpose of challenging the final decision and/or the process by which it was achieved.

39.    It is reasonable to expect that, if the Court elects to make these deliberations and discussion public, it will influence the future actions of USCIS personnel to the detriment of the decision-making process and the ability to make well-informed decisions at USCIS and, particularly, within the NRC and its FOIA/PA program.  Specifically, disclosure would chill NRC and FOIA Office personnel from flagging and providing candid thoughts, opinions, evaluations, suggestions, and back-and-forth discussions regarding existing agency policies to allow for the potential change or refinement of those policies.  If NRC and FOIA Office employees are aware that their evaluations,

opinions, deliberations, and recommendations may be subject to public disclosure—and the scrutiny and criticism that may follow—the candor of their views would be chilled. This is especially true when those opinions may be taken out of context or not understood in the full context in which they were made or intended.

40.    Public disclosure of this information would also confuse the issues and mislead the public. Specifically, public dissemination of these communications would suggest reasons and rationales for or against changing agency guidance that may not accurately or fully represent the reasons underlying the final action taken, if any. Moreover, the discussions may confuse the public into believing certain actions have been taken or certain changes have been implemented due to the scope of the discussions involved.

## **Exhibit 29**

41.    Exhibit 29 is bates stamped by GAP as page 139 and was provided by GAP with certain PII already redacted. Exhibit 29 contains a partial November 17, 2025 email from an NRC employee to an NRC leader reflecting the employee's thoughts and reasoning regarding the flagged FOIA guidance provisions, observations regarding the perceived impact of the flagged provisions, and an inquiry seeking instruction regarding use of the guidance in fulfilling part of the FOIA/PA program operations. Exhibit 29 also contains the NRC leader's November 17, 2025 email response that was addressed above. *See supra* ¶ 36(a).

42.    To aid the Court's review, this declaration is accompanied by a sealed copy of Exhibit 29 as provided by GAP, which should not be filed publicly, and a public copy of Exhibit 29 with redactions for the privileged information described herein, as well as additional redactions for PII. *See supra* ¶ 5.

43.    The following information contained within Exhibit 29 is subject to the deliberative process privilege:

a.    Information in the November 17, 2025 email on page 139 of Exhibit 29 is subject to the deliberative process privilege to the same extent and for the same reasons as noted above in Exhibit 23.  *See supra* ¶¶ 36(a) & 37-40.

b.    Information in the other November 17, 2025 email on page 139 of Exhibit 29 is also subject to the deliberative process privilege.  Specifically, the employee's viewpoint and thoughts regarding the flagged provisions based on the employee's observations, the employee's brief analysis (before the email is cut off), and a portion of the NRC employee's request for input regarding next steps in implementation of the guidance.  Disclosure of this information would reveal the employee's deliberations regarding potential change or revision of the flagged provisions.  The request for input regarding next steps reveals the flagged guidance subject to deliberations and thoughts and deliberations regarding how to proceed going forward with implementing the FOIA/PA program mission.

44.    The information identified as being subject to the deliberative process privilege in Exhibit 29 above, *see supra* ¶¶ 43(a)-(b), reflects the deliberative pre-decisional back-and-forth discussions essential to the decision-making process in which existing agency policy is flagged, probed, evaluated, and analyzed for potential changes.  Here, this information reflects the internal deliberative process associated with the identification and analysis of the flagged provisions of the then-current FOIA guidance for potential change or revision.  This information is pre-decisional as the deliberations concern potential future changes to the then-current guidance or its implementation that had not yet been implemented, if at all.  The NRC employee's inquiry and thoughts concerning next actions is also pre-decisional to the leader's decision regarding those actions issued later that day as indicated in the following email on that same page of Exhibit 29.   To the extent the employee's observations are considered factual in nature, that information is interwoven into the

NRC employee's reasoning, thoughts, opinions, and viewpoint regarding the flagged provisions, all of which is subject to the deliberative process privilege.

45.     Public disclosure of this information would jeopardize USCIS's ability to engage in decision making by discouraging future candid discussion within USCIS regarding its policies. USCIS personnel would be reluctant to flag concerns, make suggestions, or share their opinions for or against a particular idea or suggested course of action regarding agency policy if those pre-decisional comments were subject to disclosure, and to future use for the purpose of challenging the final decision and/or the process by which it was achieved.

46.     It is reasonable to expect that, if the Court elects to make these deliberations and discussion public, it will influence the future actions of USCIS personnel, to the detriment of the decision-making process, and the ability to make well-informed decisions at USCIS and, particularly, within the FOIA/PA program.  Specifically, disclosure would chill NRC and FOIA Office personnel from flagging and providing candid thoughts, opinions, evaluations, suggestions, and back-and-forth discussions regarding existing agency policies to allow for the potential change or refinement of those policies.  If NRC and FOIA Office employees are aware that their evaluations, opinions, deliberations, and recommendations may be subject to public disclosure—and the scrutiny and criticism that may follow—the candor of their views would be chilled.  This is especially true when those opinions may be taken out of context or not understood in the full context in which they were made or intended, which is especially true when only a portion of an email is disclosed.

47.     Public disclosure of this information would also confuse the issues and mislead the public.  Specifically, public dissemination of these communications would suggest reasons and rationales for the decision either for or against changing agency guidance that are not in fact the reasons underlying the final action taken, if any.  Moreover, the discussions may confuse the public

into believing certain actions have been taken or certain changes have been implemented due to the scope of the discussions involved.

## Exhibit 30

48.    Exhibit 30 is bates stamped by GAP as page 141, was provided by GAP with certain PII already redacted, and consists of an NRC leader's November 18, 2025 email recapping the leader's understanding of discussions by NRC and FOIA Office personnel at an ACDs' meeting.  As reflected in that summary, during at least a portion of the meeting, NRC and FOIA Office personnel discussed, debated, and brainstormed ideas, thoughts, opinions, suggestions, and recommendations for the future implementation of the FOIA/PA program.  Administrative information was also shared at this meeting.

49.    To aid the Court's review, this declaration is accompanied by a sealed copy of Exhibit 30 as provided by GAP, which should not be filed publicly, and a public copy of Exhibit 30 with redactions for the privileged information described herein, as well as additional redactions for PII. *See supra* ¶ 5.  Since the email addresses a variety of issues raised during the meeting, and not only information related to the FOIA/PA program, for clarity and ease of reference, I will address the information reflected in the email and subject to the deliberative process privilege by section as presented in the email as follows:

      a.    The first section consists of the email author's summary of the author's understanding of two points discussed by a member of NRC leadership at the meeting.  In Point 1, the summary reflects the member's purported thoughts and ideas about unattributable, premature conversations the member heard about a USCIS job position and the potential use and scope of that position, which was still awaiting approval, as well as the member's opinions and thoughts regarding the expectation and impact of the position to NRC missions.  In the second point, the summary reflects the NRC leadership member's purported

thoughts regarding the handling of certain types of personnel actions in the future.  Point 1 of this section of the email is subject to the deliberative process privilege.

b.        The second section of the email contains the email author's description of three points expressed by the NRC leadership member, all of which consist of administrative information for which no privilege is applicable.

c.        The third section consists of the email author's summary of the author's discussion at the meeting, which consists of administrative information for which no privilege is applicable.

d.        The fourth section consists of a summary of the email author's understanding of deliberative discussions regarding my inquiry as to proposed next steps once the FOIA Office catches up.  The author's summary reflects a member of FOIA Office leadership's suggested next steps and opinions, evaluations, and reasoning for those suggestions.  The summary also includes the email author's understanding of my evaluation, thoughts, and opinions regarding those suggested next steps, along with my own recommendations, thoughts, and reasoning.  This deliberative information is subject to the deliberative process privilege.

e.        The next-to-last section of the email consists of a summary of the email author's understanding of my purported description of deliberative discussions I had with DHS Privacy Office personnel that oversee the FOIA program for DHS and its components and a DHS opinion paper regarding a proposed FOIA initiative, which has not been implemented and is still being debated.  The summary reflects DHS personnel's purported thoughts, beliefs, ideas, and recommendations regarding the proposed FOIA initiative.  The summary also includes the email author's understanding of questions and thoughts posed by

a member of USCIS FOIA Office leadership regarding that proposed initiative. This information is subject to the deliberative process privilege.

        f.     The last section of the email reflects administrative information about a letter issuing that week and upcoming meetings for which no privilege is applicable.

50.    The portions of the email identified as being subject to the deliberative process privilege, *see supra* ¶¶ 49(a), 49(d) & 49(e), reflect the deliberative, pre-decisional ideas, suggestions, opinions, evaluations, and recommendations essential to the decision-making process.

51.    Here, the information identified in the first section of the email, *see supra* ¶ 49(a), is deliberative because it consists of a brusque report of internal, deliberative, thoughts, ideas, and opinions about the future use and scope of a USCIS position and an NRC leadership member's opinions and thoughts regarding the position and how the potential use and scope of the position may impact NRC expectations and missions. The information is pre-decisional because the deliberations concern a particular use and scope of a position in the future that had not yet been approved and thoughts and opinions about how the future position could impact expectations and mission accomplishment in the future.

52.    The information identified in the fourth section, *see supra* ¶ 49(d), is deliberative because it reflects internal, deliberative back-and-forth discussions between a member of FOIA Office leadership and myself regarding potential next steps for the FOIA program. The deliberations are pre-decisional because FOIA Office leadership had not yet finalized its response and the summary of the discussion involves potential future actions and initiatives.

53.    The information identified in the next to last section, *see supra* ¶ 49(e), is deliberative because it reflects the email author's understanding of my description of deliberative discussions between myself and DHS personnel and deliberative thoughts and questions posed by a member of the FOIA Office leadership, all regarding a DHS proposal for a FOIA initiative that is still being

debated.  This deliberative information is also pre-decisional because it discusses a FOIA initiative proposal for potential future implementation for which no final action has been taken.

54.      Public disclosure of the deliberative information identified above, *see supra* ¶¶ 49(a), 49(d) & 49(e), would jeopardize both DHS's and USCIS's ability to engage in decision making by discouraging candid discussion and debate either within USCIS or between USCIS and DHS personnel.  DHS and USCIS personnel would be reluctant to make suggestions or share their opinions for or against a particular idea, proposal, or suggested course of action if those pre-decisional comments were subject to disclosure and to future use for the purpose of challenging the final decision and/or the process by which it was achieved.

55.      It is reasonable to expect that, if the Court elects to make these deliberations and discussion public, it will influence the future actions of DHS and USCIS personnel to the detriment of the decision-making process, and the ability to make well-informed decisions and, particularly, to make decisions with regard to suggestions, proposals, or recommendations regarding the scope and use of agency positions, setting next steps and priorities for agency programs and the development of agency initiatives.  Specifically, disclosure would hinder candid evaluations, thoughts, or ideas and chill internal inter or intra-agency deliberations, proposals, suggestions and recommendations regarding the scope and use of USCIS positions for certain missions, setting next steps and priorities for the FOIA/PA program, or the development and implementation of future DHS and USCIS FOIA program initiatives.  If DHS Privacy and USCIS NRC and FOIA Office personnel are aware that their deliberations or another's interpretation and understanding of their deliberative conversations and opinions may be subject to public disclosure—and the scrutiny and criticism that may follow—the candor of their discussions and views would be chilled.  This is especially true when the description of those opinions, ideas, and suggestions may be inaccurate, taken out of context or not understood in the full context in which they were made or intended

because an individual is summarizing their understanding of another individual's description of those deliberations.

56.     Public disclosure of this information would also confuse the issues and mislead the public.   Specifically, public dissemination of the email author's summary of the author's understanding of deliberations or another's accounting of deliberations, may suggest reasons and rationales that were not accurately or fully described and are not in fact the reasons and rationales underlying the suggested actions or initiatives being deliberated.   Moreover, since the agency has not yet taken any final action regarding the thoughts, ideas, proposals and suggestions surrounding the USCIS position, certain proposed next steps for the FOIA program or the proposed FOIA initiative, disclosure of these deliberations would confuse the public into thinking certain actions or decisions have already been decided upon and are either implemented or will be implemented.

## Exhibit 40

57.     Exhibit 40 is bates stamped as page 225 and was provided by GAP with certain PII already redacted.  Exhibit 40 consists of a September 29, 2025 memorandum drafted by an NRC employee reflecting deliberative, pre-decisional information.   Specifically, the memorandum identifies the FOIA guidance flagged by the employee for potential change or clarification and recounts the employee's recollection and understanding of deliberative discussions between the NRC employee, OCC counsel, and FOIA Office leadership reflecting their thoughts, viewpoints, opinions, potential next steps, and reasoning for and against potential change or clarification of the flagged FOIA guidance provisions.   The memorandum also reflects the NRC employee's understanding of a discussion between the employee and an NRC leader reflecting their thoughts and viewpoints regarding the flagged provisions, steps taken as part of the deliberative discussions regarding the potential change or revision of those flagged provisions, and thoughts and viewpoints

regarding future implementation of the flagged provisions based on deliberations about those flagged provisions.

58.    Information within this memorandum reflecting confidential communications from the NRC employee to OCC attorneys that reveal the subject matter of legal advice sought is subject to the attorney-client privilege.  The information is confidential as it was shared only among those USCIS employees involved in the deliberative discussions regarding the subject matter for which advice was sought or those who supervise those individuals and OCC attorneys.

59.    To compel the disclosure of this type of information would have an immediate impact and drastic chilling effect on interactions between USCIS attorneys and USCIS employees. Specifically, disclosure would chill frank discussion between legal counsel and its client, cause confusion since the emails do not represent final agency action and impair legal analysis as counsel would be hesitant to address potential weaknesses, recommend changes, or provide alternative legal avenues for discussion.

60.     Information in this memorandum that reflects the flagged provisions of the then-current FOIA guidance subject to deliberations regarding potential change or revision, and the recounting of the employee's understanding of deliberative conversations and information reflecting the ideas, opinions, thoughts, and viewpoints about those flagged provisions and future implementation of those provisions based on the deliberations is  subject to the deliberative process privilege.

61.    To aid the Court's review, this declaration is accompanied by a sealed copy of Exhibit 40 as provided by GAP, which should not be filed publicly, and a public copy of Exhibit 40 with redactions for the privileged information described above, as well as additional redactions for PII. *See supra* ¶ 5.

62.    Here, the information flagging provisions from the FOIA guidance and reflecting the thoughts, ideas, and viewpoints both for and against those provisions and the potential future implementation of those provisions depending on future deliberation and input reflects the deliberative, pre-decisional back-and-forth discussions essential to the decision-making process in which existing agency policy is flagged, probed, and analyzed for potential changes or clarification to the policy or its implementation.  This deliberative information is pre-decisional as the discussions reflected in the memorandum revolve around potential changes to the then-current guidance that had not yet been implemented, if at all, and future implementation of the guidance depending on the deliberations.

63.    Public disclosure of this information would jeopardize USCIS's ability to engage in decision making by discouraging future candid discussion and debate within USCIS regarding its policies.  USCIS personnel would be reluctant to flag concerns or potential improvements, make suggestions or share their opinions for or against a particular idea or suggested course of action regarding agency policies if those pre-decisional comments were subject to disclosure, and to future use for the purpose of challenging the final decision and/or the process by which it was achieved.

64.    It is reasonable to expect that, if the Court elects to make these deliberations and discussion public, it will influence the future actions of USCIS personnel to the detriment of the decision-making process and the ability to make well-informed decisions at USCIS and, particularly, within the NRC and its FOIA/PA program.  Specifically, disclosure would chill NRC and FOIA Office personnel from flagging and providing candid thoughts, opinions, evaluations, suggestions, and back-and-forth discussions regarding existing agency policies and the decision-making process to allow for the potential change or refinement of those policies.  If NRC and FOIA Office employees are aware that their evaluations, opinions, deliberations, reasoning, and recommendations may be subject to public disclosure—and the scrutiny and criticism that may follow—the candor of their

views would be chilled.  This is especially true when those opinions may be taken out of context or not understood in the full context in which they were made or intended because they are incorporated into a memorandum reflecting the author's perception and understanding of those discussions.

65.    Public disclosure of this information would also confuse the issues and mislead the public.  Specifically, public dissemination of the memorandum that incorporates the author's thoughts and understanding of conversations and discussion may suggest reasons and rationales for the decision or lack of decision regarding the flagged provisions and their implementation, that are not in fact the reasons underlying the final action taken, if any.  Moreover, disclosure of this information may confuse the public regarding current policy or whether certain actions or decisions may or may not be implemented.

## Conclusion

66.    For the information discussed above, it is imperative to protect the open and honest exchange of ideas, suggestions, proposals, thoughts, viewpoints, and opinions between DHS and USCIS and among USCIS employees, as well as protect confidential information shared between an attorney and his or her client relating to the matter for which the client is seeking advice.  Release of this information would not only chill the exchange of ideas and impede candor both in the decision-making process and when seeking and providing legal advice, but it would also confuse the public.  Thus, it is vital that the identified information in the above-noted exhibits be protected from public disclosure.

67.    As demonstrated above, USCIS has taken efforts to release information publicly where the information is not privileged, and has thus provided public versions of each of the 7 exhibits identified herein.

I declare under penalty of perjury that the foregoing is true and correct.


Dated: February 6, 2026        _____

M. DAVID ARNOLD JR.
Director, National Records Center
Immigration Records and Identity Services Directorate (IRIS)
U.S. Citizenship and Immigration Services (USCIS)