UNITED STATES DISTRICT COURT FOR THE

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

Zachary NIGHTINGALE; Courtney McDERMED; Cheryl DAVID; Pao LOPA; Maribel CARANDANG,

    Plaintiffs,

    v.

U.S. CITIZENSHIP AND IMMIGRATION SERVICES; U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT; U.S. DEPARTMENT OF HOMELAND SECURITY,

    Defendants.

**No. 3:19-cv-03512-WHO**

**JOINT STATUS REPORT**

**Status Conference
Date: April 21, 2026
Time: 2:00 p.m.
Before: Hon. William H. Orrick**

Joint Status Report                                                  Case No. 3:19-cv-03512-WHO

Pursuant to this Court's February 3, 2026 Minute Order, ECF No. 203, Plaintiffs and Defendants respectfully submit the following joint status report. This case involves a certified class action under the Freedom of Information Act ("FOIA") in which this Court held that U.S. Citizenship and Immigration Services ("USCIS"), U.S. Immigration and Customs Enforcement ("ICE"), and U.S. Department of Homeland Security ("DHS") engaged in an unlawful pattern or practice of failing to make timely determinations on FOIA requests for "A-Files." On December 17, 2020, following briefing and oral argument, this Court entered summary judgment in favor of Plaintiffs on their FOIA pattern or practice claims and issued a nationwide injunction against Defendants. *See* ECF Nos. 89 at 27 & 90 at 1-2. The injunction set forth the following:

a. Adhere to FOIA Timing Requirements: Defendants are permanently enjoined from further failing to adhere to the statutory deadlines for adjudicating A-File FOIA requests, as set forth in 5 U.S.C.§§ 552(a)(6)(A) and (B);

b. Eliminate the Backlogs: **Within sixty (60) days of this order,** defendants shall make determinations on all A-File FOIA requests in USCIS's and ICE's backlogs; [and]

c. Quarterly Compliance Reports: Until further order, defendants shall provide this court and class counsel with quarterly reports containing information regarding the number and percentage of A-File FOIA requests that were filed and timely completed as well as the number and percentage of cases that remain pending beyond the twenty or thirty-day statutory periods, respectively 5 U.S.C. §§ 552(a)(6)(A) and (B). The first compliance report is due **within ninety (90) days** of this order.

ECF No. 89 at 27 (emphasis in the original); ECF No. 90 at 1-2 (emphasis in the original).

Since the injunction issued in December 2020, Defendants have filed twenty-one compliance reports, the parties have filed seventeen joint status reports (this filing being the eighteenth), and the Court has held fifteen case management conferences, most recently on February 3, 2026. The next case management conference is scheduled for April 21, 2026.

Joint Status Report                                                                 Case No. 3:19-cv-03512-WHO

**Plaintiffs' Position**

On January 22, 2026, in response to Defendants' willingness to engage in informal discovery, Plaintiffs submitted a letter request to Defendants seeking further information and documentation to assist with their assessment of the whistleblower complaint and Defendants' response. Dkt. 201-1. Defendants have produced some records and answered Plaintiffs' request. *See* Exh. A (USCIS Letter Response, dated March 16, 2026); Exh. B (USCIS Letter Response, dated March 23, 2026); Exh. C (USCIS Letter Response, dated March 27, 2026). With limited exceptions, Defendants' response supports the whistleblower's allegations that USCIS' adoption of a series of new policies and procedures for closing cases has led to improper closures of thousands or more A-File Freedom of Information Act (FOIA) requests in the past year alone. As detailed below, Plaintiffs seek three forms of relief from the Court:

First, Plaintiffs request that the Court strike the following unlawful policies that enable Defendants to evade their obligations under the permanent injunction by improperly rejecting and/or adjudicating A-File FOIA requests:

- All-Nationalities Entry Records Policy (Section I)
- May 2025 Third-Party Redaction Policy (Section II)
- OOS Policy (Section IV)
- September 2025 Attorney Address Policy (Section VI.A)
- A-Number Discrepancy Policy (Section VI.C.1)
- Parent Information Policy (Section VI.C.2)

Second, in the alternative, for any policies the Court declines to strike, as well as the Country Policy (Section V), Plaintiffs request that the Court order Defendants to disclose them proactively—either by publication in the Federal Register or by posting them in the USCIS online FOIA Reading Room—as required by 5 U.S.C. §§ 552(a)(1)(D) or (a)(2)(C). These policy changes were adopted without public notice, leading to the premature closure of tens of thousands of A-File FOIA requests, and causing great confusion and distress to class members.

Third, with respect to the Country Policy (Section V), Plaintiffs request that the Court

Joint Status Report                                      Case No. 3:19-cv-03512-WHO

order Defendants to adopt any modification to Form G-639 as a rule, subject to notice and comment pursuant to 5 U.S.C. § 553.

Plaintiffs defer to the Court as to whether to address these issues at the Case Management Conference or to set a briefing schedule on a motion to enforce.

**I.      March 4, 2024 Policy Changes** (Dkt. 193-1 at 5)

The whistleblower complaint (WB Compl.), Dkt. 193-1 at 5, identified that USCIS issued a new policy on March 4, 2024 to close out requests from Cuban nationals seeking entry records created by U.S. Customs and Border Protection (CBP), including Form I-94 (Arrival/Departure Record), with a "no record" response (Cuban Entry Records Policy). Dkt. 199-1 (WB Compl. Exh. 1, March 4, 2024, FOIA Alert - Cuban I-94 Specific Document Requests and Case Create No Record Policy Change); Dkt. 196-3 (Arnold Declaration Exh. B, March 4, 2024 - FOIA Alert - Cuban I-94 Specific Document Requests and Case Create No Record Policy Change). The Cuban Entry Records Policy was adopted even though USCIS has a Memorandum of Understanding (MOU) with CBP requiring USCIS to process any CBP records that are contained in the A-File. Dkt. 196-2 at 3 (Arnold Declaration Exh. A, Oct. 1, 2023 Intra-Agency MOU between USCIS and CBP). The Arnold response acknowledges that this policy specifically targeted Cubans to address the "influx" of FOIA requests. Dkt. 196-1 ¶ 13.

Defendants concede that the "USCIS FOIA office issued guidance to its FOIA processors to close requests as 'No Record' where the requestor *seeks only* a copy of their I-94" or other entry documents. Dkt. 196-1 ¶ 13 (emphasis added). This policy applies even if such entry documents are in the individual's A-File. *Id*. ¶ 12. Under the Cuban Entry Records Policy, the FOIA officer simply closes out the request without conducting a search. Yet, as Defendants acknowledge, USCIS is, in fact, producing entry documents when the request is for the individual's entire A-File or documents in addition to the entry documents, Dkt. 196-1 ¶¶ 10-13, making clear that the agency has responsive documents in their possession.

The Cuban Entry Records Policy, embodied in the March 4, 2024 FOIA Alert, lays

Joint Status Report                                                                      Case No. 3:19-cv-03512-WHO

out three different scenarios for FOIA officers, making clear that if an individual asks for entry documents in their A-File, but does not ask for any other documents or does not ask for the entire A-File, the request will be immediately closed and marked "No Record," even if the A-File contains entry records. Dkt. 196-3 at 2-3. In contrast, where requestors ask for entry documents *and* other documents that may (or may not) be in the A-File, FOIA officers are instructed to perform the search and produce responsive documents. *Id*.

**Record Production:** Defendants did not produce any additional documents related to the Cuban Entry Records Policy. However, in answer to Plaintiffs' questions, Defendants admit that they adopted the Cuban Entry Records Policy in response to an "influx" of requests from Cubans; moreover, they seek to justify this policy by noting that these records were produced by CBP, not USCIS, and that "such records are generally not maintained within the Alien-File." Exh. B at 3. Defendants further state that, where USCIS closes a request because the requestor seeks only Form I-94 (Arrival/Departure Record), USCIS advises the requestor to contact CBP. *Id.* Additionally, Defendants responded that this policy now "is applied to all FOIA requests received by USCIS regardless of the subject of record's nationality" (All-Nationalities Entry Records Policy). *Id.* The expansion of the Cuban Entry Records Policy to the All-Nationalities Entry Records Policy presumably occurred after submission of the Sixth Arnold declaration.

**Action Requested:** This Court should strike the All-Nationalities Entry Records Policy as it was expressly created to shirk Defendants' duties under FOIA. Specifically, it was designed to evade the "influx" of records requests dealing with entry records, providing an unlawful justification for USCIS to close out FOIA requests without searching for responsive documents.

Moreover, on its face, the March 4, 2024 FOIA Alert demonstrates that USCIS instructs its officers not to conduct a reasonable search when dealing with records requests made involving entry documents, specifically in response to the "influx" of FOIA requests. This policy violates the agency's obligation to perform an "adequate" or "reasonable" search.

Joint Status Report                                                          Case No. 3:19-cv-03512-WHO

*See Hamdan v. DOJ*, 797 F.3d 759, 770 (9th Cir. 2015); *Wilbur v. CIA*, 355 F.3d 675, 678 (D.C. Cir. 2004); *see also Edelman v. SEC*, 172 F. Supp. 3d 133, 144 (D.D.C. 2016) ("An agency has an obligation under FOIA to conduct an adequate search for responsive records."). This standard requires that an agency conduct a search that is "reasonably calculated to uncover all relevant documents." *Hamdan*, 797 F.3d at 770; *see Edleman*, 172 F. Supp. 3d at 144. To the contrary, the All-Nationalities Entry Records Policy, initiated by the March 4, 2024 FOIA Alert, instructs FOIA officers *not* to perform any search.

Further, where such records are in USCIS' possession, USCIS has an obligation to produce them. As such, they have a responsibility to perform searches for responsive documents. *See DOJ v. Tax Analysts*, 492 U.S. 136, 145-46 (1989) ("Agency records" are records that are (1) either created or obtained by an agency, and (2) under agency control at the time of the FOIA request). USCIS cannot shirk this duty by claiming that records originated with another agency. *See ACLU Found. of S. Calif. v. USCIS*, 739 F. Supp. 3d 805, 829 (C.D. Cal.), reconsideration denied, 347 F.R.D. 518 (C.D. Cal. 2024) ("A component . . . is required to consult or coordinate with, or refer a request to, another component where the responsive information originated from, was provided by, or is of substantial interest to another component." (citation modified)); *Unrow Hum. Rts. Impact Litig. Clinic v. U.S. Dep't of State*, 134 F. Supp. 3d 263, 279 (D.D.C. Sept. 29, 2015) ("If an agency receives a FOIA request for documents within its possession, the agency is responsible for processing the request and cannot simply refuse to act on the ground that the documents originated elsewhere." (citation modified)).

II.     **May 2025 Policy Redacting Entire Forms Based on Third Party or Law Enforcement Privacy** (Dkt. 193-1 at 5)

The whistleblower complaint, Dkt. 193-1 at 5, identifies a May 2025 policy requiring USCIS to redact entire forms based on third-party information (May 2025 Third-Party Redaction Policy). Dkts. 199-2 (WB Compl. Exh. 2, May 5, 2025 Internal FOIA Guidance), 199-31 (WB Compl. Exh. 41, Forms and Definitions Governing Records of Proceedings

Joint Status Report                                                    Case No. 3:19-cv-03512-WHO

from Freedom of Information Act and Privacy Act Case Processing Guide, May 16, 2025). The Arnold response states that third-party information is redacted when there has been no consent from the third party, even when it is a joint document. Dkt. 196-1 ¶¶ 15-16; *see also* Dkt. 196-4 (Arnold Declaration Exh. C, April 2025 email and FOIA guidance).

**Record production:** Plaintiffs submitted questions regarding Defendants' May 2025 Third-Party Redaction Policy with respect to redactions on Form I-213 (Record of Deportable/Inadmissible Alien). Dkt. 201-1 at 2.[1] Defendants responded that USCIS generally produces a partially redacted Form I-213 "in response to FOIA requests in which individuals are seeking their own Form I-213," and "typically" withholds information within Form I-213's fields pursuant to one or more FOIA exemptions, including "narrative," "third party personally identifying information," "names and results of systems checks," "GPS coordinates," and "SIGMA number." Exh. A at 1-2.

Defendants' May 2025 Third-Party Redaction Policy is overly broad and requires redaction of all information in the A-File, including third-party personally identifying information, absent express consent from the third party. In contrast to past practices, the May 2025 Third-Party Redaction Policy requires USCIS to redact much of the documentation in an A-File—such as immigration applications, birth certificates, tax returns, and supporting documentation—all of which is integral to the requestor's immigration history.

The same is true for information from the record of proceeding (ROP), including Form I-213 (Record of Inadmissible/Deportable Alien). The ROP is the record before the

---

[1] Form I-213 is a critical document outlining the immigration and criminal history of the individual and is created by DHS prior to the initiation of a removal proceeding; it also includes the justification for any arrest made by immigration officers. *See, e.g.*, *Lopez-Rodriguez v. Mukasey*, 536 F.3d 1012, 1014 (9th Cir. 2008) (noting such information is included in Form I-213). DHS often produces Form I-213 for a removal proceeding to go forward before an immigration judge, and Form I-213 is part of the record of proceeding. *See, e.g.*, 8 C.F.R. § 1240.17(c) (mandating DHS to submit Form I-213 to the immigration court when a respondent is referred to the court for removal proceedings after a credible fear interview by USCIS).

Joint Status Report                                          Case No. 3:19-cv-03512-WHO

immigration court and Board of Immigration Appeals and includes records DHS submits to establish its removal case, such as Form I-213. *See* Dkt. 196-4 at 3 ("An ROP is an organization of certain immigration records that were considered, or referenced, during an administrative immigration proceeding that resulted in a final administrative decision or action."). As the April 2025 email and FOIA guidance acknowledges, "[i]n general, ROP materials are subject to Privacy Act and FOIA requests without significant redactions." Dkt. 196-4 at 4. Despite this statement, USCIS instructs that the narrative on Form I-213 "typically" must be redacted in full. Exh. A at 1-2. There is no legal basis for such a redaction when Form I-213 is part of the ROP and produced in full (with minor exceptions) in removal proceedings. As evidenced by Exhibits R and S, USCIS discloses only a highly redacted Form I-213, while the ROP contains the same Form I-213 without any redactions. There is no justification for redacting the narrative in its entirety.

**Action Requested and Rationale:** This Court should strike the Defendants' May 2025 Third-Party Redaction Policy because it violates the FOIA statue, which only exempts disclosure of third-party material and law enforcement material "which would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6), (7)(C). At a minimum, USCIS must produce an unredacted version of Form I-213 when processing A-File FOIA requests.

The FOIA provision at 5 U.S.C. § 552(b)(6) exempts disclosure of third-party material and law enforcement material "which would constitute a clearly unwarranted invasion of personal privacy." *Cameranesi v. U.S. Dep't of Def.*, 856 F.3d 626, 637 (9th Cir. 2017) (quoting 5 U.S.C. § 552(b)(6)); *Am. Immigr. Laws. Ass'n v. Exec. Off. for Immigr. Rev.*, 830 F.3d 667, 673 (D.C. Cir. 2016) (same); *see also* 5 U.S.C. § 552(b)(7)(C) (exempting disclosure of "law enforcement records" that "could reasonably be expected to constitute an unwarranted invasion of personal privacy"). Under the two-part test in *American Immigration Lawyers Association*, it is not enough that the first part of the test is met, i.e., information pertains to a third party or law enforcement. 830 F.3d at 673. Rather,

Joint Status Report                                                                 Case No. 3:19-cv-03512-WHO

the second part of the test must also be satisfied, which requires showing an "unwarranted invasion of personal privacy." *Id.* Further, "[i]n order to withhold information from disclosure under Exemption 6, the agency must specifically invoke the exemption and must carry the burden of proving that disclosure would constitute a clearly unwarranted invasion of personal privacy." *Cameranesi*, 856 F.3d at 637.

Here, there can be no such unwarranted invasion of personal privacy when the FOIA requestor is the individual to whom the A-File belongs (or their representative) because they generally are the ones who provided this documentation to DHS. And if that is the case, Defendants' blanket May 2025 Third-Party Redaction Policy cannot satisfy Defendants' burden in proving disclosure would constitute an unwarranted invasion of personal privacy to provide the documentation under FOIA. Thus, Plaintiffs request the Court strike the Defendants' May 2025 Third-Party Redaction Policy.

**III.     May 2025 Policy Withholding Attorney Correspondence** (Dkt. 193-1 at 5-6)

The whistleblower complaint states a May 2025 policy change, Dkt. 193-1 at 5-6, that provides for withholding of attorney correspondence. *See, e.g.*, Dkt. 199-2 at 4-5 (WB Compl. Exh. 2, May 5, 2025 Internal USCIS FOIA Policy Guidance - Defining/Applying "Out of Scope" Determinations). Namely, USCIS' adopted policy of withholding any correspondence sent by the attorney for the subject of records and any correspondence that USCIS sends to the attorney. Dkt. 193-1 at 5-6.

**Record Production:** It appears that Defendants have resolved the issue. Arnold's declaration acknowledged that this policy was an "error" and that USCIS would issue clarifying guidance "expeditiously." Dkt. 196-1 ¶ 17. Plaintiffs requested confirmation of this policy change and a copy of any guidance. Dkt. 201-1 at 2. Based on Defendants' production, as of January 7, 2026, Defendants have clarified internally that, if there is evidence of a current or previous attorney's representation of the subject of record, and the request falls within the scope of representation, the attorney is *not* considered a third party for withholding of third party personally identifying information (PII). *See* Exh. D at 1 (Jan. 7, 2026 Email re:

9

"Clarification of guidance – processing of attorney documentation"). This guidance indicates that USCIS must process, and not withhold, documents in the responsive records from or to the current or previous attorney. *Id.*

**Action Requested:** Plaintiffs do not ask the Court to order any action.

**IV.    May 2025 Policy Changes Regarding Designation of Records as "Out of Scope"**
(Dkt. 193-1 at 6)

The whistleblower complaint, Dkt. 193-1 at 6, revealed that, in June and August 2025, USCIS instructed FOIA processors to designate as "out-of-scope" (OOS) all untranslated foreign language documents originating with non-U.S. government entities (OOS Policy). Arnold explained that the OOS Policy was adopted to ensure that USCIS processes and releases documents in English. Dkt. 196-1 ¶ 18; *see also* Dkt. 196-5 (Arnold Declaration Exh. D, June 11, 2025 & August 18, 2025 emails and attachments). He also attempted to justify the new OOS Policy as consistent with 8 C.F.R. § 103.2(b)(3), Dkt. 196-1 ¶ 19; however, that regulation pertains to the submission of evidence to USCIS to establish benefit eligibility and is unrelated to FOIA.[2]

**Record Production:** In response to Plaintiffs' questions, Defendants stated that OOS "pertains to documents that do not relate to the subject and/or the information being requested" and further, that untranslated documents are determined to be OOS because USCIS cannot determine if the document is responsive. Exh. C at 2. Documents labeled OOS are not provided to the requestor and the requestor is not informed of their existence. *Id*. Defendants produced relevant pages from USCIS' Processing Guide which provide examples of OOS documents as documents clearly unrelated to the subject of the request (SOR), such

---

[2]    The regulation at 8 C.F.R. § 103.2(b)(3) provides:

§ 103.2 Submission and adjudication of benefit requests . . . (b) Evidence and processing — . . . Translations. Any document containing foreign language submitted to USCIS shall be accompanied by a full English language translation which the translator has certified as complete and accurate, and by the translator's certification that he or she is competent to translate from the foreign language into English.

Joint Status Report                                                          Case No. 3:19-cv-03512-WHO

as cover sheets scanned by contractors or misfiled documents. Exh. E at 67 (May 16, 2025 USCIS Freedom of Information Act and Privacy Act Case Processing Guide). The USCIS Processing Guide says nothing about untranslated documents.

The statistics Defendants produced for request closures between September 15, 2025 and December 14, 2025 indicate that 648 requests were closed for this reason. *See* Exh. F (Jan. 2, 2026 Emails re: "FAL Insert Summary 9/15 - 12/14"); Exh. G (FAL Aggregate Data Spreadsheet). Where USCIS processed requests, an untold number of additional pages likely have been withheld in full, without USCIS informing the requestor of the existence of these documents.

**Action Requested:** Plaintiffs request that the Court strike this policy as unlawful because it results in Defendants closing requests without performing a full search and production of records or failing to produce the entire A-File to a requestor. *See supra*, Section I. It also conflicts with 5 U.S.C. § 552(a)(8), which allows only for withholding information that falls within a statutory exemption. It further violates 6 C.F.R. § 5.6(d), which requires DHS components, including USCIS, to notify a FOIA requestor in writing of any "adverse determination denying a request in any respect." *See also* 6 C.F.R. § 5.6(e) (addressing the content of the denial notice).

This issue is particularly critical as A-Files often contain key identity documents in the requestor's native language, such as birth certificates, marriage certificates, divorce decrees, and identity documents from their native country. Pursuant to this policy, Defendants will withhold documents such as these, even where they contain the name of the SOR (which is not an untranslated foreign term) and not inform the requestor of the document being withheld. As a result, the requestor cannot challenge the withholding.

## V.   Regulatory Change Regarding Country of Citizenship or Residency (Dkt. 193-1 at 6-7)

The whistleblower complaint, Dkt. 193-1 at 6-7, states that USCIS did not change either Form G-639 (Freedom of Information/Privacy Act Request) or its digital portal after a

Joint Status Report                                                                                  Case No. 3:19-cv-03512-WHO

November 2022 regulatory change to add citizenship or residency to the requirements regarding verification of identity, 87 Fed. Reg. 68599, 68603 (Nov. 16, 2022), amending 6 C.F.R. § 5.21(e). Defendants claim that the FOIA office "has not previously and does not currently close FOIA requests for failure to provide . . . information" that is not a field on the Form G-639 or digital FOIA intake process, and that USCIS is currently amending both to add a field for requiring country of citizenship or residency (Country Policy). Dkt. 196-1 ¶¶ 21-23.

**Record Production**: Plaintiffs requested records to confirm USCIS' instruction to FOIA staff (including intake processors and FOIA processors) regarding processing a request that either includes or omits country of citizenship or residency and the status of the amendments to Form G-639 and the digital FOIA intake process. Dkt. 201-1 at 2-3. In response, Defendants were unable to identify any responsive records. Rather, Defendants re-articulated that "the FOIA Office has not previously and does not currently close FOIA requests for failure to provide country of citizenship or residency as this is not a field required in the current G-639 or digital FOIA intake process." Exh. A at 2. As for the status of "adding a required field for country of citizenship or residency to the Form G-639 and digital intake form," USCIS responded that "[t]his process is still pending." *Id*. at 3.

Relatedly, USCIS has instructed staff that it no longer accepts the terms "alleges" or "unknown" before the listing of the country of birth for purposes of verification of identity. Exh. H at 6 (Dec. 10, 2025 Quick Guide to New VOI: Walkthrough and Updates). Class members often indicate clients' country of birth as "alleged" to avoid conceding alienage and preserve the requirement that the DHS carry the burden of proof in removal proceedings. *See* 8 U.S.C. § 1229a(c)(1); 8 C.F.R. § 1240.8. Notably, USCIS' electronic submission portal for FOIA requests, FIRST, requires requestors to input a country of birth through a drop-down menu without an option to input additional language.

Moreover, Defendants' production demonstrates that where "the digital request does not have the correct DOB/COB or parents' names but the G-639 provided does," USCIS

Joint Status Report                                                                    Case No. 3:19-cv-03512-WHO

must "upfront close the request as FC." Exh. L at 2 (Nov. 4, 2025 VOI Q&A).

Records show that USCIS closed 440 requests for missing the subject of record's country of birth (COB) between September 15 and December 14, 2025. Exh. G at 1. Presumably, this number includes requests closed where requestors list their COB as "alleged." Moreover, USCIS training records explain that USCIS will close a request when the COB is incomplete and/or the abbreviation is not discernable (e.g., providing "Turk" for the country, which could mean Turkey or Turkmenistan). Exh. J at 8 (Dec. 11, 2025 Transcript of Training Session 1); Exh. K at 7 (Dec. 11, 2025 Transcript of Training Session 2); Exh. H at 14-15, 30. Furthermore, the most recent agency guidance still requires country of birth. Exh. I at 1 (Feb. 17, 2026 Quick Guide to New VOI Guidance).

**Action Requested:** Defendants' claim that USCIS is not prematurely closing A-File requests that omit the subject's country of citizenship or residency is undermined by their own data; in the last quarter of 2025, USCIS closed 440 requests for failure to include the country of birth—information that is most often the same as the country of citizenship—and by the agency's practice of closing requests that omit the country of birth. Plaintiffs ask the Court to order USCIS to update both publicly available information on its website and internal training manuals within 30 days to articulate its position that requests will not be closed for failure to provide country of citizenship or residency. In addition, Plaintiffs ask the Court to order any new Form G-639 and digital intake form be subject to notice and comment under 5 U.S.C. § 553.

## VI. Second Round of Policy Changes: Closing Cases at Case Creation/Intake Stage

### A. Closing Requests for Use of Attorney's Address (Dkt. 193-1 at 7-8)

According to the whistleblower, Dkt. 193-1 at 7-8, as of September 16, 2025, USCIS implemented a new policy that "[a] representative's address, such as an attorney, is insufficient to verify the [subject of record]'s identity" (VOI) (September 2025 Attorney Address Policy). *See* Dkt. 199-4 (WB Compl. Exh. 5, September 16, 2025 Internal FOIA Directive Instructing Staff to Close FOIA Cases Based on Attorney Mailing Addresses); *see,*

Joint Status Report                                               Case No. 3:19-cv-03512-WHO

*e.g.*, Dkt. 199-19 (WB Compl. Exh. 26, Case Closure Example Involving Attorney Address). USCIS will close without processing all requests that include a representative's address. *See* Dkt. 199-4. Although the Arnold response claims this complies with DHS regulations, Dkt. 196-1 ¶¶ 25-27, Plaintiffs' position in the prior status report was that the policy is unlawful and appears to have been adopted in bad faith because the regulation is silent as to the type of address required and Form G-639 permits use of an attorney's address. Dkt. 201 at 10; *see also* Dkt. 196-7 at 5 (Form G-639 requests "Mailing Address," including a commercial address).

**Record production**: In their answers and record production, Defendants confirm that the September 2025 Attorney Address Policy remains in place. Exh. L at 2; Exh. M at 1 (Nov. 12, 2025 Quick Guide to New VOI Guidance); Exh. H at 16-17; Exh. I at 2. Prior practice permitted an attorney's address, as well as an email address and an incomplete address. Exh. H at 16. Under the new guidance, these latter are also no longer acceptable. *Id*. Instead, the new policy requires a "[p]hysical [a]ddress." Exh. M at 1; Exh. I at 1. Moreover, USCIS instructs that if a digital request includes an attorney's address, the request must be closed *even if* the requestor also submits a Form G-639 with a physical address. Exh. L at 2.

Defendants recognize two exceptions to the September 2025 Attorney Address Policy: first, if the requestor provides a post office (PO) box as their current address, Exh. M at 1; Exh. I at 1;[3] and, second, if the case involves "1367/VAWA Protection," in which case "[a] safe address is acceptable." Exh. M at 1; Exh. I at 1. These cases include applicants for relief under the Violence Against Women Act, T nonimmigrant status (victims of human trafficking), and U nonimmigrant status (victims of criminal activity).[4] *See id.*

---

[3]    But not in every case; USCIS trainers told staff to be on the lookout for an "attorney that's putting PO Box for every single one of his folks," and advises them to "Go to your supervisor about it." Exh. K at 8.

[4]    As to this exception, if the individual does not affirmatively mention it, FOIA processors may waive the physical address requirement if they find a document that signals the SOR is protected under § 1367. *See* Exh. M at 1; Exh. H at 22; Exh. K at 8-10. But this is nonsensical: individuals seeking these benefits often seek their records *before* filing for one of these forms of relief as information in the A-File may impact their eligibility.

Joint Status Report                                    Case No. 3:19-cv-03512-WHO

Over 22,000 FOIA requests were closed due to this between September 15, 2025 and December 14, 2025—over half of all closures for this period. Exh. G at 1. Significantly, there were no such closures in September 2025, but 4,877 such closures in October 2025, corresponding to the adoption of the September 2025 Attorney Address Policy. *Id*. By rejecting these requests for a perceived failure to comply, USCIS significantly reduced the number of requests it processes during a compliance period.

**Action Requested:** The Court should strike the September 2025 Attorney Address Policy as unlawful. USCIS is requiring requestors to provide a *physical* address to verify their identity, but there is no basis for this requirement in the law.

Under 6 C.F.R. § 5.21(g), "if a third party requests records about a subject individual, the third party requester must provide verification of the subject individual's identity in the manner provided in paragraph (e)." The plain text of 6 C.F.R. § 5.21(e) requires "[t]he individual . . . provide their . . . current address." However, the regulation does not define "current address." Further, current Form G-639 requires a "[m]ailing" address and provides that a subject of record "may list *a* valid residence," "commercial address," or "post office address (PO Box) *if that is how the subject receives their mail*." Dkt. 196-7 at 5 (emphasis added). Notably, Form G-639 does not require *the subject's* residence or commercial address. So, requestors comply with the regulation and Form G-639 when they provide an attorney's address. *Cf. Madrid-Mancia v. Att'y Gen.*, No. 21-2291, 2025 WL 18094, at *2 (3d Cir. Jan. 2, 2025) (holding that "an address" where a noncitizen "may be contacted" encompasses any valid contact address, including a residence, a relative's address, or a P.O. box).

**Alternative Action Requested**: If the Court is unwilling to strike the policy, Plaintiffs ask that the Court order USCIS to publicize it on its website and in regulations. Defendants' failure to advise the public of this new requirement is particularly alarming given that the USCIS historically has accepted an attorney's address as the requestor's address, which further evidences an intent to close requests without processing them. *See* Dkt. 193-1 at 8. The USCIS System of Records Notices (SORN) do not include any update

Joint Status Report                                                         Case No. 3:19-cv-03512-WHO

that reflects this current practice. Dep't of Homeland Sec., *System of Records Notices (SORNs)*, https://www.dhs.gov/system-records-notices-sorns (last updated Dec. 9, 2025). Indeed, attorneys commonly list their address to receive their clients' legal documents and the court's filings. *See* Dkt. 193-1 at 8 n.24 (referencing Federal Rule of Civil Procedure 5(b)(1)).

       **B.**     **Closing Cases for Providing Multiple Last Names** (Dkt. 193-1 at 8)

The whistleblower complaint, Dkt. 193-1 at 8, further identified guidance from September 16, 2025, instructing FOIA personnel to close FOIA requests where the requestor's surname information does not exactly match USCIS's records, including where USCIS's records reflects one surname (e.g., "Santos") but the requestor provides their full surname (e.g., "Santos Perez"), or vice versa, even if there is a match between the A-number of the requestor and the A-number in the file (September 2025 Surname Policy). Dkt. 199-5 at 4-5 (WB Compl. Exh. 6, September 2025 Verification of Identity (VOI) policy guidance).

**Record Production:** On February 17, 2026, USCIS issued amended policy guidance which recognizes exceptions to its September 2025 Surname Policy; these exceptions generally concern the construction of foreign names. *See* Exh. I at 1; *see also* Exh. N at 1 (Feb. 17, 2026 Email re: "FW: (for discussion at 8:00) FOIA Guidance Change - VOI: Alignment with Agency Foreign Name Guidance") (noting that VOI guidance is incorporating USCIS guidance on construction of foreign names effective February 17, 2026, and that the change will be incorporated into USCIS guides); Exh. O at 1-6 (Feb. 17, 2026 Session 1 Transcript of VOI Guidance Update) (confirming new foreign constructs guidance for last names); Exh. P at 1-7, 10 (Feb. 17, 2026 VOI Session 2 Transcript of VOI Guidance Update) (same); Exh. Q at 1-2 (Feb. 17, 2026 Email re: "Questions from todays training") (same). For instance, the policy recognizes that some countries' identity documents will display names not in the U.S. customary name order (given name, middle name, family name) but rather ordered by family name, middle name, then given name. Exh. I at 1. Additionally, it recognizes that some individuals with two given names and two last names

Joint Status Report                                                              Case No. 3:19-cv-03512-WHO

(e.g., Maria Guadalupe Gonzalez Gomez) may have identity documents with their full name while other documents may have their full last name or only some names through customary usage. *Id.* Thus, because Defendants expanded exceptions to account for name discrepancies, Plaintiffs consider the issue regarding multiple last names resolved.

**Action Requested:** Plaintiffs do not ask the Court to order any action.

### C.     Closing Cases for Requestors' Failure to Provide Optional Information (Dkt. 193-1 at 8-13)

#### 1.     *A-number discrepancy even when providing documentation with correct A-number* (Dkt. 193-1 at 8)

The whistleblower complaint, Dkt. 193-1 at 8, also identified a policy by which a requestor is not required to provide an A-number for the subject of record (SOR) (A-Number Discrepancy Policy). Dkt. 196-7 at 2 (Arnold Declaration Exh. F, Form G-639, Dec. 12, 2024 edition) (instructing requestors that "You are not required to respond to every item.").

**Record Production:** USCIS updated its September 16, 2025 guidance on December 10, 2025, instructing that when a requestor provides multiple A-numbers for a SOR, USCIS "generally" must process it if at least one of the A-numbers matches the A-number in the file. Exh. B at 2; *see also* Exh. H at 39. However, USCIS continues to instruct that if an A-number is *not* an exact match, USCIS must close the request. *See id.* (noting requests should be closed as "FC" (failure to comply)); *see also* Exh. I at 2 (noting requests with A-numbers that do not "match exactly" should be closed as "NR" (no record)).

Further, if the request provides an alias or maiden name for the SOR, USCIS instructs that the request *must provide* an A number for that alias/maiden name, and if the A-number does not match, USCIS must close the request. Exh. L at 3; Exh. I at 1; Exh. J at 2-3; Exh. H at 8.

Between September 15, 2025 and December 14, 2025, USCIS has closed at least several dozen requests for this reason. Exh. G at 1.

**Action Requested:** This Court should strike the A-Number Discrepancy Policy requiring at least one match of an A-number as it conflicts with both the regulatory

17

requirement for VOI and the instructions on the G-639. Defendants' A-Number Discrepancy Policy instructs that a request should be closed at the initial stage in such instances, even where the requestor provides documentation with the correct A-number or in cases in which all VOI required by the regulation matches. Defendants' justification for this policy—that "the FOIA Office's good faith attempt to ensure that the right record is going to the right individual"—is unacceptable. Dkt. 196-1 ¶ 33.

As an initial matter, A-numbers are not required VOI. *See* 6 C.F.R. § 5.21(e) (listing required VOI and not including A-numbers). Where the required VOI regulatory information is provided and matches documents in an A-File, there is no justification for USCIS to close the request without processing it and releasing records. To the contrary, this violates USCIS' obligation to conduct an adequate search and to produce responsive records subject only to statutory exemptions. *See supra* Section I.

Similarly, with respect to aliases and maiden names, the A-Number Discrepancy Policy goes further by *requiring* an A-number, even though A-numbers are not required by regulation and USCIS specifically instructs requestors that not all information is required for a request to be processed. Individuals may have used other names years—or even decades—earlier are denied access to records if they do not remember or have in their possession A-numbers associated with those names. In some cases, USCIS may close requests on this basis even if the individual never had an A-number associated with their maiden name.

**2.   *Discrepancies when requestors choose to provide parents' names***
(Dkt. 193-1 at 8-13)

The whistleblower complaint, Dkt. 193-1 at 8-13, also pointed out USCIS' new policy of closing requests where there is a discrepancy in the optional parent information the requestor provided (Parent Information Policy). Arnold's response confirms that the information about parents' names is "voluntary." Dkt. 196-1 ¶ 30. Despite this, USCIS' new Parent Information Policy specifies that USCIS must close a request at the initial stage in the absence of an exact match between the parent's listed name and their names in the agency

18

Joint Status Report                                                    Case No. 3:19-cv-03512-WHO

records. Dkt. 193-1 at 8-13; *see, e.g.*, Exh. T at 1 (Apr. 1, 2026 Email re: "Tracking Number: NRC [Redacted] Subject Names: [Redacted] Subject A# [Redacted]") (noting that "records requested could not be verified with the parent information provided in [requestor's] initial request").

**Records Produced:** USCIS instructs that, when provided, a parent's name, both first and last names, must match what is in the file, including the mother's maiden name, with limited exceptions. Exh. I at 2. Without an exact match, USCIS must close the request as a "no record" closure. *Id*. Consequently, the requestor is not informed that there are records which match the required VOI. The largest number of requests closed under this new policy are those involving a mismatch of mothers' maiden names. *See* Exh. K at 20-21.

**Action Requested:** This Court should strike the Parent Information Policy as conflicting with the regulatory requirements for VOI and the form instructions. It also violates USCIS' statutory obligation to search for responsive records and provide them if not exempt. *See supra*, Section I. Regulations regarding the VOI information do not require requestors to provide their parents' names when making a request. *See* 6 C.F.R. § 5.21(e). Form G-639 makes clear to requestors that "You are not required to respond to every item." Dkt. 196-7 at 2. Agency records are not foolproof and often contain errors in names. Moreover, a parent's name can change due to a marriage or divorce, and the G-639 does not account for this. *See id.* at 6 (asking for only one full name for father and full family and maiden name for mother, but not any other names used).

**D.      Closing Cases for Date Inversion** (Dkt. 193-1 at 8)

The whistleblower complaint, Dkt. 193-1 at 8, identified USCIS policy of closing cases for inversion of the month and date in the subject of record's date of birth in FOIA requests (Date Inversion Policy). USCIS guidance now requires FOIA staff to close the request as failure to comply if the month and date of the date of birth are inverted. Dkt. 199-23 at 2 (WB Compl. Exh. 32, Message Clarifying Case Example Involving Erroneous A-number Data Entry).

19

**Record Production:** This policy remains in place. Exh. I at 1; *see also* Exh. Q at 2 (confirming that the foreign constructs guidance does not apply to dates of birth).

**Requested Action:** Plaintiffs do not ask the Court to take any action at this time. It appears that this policy is now moot because, as of January 22, 2026, USCIS requires that requests be submitted electronically through FIRST. *See Request Records Through the Freedom of Information Act or Privacy Act*, U.S. Citizenship & Immigr. Servs. (Jan. 27, 2026), https://www.uscis.gov/records/request-records-through-the-freedom-of-information-act-or-privacy-act. FIRST requires months, days and years to be chosen from a drop-down list in a specific order. *See* Exh. U (Apr. 12, 2026 screen shot of FIRST question regarding SOR's date of birth).

**Defendants' Position**

Over the last five years, Defendants have consistently demonstrated their good-faith commitment to satisfying their FOIA obligations and maintaining substantial compliance with this Court's injunction. *See, e.g.*, ECF No. 195 at 4 (summarizing the record of long periods of uninterrupted compliance). Defendants have also been candid with Plaintiffs and the Court in the limited instances when compliance has temporarily decreased, including most recently the decrease in compliance that occurred beginning in March 2025, which was followed by an increase in compliance as reported in December 2025. *See id.* at 4-5; *see also* Twentieth Compliance Report ¶¶ 4-6, ECF No. 192; Fifth Declaration of M. David Arnold ¶¶ 5-7, 12, 13-18, ECF No. 192-1.

On March 16, 2026, Defendants filed their Twenty-First Compliance Report with the Court. ECF No. 208. This Report confirmed that in the most recent reporting period, USCIS has continued to demonstrate its commitment to substantially complying with the Court's injunction. For the last reporting period, USCIS reported a timely completion rate of approximately 99.35% and that there was approximately only one (1) FOIA request for A-

20

Joint Status Report                                                                                    Case No. 3:19-cv-03512-WHO

Files in its backlog as of the end of the day on March 14, 2026. USCIS further reported that the number of cases in its backlog from requesters in Track 3—i.e. those who show they have a scheduled immigration proceeding—remains at zero. ICE's A-File backlog also remains at zero. *See* ECF No. 208 ¶ 4 (citations omitted).

Since the filing of the Notice of a "Whistleblower Disclosure" on December 19, 2025 (ECF Nos. 193 & 193-1), USCIS has in good faith strived to provide Plaintiffs and the Court with information addressing the allegations. On January 5, 2026, Defendant USCIS filed an initial response to the Whistleblower Disclosure which included the Sixth Declaration of M. David Arnold. ECF No. 196-1. As explained in the Declaration, "USCIS has not taken any actions, whether the actions alleged in the [Disclosure] or otherwise, with the purpose or intent of avoiding or imitating compliance with the injunction" in this case. *Id.* ¶ 42. "To the contrary," the Declaration explains, "each action that USCIS has undertaken to implement the FOIA has been made in a good faith attempt to comply with the FOIA," *id.* ¶ 5, and all of USCIS's "legal obligations, including the injunction," *id.* ¶ 42.

On January 6, 2026, this Court convened a Case Management Conference and entered an order directing the parties to work together to identify and produce informally the information addressing the questions and concerns arising from the whistleblower's allegations and address issues related to sealing of the whistleblower's exhibits. *See* ECF No. 198. The parties have complied with this Court's direction.

As recognized by this Court, "[t]he parties have worked well and collaboratively with respect to the filing of exhibits from the Whistleblower's complaint." ECF No. 203. Defendants conferred with counsel for Plaintiffs and for the whistleblower regarding the 47 exhibits cited in the Disclosure which the whistleblower's counsel provided counsel for the parties. *See* ECF No. 196 at 3 n.1. Based on the agreements reached in those conferrals, on

January 22, 2026, Defendants filed a Joint Notice submitting 36 of those exhibits for filing on the public docket, with redactions for certain personally identifying information ("PII") of Government employees and third parties. *See* ECF No. 199. Following that filing, the parties further conferred and agreed that 4 additional exhibits may be filed publicly, with similar PII redactions, and filed a second Joint Notice submitting those 4 exhibits to the public docket on January 30, 2026 (the same date as this filing). *See* ECF No. 200. As to the remaining 7 exhibits, Defendants moved the Court for leave to file some or all under seal. *See* ECF No. 204. On April 1, 2026, this Court granted "[204] Administrative Motion to File Under Seal PII for compelling justifications shown." *See* ECF No. 209.

The parties have also worked collaboratively to informally address the substantive issues. On January 22, 2026, Plaintiffs provided a letter requesting information and documents. ECF No. 20-1. Defendants have fully responded to that January 22, 2026 letter through rolling responses and accompanying documents on March 16, 2026, March 23, 2026, and March 27, 2026. These three rolling responses endeavored in good faith to answer each inquiry posed by Plaintiffs and provide non-privileged information addressing the issues for which Plaintiffs sought information as it relates to the Whistleblower Disclosure. Plaintiffs acknowledged receipt of the rolling responses.

### Defendants' Preliminary Response to Plaintiffs' Newly-Stated Position

On February 3, 2026, this Court directed that "[b]y the next CMC, the Court expects that all issues will have been discussed in detail and will consider next steps regarding any disputes." ECF No. 203 (Minute Entry). To comply with this Order, Defendants addressed Plaintiffs' January 22, 2026 letter and provided detailed information and documents to Plaintiffs through rolling responses on March 16, 2026, March 23, 2026, and March 27, 2026. Because Plaintiffs did not respond to Defendants' three rolling responses until late afternoon

Joint Status Report                                                                 Case No. 3:19-cv-03512-WHO

on April 14, 2026 -- two days before this JSR was to be submitted -- Defendants are currently unable to substantively and responsibly respond to the merits of the allegations made by Plaintiffs in this JSR.

While Defendants are not currently in a position to fully brief the Plaintiffs' newly-raised procedural issues, Defendants object to the Plaintiffs' effort to bring a new action under the guise of "enforcement."  As Defendants have previously advised this Court:

> Plaintiffs raise numerous legal disputes with actions alleged in the Disclosure concerning USCIS's implementation of the FOIA. But the claims in this case, and the Court's injunction, are about the timeliness of FOIA responses, not the substance or scope of those responses or the policies adopted to prepare those responses. *See* ECF No. 1 ¶ 75 (alleging a "pattern or practice of failing to make determinations regarding A-File FOIA requests within the statutory time period'); *see id.* ¶ 80 (similar); *see also* ECF No. 90 at 1 (enjoining Defendants "from further failing to adhere to the statutory deadlines for adjudicating A-File FOIA requests").  Moreover, none of Plaintiffs' legal disputes suggest that USCIS has acted in bad faith in implementing the Court's injunction, particularly in light of the good faith and transparency that USCIS has demonstrated over the many years since the injunction issued.

Joint Status Report, ECF No. 201, at 15 (January 30, 2026).

In this JSR, Plaintiffs sidestep the Federal Rules of Civil Procedure. For example, Plaintiffs seek to "strike" several policies of the USCIS, but there is no Complaint before this Court seeking such relief, and no Answer by Defendants.  Moreover, it is inappropriate to give weight to the Whistleblower Disclosure because it "has not yet been substantiated; it is an ongoing investigation that has seen no resolution." *AFSCME v. SSA*, No. 25-1411, 2026 U.S. App. LEXIS 10377, at *25 n.2 (4th Cir. Apr. 10, 2026) (Wilkinson, J., concurring).  "Allowing such untested accusations to permeate this case even informally will unjustly prejudice the accused party in the eyes of the public, and give legitimacy to the allegations before legitimacy has been earned." *Id.*

Joint Status Report                                                                 Case No. 3:19-cv-03512-WHO

Nevertheless, based on Defendants' review of Plaintiffs' position in this JSR, it is believed that further discussion may resolve at least some of Plaintiffs' concerns. In light of the posture of this case and in a spirit of transparency and a demonstration of Defendants' good faith, it is respectfully submitted that the next steps should be a continuation of the collaborative dialogue among the parties in an effort to constructively and informally address the issues that have been raised by Plaintiffs, *supra*. Defendants believe that additional time may further narrow or resolve at least some of the concerns raised by Plaintiffs. To the extent this Court declines to grant additional time for the parties to continue their collaborative dialogue, Defendants request that this Court extend the time for Defendants to respond to the new allegations.

Respectfully submitted,

| | |
|---|---|
| */s/Trina Realmuto* | BRETT A. SHUMATE |
| Trina Realmuto (CA SBN 201088) | Assistant Attorney General |
| Mary Kenney* | Civil Division |
| National Immigration Litigation Alliance | |
| 10 Griggs Terrace | ELIZABETH J. SHAPIRO |
| Brookline, MA 02446 | Deputy Branch Director |
| (617) 819-4447 | |
| trina@immigrationlitigation.org | */s/ John J. Halloran, Jr.* |
| | JOHN J. HALLORAN, JR. |
| Matt Adams (WSBA No. 28287)* | D.C. Bar No. 454128 |
| Northwest Immigrant Rights Project | Trial Attorney |
| 615 Second Avenue, Suite 400 | United States Department of Justice |
| Seattle, WA 98104 | Civil Division, Federal Programs Branch |
| (206) 957-8611 | 1100 L Street, NW |
| | Washington, D.C. 20005 |
| Raul Pinto (DC Bar No. 90013180)* | (202) 398-3398 |
| American Immigration Council | John.J.Halloran.Jr@usdoj.gov |
| PMB2026 | |
| 2001 L Street N.W., Suite 500 | M. JARED LITTMAN |
| Washington, DC 20036 | Trial Attorney |
| (202) 507-7549 | United States Department of Justice |
| | Civil Division, Federal Programs Branch |
| Stacy Tolchin (CA SBN 217431) | 1100 L Street, NW |
| Law Offices of Stacy Tolchin | Washington, D.C. 20005 |
| 634 S. Spring St., Suite 500A | (202) 451-7478 |

Joint Status Report                                                        Case No. 3:19-cv-03512-WHO

Los Angeles, CA 90014
(213) 622-7450

*Counsel for Plaintiffs*

*\*Admitted pro hac vice*

Dated: April 16, 2026

Jared.Littman2@usdoj.gov

*Counsel for Defendants*

25

Joint Status Report                                   Case No. 3:19-cv-03512-WHO