Exhibit 11

FW: Hiring Waiver Request for FOIA Program

[redacted]
To Turner, Timothy J

Reply | Reply All | Forward

Thu 6/11/2026 2:02 PM

We have received approval to hire FOIA positions up to a total of 200 FTE onboard; presently that is 19, but attrition and internal movement will change this.

Nothing immediate is requested on the hiring front. Now that we have this, we'll soon initiate the reorganization request starting with the memo that describes the goal/scope of reorg (while Front Office continues to work through the details of structure). I will take the lead on this project. Making hiring requests will follow.

Generally, I think we can anticipate FOIA Asst 5/6/7, GIS GS-7/9/11, and a combination of GS-12, GS-13 and/or GS-14 SGISs depending on what is decided. OSB team can begin to look at PDs/JAs but we are not yet to the point of reaching out to FOIA or HCT for any coordination. We may be more inclined to soft-launch hiring with supervisory positions because we don't have enough seats for all 19 positions unless/until Beacon office opens for USCIS in January (unless we need to get more creative to start sooner)

Please keep this information close-hold for the time being (within OSB only). I do not believe any level of detail was shared with Robert yet where you and I left off; I just shared more staffing information with Kristen so I anticipate she will have ideas as well before we settle on a final FOIA structure.

Thanks, please let me know any questions.

[redacted]
Associate Center Director
USCIS | Immigration Records and Identity Services
National Records Center | Operations Support Branch
[redacted] (Office)
(Cell)

**From:** [redacted]@uscis.dhs.gov>
**Sent:** Thursday, June 11, 2026 10:27 AM
**To:** [redacted]@uscis.dhs.gov>
**Subject:** FW: Hiring Waiver Request for FOIA Program

**From:** [redacted]
**Sent:** Thursday, June 11, 2026 10:08 AM
**To:** Arnold, Michael D (David) <Michael.D.ArnoldJr@uscis.dhs.gov>; [redacted]
**Cc:** [redacted]; DeNayer, Larry C <larry.c.denayer@uscis.dhs.gov>
**Subject:** FW: Hiring Waiver Request for FOIA Program

FYI

[redacted]
Deputy Associate Director
Immigration Records and Identity Services Directorate (IRIS)
U.S. Citizenship and Immigration Services
[redacted]

**From:** [redacted]
**Sent:** Thursday, June 11, 2026 11:04 AM
**To:** [redacted]
**Cc:** DeNayer, Larry C <larry.c.denayer@uscis.dhs.gov>; [redacted]
**Subject:** RE: Hiring Waiver Request for FOIA Program

Good morning – D2 flagged that you are approved to hire the 19 positions within FOIA. Thanks.

[redacted]
Deputy Associate Director
Acting, Chief Human Capital Officer

Exhibit 12

FW: Auto Redaction path forward options w/data driven goal

Reply | Reply All | Forward

To Turner, Timothy J
Cc [redacted]

Fri 5/8/2026 11:39 AM

Good morning, Tim!

I want to bring you in on an evolving effort (background below) because I have a feeling between comments between the FO and FOIA already are leading to Option 3 on the upcoming future of Auto Redaction.

If Option 3 is pursued, we need to be SURE that processors are actually reviewing the pre-redacted pages and have done the work to confirm that what the machine suggested is "good".
We have conditions from OIT security on moving forward with our tech solutions quoted in Red:
**Note: Approval Conditions/Restrictions from OIT - GenAI solution shall NOT be used to make any determinations, recommendations, or decisions related to immigration benefits without human in the loop.*

As I stated below:
**"Recommend with Option 3 we insert requirements and training to ensure the processor reviewed the machine provided redactions before releasing using the "trust but verify" method."**

Can we plan to incorporate/stress this verbiage in FOIA training? If you have any recommendations on what we can do at a system level that is not operationally intensive to confirm this I would take them. I was thinking about a confirmation screen when they complete a case and send it approving but that would be the same as when you accept the verbiage logging into a gov system.

[redacted]
Section Chief, System Reporting & Program Management
Operations Support Branch | National Records Center
Immigration Records and Identity Services
U.S. Citizenship and Immigration Services
Phone: [redacted]

**From:** [redacted]@uscis.dhs.gov>
**Sent:** Friday, May 8, 2026 8:06 AM
**To:** Arnold, Michael D (David) <Michael.D.ArnoldJr@uscis.dhs.gov>; [redacted]
**Cc** [redacted] Baxley, James A (Jim) [redacted]@uscis.dhs.gov>
**Subject:** Auto Redaction path forward options w/data driven goal

Good morning,

**BLUF:** Looking for confirmation on the options we discussed Wednesday to ensure a common understanding and provide opportunity to modify an option before it is actioned. Please let me know if there is a highly preferred option before we get a level of effort. Discussion with both development teams (FIRST & IDP) is happening this afternoon.

**Summary of difference:** Option 2 & 3 launch the form redactions to the FOIA enterprise. Option 2 requires the processor to accept or reject each redaction or page of redactions. Option 3 pre-redacts the forms and processors review/process as normal (they could delete and modify machine provided redactions as if they made them).
Option 2 provides a security measure to ensure processors are checking what the machine provided. **Recommend with Option 3 we insert requirements and training to ensure the processor reviewed the machine provided redactions before releasing using the "trust but verify" method.** *Of note – it has been observed that the ramp up time for processors is related to the need to accept/reject redactions as this is an operational change.

**Note: Approval Conditions/Restrictions from OIT - GenAI solution shall NOT be used to make any determinations, recommendations, or decisions related to immigration benefits without human in the loop.*

**Option 1: Launch the ART to all offices with limited, high user impact features.**

*Features:*
- PDF Search tool
- Searchable text on all documents (OCR)
- Form classification (identification of standard USCIS and ICE forms inside larger files)
- Automated WIF

*Development needed:*
- IDP team (IIMD) would need to decouple form redactions from the form classification process and text recognition(OCR)
- FIRST team would need to deploy the ART interface (tool bar), Auto WIF logic and PDF Search

**Option 2: Launch the ART to all offices with Top 6 Forms (I-485, I-765, I-821, I-862, I-130, and N-400) high impact features providing ability to accept or reject redactions.**

Features:



Hide Recent | Tag | 95% | 1376 x 1184px

to all offices with limited, high user impact features.

*Features:*

- PDF Search tool
- Searchable text on all documents (OCR)
- Form classification (identification of standard USCIS and ICE forms inside larger files)
- Automated WIF

*Development needed:*

- IDP team (IIMD) would need to decouple form redactions from the form classification process and text recognition(OCR)
- FIRST team would need to deploy the ART interface (tool bar), Auto WIF logic and PDF Search

**Option 2: Launch the ART to all offices with Top 6 Forms (I-485, I-765, I-821, I-862, I-130, and N-400) high impact features providing ability to accept or reject redactions.**

*Features:*

- PDF Search tool
- Searchable text on all documents (OCR)
- Form classification (identification of standard USCIS and ICE forms inside large files)
- Automated WIF
- Machine suggested redactions for 3rd Party PII for top 6 forms only

*Development needed:*

- IDP team (IIMD) would need to decouple form redactions from the form classification process and text recognition(OCR)
- FIRST team would need to deploy the ART interface (tool bar), Auto WIF logic and PDF Search

**Option 3: Launch the ART to all offices with Top 6 Forms (I-485, I-765, I-821, I-862, I-130, and N-400) high impact features providing ability pre-redacted forms that can be edited by processors.**

*Features:*

- PDF Search tool
- Searchable text on all documents (OCR)
- Form classification (identification of standard USCIS and ICE forms inside large files)
- Automated WIF
- Machine suggested redactions for 3rd Party PII for top 6 forms only

*Development needed:*

- IDP team (IIMD) would need to decouple form redactions from the form classification process and text recognition(OCR)
- FIRST team would need to deploy the ART interface (tool bar) with modifications to remove the Accept/Reject panel, Auto WIF logic and PDF Search

**SAF office:** Leave everything as is including auto suggested redaction. This office will be used for BETA testing new features and forms before launching to the enterprise.

**Context and Goals**: The FOIA program has gone through a 23.5% loss in FOIA processors over the last year. These losses drive the need to increase productivity by 11% to sustain the response times of the past 2 years considering the 6% decrease in receipts with the 23.5% loss of processors. The processor group using BETA Auto Redaction Tool has demonstrated a combined increase of 5% work performance calculated by a combined average PPH rate from 9/29 to now. We were consistently at the 10% increase mark but recently have seen the PPH drop with addition of new teams which need further investigation to identify potential cause and new technical requirements. The current development initiative for the FIRST Team will focus on processing automation (VOI, identification of content type for specific bookmarks, search and redact) in addition to redaction enhancements to drive productivity increases.
The FIRST Tiger (SIG) team is managing the User interface features, WIFing and PDF Search. They will be testing the new Bedrock LLM and handling the proof of concept. The IIMD IDP team is providing text recognition layer on all documents, form classification, and standardized form redactions. These are needed as the foundation which the FIRST features are riding on. The Level of Effort discussion today will include discussion of the impact on computing costs, if any, to reduce the suggested redactions limiting it to the top 6 forms. Top 6 form additional variations and policy update a scheduled to be complete by the end of May.

Please let me know if you have any questions or comments

[redacted]

Section Chief, System Reporting & Program Management
Operations Support Branch | National Records Center
Immigration Records and Identity Services
U.S. Citizenship and Immigration Services

Exhibit 13

9:05 AM

FYSA. We'd need training here since they are not trained in processing AAOs, just doing 508 (they have unique rules different from a-files). We don't have the manpower to handle this during work hours, but if we want to authorize my team to do these on OT we could train [redacted].

> [redacted] 6/16/2026 8:58 AM
>
> If I pulled all but [redacted] out of the AAO pipeline for a couple of weeks, do you think your team could cover that gap in terms of processing those records (usually only a couple of pages that need to be processed in each record set). We are trying to focus on A-File processing for the next two weeks and may be pulling everyone out of other works streams.

[redacted] 9:11 AM

thanks, I think the answer here is no. we're losing to many resources now ourselves.

9:12 AM

Processing AAOs on OT is not an option?

[redacted] 9:15 AM

I'm suggesting no, not in the context of them being responsible for fully covering [redacted] -- not to put them on the hook that we must meet the full demand in order to move [redacted] perhaps in a support role, but I'd ask first how long will they need to train on this, and, how many hours of overtime are they voluntarily working per week presently?

FOIA's problem to solve right now is their numbers of cases needing worked are growing, their daily output is shrinking so they are looking around at options. they are looking to offload this to put [redacted] in processing it seems; if we just swap out your team's overtime in CC or CP wth AAO so [redacted] can process, we're just shuffling chairs for the sake of it

Exhibit 14

**Memorandum for the Record: Feedback Session Call with NRC Director M. David Arnold**

**Date of call:** March 2, 2026
**Time:** 12:30 – 1:03pm eastern
**Participants:**

- Timothy Turner, Supervisory Operations Support Specialist
- M. David Arnold, NRC Director




At 12:30pm eastern, I joined a "Supervisor Feedback Session" in Microsoft TEAMS with Director M. David Arnold. Director Arnold described stated the him, [redacted] were meeting with first-line supervisors and summarized the purpose of the call "as a pulse check" and to get after three questions:

1. "Do you feel empowered as a first-line supervisor to make decisions that impact the mission set of you and your team."
2. "Do you feel that you are properly resourced to meet the demands of your mission set."
3. "...[m]ost importantly, do you feel that you have the formal and informal support of your leadership chain to get you where you want to go in your career."

The first portion of the call focused on how I engage with my team and the resource and time demands of my role as the head of HR and training.

After roughly 18 minutes, Director Arnold asked "how do you measure whether or not you're being heard, up and down the chain." After speaking to how I measure how I'm being heard by my team, I stated that some of my "more intense concerns" either "don't resonate or can't resonate." The Director stated he understands, but sometimes we should be prepared to get an answer that we do not like. I stated that as it relates to "the concerns that I've brought up as it relates to the VOI guidance and closure practices," that if I had the slightest doubt that I was off base I wouldn't be bringing them up constantly." I stated that I felt it was "fairly egregious on our part to inform requesters of one standard without telling them the internal standard that we're doing to close their cases... They can follow the instructions we give and still get their case closed," at which point the Director interjected and stated he disagrees. He stated he must "meet the demands and mission of FOIA" and "safeguard certain records," noting that "if you provide me information that is wrong, I don't

have the ability to say 'hey, I never saw that.'" He asked when does he make the distinction between a mistake, a fat-finger, a typo, or fraud, then stated "as long as I'm the NRC Director and it's my decision to make, I'm going to err on the side of caution. Because it doesn't cost you anything to refile... But if you send us wrong information, I can't ignore it."

I responded that I don't think anybody who actually spends their time creating these cases or processing those has any disagreement with closing a case FC or No Record if they don't provide the required the CFR requires, but "that's not really what we are talking about here. People can provide all of that, and it's just a very immaterial difference," at which point the Director interjected and said "I'm not going to quibble with you on the definition of 'immaterial,'" and that he understands the CFR about required and additional information to "aide in VOI," and gave an example of someone saying their mom's name was Rae but their mom's name was Margaret, and there is no way to get Rae from Margaret. I clarified that I am not debating those instances, I was speaking to instances where everything matches, the a-number matches and they told us their mother's name was Maria and the record says "Ma," we're closing those cases. The Director responded "No, I don't want to say we haven't closed those in the past, but I'm also going to say that it's not a practice or policy of us to close those[1], and we are always trying to get better."

He said that at the pay grade of our case creators and the demands we ask of them, "trying to find that perfect policy" to "give them enough information to get it right," but "doesn't delve into each case becoming a concierge boutique assignment, that it's a fine line to walk" and that he will "err on the side of conservative," and will adjust if they see trends. He said it was a balancing act between "security, privacy, and transparency." He said he felt Larry (DeNayer), OCC, and D1 "were behind me on this" and asked why would he ask for information if he is not going to use it to make a decision.

I responded that I was not debating instances "where there are blatant mismatches," I was speaking to scenarios where it is "Maria vs Ma" or their date of birth as "26/1 vs 1/26," where we "can verify that record belongs to the person." I then stated "With all due respect, I disagree with that it doesn't hurt to refile," noting that "for people who are in immigration proceedings or detained, it does hurt" and spoke to instances where they sit longer than necessary in detention, or where we cannot deport them in a timely manner. He said "I just disagree. As long as it's my decision to make, that's my decision." I responded "Ok."

The Director then said "And maybe that's part of your concerns about being treated differently. Maybe the feedback to you is you're having trouble accepting the answer." I responded that my job is to advise and support, which he can "take it or leave it," and quoted his statement from the February 3 All-Hands meeting: "And now it goes to someone else to decide."

---

[1] In the February 17 VOI Guidance Update TEAMS call, FOIA leadership stated that "Ma or Md" is "not one of the exceptions we are allowing."

res are valid.



The Director than asked if I feel I am getting the support I need to get to where I want to be in my career. I stated "pay grades and advancement isn't as much of a priority as it is to support people and abiding by the laws of the nation," and that sometimes I do feel empowered while other times I do not.

The Director said "I'm sorry you feel that way... I think we're quibbling over policy," and that he knows I am "very passionate about this." He stated that he is running a very large operation and that he binds his decisions to "the greatest good for the greatest amount of people with the least amount of resources and the lowest operational risk."

He asked if I had anything else. I responded that while we have disagreements on this, I appreciate him taking the time to hear my feedback. He stated he values my feedback, and stated "I know in some of these cases, we're trying to enact policy to be more secure, be more upper-level guided about making sure we don't send the wrong information to the wrong people and getting hit on this pretty hard." He then said when they drop a policy "and maybe we didn't mean for it to be as stark as it was, but yeah, you can take this to the nth degree." He stated "I'd like to think most people can apply things through the lens of common sense, but I'm starting to find out that maybe that's less so." He stated our "primary goal was to balance transparency with security, and taking senior guidance." He stated that we'll always be changing VOI as long as we are in a system operated by humans, and that " I will tell you: it's probably I don't want to say it's going to get worse, but going to get harder when it comes to using discretion because we're having a lot oof pressure to implement automated systems."

I stated "I want to be very clear that I'm in line with making sure that right person gets the right record," and pointed out that in my email to him "that our FIRST homepage still says we'll accept their current address or email address," and internally we will close that case FC if they give us their email address. The Director said he "I actually did notice that last week" and that he needed to bring that up "because I know we don't take email addresses" and they need to make sure "all that stuff is catching up. Because for a while we were... I won't call it a gag order, but we're being extremely limited by DHS by what we can go out and say and not say." He stated that is what happened with the recent AAO Decisions,[2] and that "going back, working through those issues, I get it." He then said people will know within 72 hours of filing whether or not their request "has been Up-Front closed or not" and that "refiling is easy."

I responded "but knowing what is in their record isn't always easy," and gave the example that someone whose file consists of deportation records 20 years ago aren't able to know or remember the exact way their parents' names were listed. The Director stated he was "going back" with Jim (Baxley) to "update our Final Action Letters to be more descriptive. 'Here's what you did wrong, here's what you need to fix.'" I noted that most FOIA offices

[2] I took this to mean uploading AAO Decisions to the Electronic Reading Room, something me and my team were tasked with supporting by making AA) Decision 508 compliant before being uploaded.

reach out to the requesters and call it "curing." I also noted that USCIS FOIA use to reach out to requesters, where if there wasn't an exact match and we weren't sure the record belonged to the subject of record, we would ask them to "provide us x, y, and z" to verify the record. He said "I don't disagree with that, I'm just saying it's a different process to do that at 100,000 cases a year vs 600,000 cases a year."

He asked if I had anything else, I said "No sir, I appreciate your time."

TIMOTHY J TURNER

Digitally signed by TIMOTHY J TURNER
Date: 2026.03.02 15:38:46 -05'00'

Exhibit 15

FOIA Policy Guide.pdf

## 3.2 Verification of Identity (VOI)

When a request is made for access to immigration records, the subject of record's identity must be verified, consistent with 6 CFR 5.21(e). The subject of record (SOR) is the individual whose records are being requested. VOI protects the SOR's privacy interests.

Any exception to the VOI matching requirements must be documented in a Case Note. "Alleges" and "Unknown" are not acceptable for VOI. Abbreviated names ("Ma." for Maria; "Md" for Mohammed) are not acceptable.

### 3.2.1 Required VOI Elements

The requestor must provide the following information about the SOR:

- **Full name.** The SOR's legal name will generally appear in U.S. customary order (given name, middle name, family name).
- **Current address.** P.O. Boxes are acceptable. Email addresses and incomplete addresses are not acceptable. For current address, we will consider information provided by the subject of record that an attorney address or other address provided reflects the subject of record's current address. At this time, the subject of record may establish an address as their current address by providing information that it is the address where they ordinarily receive their mail.
  - Exceptions: 1367/VAWA-protected safe address; minor SOR (may match requestor's address); deceased SOR (may match requestor's address or be left blank).
- **Complete date of birth.** Must match U.S. customary standard (month, day, year). Incomplete DOBs and numerical inversions are not acceptable.
- **Country of birth.** "Place of birth" and "native of" are both acceptable terms. Country of birth information may differ between records and the PCIS system due to historical name changes, geopolitical changes, alternate spellings, or changes in government designations.
  - Examples include: Burma/Myanmar, Ceylon/Sri Lanka, Yugoslavia/Serbia-Croatia-Bosnia, USSR/Russia and others, and Persia/Iran.
  - Examples of insufficient COB are failing to provide a COB or stating that the COB is unknown or alleged.

Exhibit 16

Delete Archive Report Reply Reply All Forward Share to Teams All Apps 1-Action To Manager Team Email Move Assign Policy Mark Unread Categorize Follow Up Immersive Translate Zoom Reply with Scheduling Poll Viva Insights

Delete | Report | Respond | Teams | Apps | Quick Steps | Move | Tags | Editing | Language | Zoom | Find Time | Add-in

## Operational Concerns - VOI Guidance and Sixth Declaration

Turner, Timothy J
To Arnold, Michael D (David)

Reply Reply All Forward

Mon 3/2/2026 12:17 PM

Retention Policy USCIS-Default-Retention-Policy (Never) Expires Never

FW: Quick Guide to New VOI Guidance
Outlook item

FW: VOI Guidance Questions
Outlook item

Pre-Post_Comparison.pdf
210 KB

FW: (for discussion at 8:00) FOIA Guidance Change - VOI: Alignment with Agency Foreign Name Guidance
Outlook item

Good morning,

I am writing because I previously raised operational concerns about NRC closure practices with David Neely on November 17 and November 19, 2025, and requested they be elevated to leadership. I have not received a substantive written response. The concerns below relate to statements you made at the February 3, 2026 All-Hands meeting and to representations in your Sixth Declaration to the Court on January 5, 2026 (ECF No. 196-1). As the declarant, you are the appropriate person to assess whether any correction or supplementation of the record is warranted.

**February 3 All-Hands and February 17 Guidance Update**

When responding to a question about the recent whistleblower disclosure at the February 3 All-Hands, you stated you were "very confident" in FOIA policies and procedures. You used a Bank of America analogy to describe VOI-driven closures: if a person walks in, misspells their last name, has no ID, and gives an invalid account number, then they probably are not leaving with any money (see: All-Hands, 00:50:34 – 00:52:40).

Many of the closures I have observed do not match that scenario. A requester can provide all required VOI (full name, address, date of birth, country of birth, and signature under penalty of perjury) and may also provide optional identifiers (such as an A-Number), with the required VOI matching USCIS records, and still have the request closed as Failure to Comply (FC) or No Record (NR) based on a discrepancy in an optional or secondary field. For example, I have observed NR closures where the provided parents' names contained an additional name element not present in their alien file (or vice versa), even though the subject of record's A-number, name, date of birth, and country of birth all matched their alien file. I have also observed FC closures in removal-proceeding contexts where the requester used counsel's mailing address, and the VOI guidance treats an "address of representative (example = attorney)" as "not acceptable." I have also seen minor variations in a parent's name or a transposed month and day in a date of birth across documents in the same request trigger a "multiple versions" FC closure.

Fourteen days after your expression of confidence at the All-Hands Meeting, on February 17, 2026, FOIA leadership issued an "effective immediately" VOI guidance update adding foreign-name construction exceptions. These are precisely the categories of closures I flagged in my November 2025 emails and that the December 19, 2025 whistleblower disclosure documented.

If USCIS's FOIA policies were adequate on February 3, the February 17 changes were unnecessary. If the policies were not adequate, the stated confidence was premature and the January 5, 2026 Declaration's characterization of the then-existing exceptions to the September 2025 VOI name-matching/"mismatch" closure rules (e.g., hyphen/spacing/'de'/'sounds like' handling) as an appropriate "balance" (¶ 32) between (1) enabling verified requesters who provide the required VOI to receive records and (2) preventing misidentification or unauthorized disclosure was either incomplete or inaccurate when filed. The February 17 additions suggest that balance had not yet been struck.

At the February 3 all-hands meeting, you also stated that you read the entire December 19, 2025 disclosure and that you "don't really rebut anything the whistleblower said, other than motive." Though you did not specify what you meant by "motive," I understand this to refer to the disclosure's allegations that the September 2025 policy changes were implemented with the intent to maximize FOIA request closures and improve the appearance of compliance with the Nightingale court order. Your statement appears to accept the disclosure's description of operational effects while disputing the reasons for adopting the changes. In contrast, several representations in the January 5, 2026 Declaration do not merely address intent; they make descriptive, factual characterizations of how the September 2025 VOI guidance operates in practice. I raise here concerns that these descriptions were either not representative or inaccurate; for example:

> **¶ 20** states the May 27 "close 99%" proposal "was not implemented." That may be factually accurate but is not representative of policy changes that followed. Notably, the May 27 proposal was at least tethered to a required VOI element in 6 C.F.R. § 5.21(e) (country of citizenship/residency). By contrast, the September 2025 VOI guidance (entered as Exhibit E in the court record) implemented mismatch- and format-based closure triggers beyond what the regulation specifies (for example, treating voluntary-field mismatches as independent closure bases even where all required VOI matches the record).
>
> Similarly, 6 C.F.R. § 5.21(e) requires a date of birth but does not specify a format; the September 2025 VOI guidance requires MM/DD/YYYY format. Then, in the attached "VOI Guidance Questions" email sent to staff on September 22, 2025, they were again instructed to close cases as FC when month and day are inverted, a common issue for requesters from DD/MM/YYYY jurisdictions. The email went even further to state that "the requester must provide the full year of birth to be considered sufficient for VOI," when answering whether 3/3/61 would be acceptable:
>
> Inverted MM/DD__close FC?
> Answer: The updated guidance requires the SOR's complete date of birth, including month, day, year. If the month and day are inverted, upfront close the request as FC.

File Message Help Acrobat Tell me what you want to do

Delete Archive | Report | Reply Reply All Forward | Share to Teams | All Apps | 1-Action To Manager Team Email | Move | Assign Policy | Mark Unread Categorize Follow Up | Editing | Immersive | Translate | Zoom | Reply with Scheduling Poll | Viva Insights

Delete Report Respond Teams Apps Quick Steps Move Tags Editing Language Zoom Find Time Add-in

# Operational Concerns - VOI Guidance and Sixth Declaration

Turner, Timothy J

To Arnold, Michael D (David)

Reply Reply All Forward

Mon 3/2/2026 12:17 PM

Retention Policy USCIS-Default-Retention-Policy (Never) Expires Never

FW: Quick Guide to New VOI Guidance
Outlook item

FW: VOI Guidance Questions
Outlook item

Pre-Post_Comparison.pdf
210 KB

FW: (for discussion at 8:00) FOIA Guidance Change - VOI: Alignment with Agency Foreign Name Guidance
Outlook item

concerns that these descriptions were either not representative or inaccurate; for example:

**¶ 20** states the May 27 "close 99%" proposal "was not implemented." That may be factually accurate but is not representative of policy changes that followed. Notably, the May 27 proposal was at least tethered to a required VOI element in 6 C.F.R. § 5.21(e) (country of citizenship/residency). By contrast, the September 2025 VOI guidance (entered as Exhibit E in the court record) implemented mismatch- and format-based closure triggers beyond what the regulation specifies (for example, treating voluntary-field mismatches as independent closure bases even where all required VOI matches the record).

Similarly, 6 C.F.R. § 5.21(e) requires a date of birth but does not specify a format; the September 2025 VOI guidance requires MM/DD/YYYY format. Then, in the attached "VOI Guidance Questions" email sent to staff on September 22, 2025, they were again instructed to close cases as FC when month and day are inverted, a common issue for requesters from DD/MM/YYYY jurisdictions. The email went even further to state that "the requester must provide the full year of birth to be considered sufficient for VOI," when answering whether 3/3/61 would be acceptable:

> **Inverted MM/DD...close FC?**
> Answer: The updated guidance requires the SOR's complete date of birth, including month, day, year. If the month and day are inverted, upfront close the request as FC.
>
> **Does the DOB have to be in the exact format? (example: 3/3/61 vs 03/03/1961)**
> Answer: The requester must provide the full year of birth to be considered sufficient for VOI. The leading zero for month and day is not required.

After the February 17, 2026 guidance expanded exceptions for foreign name construction, staff asked "[a]re we going to be allowing the use of foreign constructions of DOB's in the future?" in a Teams call that same day. [redacted] responded: "That's a really good question. At this point there will be no change. However, as you can see, things are continually shifting, so that may be coming in the future. More to come, but at this point there will be no change." (see: VOI Guidance Update, 00:09:10 - 00:09:43.) This confirms that the date-format rule remains a categorical closure trigger even after foreign name-construction exceptions were expanded, and it warrants written clarification or revision to avoid predictable mismatch-driven FC closures for non-U.S. requesters.

The declaration's framing risks leaving the impression that no closure mechanism comparable to the May 27 proposal was adopted. In other words, Exhibit E may be in the record, but the January 5, 2026 Declaration does not connect the dots for the Court as to whether the implemented September 2025 guidance achieved a similar practical outcome as the May 27 proposal through different (and in some respects broader) closure triggers.

**¶ 25** states the September 2025 revisions "were not made with any intent to manufacture the appearance of compliance," but it does not address the core operational question raised in the disclosure: whether identity-verifiable requests are being closed without production as a result of the September 2025 VOI changes.

**¶ 30** states voluntary information provided in a FOIA request is used to "help the identification and location of requested records." Yet a September 16, 2025 email disseminating the September 2025 policy changes states the opposite for information provided in optional fields: "if it is provided and does not match SOR information, close NR." That instruction does not treat voluntary information as an aid; it treats voluntary information as a disqualifier, including in cases where identity is otherwise verifiable and/or records have been located. That approach is in tension with DHS's own published framing of optional identifiers. The governing regulation explains: "'In order to help the identification and location of requested records, an individual may also voluntarily include other identifying information... (e.g., ... A-Number).'" The FIRST Privacy Impact Assessment similarly states that "[t]he only mandatory information for identity verification purposes is the subject of record's name, current address, date of birth, and place of birth," and that "[a]ny additional information provided... is used to help the FOIA Operations Division identify and locate records more expeditiously."

The VOI Quick Guide, originally issued in November 2025 and most recently updated on February 17, 2026, states that "if VOI is found in the ARD but conflicts with the Front Porch, close the case FC." This extends to scenarios where a requester mistyped their A-Number in the request but the Additional Request Documents (ARDs) provided by the requester show the correct A-Number. [redacted] confirmed as much to me on November 19, 2025, noting that even if the subject provided a document originally created and sent to them by USCIS with the correct A-Number, we would still close the case FC if the requester mistyped their A-Number on the Front Porch request:

> Wednesday, November 19, 2025
>
> Turner, Timothy J 10:46 AM
> Good morning.

File Message Help Acrobat Tell me what you want to do

Delete Archive | Report | Reply Reply All Forward | Share to Teams | All Apps | To Manager Team Email | Move | Assign Policy | Categorize Follow Up | Immersive | Translate | Zoom | Reply with Scheduling Poll | Viva Insights

Delete Report Respond Teams Apps Quick Steps Move Tags Editing Language Zoom Find Time Add-in

# Operational Concerns - VOI Guidance and Sixth Declaration

Turner, Timothy J
To Arnold, Michael D (David)

Reply Reply All Forward

Mon 3/2/2026 12:17 PM

Retention Policy USCIS-Default-Retention-Policy (Never) Expires Never

FW: Quick Guide to New VOI Guidance — Outlook item
FW: VOI Guidance Questions — Outlook item
Pre-Post_Comparison.pdf — 210 KB
FW: (for discussion at 8:00) FOIA Guidance Change - VOI: Alignment with Agency Foreign Name Guidance — Outlook item

The VOI Quick Guide, originally issued in November 2025 and most recently updated on February 17, 2026, states that "if VOI is found in the ARD but conflicts with the Front Porch, close the case FC." This extends to scenarios where a requester mistyped their A-Number in the request but the Additional Request Documents (ARDs) provided by the requester show the correct A-Number. [redacted] confirmed as much to me on November 19, 2025, noting that even if the subject provided a document originally created and sent to them by USCIS with the correct A-Number, we would still close the case FC if the requester mistyped their A-Number on the Front Porch request:


Wednesday, November 19, 2025

Turner, Timothy J 10:46 AM
Good morning.

Can you clarify this highlighted part for me? Say they fat-fingered the a-number in the Front Porch request but provided an I-797 in the ARD that shows their correct a-number. We'd close that as FC? Or if in the Front Porch they use DD/MM/YYYY but the ARDs have the US format of MMMM/DD/YYYY. We'd still close it FC?

II) When VOI is found in the Additional Request Documents (ARD)
- Review the entire request package (including the ARDs) regardless if the Front Porch is marked "Yes" or "No."
- All VOI in ARD must be signed under notary or penalty of perjury to be used.
  - If VOI is found in the ARD and matches the Front Porch, then proceed to create or process the case.
  - If VOI is found in ARD but conflicts with the Front Porch, close the case FC.
  - If VOI is incomplete in Front Porch but found in ARD, then proceed to create or process the case.

[redacted] 0:50 AM
Hi Tim! Yes, if the A# provided in the front porch does not match the record, it will be closed FC. The correct final action letter insert will be added so they know they need to provide the correct, non-fat fingered A#, in the front porch. If there is any variance in the information from the front porch and the ARDs where the notarized VOI is found, it will be closed FC b/c they've provided 2 different dates of birth. The inserts will be added to show that information too.

¶¶ 32–33 present the November 2025 exceptions (hyphens, "de," spacing, "sounds like") as part of the FOIA Office's asserted compromise, an effort to "attempt[ ] to strike the right balance between prompt disclosure, while still protecting against improper disclosure." In those paragraphs, the declaration characterizes the December 19, 2025 Government Accountability Project letter to Congress (ECF No. 193-1, the 'Letter') call for additional exceptions as a "disagreement" that "does not undermine" the FOIA Office's "good faith attempt" to ensure the right record is released to the right person. However, after the declaration was filed, the FOIA Office issued additional guidance on February 17, 2026 expanding the exception framework to cover compound surnames and foreign-name ordering (i.e., requests will no longer be closed solely because optional VOI mismatches are attributable to common name-construction scenarios). That post-filing expansion aligns with the disclosure's concern that mismatch-driven closures were occurring in predictable, high-frequency situations, and it undercuts the declaration's implication that the then-existing exception framework had already 'str[uck] the right balance' when presented to the Court. In practical terms, the February 17 update shows the balance described in ¶¶ 32–33 had not yet been achieved and required material expansion to address foreseeable mismatch scenarios.

¶ 34 states the count of FOIA requests closed as no record (NR) "has not experienced a significant change." The declaration does not specify the time period for that comparison (e.g., pre- vs. post-September 2025 guidance), and it does not directly address the count of FOIA requests closed as "failure to comply" (FC), which increased sharply in the five months following the September 2025 guidance. For example, using FIRST reporting to filter only cases categorized as "Alien File" and using the same five-month pre/post windows (pre-policy: 4/15/2025–9/15/2025; post-policy: 9/16/2025–2/16/2026), overall NR closures increased modestly from 49,706 (24.9% of closures) to 53,948 (25.2%). Over that same period, FC closures increased from 6,449 (3.2%) to 58,259 (27.2%) (+24 percentage points; +803%; ~9.0×). In the Track 3 subset, NR closures increased from 177 (3.0%) to 1,848 (21.3%) (+18.226 percentage points; +944.1%; ~10.4×). Accordingly, ¶ 34 highlights the category it characterizes as stable (overall NR) while omitting the category that changed substantially (FC), and it does not address whether NR shifts occurred in affected subpopulations such as Track 3. The declaration also does not address the disclosure's concern that "no records responsive to your request were located" language is being used for VOI-mismatch closures, rather than to report the outcome of an unsuccessful search.

**Published Instructions for Requesters Continue to Contradict FOIA Processing Guidance**

Both the November 18, 2025 and February 17, 2026 quick guides list "Address of representative (example = attorney)" as "not acceptable." Represented individuals in removal proceedings routinely submit requests through counsel and provide counsel's address. The VOI Quick Guide already permits a different person's address for minors and subjects under VAWA, establishing that the agency does not always require the SOR's own physical address, yet that flexibility has not been extended to represented requesters with pending immigration court dates. As noted in my November email to [redacted] below, our own G-639 permitted the use of a commercial address:

Operational Concerns - VOI Guidance and Sixth Declaration - Message (HTML)

File Message Help Acrobat Tell me what you want to do

Delete Archive | Report | Reply Reply All Forward | Share to Teams | All Apps | 1-Action To Manager Team Email | Move | Assign Policy Mark Unread Categorize Follow Up | Immersive | Translate | Zoom | Reply with Scheduling Poll | Viva Insights

Delete Report Respond Teams Apps Quick Steps Move Tags Editing Language Zoom Find Time Add-in

# Operational Concerns - VOI Guidance and Sixth Declaration

Turner, Timothy J

To Arnold, Michael D (David)

Reply Reply All Forward

Mon 3/2/2026 12:17 PM

Retention Policy USCIS-Default-Retention-Policy (Never) Expires Never

- FW: Quick Guide to New VOI Guidance — Outlook item
- FW: VOI Guidance Questions — Outlook item
- Pre-Post_Comparison.pdf — 210 KB
- FW: (for discussion at 8:00) FOIA Guidance Change - VOI: Alignment with Agency Foreign Name Guidance — Outlook item

that "no records responsive to your request were located" language is being used for VOI mismatch closures, rather than to report the outcome of an unsuccessful search.

**Published Instructions for Requesters Continue to Contradict FOIA Processing Guidance**

Both the November 18, 2025 and February 17, 2026 quick guides list "Address of representative (example = attorney)" as "not acceptable." Represented individuals in removal proceedings routinely submit requests through counsel and provide counsel's address. The VOI Quick Guide already permits a different person's address for minors and subjects under VAWA, establishing that the agency does not always require the SOR's own physical address, yet that flexibility has not been extended to represented requesters with pending immigration court dates. As noted in my November email to [redacted] below, our own G-639 permitted the use of a commercial address:



**Subject of Record's Mailing Address and Contact Information**

8. List the subject's contact information. You may list a valid residence, Army Post Office (APO), Fleet Post Office (FPO), or commercial address in the United States. You may list a post office address (PO Box) if that is how the subject receives their mail.

Notably, FIRST's public intake flow asks only for a "mailing address" for the subject of record, not their "physical address." The first.uscis.gov homepage requirements still (as of this morning) lists "Current Address or Email Address" as sufficient:




The language confirms the agency's own understanding that the address requirement is satisfied by wherever the subject receives their mail. Neither the request form nor the published requirements reference a "physical address" or prohibit use of counsel's address. However, internal guidance instructs processors that the "SOR's current physical address" is required and to close cases FC where the requester provides their attorney's address or an email address:

- SOR's Current Physical Address
  - P.O. Boxes are acceptable.
  - Exceptions for the SOR's address
    - 1367/VAWA Protection: A safe address is acceptable.
      - Case Creators – If requestor mentions a 1367/VAWA document or there is a 1367/VAWA document found in the Search Tab, create the case.
      - Case Processor – Verify if there is a 1367/VAWA document present in the RR, if not then close case FC.
      - Typical 1367/VAWA Documents:
        - I-360 – Petition for Amerasian, Widow(er), or Special Immigrant

File Message Help Acrobat Tell me what you want to do

Delete Archive | Report | Reply Reply All Forward | Share to Teams | All Apps | 1-Action To Manager Team Email | Move | Assign Policy | Mark Unread Categorize Follow Up | Editing | Immersive | Translate | Zoom | Reply with Scheduling Poll | Viva Insights

Delete Report Respond Teams Apps Quick Steps Move Tags Editing Language Zoom Find Time Add-in

## Operational Concerns - VOI Guidance and Sixth Declaration

Reply Reply All Forward

Turner, Timothy J
To Arnold, Michael D (David)
Mon 3/2/2026 12:17 PM

Retention Policy USCIS-Default-Retention-Policy (Never) Expires Never

- FW: Quick Guide to New VOI Guidance — Outlook item
- FW: VOI Guidance Questions — Outlook item
- Pre-Post_Comparison.pdf — 210 KB
- FW: (for discussion at 8:00) FOIA Guidance Change - VOI: Alignment with Agency Foreign Name Guidance — Outlook item

The language confirms the agency's own understanding that the address requirement is satisfied by wherever the subject receives their mail. Neither the request form nor the published requirements reference a "physical address" or prohibit use of counsel's address. However, internal guidance instructs processors that the "SOR's current physical address" is required and to close cases FC where the requester provides their attorney's address or an email address:

- **SOR's Current Physical Address**
  - P.O. Boxes are acceptable.
  - Exceptions for the SOR's address:
    - 1367/VAWA Protection: A safe address is acceptable.
      - Case Creators – If requestor mentions a 1367/VAWA document or there is a 1367/VAWA document found in the Search Tab, create the case.
      - Case Processor – Verify if there is a 1367/VAWA document present in the RR, if not then close case FC.
      - Typical 1367/VAWA Documents:
        - I-360 – Petition for Amerasian, Widow(er), or Special Immigrant
        - I-918 – Application for U Nonimmigrant Status
        - I-914 – Application for T Nonimmigrant Status

**Updated: February 17, 2025**
**Note: This guide is intended to clarify the policy within the PPM but not replace it. For more detailed information please consult the PPM or reach out to your supervisor.**

---

        - I-929 – Petition for Qualifying Family Member of a U-1 Nonimmigrant
    - Minor SOR: The address can match the requestor's address.
    - Deceased SOR: The address can match the requestor's address.
  - Not acceptable:
    - Email addresses
    - Address of representative (example – attorney)
    - Incomplete address (missing – city, state, etc.)

Also, the portal lists the A-Number as required only "if you know it"; internal guidance closes NR if a provided A-Number does not match exactly:

**3) Additional Information Provided Voluntarily**
- **Alien Number (A-number)**
  - If provided, it must match exactly in Search Tab and/or RR, otherwise close NR.

It is difficult to reconcile statements of good faith when we are still informing the public of one set of standards while internally applying another, then closing cases FC or NR for failing to meet internal standards. Given the mismatch between the published requester instructions on first.uscis.gov and the standards being applied operationally, requesters are currently being set up to fail: they follow the agency's own instructions and receive FC or NR closures for doing so. In our branch biweekly, it was noted that there are plans for a FOIA request video in May/June. As the section chief of NRC Training, I can have a requester-facing VOI checklist reflecting the standards actually in use ready well ahead of the that timeline. This would reduce preventable FC/NR closures and refile volume. I am willing to prepare that content and deliver a short training or FAQ if that would be useful.

I am raising these observations so that you, as the declarant, have the operational facts needed to assess whether any action is warranted, including whether representations before the Court require correction or supplementation. I am not asserting that any misrepresentation is intentional. I am identifying tensions between operational realities and the record as it stands. This communication is made in good faith, consistent with my supervisory responsibilities and with 5 U.S.C. § 2302(b)(8) and (b)(13). I am preserving a copy for my records.

Respectfully,

**Tim Turner**
Supervisory Operations Support Specialist
HR & Training | Operations Support Branch
National Records Center
[illegible] Records and Identity Services

Delete Archive Report Reply Reply All Forward Share to Teams All Apps 1-Action To Manager Team Email Move Assign Policy Mark Unread Categorize Follow Up Read Aloud Immersive Reader Translate Zoom Reply with Scheduling Poll Viva Insights
Delete Report Respond Teams Apps Quick Steps Move Tags Editing Immersive Language Zoom Find Time Add-in

## Operational Concerns - VOI Guidance and Sixth Declaration

Turner, Timothy J
To Arnold, Michael D (David)

Reply | Reply All | Forward

Mon 3/2/2026 12:17 PM

Retention Policy USCIS-Default-Retention-Policy (Never) Expires Never

Exec

FW: Quick Guide to New VOI Guidance
Outlook item

FW: VOI Guidance Questions
Outlook item

Pre-Post_Comparison.pdf
210 KB

FW: (for discussion at 8:00) FOIA Guidance Change - VOI: Alignment with Agency Foreign Name Guidance
Outlook item

I am raising these observations so that you, as the declarant, have the operational facts needed to assess whether any action is warranted, including whether representations before the Court require correction or supplementation. I am not asserting that any misrepresentation is intentional. I am identifying tensions between operational realities and the record as it stands. This communication is made in good faith, consistent with my supervisory responsibilities and with 5 U.S.C. § 2302(b)(8) and (b)(13). I am preserving a copy for my records.

Respectfully,

**Tim Turner**
Supervisory Operations Support Specialist
HR & Training | Operations Support Branch
National Records Center
Immigration Records and Identity Services
U.S. Citizenship and Immigration Services

**From:** Turner, Timothy J
**Sent:** Wednesday, November 19, 2025 12:15 PM
**To:** [redacted]
**Subject:** RE: Request for Supervisory Guidance

Good afternoon,

Now that the FOIA Officer's guidance has been issued, I'd like to circle back to my November 17, 2025 email [redacted]

The CFR [redacted] states that:

> "In order **to help the identification and location of requested records, an individual may also voluntarily include other identifying information** that are relevant to the request **(e.g., passport number, Alien Registration Number (A-Number)).**"

[redacted] FIRST Privacy Impact Assessment (PIA):

> "The only mandatory information for identity verification purposes is the subject of record's name, current address, date of birth, and place of birth. **Any additional information provided, such as phone number, fax number, vital certificate (e.g., birth, death, and/or marriage), email address, or A-Number, is used to help the FOIA Operations Division identify and locate records more expeditiously.**"

The current G-639 [redacted] states:

> "The more information you provide about the subject of record, the better USCIS can identify the records you are requesting."

[redacted]



[redacted]

Operational Concerns - VOI Guidance and Sixth Declaration

Turner, Timothy J
To Arnold, Michael D (David)

Mon 3/2/2026 12:17 PM

Retention Policy USCIS-Default-Retention-Policy (Never) Expires Never

FW: Quick Guide to New VOI Guidance
Outlook item

FW: VOI Guidance Questions
Outlook item

Pre-Post_Comparison.pdf
210 KB

FW: (for discussion at 8:00) FOIA Guidance Change - VOI: Alignment with Agency Foreign Name Guidance
Outlook item

[redacted]

FW: Quick Guide to New VOI Guidance
Outlook item

FW: VOI Guidance Questions
Outlook item

Pre-Post_Comparison.pdf
210 KB

FW: (for discussion at 8:00) FOIA Guidance Change - VOI: Alignment with Agency Foreign Name Guidance
Outlook item

[redacted]

National Records Center
Immigration Records and Identity Services
U.S. Citizenship and Immigration Services

**From:** [redacted]

**Subject:** RE: Request for Supervisory Guidance

Good afternoon,

I heard earlier today to expect an update to the FOIA Officer guidance or[redacted] soon/next couple days, NLT end of the week. I'd like to propose we see what that looks like before re-engaging on the topic in full. In short/until then, I will clearly say no, you do not have to provide[redacted] feedback on the [redacted]Point presentation, and the USCIS FOIA Officer guidance[redacted]emains in effect for all NRC personnel performing FOIA case work as he is the policy advising authority for NRC FOIA program.

Thanks,

[redacted]

Turner, Timothy J
To Arnold, Michael D (David)
Retention Policy USCIS-Default-Retention-Policy (Never)
Expires Never
Mon 3/2/2026 12:17 PM

Reply | Reply All | Forward

FW: Quick Guide to New VOI Guidance
Outlook item

FW: VOI Guidance Questions
Outlook item

Pre-Post_Comparison.pdf
210 KB

FW: (for discussion at 8:00) FOIA Guidance Change - VOI: Alignment with Agency Foreign Name Guidance
Outlook item

National Records Center
Immigration Records and Identity Services
U.S. Citizenship and Immigration Services

[redacted]

**Sent:** Monday, November 17, 2025 3:03 PM

[redacted]

**Subject:** RE: Request for Supervisory Guidance

Good afternoon,

I heard earlier today to expect an update to the FOIA Officer guidance o[redacted]oon/next couple days, NLT end of the week. I'd like to propose we see what that looks like before re-engaging on the topic in full. In short/until then, I will clearly say no, you do not have to provide[redacted]feedback on the PowerPoint presentation, and the USCIS FOIA Officer guidance [redacted]emains in effect for all NRC personnel performing FOIA case work as he is the policy advising authority for NRC FOIA program.

Thanks,

[redacted]

**From:** Turner, Timothy J <Timothy.J.Turner@uscis.dhs.gov>
**Sent:** Monday, November 17, 2025 10:11 AM
**To:** [redacted]
**Subject:** Request for Supervisory Guidance

Good morning,

[redacted]

Operational Concerns - VOI Guidance and Sixth Declaration

Turner, Timothy J
To Arnold, Michael D (David)
Retention Policy USCIS-Default-Retention-Policy (Never)
Expires Never

Reply | Reply All | Forward

Mon 3/2/2026 12:17 PM

FW: Quick Guide to New VOI Guidance
Outlook item

FW: VOI Guidance Questions
Outlook item

Pre-Post_Comparison.pdf
210 KB

FW: (for discussion at 8:00) FOIA Guidance Change - VOI: Alignment with Agency Foreign Name Guidance

File name: FW: (for discussion at 8:00) FOIA Guidance Change - VOI: Alignment with Agency Foreign Name Guidance
File type: Outlook item File

**From:** Turner, Timothy J <Timothy.J.Turner@uscis.dhs.gov>
**Sent:** Monday, November 17, 2025 10:11 AM
[redacted]
**Subject:** Request for Supervisory Guidance

Good morning,

[redacted]



[redacted]

Operational Concerns - VOI Guidance and Sixth Declaration

Turner, Timothy J
To Arnold, Michael D (David)

Reply | Reply All | Forward

Mon 3/2/2026 12:17 PM

Retention Policy USCIS-Default-Retention-Policy (Never) Expires Never

Exec

- FW: Quick Guide to New VOI Guidance — Outlook item
- FW: VOI Guidance Questions — Outlook item
- Pre-Post_Comparison.pdf — 210 KB
- FW: (for discussion at 8:00) FOIA Guidance Change - VOI: Alignment with Agency Foreign Name Guidance — Outlook item

[redacted]

National Records Center
Immigration Records and Identity Services
U.S. Citizenship and Immigration Services

From [redacted]
Sent: Monday, November 17, 2025 7:42 AM
To: [redacted] Turner, Timothy J <Timothy.J.Turner@uscis.dhs.gov>
Cc: [redacted]
Subject: [redacted]

[redacted]

All tools Edit Convert E-Sign Pre-Post_Comparison.pdf Create Find text, tools, or help

## Approver Report

| Filter By | Operation | Value |
|---|---|---|
| Case Closed Date | greater than/equals | 04/15/2025 |
| Case Closed Date | less than/equals | 09/15/2025 |
| Category | equals | Alien File |

Total: 1-10 of 199689

## Approver Report

| Filter By | Operation | Value |
|---|---|---|
| Case Closed Date | greater than/equals | 09/16/2025 |
| Case Closed Date | less than/equals | 02/16/2026 |
| Category | equals | Alien File |

Total: 1-10 of 214252

## Approver Report

| Filter By | Operation | Value |
|---|---|---|
| Case Closed Date | greater than/equals | 04/15/2025 |
| Case Closed Date | less than/equals | 09/15/2025 |
| Category | equals | Alien File |
| FA Code | equals | FC |

Total: 1-10 of 6449

## Approver Report

| Filter By | Operation | Value |
|---|---|---|
| Case Closed Date | greater than/equals | 09/16/2025 |
| Case Closed Date | less than/equals | 02/16/2026 |
| Category | equals | Alien File |
| FA Code | equals | FC |

Total: 1-10 of 58259

## Approver Report

| Filter By | Operation | Value |
|---|---|---|
| Case Closed Date | greater than/equals | 04/15/2025 |
| Case Closed Date | less than/equals | 09/15/2025 |
| Category | equals | Alien File |
| FA Code | equals | NR |

Total: 1-10 of 49706

## Approver Report

| Filter By | Operation | Value |
|---|---|---|
| Case Closed Date | greater than/equals | 09/16/2025 |
| Case Closed Date | less than/equals | 02/16/2026 |
| Category | equals | Alien File |
| FA Code | equals | NR |

Total: 1-10 of 53948

Menu Pre-Post_Comparison.pdf + Create
All tools Edit Convert E-Sign Find text, tools, or help

## Approver Report

| Filter By | Operation | Value |
|---|---|---|
| Case Closed Date | greater than/equals | 04/15/2025 |
| Case Closed Date | less than/equals | MM/DD/YYYY Value 09/15/2025 |
| Category | equals | MM/DD/YYYY Value Alien File |
| Track | equals | Value Track 3 |

Total: 1-10 of 5851

## Approver Report

| Filter By | Operation | Value |
|---|---|---|
| Case Closed Date | greater than/equals | 09/16/2025 |
| Case Closed Date | less than/equals | MM/DD/YYYY Value 02/16/2026 |
| Category | equals | MM/DD/YYYY Value Alien File |
| Track | equals | Value Track 3 |

Total: 1-10 of 8696

## Approver Report

| Filter By | Operation | Value |
|---|---|---|
| Case Closed Date | greater than/equals | 04/15/2025 |
| Case Closed Date | less than/equals | MM/DD/YYYY Value 09/15/2025 |
| Category | equals | MM/DD/YYYY Value Alien File |
| Track | equals | Value Track 3 |
| FA Code | equals | Filter Value FC |

Total: 1-10 of 238

## Approver Report

| Filter By | Operation | Value |
|---|---|---|
| Case Closed Date | greater than/equals | 09/16/2025 |
| Case Closed Date | less than/equals | MM/DD/YYYY Value 02/16/2026 |
| Category | equals | MM/DD/YYYY Value Alien File |
| Track | equals | Value Track 3 |
| FA Code | equals | Filter Value FC |

Total: 1-10 of 1491

## Approver Report

| Filter By | Operation | Value |
|---|---|---|
| Case Closed Date | greater than/equals | 04/15/2025 |
| Case Closed Date | less than/equals | MM/DD/YYYY Value 09/15/2025 |
| Category | equals | MM/DD/YYYY Value Alien File |
| Track | equals | Value Track 3 |
| FA Code | equals | Filter Value NR |

Total: 1-10 of 177

## Approver Report

| Filter By | Operation | Value |
|---|---|---|
| Case Closed Date | greater than/equals | 09/16/2025 |
| Case Closed Date | less than/equals | MM/DD/YYYY Value 02/16/2026 |
| Category | equals | MM/DD/YYYY Value Alien File |
| Track | equals | Value Track 3 |
| FA Code | equals | Filter Value NR |

Total: 1-10 of 1848

Exhibit 17

# Memorandum for the Record

One-on-one call with [redacted]

Date: 2026-04-24
Duration: approximately 73 minutes
Participants:

- [redacted]
- Timothy J. Turner, Supervisory Operations Support Specialist

## 1. Purpose and scope

This memorandum records a one-on-one telephone/video conversation I had with [redacted] the NRC FOIA ACD on the morning of April 24, 2026. The conversation addressed multiple operational subjects: (a) the training plan being stood up to address outstanding Agency Record requests in support of the reported June 15, 2026 "zero backlog" target; (b) COW[1] Track 2 and adjacent cohort counts; (c) pacing of posting Administrative Appeal Office (AAO) Decision to the USCIS Electronic Reading Room (ERR); (d) the Auto-Redaction Tool (ART); (e) a proposed FOIA Academy structure and career-ladder planning; and (f) external-communication constraints affecting several desk companions and reference materials I submitted to FOIA. I am preparing this memorandum to preserve the substance of the conversation while it is fresh.

## 2. COW Training Plan (per [redacted]

### [redacted] notification timing

[redacted] stated: "I don't get told much of this. In fact, I didn't find out about this until yesterday morning." I understood this to mean April 23, 2026, the day before our call. [redacted] is the FOIA Program Manager and Associate Center Director in charge of the NRC's FOIA Branch. While Alien File requests make up the bulk of our FOIA workload, Agency Record requests are also part of the FOIA workload. The training plan, cohort counts, and June 15 target described below were therefore communicated to the responsible Program Manager approximately 24 hours before this conversation. He added that "when I start getting asked questions like, 'why haven't you trained anybody else in COW?' Like, because you told us to pull everybody out of COW and focus on A-file. What do you mean?"

---

[1] Agency Record requests are primarily located in the "COW" and "SPL" offices in FIRST. COW is often used to describe agency record workloads.

## Training structure

[redacted] described the COW training as three days classroom followed by three days practical application, organized by a GS-13 FOIA employee, with additional follow-up work for staff who do not perform well during the practical application phase. He stated that two of the litigation processors will be pulled over to help support the GS-13 with the six-person cohort.

## Adequacy

Regarding the adequacy of this training [redacted] stated "I don't know if it's adequate, but it's, you know, we're just going to say we trained some folks and that'll be it."

## Stopgap vs. intended training

[redacted] described this training as distinct from the COW training originally planned: "we're looking at later in the fourth quarter, if not FY27, for any potential follow-on courses more in line with what we initially thought we were going to be doing with COW" and that "it doesn't mean in FY27 when we have a much more formalized curricula and structure, et cetera, that we can't reintegrate them into that. Why cut them now if we can get better use out of them right now? Because they can't do A, but they can do B." The current training is a compressed near-term exercise; the "formalized curricula and structure" is deferred to FY27.

## Cohort counts and June 15 target

[redacted] provided the following cohort numbers during the conversation:

- COW Track 2, FY25: approximately 680 cases; 680 are "tracking or looking at."
- COW Track 2, FY26: 1,100 to 1,150 cases.
- COW Track 1: 317 cases total.
- COW cases in case processing: 1,041
- Pre-2025 COW cases: 313
- Prior-SIG-assigned[7] to handle approximately 1,400 to 1,500 cases

Regarding the June 15 target, [redacted] stated "That's not obtainable," and that the Front Office was looking for a zero backlog, which he characterized as "not obtainable," noting that they were taking a "shoot for the stars and make the moon kind of philosophy."

---

[7] Context: SIG is a legacy name for the group that worked Agency Records cases; these processors are the flex source [redacted] is proposing to return to COW work.*

[redacted] attributed the source of the target as "I think they're[3] just trying to get us a win or, you know, with all this other maelstrom going on, that they're just trying to sell something to their leadership, like in IRIS[4], where IRIS is trying to sell something, so that would be my guess."* He added that he did not " have any definitive information one way or another."

# 4. AAO pacing direction

I asked [redacted] whether we should continue at the current 100 new / 100 old Friday–Monday cadence of uploading AAO decision to the ERR. [redacted] responded that "there's two competing thoughts here. One is I don't like just to have stuff that can be posted laying around. If it's done, let's just post it. But at the same time, we don't want to liquidate what we're, you know, if the judge told us to do it by November 31st, and then say we get done June 1st, it's not a net positive. It may look bad for us to do it like that."[5]

He continued that "maybe we pull some resources out or slow down the train if we're getting 300, 400, because ideally where I'd like to be is... July 1st or something. I gave a date that if we get done, at this point, it's fine, like two months before whatever the judge is. Anything before that, it starts getting a little problematic, and maybe we'll pull in too many resources from other areas."

## Countervailing considerations [redacted] raised and set aside

In the same exchange, [redacted] identified and set aside the reasons to post faster, noting that "it gets the petitioners off our back in terms of what's going on with these AAO disclosures," and noted that "it's a win for the organization. It's good public relations if we can do it way faster."
I noted I had seen article recapping the [redacted] comments at a hearing and that "it did not sound like the judge was super thrilled." [redacted] responded that "at the end of the day, I've got to follow what they tell me."
I informed [redacted] that we are closing in on 200 new and 200 old AAO decisions ready to upload now, and that 250 per week is comfortable. [redacted] responded that he would have a conversation with the Front Office.

---

[3] I took this to mean NRC Front Office leadership [redacted]

[4] IRIS (Immigration Records and Identity Services) is the Directorate the NRC falls under.

[5] [redacted] stated the date "November 31st" verbatim. The actual court-ordered deadline under *Legal Aid Society v. USCIS*, No. 26-cv-1140 (S.D.N.Y.) is November 30, 2026, per the order forwarded by [redacted] and reflected in the AAO compilation emails. [redacted] "two months before" target accordingly references approximately October 1, 2026; his stated ideal target of "July 1st" referenced below is approximately five months before the court-ordered deadline.

### 5. Litigation and court-deadline observations

In the course of discussing the NRC Deputy Director's and Chief of Staff's tier-model preferences for litigation work, [redacted] commented on the risk posture of under-resourcing court-deadline work, stating that "there's nothing that's going to make you lose a case faster than if we say, well, litigation is not that important. So we either do a half-butt job, or we just pull all of our resources, and we don't meet the court's deadlines. Because what happens when you don't meet a court's deadlines? You lose the case. That's what judges do."

He also expressed frustration with our Front Office's posture towards litigation, saying"I don't know this attitude of like, we'll just let it go to court, and if they fine us, they fine us, whatever. It's not our money kind of thought process."

## 6. Auto-Redaction Tool (ART)

[redacted] discussed ART in the context of standardization, stating that "this whole going down the ART rabbit hole was a waste of freaking time and resources unless we want to adopt standardized work for those form types," and "if you don't do that, you can't have an AI. Because if every processor can process every form differently, then what are we doing here?"

He also described prior internal resistance to standardized work, stating that "I put my hood against the wall in that one, man. I could not get any movement. And then the front office, of course, backed the folks that didn't want to make any standardized work."

He attributed the same view to a Section Chief in Operations Support Branch, noting that she has stated that until we get something standardized, it's going to be very difficult for us to make any progress on these forms."

### The Deputy Director's negotiation style

[redacted] described the NRC Deputy Director's decision-making style as "even though she'll say it's like a suggestion, it's really not open for negotiation. And so you've got to get enough people. The only way you change her mind is get enough voices in the room that are saying something different. And then she'll be like, oh, wait a minute, maybe I'm off. If not, if it's just you and her or you and [redacted] and her, she's going to stay dogged on that."

## 8. Requester-facing communication and external chain

### External-communication chain

[redacted] also brought up the topic of several reference documents I had developed for FOIA, particularly a Requester Desk Guide draft I sent on April 17 to him, Jim Baxley, [redacted] explained the external-communication chain, stating "the thing with those are we have to send those up to the front office, and then they have to go to IRIS front office, and then [redacted] has to take those, and he works with EXA[7]. So anything that's externally facing, we can't just post or send out. We have to send this up through this whole network." He went on to note that "I can't even talk to EXA directly."

### UV closure code, OCC coordination, and the Final Action Letter contradiction

I raised the April 13, 2026 biweekly discussion regarding the new UV (Unable to Verify) Closure Codes, in which the Deputy Director stated it was easier for requesters to refile than to appeal. I told [redacted] that [redacted] had reported there had not yet been any discussion with OCC about the UV code in a training I provided on April 13, 2026. [redacted] did not dispute that. I noted that if the rationale for the UV code turns on refile-versus-appeal convenience, the agency's own Final Action Letter contradicts that rationale by directing requesters to appeal rather than refile, specifically: "the requesters don't know it's quicker to refile because the final action letter is just telling them, hey, you can appeal this. So if they follow the instructions we give them, they're just kind of sitting there in a big old backlog."

[redacted] responded "Yeah, no, I agree with you completely."

## 9. Training vs. policy

I observed to [redacted] that training appears to be outrunning written policy, and that the Case Processing Guide has not been updated[8] to reflect current practice and that employees are relying on training emails rather than the formal guide. I also noted that the first 27 pages of the Processing Guide supersede the remaining 200 or so pages, and even those first 27 pages are now out of date and superseded by policy updates that are issued via email.

---

[6] I took this to mean [redacted]

[7] External Affairs Directorate

[8] The Processing Guide was last updated in May 2025

[redacted] responded that "Sometimes training drives policy, depending on how advanced and mature your training program is. Ideally, policy is driving training, but some places aren't that mature or that well-founded with technical writers or policy analysts."

## 10. Additional topics covered

We discussed the FOIA Academy I was developing in response to a tasker given to the Acting FOIA Officer, staffing constraints, and career aspirations. I thanked him for his time and collaboration and the call concluded.




TIMOTHY J TURNER

Digitally signed by TIMOTHY J TURNER
Date: 2026.04.24 15:39:49 -04'00'

Exhibit 18

At 11am eastern, Operations Support Branch (OSB) Leadership had its meeting with the NRC Front Office, to include Director M. David Arnold, [redacted], and [redacted].

My supervisor, the OSB Associate Center Director (ACD) mentioned the new VOI closure code.

The Deputy Director asked if the new code corresponds with a new letter. The ACD confirmed, to which the Deputy Director said "So we're basically telling them which VOI they missed."

The ACD said yes and that "it should help with your tracking and reporting."

The Deputy Director responded "Well hopefully it helps them perfect their request too," at which point the Director said "The basic thing is we want to go back to them and say 'hey, you messed it up, no harm no foul, resubmit, here's what you gotta do."

The Deputy Director then stated "it goes much faster than them going through the appeal."

They then shifted to FOIA fees, before eventually discussed the Auto-Redact Tool (ART) in FIRST.

The Director noted that what he has taken away from the tool so far is that ART "is not meeting needs or expectations." He said that vendors across the enterprise were "pulling away from AI-assisted FOIA." He said our challenge for the next two years is to continue to show improvement and iteration on this concept without unduly burdening the FOIA staff or crushing morale, and noted that the administration came in "guns blazing that said technology and AI is the answer, people are not," and that while he may disagree, "it's a very hard problem to solve." He said our senior leadership, specifically Larry (who I took to mean Larry DeNayer, Associate Director of IRIS) would not let us tell him we've tried everything, we've thrown money at it, and the "ROI is... it's time to cut bait." He noted that last time he broached the topic, Mr. DeNayer took the stance of "why would the employees want it to work, it's going to take their jobs someday, so they have a vested interest to make sure it doesn't work."

The Deputy Director noted that "it's so limited."

The Director noted that we are "advancing to the coordinates, we just don't know if the coordinates we advance to are apparently behind the coordinates we were."

The OSB ACD noted that there are high hopes for the pdf search function and conceded that the efficiency gains so far have been around 10%, to which the Director responded that the improvement was around 3% "and that's stretching numbers."

UNKNOWN. The author could not be verified.

The OSB ACD noted that there are high hopes for the pdf search function and conceded that the efficiency gains so far have been around 10%, to which the Director responded that the improvement was around 3% "and that's stretching numbers."

Immediately after the call, I informed my supervisor that people are not aware that submitting a new request is faster than appealing, and that the final action letter only speaks to the latter:




TIMOTHY J TURNER

Digitally signed by TIMOTHY J TURNER
Date: 2026.04.13 15:04:47 -04'00'

Exhibit 19

Delete Archive | Report | Reply Reply All Forward | Share to Teams | All Apps | 1-Action To Manager Team Email | Move | Assign Policy | Mark Unread Categorize Follow Up | Editing | Immersive | Translate | Zoom | Reply with Scheduling Poll | Viva Insights

Delete | Report | Respond | Teams | Apps | Quick Steps | Move | Tags | Editing | Language | Zoom | Find Time | Add-in

## RE: Current Guides (revision version)

[redacted]
To [redacted] Turner, Timothy J
Cc Baxley, James A (Jim)

Reply | Reply All | Forward

Tue 6/16/2026 2:03 PM

REF - Guidance | Exec - ACD

You replied to this message on 6/17/2026 11:03 AM.

Tim, I raised on the ACD forum this morning & Jim/Robert let me know verbally we're good to go on the guide revisions. Thanks for all your hard work on this. Good to proceed with next steps.

[redacted]
Associate Center Director
USCIS | Immigration Records and Identity Services
National Records Center | Operations Support Branch
[redacted] (Office)
(Cell)

**From:** [redacted]
**Sent:** Monday, June 15, 2026 7:36 AM
**To:** Turner, Timothy J <Timothy.J.Turner@uscis.dhs.gov>
**Cc:** [redacted]>; Baxley, James A (Jim) <James.A.Baxley@uscis.dhs.gov>
**Subject:** RE: Current Guides (revision version)

Let me add Jim to the string.

**From:** Turner, Timothy J <Timothy.J.Turner@uscis.dhs.gov>
**Sent:** Monday, June 15, 2026 6:16 AM
**To:** [redacted]
**Cc:**
**Subject:** RE: Current Guides (revision version)

Good morning [redacted]

Edits for the procedure manuals have been incorporated. If these looks good, I'll get started on the power automate/sharepoint flow.

Respectfully,

**Tim Turner**
Section Chief, HR & Training
Operations Support Branch
National Records Center
Immigration Records and Identity Services
U.S. Citizenship and Immigration Services



100% 1383 x 1013px

Exhibit 20

# FOIA CASE CREATE PROCEDURE MANUAL

*Draft v0.2*

# Contents

Authority and Version Control ........ 4
How to use this manual ........ 4
Chapter 1. Orientation ........ 4
1.1.0 Disclosure of Records Under the FOIA ........ 4
1.1.1 What Case Creation is & the FOIA Lifecycle ........ 4
1.1.2 FOIA Immigration Records System (FIRST) ........ 5
1.1.3 FIRST Layout ........ 5
Chapter 2. Triage ........ 6
2.1 The Triage Decision ........ 6
2.2 Required Review Areas ........ 6
2.3 Making the Determination ........ 6
Chapter 3. Case Notes ........ 8
3.1 When a Case Note Is Required ........ 8
3.2 Adding and Replying to Case Notes ........ 8
3.3 Prohibited Content ........ 8
Chapter 4. Request Intake: Tab-by-Tab Walkthrough ........ 9
4.1 Request Tab ........ 9
4.1.1 Section 1: Type of Request ........ 9
4.1.2 Section 2: Requester Information ........ 9
4.1.3 Section 3: Subject Information ........ 9
4.1.4 Section 4: Subject Consent ........ 9
4.1.5 Section 5: Additional Information ........ 10
4.2 Search Tab ........ 10
4.2.1 PCIS Automatic Search ........ 10
4.2.2 PCIS Standalone Search ........ 10
4.2.3 Identifying the SOR ........ 10
4.3 Duplicate Tab ........ 11
4.3.1 What Counts as a Duplicate ........ 11
4.3.2 Performing the Duplicate Search ........ 11
4.3.3 Missed Track 3 Classification in the Original Case ........ 12
4.3.4 Closing a Case as Duplicate ........ 12
4.4 Locate Tab ........ 12
4.4.1 Record Types ........ 13
4.4.2 Consolidated and Associated A-Numbers ........ 13
4.4.3 Locating and Staffing ........ 13

4.4.4 Adding Manual Staffings ........ 13
4.4.5 STACKS Staffing Indicators ........ 14
4.4.6 Files in Transit ........ 14
4.4.7 Null Form Type in Receipt Files ........ 14
4.4.8 Determining Document Complexity ........ 14
4.5 Letters Tab ........ 15
4.5.1 Final Action Letters ........ 15
4.5.2 Acknowledgement Letters ........ 15
4.5.3 Inserts ........ 15
4.5.4 Editing Letter Content; Grammar Pass ........ 15
4.5.5 Finalizing the Case ........ 16
Chapter 5. Upfront Closures ........ 17
5.1 Failure to Comply (FC) ........ 17
Procedure ........ 17
Special handling ........ 17
5.2 Unable to Verify (UV) ........ 17
Procedure ........ 17
5.3 Total Denial (TD) ........ 17
Procedure ........ 18
5.4 No Records (NR) ........ 18
Procedure ........ 18
5.5 CBP Referral (RF) ........ 18
Procedure ........ 18
5.6 Not Applicable (NA) ........ 19
Procedure ........ 19
5.7 Created in Error (ER) ........ 19
Procedure ........ 19
Chapter 6. Special Case Intake ........ 20
6.1 Track 3 Documentation Review ........ 20
6.2 Fee Waiver Requests at Intake ........ 20
6.3 1367/VAWA Flagging ........ 20
6.4 Print to Paper ........ 21
6.5 Untranslated Foreign-Language Documents ........ 21
6.6 Appeals Received in CC Queue ........ 22
6.7 Routine Use ........ 22
6.8 Withdrawal Request ........ 22

6.9 Replacement CD Request ........ 22
6.10 Changes to Existing Cases ........ 22
6.11 Return of Original Documents ........ 22
6.12 Genealogy (GEN) Redirect Review ........ 22
Redirect review criteria ........ 22
Procedure if criteria met ........ 22
Supervisor review ........ 22
6.13 Records Indexing (MiDAS) ........ 22
Common reasons to staff Records Indexing ........ 22
Procedure ........ 23
6.14 PFL Office Routing ........ 23
Procedure ........ 23
6.15 Congressional ........ 23
6.16 Agency Records and Hybrid Records Requests ........ 24
Agency Records ........ 24
Hybrid Records ........ 24
Child Case Creation ........ 24
6.17 FOIA Safe (Classified) ........ 25
6.18 BCC and 100M-Series Numbers ........ 25
6.19 Hidden Patriot ........ 25
6.20 Red Cross and NGO Requests ........ 25
6.21 ALF Office and Significant FOIA Requests ........ 25
Refugee record indicators ........ 25
When NOT to move to ALF ........ 26
ALF Office Procedure ........ 26
Significant FOIA Requests ........ 26
6.22 EB5 Office ........ 27
6.23 PPO Office (Appeals Remands) ........ 27
PPO Office Procedure ........ 27
6.24 Multiple Paper Requests in One Upload ........ 28
6.25 Unknown Situations: Admin Escalation ........ 28

## Authority and Version Control

| Field | Value |
|---|---|
| Document Title | USCIS FOIA Case Create Procedure Manual |
| Version | DRAFT 0.2 |
| Effective Date | June XX, 2026 |
| Owning Office | National Records Center |
| Approved By | [Jarrod Panter or Jim Baxley], [Position Title] |
| Supersedes | USCIS FOIA Case Create Policy and Procedure Manual (PPM) Volume I |
| Companion Documents | FOIA Case Create Procedure Manual<br>FOIA Case Processing Procedure Manual<br>FOIA Case Approving Procedure Manual<br>Operations Training FOIA Job Aid Library (SharePoint) |

## How to use this manual

Each procedural section restates the governing rule once, then cites the FOIA Policy Manual by section.

Decision charts and reference data live in the Job Aid Library.

[IMAGE: ...] markers indicate where a FIRST UI screenshot will be inserted during finalization.

# Chapter 1. Orientation

## 1.1 Disclosure of Records Under the FOIA

USCIS Freedom of Information Act (FOIA) follows the Code of Federal Regulations (6 CFR Part 5 Subpart A) when creating requests for records.

## 1.2 Case Creation and the FOIA Lifecycle

Case creation is the intake point for the USCIS FOIA process. The Case Creator reviews each incoming request, determines if it meets the criteria for a perfected request as outlined in the FOIA Policy Manual Chapter 3, classifies the request as either an A-File or Agency Record, and enters the information into FIRST. The Case Creator then either creates the case, sending it forward for staffing and processing, or closes it upfront using one of the codes specified in




**Policy Manual Chapter 4**.

### 1.3 FOIA Immigration Records System (FIRST)

All case creation happens in the FIRST, a web-based system accessed in Chrome.

### 1.4 FIRST Interface Overview

FIRST displays up to three panels:

- **Left Panel:** Shows information about the FOIA request.
- **Middle Panel:** Displays the current document being viewed (such as the FOIA request, Case Supporting Documentation (CSD), Additional Request Documentation (ARD), Responsive Records, etc.).
- **Right Panel:** Contains case notes, which can be opened and closed as needed.

The Case Creator processes each case by working through five tabs in sequence: Request, Search, Duplicate, Locate, and Letters. The Staff tab is used only when manual external staffing is required.

## Chapter 2. Triage

### 2.1 The Triage Decision

The Triage process ensures incoming requests are reviewed and correctly classified before case creation. Case Creators determine whether the request should be processed as an A-File request or an Agency Record request.

### 2.2 Required Review Areas

When a request appears in the Triage queue, review all of the following before making the determination:

- **Request Details.** Request information submitted by the requestor.
- **Additional Notes.** Typically contains information indicating Agency Records being sought.
- **Description of Records Sought.** Typically indicates an A-File request when it references the individual's immigration file or personal record.
- **Additional Request Documents.** Attachments and uploaded documents supporting the classification of the request.

### 2.3 Making the Determination

After review, select the correct classification:

- **A-File**: request is for documents in an individual's A-file.
- **Agency Record**: request is for agency-held records that are not A-file documents.

| Feature | A-file | Agency Record |
|---|---|---|
| What is it? | A collection of documents about an individual's immigration history. | Any document or record created or kept by a government agency. |
| Who is it about? | One specific person (immigrant or non-citizen). | It can be about a person (Misconduct/Investigation), event, policy, or anything the agency manages. |
| What's inside? | • Personal immigration applications & petitions<br>• Interview notes<br>• Removal/deportation | • Emails & Instant Messages<br>• Emails between staff<br>• Policy & Procedure Documents<br>• Training materials<br>• Congressional Correspondence<br>• Data & Statistics<br>• Contracts & Vacancy Announcements<br>• Investigation records<br>• Audio/Video arrest |
| Purpose | • Tracks a person's immigration status and history. | • Agency Documents<br>• Agency actions<br>• Agency operations, or decisions. |

Click **Save and Continue**. The system will automatically route the request based on user permissions and the selection chosen:

Case Creators may have access to A-File (NRC Office), Agency Record (COW Office), or both.

- All users have NRC access; not all have COW access.
- System routes requests based on user permissions:
  - If user has agency record creation access and selects NRC Office, routed directly to NRC Office.
  - If user has agency record creation access and selects COW Office, routed directly to COW Office.
  - If user does not have case creation access, routed to the next case in the Triage queue.

**Key Reminder**

- Case Creators must complete the full review before selecting a classification to ensure requests are routed correctly and avoid rework.
- If a request is misclassified, place the case in Admin and email your supervisor.
- If a request is misclassified and the case creator does not have access to agency records (COW Office), email your supervisor with the FIRST control number from the case information section the FIRST Dashboard.

# Chapter 3. Recordkeeping

## 3.1.1 Case Note Management

### Adding and Replying to Case Notes

**To add a Case Note:**

- Open the right panel in FIRST.
- Select "Add Note."
- Enter the title and body of the note.
- Save the note.

**To reply to a Case Note (when a case is returned to you):**

- Open the panel and review the existing notes.
- Take the corrective actions identified in the notes.
- Reply to the note, detailing the actions taken.
- After completing corrective actions, proceed with the appropriate final action (e.g., pend, upfront close).

**If clarification is needed before taking action:**

- Add a Case Note describing the question or issue.
- Move the case to Admin.
- Email the supervisor for guidance.

# Chapter 4. Request Intake: Tab-by-Tab Tab Walkthrough

FIRST presents five or six tabs for each case, depending on the case type.

The standard tabs are: Request, Search, Duplicate, Locate, and Letters. For ALF and EB5 cases, a Staffing tab appears after Locate and is used for external staffings in those offices.

Work through each tab in order. Navigate between tabs using the Actions drop-down menu.

## 4.1. Request tab

### 4.1.1 Section 1: Type of Request

### 4.1.2 Type

All case create requests are FOIA.

### 4.1.3 Track

USCIS uses a three-track FIFO system. Do not manually change the Track in Section 1; it updates automatically based on answers in later sections. Case creators must verify Track accuracy when changed due to immigration court proceedings or full A-file requests.

### 4.1.4 Category

Select from drop-down menu. Common categories:

- **Alien File:** Includes requests for a full A-file, three or more specific documents, specific documents along with related or supporting documents, or a third request for specific documents within a 12-month period.
- **Specific Documents:** 1-2 document types, depending on location/availability.
- **Other:** Genealogy, destroyed/rejected files with no other records to staff, agency records.
- **Congressional:** Requests with congressional correspondence.
- **Third Party No Consent:** Third party requests without subject consent.
- **None:** No description of records sought.

### 4.1.5 Source

Select the Source based on the Requestor Information. Common sources include:

- **Attorney:** Requestor is an attorney representing the subject.
- **Commercial/Education/Scientific:** For agency records only.
- **Foreign Government:** Requestor is a government representative from another country.
- **Others:** Any source not listed (e.g., family member, routine use, bond obligor) or agency records.
- **Representative:** Accredited immigration law representative (listed on G-28 or digital request).

- **Self:** Requestor is the subject.
- **News Media:** Requestor is a member of the media.

### 4.1.6 Topic

Leave blank for NRC Office cases.
Enter "All Records" for EB5 and ALF Office cases.

### 4.1.7 Labels

**FIRST offers two labels:**

- DHS Review Label
- 1367 Information Provisions Label (under 8 USC Section 1367) **Policy Manual Section 2.5**
  - 1367 VAWA Information Provisions:
    Select the 1367 Information Provisions label if the banner appears in the Search Tab or RAILS, and any of the following VAWA petitions or applications are identified.




### 4.1.8 Print to Paper

FOIA responses to digital requests are sent digitally to the requestor. FOIA responses to paper requests are sent on a CD via the mail. Checking Print to Paper provides the requestor with a paper copy of the requested records instead of a digital response or CD.

Check the box for Print to Paper in any of the following circumstances:

- When the requestor's mailing address is to a correctional facility,
- When the request is for dual citizenship for Italy and Germany, or
- If the requestor specifically asks for a paper copy.

### 4.1.9 DHS Hold

This field is only used for agency records. It should be set to "no."

### 4.1.10 Upcoming Immigration Court Proceedings

If the requester indicates they have an upcoming hearing, they must provide sufficient documentation to receive Track 3 accelerated processing. **Policy Manual Section 7.4**.

**Sufficient documentation include one of the following:**

- Form I-862, Notice to Appear
- Form I-221, Order to Show Cause
- Form I-863, Notice of Referral to Immigration Judge
- Notice of continuation of a hearing
- Printout from the EOIR Automated Case Information portal

**FIRST Accelerated Track Procedure:**

- **First Prompt:** "Did the requestor indicate that he/she has an upcoming court proceeding?"
  - For digital requests, the requestor's response should be automatically populated.
  - If the auto populated response is incorrect, make the appropriate change after reviewing entire FOIA package. For paper requests, if the requestor indicated he/she has an upcoming court proceeding, select "yes." Otherwise, select "no."
  - If yes is selected to the first prompt, a second prompt will appear.

- **Second Prompt:** "Did the requester provide sufficient documentation of an upcoming immigration court proceeding?"
  - If the documentation is sufficient, select "Approve." Confirm that the track was automatically updated to Track 3 in FIRST.
  - If the documentation is insufficient, select "Deny." This will automatically add the denial verbiage for Track 3 accelerated processing into the acknowledgement letter.

### 4.1.11 Fee Waiver

When a requestor submits a FOIA request, it shall be considered a firm commitment to pay all applicable fees charged under 6 CFR 5.11(k), up to $25.00, unless they seek a waiver of fees. The requestor may ask for a waiver of fees, either in the request or in supporting documentation.

For a fee waiver to be granted, two requirements must be met:

- The disclosure of the requested information must be in the public

interest because it is likely to contribute significantly to public understanding of the operations or activities of the government, and

- The disclosure of the information is not primarily in the commercial interest of the requestor.

If a fee waiver is requested, check "yes." FIRST defaults to "deny" with current date. If it is believed the requestor included the appropriate documentation to be approved for a fee waiver:

- Create an email asking for approval of the fee waiver request and send to your supervisor.
- Add a case note.
- Move the case to Admin.

If your supervisor approved the fee waiver request, select "approve."
**Note: We currently do not accept fees.*

## 4.2 Section 2: Requester Information

FIRST asks the question "Is the subject the same as the requestor?"

- **Self**
  - If "yes" is chosen, FIRST will auto populate the subject's information (name and address) for you. Source should also reflect Self.

- **Third Party Requestor**
  - In a digital request, the third-party requestor's information (name, address) may already be populated.
  - In a nonelectronic request, review all other documents submitted in the request to determine who the requestor is (e.g., attorney letter, G-28, other forms).
  - If no mailing address is provided, close the case FC.
  - Information on the left side should not be changed and only manually input if it is a paper request.
  - If the requester information needs to be entered manually, see the following guidance below.

| Requester Type | Consent Required | Verification of Identity Needed? | Notes (Denial Reason) |
|---|---|---|---|
| Self (Individual) | No | Yes | Must verify identity; Denied if identity not verified or insufficent VOI provided |
| Attorney/Representative/Other | Yes (from subject) | Yes (for subject) | Requires written consent from subject and verification of idenity.Denied if no consent or insufficient verification |
| Parent/Guardian | Yes (proof of parentage/guardianship) | Yes (for subject & requestor) | Requires proof of legal authority (e.g., court order, birth certificate) and identity verification. Denied if no legal authority or insufficient verification provied for SOR and/or leagal authority |
| Deceased | No (if >100 years) or proof of death provided | Yes (proof of death) | Denied if <100 years w/o consent or insufficient proof of death provided |

## 4.3 Section 3: Subject Information

- In a digital request, the subject's information will already be populated.

- If they are using a G-639 for the FOIA request, use the subject information

provided on this form as the primary source. If information is missing on the G-639, look at additional requester documentation (ARDs) provided.

- If the Requestor is not using a G-639 review all other documents submitted in the request to determine the subject's information (e.g., attorney letter, G-28, other ARDs).
- All the requests require subject's VOI (name, country of birth (COB), date of birth (DOB) and *current address, signature under POP/notarized) must be provided in the request.
    - Alleges and unknown are not acceptable for VOI
    - Any exceptions require a case note
- Add any additional aliases found in the ARDs to the left side of FIRST.
- Do not use any punctuation in this field (commas, periods, hyphens) or special characters. Using punctuation or special characters can affect the FIRST search function.
- Remove the punctuation or special characters from front porch requests.

### 4.4 Section 4: Subject Consent

**All third-party requests must include consent from the SOR.**

- Consent type is used to record the presence of both proper consent and VOI in the request. This field is used for reporting purposes only.
- Not all consent types are being tracked, and therefore not available in the drop down. If consent type is not available, select the applicable VOI type.
- In a digital request, this field may be auto populated. Verify that the correct Consent Type is selected.
- In a paper request, select the correct Consent Type.
- If proper consent is not provided close TD.

The substantive consent rules are in Policy Manual Section 3.3. Third-party requests must include consent from the SOR.

If proper consent is not provided, close TD only under the narrower TD grounds in Policy Manual Section 4.3.

### 4.5 Section 5: Additional Information

Do not add information to the "Additional Information" section if the request is for A-File material. This field is typically reserved for agency records.

### 4.5.1 Search Tab

The Search Tab uses information from the Request Tab to search the Person Centric Identity Service (PCIS) system for individuals with USCIS immigration records that may match the Subject of Record (SOR).

### 4.2.1 PCIS Automatic Search

FIRST automatically searches PCIS using the following order:
A-Number(s) and Receipt Number(s) → First and Last Name → Date of Birth → Country of Birth.

Go to the **Actions** drop-down and select **Search**. If there are possible matches, the first 10 results appear in the **"Results Found in PCIS"** screen.




### 4.2.2 PCIS Standalone Search

If the search in FIRST does not return a positive result, run PCIS standalone. If PCIS standalone returns no result, close the request NR (Policy Manual Section 4.4) after completing the PCIS standalone search.

### 4.2.3 Identifying the SOR

Compare the information entered on the left side of FIRST (first name, last name, COB, DOB, parents' names) to the PCIS identity search results. Use the **Compare** icon.




- Only one potential match can be compared at a time.

- If the potential identity matches, select **Select**.
- If more than one matching identity is located, only one identity can be selected. It does not matter which.




For voluntary VOI (such as A-number or parents' names) matching: Under Policy Manual Section 3.2.3, voluntary VOI should only be matched when multiple records share the same mandatory VOI. If there is only one match on mandatory VOI, do not match voluntary VOI; simply select the record and proceed

Add all receipt files that require staffing to the left side of the Request Tab. This includes any missing or lost receipt files.

## 4.3 Duplicate Tab

### 4.3.1 What Counts as a Duplicate

Per **Policy Manual Section 4.7**, a request may be considered a duplicate if:

- There is an open request or
- The current request was submitted within 12 months of a closed request.

Upfront close a request if all the following are true:

- Both requests are for records of the same subject of record, and
- Both requests are from the same requestor or law firm/organization, and
- Both requests are for the same or similar information, or the information was provided in the original request.
    - Subsequent requests for documents that were not provided in the original response (e.g., Appendix D documents, temporary receipt files, etc.) will not be immediately closed as duplicates. In these cases, create the case only for the documents that were not previously provided. For example, if the first request was for four documents and was processed as a full A-file request, and the second

request is only for a temporary receipt file, process the second request for just that file.

### 4.3.2 Performing the Duplicate Search

- Go to the **Actions** drop-down and select **Duplicate**.
- The Duplicate results screen appears.
- If there are no possible duplicates, the Similar Cases header indicates none.
- Any potential duplicates populate under the Similar Cases header.




  - To compare possible duplicates, select the **Compare** icon. This provides a side-by-side view.
  - For a deeper review, select the **View Case icon**. A second FIRST window will open, displaying the complete possible duplicate case, including Case Notes. To exit, click the Close Case View "X" at the top left.

### 4.3.3 Missed Track 3 Classification in the Original Case

If a request includes an upcoming court proceeding that was included in but not addressed by the original case, duplicate the new case to the original. Notify the supervisor in writing that the original should have been Track 3; the supervisor updates the original case.

### 4.3.4 Closing a Case as Duplicate

- Under **Option**, select **Duplicate** in the drop-down.
- Add a Case Note explaining why.
- Go to **Actions** → **Upfront Close** → **DP: Duplicate**.
- The duplicate letter appears.
- Select the appropriate letter insert (open or closed original).
- Select **Update Letter**.
- Go to **Actions** → **Send for Approval**.

**JOB AID:** *Duplicate Determination Matrix*.

**JOB AID:** *Commonly Requested Similar/Specific Documents*.

## 4.4 Locate Tab

The Locate Tab displays the RAILS locations of requested files and includes track assignment questions based on case creator input.

Track Assignment Overview

- Default Track: All cases start as Track 2.

Step-by-Step Process

1. Review Request Description:
    - Under the locate tab, review the description of records sought as provided by the requester.
2. Track Assignment Questions:
    - The case creator will answer between 1–2 questions depending on the requested records.

**Question 1: Is this request for the full Alien File?**

- If "Yes":
    - Track assignment is complete. The case remains Track 2.
- If "No":
    - Proceed to Question 2.

**Question 2: Is this request for one specific document that is located at the NRC or available electronically in ELIS/STACKS?**

- If "Yes":
    - Select the specific document under "Record Requested."
    - Notification appears:
      *"The case will update to Track 1 and change office to SMP after pending."*
- If "No":
    - The case remains Track 2 complex specific document
    - Notification appears:
      *"The case will update to Track 2 and change office to SDO after pending."*

### 4.4.1 Record Types

There are two types of personal immigration records: A-files, and receipt files. These records can be stored as

- Physical (paper only)
- Digitized (scanned and captured in STACKS)
- Electronic (e.g., ELIS)
- Hybrid (mixed physical, digital, and/or electronic).

### 4.4.2 Consolidated and Associated A-Numbers

**A-Numbers Format**
A-Numbers consist of 9 digits. If an A-Number has fewer than 9 digits, add leading zeros to the left side to make it a 9-digit number. This ensures the correct file is staffed.

**For example:**

- A8123456 should be updated to A008123456
- A12345678 should be updated to A012345678

**Multiple A-Numbers**

- The case creator will staff all verified unconsolidated and/or associated A-Numbers.

**Consolidated A-Numbers**

- If an A-Number is consolidated, the case creator will only staff the primary A-Number.

**Associated A-Numbers**

- If an associated A-Number is found in PCIS or RAILS, the case creator must verify that the A-Number belongs to the subject. Once verified, the case creator will staff all verified A-Numbers.
- If the creator is unable to verify an associated A-Number, place the case in ADMIN and contact your supervisor.

### 4.4.3 Locating and Staffing

- Go to **Actions → Locate**. FIRST populates possible associated records.
- Always verify the A-Number and receipt number in RAILS.
- Select the **RAILS** link next to each record needing staffing.
- Compare the populated records with the Description of Records Sought to determine what to staff.
- Check the **Status** and **location** of the record in RAILS.
- Compare with the FCO listing and Staffing Scenarios to determine the record location for staffing.
    - If the location in RAILS matches the File Location in FIRST, select the + under Add for that record.
    - If the location in RAILS differs from the File Location in FIRST: type the correct location in the File Location field, select the correct location from the pop-up menu, and select the blue + next to the A-number and/or receipt number to add to the staffing section.
- Repeat for each record.

Do not staff for files located only in RAILS.

### 4.4.4 Adding Manual Staffings

- Next to **Staffings**, select **+Add Staffing**.
- The **Add Other Staffing** screen appears.
- Enter the A-Number or receipt number under **Record Identifier**.
- Under **Staff Location**, select the record location from the drop-down.
- Select **Save**. Repeat for each additional record.

### 4.4.5 STACKS Staffing Indicators

RAILS statuses indicating a STACKS staffing: STACKS, Unavailable, Retired Unavailable. RPC codes XA, XX, XY, ZG, ZZ, IZ, JS, TF, IS, or Location is NRC with RPC of "Soda Scanning" indicate digitized files.

### 4.4.6 Files in Transit

If a file is "in transit," staff to the sending FCO unless the file is "In Transit to NVC."

If a file is in transit to NVC and there are no other responsive records to staff, upfront close NR and add the NVC insert to the Final Action Letter.

Example: Staff to WSC




### 4.4.7 Null Form Type in Receipt Files

If the Form Type is Null in the Compare function in FIRST Search and the receipt prefix is MSC, MGL, IOE, or one of the five service centers, do not staff:

- Create an email and send to the supervisor.
- Add a Case Note.
- Move the case to Admin.
- Follow the supervisor's response.

### 4.4.8 Determining Document Complexity

**a. Specific Document**

**Specific Document Requests**

A specific document request refers to a particular form or document by its official name or form number.

**Examples of Specific Document Requests:**

- Form I-90
- Naturalization Certificate
- Form I-130

**Key Characteristics:**

- Identified by a unique form number (e.g., I-90, I-130) or official document name (e.g., Naturalization Certificate).
- The request is clear and unambiguous, specifying exactly which document is needed.
- These documents are typically standardized and have specific purposes within immigration or DHS processes.

**b. Specific Document Types**

**Specific Document Types**

A document type request means you are asking for a group or category of documents related to a certain action or event, not just one specific form. Each document type covers several possible documents that all relate to the same topic.

**Examples of Document Types:**

- Apprehensions
- Record of Removal
- Proof of LPR Status

**Key Points:**

- A type or group of documents, not just one specific form.
- Each document type can include many different documents.
- These requests are broader and cover all documents related to the action or status

The complexity assessment drives Track assignment under **Policy Manual Section 1.4**.

### 4.4.9 Locate Tab Procedures

The Locate Tab displays the RAILS locations of the files listed on the Request Tab.

**JOB AID:** *FCO Listing*.

**JOB AID:** *STACKS Staffing Codes*.

**JOB AID:** *Track Determination*.

**JOB AID:** *Appendix D Forms List*.

## 4.5 Letters Tab

Once responsive records have been staffed or the case is upfront closed (except ER), a letter is generated. The letter is either an Acknowledgement Letter (when records were staffed) or a Final Action Letter (when the case is closed upfront).

### 4.5.1 Final Action Letters

Any time a case is upfront closed as FC, TD, NA, DP, NR, RD, RF, or UV, FIRST generates a Final Action Letter.

- Go to **Actions** → select the final action code.
- The Final Action Letter populates.
- Select any applicable inserts.
- Select **Update Letter**.
- Read through the letter to confirm all information is correct.

### 4.5.2 Acknowledgement Letters

Any time responsive records are staffed, an Acknowledgement Letter confirming receipt and processing will need to be generated.

- Under the Letter Tab, select **+Add Letter**.
- Select **Acknowledgement Letter — Ack Letter — Complex** (or **Simple** if working the SMP office).
- The Acknowledgement Letter appears.
- Add all applicable letter inserts and select **Update Letter**.
- Read through the letter to confirm all information is correct.

### 4.5.3 Inserts

Both Acknowledgement and Final Action Letters offer inserts for additional verbiage. NR, TD, FC, NA, DP, and UV have required inserts. Multiple inserts are allowed.

After making an insert selection, select **Update Letter**. Ensure the letter is properly updated.

**JOB AID:** *Letter Inserts Library*.

### 4.5.4 Editing Letter Content; Grammar Pass

The information entered into the Request Tab generates the letter. Case Creators must ensure spelling, grammar, and punctuation are correct.

- Select **Edit Mode** at the top of the left side of FIRST.
- Correct spelling, grammar, and punctuation.
- Select **Save and Close**.
- Select **Update** on the letter to save the corrections.

### 4.5.5 Finalizing the Case

Once responsive records have been staffed, and the acknowledgment letter generated, pend the case to send it to the Scanner Queue.

- Go to **Actions** → **Pend**.

The case is sent to the Scanner Queue for record upload.

# Chapter 5. Upfront Closures

Each closure code is defined in **Policy Manual Chapter 4**. This Chapter provides the FIRST procedure for applying each code at intake.

## 5.1 Failure to Comply (FC)

Apply when the request fails any element of a perfected request under **Policy Manual Section 4.1**.

### Procedure

- Add a Case Note explaining the FC basis.
- Go to **Actions** → **Upfront Close** → **FC**.
- The Final Action Letter populates.
- Select the required FC insert (identifies the specific deficiency).
- **Update Letter**.
- Go to **Actions** → **Send for Approval**.

### Special handling

- **Illegibility.** If the request is on paper and illegible:
  - Add a Case Note.
  - Email the OA room requesting a rescan and copy the supervisor.
  - Move the case to Admin.
  - If the rescanned documents remain illegible, close FC.
  - If the document is not required to process the request (i.e., not needed for VOI or consent), proceed to create the case as appropriate.
- **Paper without justification.** Close FC using the "nonelectronic filing" insert.
- **Paper with justification.** Add a Case Note; move the case to Admin; notify supervisor. Do not close FC.
- This will change the required fields on the Request Tab in FIRST to:
  - Section 1, fill in entire section
    - For Category, choose "Third Party No Consent"
  - Section 2, fill in entire section
  - Section 3, fill in subject's name, DOB, COB
    - Create the final action letter, add the appropriate insert.
    - Select Actions on the top right corner of FIRST, Select Upfront Approval.

## 5.2 Unable to Verify (UV)

Apply when adequate identifying information was provided but no matching record was found in FIRST Search Tab or PCIS (**Policy Manual Section 4.2**).

### Procedure

- Add a Case Note.
- Go to **Actions** → **Upfront Close** → **UV**.
- The Final Action Letter populates.
- Select the required UV insert.
- **Update Letter**.
- **Actions** → **Send for Approval**.

## 5.3 Total Denial (TD)

Apply when required consent was not provided (**Policy Manual Section 4.3).**

### Procedure

- On the left side of FIRST under Consent Type, select Not Sufficient.
- Add a Case Note (Example: "TD | SOR did not provide consent")
- Go to top right corner of FIRST: **Actions** → **Upfront Close** → **TD**.
- This will change the required fields on the Request Tab in FIRST to:
    - Section 1, fill in entire section
        - For Category, choose "Third Party No Consent"
    - Section 2, fill in entire section
    - Section 3, fill in subject's name, DOB, COB
        - Create the final action letter, add the appropriate insert.
        - Select Actions on the top right corner of FIRST, Select Upfront Approval.

## 5.4 No Records (NR)

Applied when the specific document requested or appropriate substitute document was not found, or no record was found for the SOR (**Policy Manual Section 4.4).**

**(UPCOMING GUIDANCE):** For I-94, arrival/departure, or entry/exit document requests, conduct a reasonable search of usual systems before closing NR. If no responsive record is located: close NR with the I-94 insert (if the I-94 is the only requested document) or refer to CBP under Section 5.5 (if the SOR is a U.S.-born citizen).

**Before closing NR, the Case Creator must complete a reasonable search.**

### Procedure

- Complete the PCIS standalone search if the FIRST search did not yield a positive result. If PCIS standalone yields positive results, create the case.
- Complete the Request Tab with all available information.
- Add a Case Note explaining why the case was closed NR.
- In the top right corner of FIRST: **Actions** → **Upfront Close** → **NR: No Record**.
- On the Letter Tab, add the applicable NR letter insert.
- Select **Update Letter**.
- Select **Actions** → **Send for Approval**.

## 5.5 CBP Referral (RF)

**Reflects Policy Manual Section 4.5.**

**(UPCOMING POLICY CHANGE):** Refer to CBP only when (a) the person is a U.S.-born citizen requesting arrival or departure information AND (b) no records are found in the Search tab. For I-94-only requests, conduct a reasonable search first; RF only if no responsive record is located.

### Procedure

- Complete all criteria for creating the case as appropriate.
- Add a Case Note explaining the RF basis.
- **Actions** → **Refer Case**.
- Select **CBP: U.S. Customs and Border Protection**.
- The RF letter appears.
- **Actions** → **Send for Approval**.

## 5.6 Not Applicable (NA)

Applied when the request is not a request for records under FOIA or the Privacy Act (**Policy Manual Section 4.6**).

### Procedure

- Add a Case Note explaining why the case is being closed NA.
- **Actions** → **Upfront Close** → **NA: FOIA or PA Not Applicable**.
- The NA letter appears.
- Go to the Letter Tab and add the required applicable NA letter insert.
- **Update Letter**.
- **Actions** → **Send for Approval**.

## 5.7 Created in Error (ER)

Apply only to Routine Use referrals and court orders or subpoenas (**Policy Manual Section 4.8**). No Final Action Letter is generated.

### Procedure

- Fill out the left side with what is provided.
- Add a Case Note explaining the ER basis.
- **Actions → Upfront Close → ER: Created in Error**.
- The Letter Tab will appear with no document selected ("No document has been selected to view. Please select a document.").
- **Actions → Send for Approval**.

# Chapter 6. Special Case Intake

## 6.5 Untranslated Foreign-Language Documents

**Reflects Policy Manual Section 3.6.**

Close FC only when translation is required for VOI or consent and is not provided.

If FC closure is appropriate, add the Untranslated Documents insert to the Final Action Letter.

## 6.6 Appeals Received in CC Queue

A request marked "Appeal" or providing the case number of a case being appealed is not created as a new case in the CC queue.

1. Send an email to nrcfoiaappeals@uscis.dhs.gov titled "Possible Appeals" with the case number for review, CC the assigned supervisor.
2. Enter a Case Note in FIRST explaining the situation.
3. Send the case to the Admin queue.
4. The Appeals team will review and move the case to the APP Office if it is truly an appeal. If not, the Appeals team will respond by email; the supervisor returns the case.

Do not create an Acknowledgement Letter for an appeal.

## 6.7 Routine Use

Requests received from other federal, state, and local government agencies for the subject's record for law enforcement purposes — examples: child support enforcement, public assistance, verification of status from federal, state, or local government — are closed ER (Policy Manual Section 4.8).

- Prepare an email and send to nrcfoiaroutine@uscis.dhs.gov with the case number, CC the supervisor.
- Add a Case Note describing actions taken.
- Send the case to Admin.

## 6.8 Withdrawal Request

If a request to withdraw a pending FOIA request is scanned in as a new request, close NA with the applicable insert.

## 6.9 Replacement CD Request

If a request for a replacement CD is scanned in as a new request, close NA with the applicable insert.

## 6.10 Changes to Existing Cases

If a request seeks to make changes to another FOIA request or seeks a status update on another FOIA request, close NA with the "making changes to existing" insert. Examples include changes to track, address, and attorneys.

## 6.11 Return of Original Documents

Requestors may ask for the return of original documents (adoption decrees, birth certificates, etc.) by Form G-884 or in writing. Close NA and add the applicable letter insert.

When a specific document request includes an original passport, add the "Return of Original Passport" insert to the Acknowledgement Letter. This informs the requestor that a FOIA request only provides a copy and explains how to request the original.

## 6.12 Genealogy (GEN) Redirect Review

Genealogy cases are requests for searches and/or copies of historical records relating to a deceased person. Policy Manual Section 2.6 establishes eligible records.

### Redirect review criteria

- DOB of the subject is more than 100 years prior to the request.
- Request involves historical records.
- A-number is below 8 million (A008000000).
- Request mentions Naturalization Certificate, Dual Citizenship, or relatives' records.

### Procedure if criteria met

**Genealogy Redirect Review Procedure**

1. Initial Steps (If Criteria Met)
    - Select Category: Other.
    - Case Note: Add a case note titled "Genealogy Redirect Review" and indicate the case is being sent to ADMIN.
    - Complete IIIB Redirect/Record Indexing Form:
        - Select FOIA.
        - Add FIRST control number.
        - Add file number (if provided).
        - Provide FIRST backlog date.
        - Select purpose of record indexing.
        - Comments Section: Copy and paste the following:
            - Name
            - Alias
            - Date of Birth
            - Country of Birth
            - Father's Name
            - Mother's Name
            - File Number (if available)

        - Children's Names

**2. Case Outcome Procedures**

- An email response will be sent to you and your supervisor once the case has been reviewed.
- The email will include a case note, along with instructions, **to be pasted into FIRST**.
- Follow the instructions provided in the email for any further actions.

**A. Redirect to Genealogy**

- Actions Tab: Select Redirect and choose Genealogy.
- Pend Case: Mark the case as pending.
- Notification: An email response will be sent to you and your supervisor with a case note to be pasted into FIRST. Follow further instructions as provided.

**B. FOIA Record Indexing**

- Staff File in RAILS: Upload and staff the file into the RAILS system for processing.
- Notification: Await further instructions or confirmation via email.

**C. No Record Found**

- Case Note: Add a case note indicating No Record Found.
- Notification: Notify the requester and supervisor as required by your office's procedures.
- Close Case: Follow standard closure procedures.

**D. NARA Referral**

- Actions Tab:
    - For NARA referrals, from the drop-down actions button, select Not Applicable (NA).
    - Select NARA (National Archives and Records Administration).
    - RAILS Determination:
        - In RAILS, determine if the file is located at Kansas City NARA or San Francisco (SFR) NARA.
        - Select the applicable insert based on NARA file location.
    - Pend the case

**E. Record Available in RAILS (To Be Staffed)**

- Staff File in RAILS: Staff the available record into the RAILS system.

**3. General Reminders**

- Always ensure all required information is accurately entered.
- Follow up on email notifications for next steps and paste provided case notes into FIRST as instructed.
- If unsure how to proceed, consult your supervisor or refer to office-specific guidance.
- Do not change the office to the "Genealogy office." Genealogy is a separate fee-for-service program. P-Files are not handled under Genealogy.

### 6.13 Records Indexing (MiDAS)

In some FOIA requests, the A-Number may not be found through a FOIA system but may be located through MiDAS (records maintained 1893–1975). If the request meets the minimum

criteria and an A-file is believed to exist above 8 million and below 30 million, staff record indexing.

### Common reasons to staff Records Indexing

- DOB less than 100 years prior to the request date.
- Naturalization dates prior to 1975.
- Dates of entry prior to 1975.
- A-Numbers above 8 million not found in FIRST search tab or RAILS (provided with request).
- A-Numbers above 8 million found in RAILS where the name, DOB, and COB are blank.
- A-Numbers 30 million or below that are lost/missing in RAILS.
- RAILS shows the record is located in CIS2.

### FOIA Record Indexing Review Procedure

1. Initial Steps (If Criteria Met)
   - Case Note: Add a case note titled **"Record Indexing Review"** and indicate the case is being sent to ADMIN.
   - Complete IIIB Redirect/Record Indexing Form:
     - Select FOIA.
     - Add FIRST control number.
     - Add file number (if provided).
     - Provide FIRST backlog date.
     - Select purpose of record indexing.
     - Comments Section: Copy and paste the following:
       - Name
       - Alias
       - Date of Birth
       - Country of Birth
       - Father's Name
       - Mother's Name
       - File Number (if available)
       - Children's Names

**2. Case Outcome Procedures**

- An email response will be sent to you and your supervisor once the case has been reviewed.
- The email will include a case note, along with instructions, **to be pasted into FIRST**.
- Follow the instructions provided in the email for any further actions.

## 6.14 PFL Office Routing

Petition File (P-File) requests are created in the PFL Office.

If the requestor specifically requests a P-File and provided the accession, box number, and P-file number, change the office to PFL. If the P-File number is not provided, close NR.

### Procedure

- **Actions** → **Change Office** → select **PFL** → **Done**. (Control number changes from NRC to PFL.)
- In the Duplicate Tab, search for duplicate requests.
- In the Locate Tab, create a manual staffing of A0000000 to IRCMS.
- If other documents were specifically requested, staff for those.
- In the Letters Tab, create an Acknowledgement Letter.
- Add a Case Note. **Actions** → **Pend**.

## 6.15 Congressional

When the request includes correspondence from a member of Congress.

- Complete case as appropriate.
- Set Category to **Congressional**.
- Send an email to congressionalnrc@uscis.dhs.gov. Include the control number, Congressional contact information, and the subject's name.
- Add a Case Note.
- Pend the case.

Do not use the Congressional office address as the requestor's address. If no other address is available, contact congressionalnrc@uscis.dhs.gov for guidance.

## 6.16 Agency Records and Hybrid Records Requests

### Agency Records

Created in the COW Office. Agency records requests are for non-A-file material. Examples in **Policy Manual Section 6.6**.

- Enter all available information in the Request Tab.
- Set **Source** to **Other**.
- Set **Category** to **Other**.
- Do not enter an A-Number in USCIS Information.
- To ensure FIRST updates the track to a Track 2, select **Yes** to "Is this request for the full alien file?" in the Locate Tab.
- Add a Case Note explaining the agency records qualification.
- Send an email to foiasig.nrc@uscis.dhs.gov (CC supervisor) with the subject "possible agency records request" and the control number.
- Move the case to Admin. The External Engagement Team reviews. If accepted, the case moves to the COW Office. If rejected, continue creating the case in the appropriate office.

### Hybrid Records

Hybrid requests seek both A-file material and agency records.

- Add a Case Note explaining the hybrid qualification.
- Send an email to foiasig.nrc@uscis.dhs.gov (CC supervisor) with the subject "possible hybrid request" and the control number.
- Move the case to Admin.
- If the External Engagement Team accepts, the case is returned to the case creator to create the A-file material request and a child case for the agency records.

### Child Case Creation

- From the original A-file request, select **Create a Child Case** in Section 2 of the Request Tab.
- Add a Case Note to the original request stating a child case is being created.
- Copy the control number of the original request.
- Create the original request as appropriate.
- Once the original is complete, the child case appears in the case create queue.
- When the child case is created, the Request Tab fields auto-populate from the original. Do not modify the Request Tab or download any ARDs/CSDs from the original.
- Add a Case Note in the child case with the original control number.
- Email foiasig.nrc@uscis.dhs.gov with the child case control number and move the child case to Admin.
- The External Engagement Team creates the agency records request.

## 6.17 FOIA Safe (Classified)

Classified files (RAILS file location SEA-FRC, WAS-FRC, or RPC code "ZW") are staffed to FOIA Safe.

- Staff the classified file to **FOIA Safe**.
- Case Note under Special Scenario.
- Pend the case.

When RAILS shows an A-file and T-file at the same location but only one is classified, create two separate staffings: classified to FOIA Safe; unclassified to the FCO where the file is located. Case Note and pend.

## 6.18 BCC and EAD Numbers

A-Numbers 80,000,000–86,899,999 (BCC) and 100,000,000–199,999,999 (EAD)

- BCC (Border Crossing Card):
  - A-numbers in the range 80,000,000–86,899,999 are BCC numbers.
- EAD (Employment Authorization Document) Numbers:
  - A-numbers in the range 100,000,000–199,999,999 are EAD numbers.
- File Type:

  - Both BCC and EAD numbers typically correspond to electronic files only, with no physical A-file.

Procedures:

1. Check RAILS:
   - Enter the A-number in RAILS to determine if a physical A-file exists.
2. If Not in RAILS:
   - Use the FIRST Search function to locate another A-number or receipt file associated with the subject.
3. If No File Found:
   - If no associated file is found, close as NR (No Record).

## 6.19 Hidden Patriot

When RAILS indicates the FCO location is WAS with RPC code IX and description "Hidden Patriot":

- Staff for the A-file to WAS.
- Case Note: "Hidden Patriot Investigation case."

## 6.20 Red Cross and NGO Requests

Requests from the Red Cross or other non-governmental organizations (Salvation Army, etc.) looking for the last known address of an alien are handled as normal FOIA requests requiring both consent and VOI. Create as normal.

## 6.21 ALF Office and Significant FOIA Requests

The ALF Office handles requests for asylum and refugee records, Global/WRAPS records, and cases requiring an external RAIO staffing.

### Refugee record indicators

- Forms I-589 or I-590 with a receipt prefix of IOE, AMI, or LGL.
- Subject has an A-number in the 200 million series, but it is not in RAILS.
- Request includes terms such as "refugee," "U.S. Refugee Admissions Program," "USRAP," "refugee resettlement," "refugee processing," "Refugee Processing Center."
- Subject is a refugee applicant seeking records to pursue reconsideration.
- Request mentions the court order in IRAP v. USCIS.
- Requestor is a known refugee-processing organization (IRAP, Church World Service, IRC, World Relief).
- Request mentions an Overseas Processing Entity (OPE) or Resettlement Support Center (RSC) case number (e.g., BY-123456).
- Request includes a USCIS Notice of Ineligibility for Resettlement.

### When NOT to move to ALF

- If you can staff the I-589 or I-590 receipt in the Locate Tab. Staff the receipt and create the request as usual in the current NRC office.
- If a receipt with the LGL prefix appears in the Search Tab, there will be a corresponding IOE ELIS receipt. In the Locate Tab, staff only the IOE I-589 receipt.

### ALF Office Procedure

- Verify the correct track is selected and accelerated track requests are handled before changing the office.
- After moving to ALF, you cannot change the track. If the case is on the wrong track, contact the supervisor.
- **Actions** → **Change Office** → **ALF Office** → **Done**. Do not change the office back to NRC.
- Check for duplicates.
- In the Locate Tab, staff all available responsive records.
- In the Staff Tab:
- **New Staffing**.
- Type **RAIO** in **Filter Staffing Locations by Name**, select **RAIO**, **Done**.
- **Customize** next to Description; paste the A-number, subject's name, DOB, and COB (copied from the Search Tab) into the Description box.
- **Send Notification**. Ensure the Description information is visible and dates are populated in the Staffing Dates fields. If dates do not populate, select **Send Notification** again. The notification will not send to RAIO without the dates.
- Add a Case Note: "ALF Office, Staffing to RAIO."
- In the Letters Tab, generate the **Acknowledgement letter + add letter and choose Ack Letter Complex**. Add applicable inserts.
- In the Request Tab, **Edit Mode** above Case Information. Add "All Records" to the Topic line. **Save and Close**.
- **Actions** → **Pend**.

### Significant FOIA Requests

Defined in **Policy Manual Section 7.5**. A request meeting Significant FOIA criteria for A-file material is sent to admin for supervisor review before any ALF routing. Email the supervisor to confirm the determination. Do not change the office to ALF until the determination is made.

If the supervisor confirms Significant FOIA: **Actions** → **Office Change** → **ALF Office** → **Done**.

Once the office is changed to ALF for a Significant FOIA Request:

- Add the **DHS Review Label**.
- If the requestor is a member of the media, change Source to **News Media**. Otherwise, change Source to **Other**.

- Staff for responsive records.
- Case Note: "ALF Office, Staffed Records, Added DHS Review Label."

If files are not found in RAILS:

- Do not change office to ALF.
- Upfront close NR.
- Case Note: search conducted, no records found.

## 6.22 EB5 Office

Requests for Forms I-526 and I-829 are created in the EB5 Office. These forms are in the A-file.

If the requestor specifically requests one of these forms, or requests the entire A-file and one of these forms is found in the Search Tab or the A-file is located in IIP in RAILS:

- **Actions** → **Change Office** → **EB5 Immigrant Investor Program** → **Done**. Control number changes from NRC to EB5.
- In the Duplicate Tab, search for duplicates.
- Use only the Request, Search, Locate, and Letters Tabs after the office change. Do not enter information in the Staff Tab.
- Use the Locate Tab to staff all responsive records. Staff EB5 records to **IIP-EB5**.
- In the Letters Tab, create an Acknowledgement Letter.
- In the Request Tab, **Edit Mode** above Case Information. Add "All Records" to the Topic line. **Save and Close**.
- **Actions** → **Pend**.

## 6.23 PPO Office (Appeals Remands)

Remanded requests from the Appeals Office are created in the PPO Office. A remand memorandum, the appeal, and the original NRC FOIA request are manually uploaded.

When specifically assigned to work PPO cases, select the PPO Office from the **Select Office** drop-down on the FIRST dashboard and **Start Case**.




### PPO Office Procedure

- Review the remand memorandum, appeal, original, and all ARDs NRC FOIA request.
- Complete the case and staff records per the memorandum instructions.

- **Do not change the office.**
- All PPO cases require a physical mailing address. Digital appeals may have only an email address. If no physical address:
    - Create the case.
    - Add a Case Note.
    - Move the case to Admin.
- Email the FOIA Public Liaison at foiapaquestions@uscis.dhs.gov and CC the supervisor.
- In the Duplicate Tab, review for duplicates.
    - Connect the original NRC request and APP cases to the PPO case using **Connect**.
    - If a remand is inadvertently uploaded twice, close the request. Verify the APP number and the original NRC case appealed are identical before closing as ER.
- In the Locate Tab:
    - Staff all files/receipts from the memorandum except documents previously released. PPO should provide only responsive records not released in the original request.
    - If staffing cannot be completed in the Locate tab for Global/WRAPS records, initiate an external RAIO staffing in the Staff Tab (see Section 6.21).
- In the Letters Tab, create an Acknowledgement Letter, select applicable inserts.
- **Actions → Pend**.

## 6.24 Multiple Paper Requests in One Upload

When multiple paper requests for records have been uploaded in one request:

- Case Note: "paper related request."
- Email NRC.FOIAOA@uscis.dhs.gov requesting that the related requests be uploaded separately by the OA room, CC supervisor.
- Move case to Admin.

## 6.25 Unknown Situations: Admin Escalation

If assistance is needed and the situation is not described in this Manual, email the supervisor and move the case to Admin to pull another case while waiting.

- Add a Case Note explaining why the case is being sent to Admin.
- **Actions → Move → Admin**.
- Email the supervisor.

Exhibit 21

# For Review: Policy + FORGE Training Slides

Turner, Timothy J
To Baxley, James A (Jim); [redacted]
Cc [redacted]

Reply | Reply All | Forward

Mon 6/22/2026 10:12 AM

DRAFT_Policy_Changes_FORGE_Launch.pptx
2 MB

Good morning,

Attached is the draft Policy Changes + FORGE Launch Training. Please review and let me know if you have any edits/additions you would like to see.

One area I could use some help on:
For the new I-94 search guidance, I was trying to get some sanitized screenshots of what the search process would entail. The problem I ran into is that it does not appear that the I-94 shows up in the search tab in FIRST, or in a standalone search in PCIS. I believe it only appears in STACKS (which I don't think staff currently use regularly), and even then, it would only show if the I-94 was digitized. Can you elaborate on what system search they are supposed to do and send me over some screenshots to add to the slides (or let me know who to call so they can walk me through it)?

Respectfully,

**Tim Turner**
Section Chief, HR & Training
Operations Support Branch
National Records Center
Immigration Records and Identity Services
U.S. Citizenship and Immigration Services

USCIS · NATIONAL RECORDS CENTER · OPERATIONS TRAINING

# FOIA Operations Update

*Policy Updates, FORGE launch, and what changes at your desk*

July 13, 2026

Power Point Slide Show - DRAFT_Policy_Changes_FORGE_Launch - PowerPoint

# Agenda

1 Policy Changes

2 FORGE

3 Casework Tools: live walkthrough

4 FOIA Academy: a first look

5 Questions

PowerPoint Slide Show - DRAFT_Policy_Changes_FORGE_Launch - PowerPoint

PART 1

# Policy Changes

# Voluntary VOI Elements

Policy Manual §3.2.3

## PRIOR PRACTICE

Additional Information Provided Voluntarily

Alien Number (A-number)

- If provided, it must match exactly in Search Tab and/or RR, otherwise close NR.

Parents' Names

- If provided, both First and Last names of both parents must match what is in the file.
  - Exceptions:
    - Utilize guidance/exceptions from the SOR full name
    - Mother's maiden name if provided
    - Construction of Foreign Names

## NEW POLICY

Voluntary VOI elements are used **only** when multiple records share the same mandatory VOI and the case creator/processor is unable to determine which record applies to the SOR.

**When applied:** voluntary VOI must match exactly (subject to the variation rules in the 2/17 VOI Quick Guide). If multiple records remain after voluntary VOI matching, the supervisor is consulted.

The voluntary VOI elements are:

- A-Number
- Parents' Names. If checked, both first and last names of both parents must match what is in the Search tab/Responsive Records.

**At your desk:**

- If voluntary VOI is provided but not needed to identify the responsive record, the Case Creator does not match on it.
- If there are multiple possible matches based off the required VOI, use the voluntary VOI to find the responsive record(s)
- If multiple records remain after matching, consult your supervisor.

# Required VOI: What's NOT Changing

Required VOI policies remain unchanged.

**Full name**
*Acceptable name variations from 2/17 Guidance remain in effect

**Date of Birth:** Must match U.S. customary standard (month, day, year)
Not acceptable: numerical inversions or incomplete DOB

**Current address** (PO Boxes acceptable)
Not acceptable: incomplete addresses, email, and attorney address

**Country of birth**
Not acceptable: place of birth, native of, unknown, or alleged

**Signature:** notarized or under penalty of perjury

# Untranslated documents are in scope

**Policy Manual §3.6**

## PRIOR PRACTICE

Foreign-language documents submitted without a certified translation were treated as out of scope during processing.

## NEW POLICY

Untranslated requester-submitted documents are processed as part of the responsive record under the document-classification framework. They are not categorically out of scope.

**At your desk:** Closure under FC still applies when translation is required for VOI or consent and is not provided. The change is about responsive records, not about perfecting the request.

# I-94 requests: search first

**Policy Manual §4.4 and §4.5**

## PRIOR PRACTICE

I-94-only requests were closed No Record without a systems search.

## NEW POLICY

Run a systems search for the I-94 first.

If it is not located and it is the only document requested, close NR with the I-94 insert.

**CBP Referrals**

CBP Referral applies only after a reasonable search yields no responsive record.

**At your desk:** The up-front close without a search is discontinued. A search must be conducted.

PROCESSING: THE BIG SHIFT

# Exemptions are applied line by line

**Policy Manual §5.1**

Categorical withholding of an entire document based on its class is discontinued.

That includes the former WIF practice for law enforcement records and the ROP / non-ROP distinction.

Each piece of information is evaluated on its own terms against each potentially applicable exemption.

**At your desk:** the Processing Charts in Casework Tools still give you a starting point by document type. You confirm the cited exemption actually applies.

# Requester-submitted documents

Policy Manual §6.2

| PRIOR PRACTICE | NEW POLICY |
| --- | --- |
| Third-party PII was generally withheld under (b)(6) by default across documents in the file. | Third-party PII in documents the requestor submitted is evaluated under the unwarranted-invasion test:<br>• Release where it would not be a clearly unwarranted invasion of privacy.<br>    • A parent receiving back a document they submitted about their child generally does not raise that concern. |

# Release or WIF?

```
CIMIDN              IMMIGRATION AND NATURALIZATION SERVICE          05/29/08
COMMAND:         CENTR   INDEX SYSTEM - ID # SEARC   DISPLAY    12:14:24 DOB:

ID # (A/AA/AB/C/DA):                          A#: 000000000        11212077
   (DL/FB/FP/I/PP/SS/TD)
     LAST: Doe
    FIRST: Jon
   MIDDLE:                                              NATZ DATE:
  ALIASES:                                                  COURT:
                                                         LOCATION:

 SEX: M     POE:      COB: MEXIC     DOE: 00000000
 FCO: WSC   COA:      COC:
PFCO:      SFCO:      DFO: 05282008  BIN:          FATHER: VICTOR MANUEL
                                                   MOTHER: AMELIA

       SSN:                    CONSOLIDATED A-NOS   --OTHER INFORMATION--
I-94 ADM #:                                         [redacted]
PASSPORT #:
     FBI #:
DRIVER LIC:
FINGER CD#:                                                (b)(7)(e)

OVER-KEY ID# TO DISPLAY NEW PERSON, PRESS  ENTER.  CLEAR EXIT  PF1 NEXT CONS A#
PF2 PRIOR CONS A#  PF3 REFRESH  PF4 RETURN PF5 HELP PF6 MAIN MENU  PF8 HISTORY
                                                          PF9 EAD PF11 EOIR
```

...Point Slide Show - DRAFT_Policy_Changes_FORGE_Launch - PowerPoint



# Release or WIF?

**Record of Proceeding Cover Sheet**
**Department of Homeland Security**
U.S. Citizenship and Immigration Services

**USCIS**
**Form M-175**
Internal Form

## Cover Sheet

## Record of Proceeding

**NOTE:** This is a record of U.S. Citizenship and Immigration Services.

**Instructions**

1. Place a separate cover sheet on the top of each closed Record of Proceeding.
2. Each Record of Proceeding must be fastened on the inner left side of the file jacket in chronological order.
3. Any person temporarily removing any part of this record must insert a page describing the section removed, sign and date it, and place it in this record below this cover sheet. The signer is responsible for returning the removed material as soon as it no longer needs to be outside the record.
4. See Records Operations Handbook Part II-24: Record of Proceeding (ROP) - Assembling A-Files for details.

Form M-175 12/04/17 N Page 1 of 1

# I-589

**If SOR is the primary:**
**Release 3rd party PII**
**Redact systems/results & gov employees**

**Q: What if the subject of record was the rider?**

**A: Release SOR's info, redact everything else**

**Part A.II. Information About Your Spouse and Children**

Your spouse ☐ I am not married. (Skip to **Your Children** below.)

| 1. Alien Registration Number (A-Number) (if any) | 2. Passport/ID Card Number (if any) | 3. Date of Birth (mm/dd/yyyy) | 4. U.S. Social Security Number (if any) |
|---|---|---|---|
| 000 00 001 | 123456789 | 03/22/1991 | N/A |
| **5. Complete Last Name** | **6. First Name** | **7. Middle Name** | **8. Other names used (include maiden name and aliases)** |
| Henderson | Nancy | | N/A |

| 9. Date of Marriage (mm/dd/yyyy) | 10. Place of Marriage | 11. City and Country of Birth |
|---|---|---|
| 02/07/2021 | Canada | Alberta, Canada |

| 12. Nationality (Citizenship) | 13. Race, Ethnic or Tribal Group | 14. Gender |
|---|---|---|
| Canadiana | | ☐ Male ☒ Female |

15. Is this person in the U.S.? ☒ Yes (Complete Blocks 16 to 24.) ☐ No (Specify location):

| 16. Place of last entry into the U.S. | 17. Date of last entry into the U.S. (mm/dd/yyyy) | 18. I-94 Number (if any) | 19. Status when last admitted (Visa type, if any) |
|---|---|---|---|
| Arizona | 02/12/2021 | N/A | No Status |
| **20. What is your spouse's current status?** | **21. What is the expiration date of his/her authorized stay, if any? (mm/dd/yyyy)** | **22. Is your spouse in Immigration Court proceedings?** | **23. If previously in the U.S., date of previous arrival (mm/dd/yyyy)** |
| No Status | N/A | ☒ Yes ☐ No | N/A |

24. If in the U.S., is your spouse to be included in this application? (Check the appropriate box.)
☒ Yes (Attach one photograph of your spouse in the upper right corner of Page 9 on the extra copy of the application submitted for this person.)
☐ No

(b)(6)

Your Children. List all of your children, regardless of age, location, or marital status.
☐ I do not have any children. (Skip to Part A.III. Information about your background.)
☒ I have children. Total number of children: 2

(NOTE: Use Form I-589 Supplement A or attach additional sheets of paper and documentation if you have more than four children.)

| 1. Alien Registration Number (A-Number) (if any) | 2. Passport/ID Card Number (if any) | 3. Marital Status (Married, Single, Divorced, Widowed) | 4. U.S. Social Security Number (if any) |
|---|---|---|---|
| 000 00 0002 | 00000000 | Single | N/A |
| **5. Complete Last Name** | **6. First Name** | **7. Middle Name** | **8. Date of Birth (mm/dd/yyyy)** |
| Henderson | George | | 09/11/2017 |
| **9. City and Country of Birth** | **10. Nationality (Citizenship)** | **11. Race, Ethnic, or Tribal Group** | **12. Gender** |
| Canada | Canadian | | ☒ Male ☐ Female |

13. Is this child in the U.S.? ☒ Yes (Complete Blocks 14 to 21.) ☐ No (Specify location):

| 14. Place of last entry into the U.S. | 15. Date of last entry into the U.S. (mm/dd/yyyy) | 16. I-94 Number (if any) | 17. Status when last admitted (Visa type, if any) |
|---|---|---|---|
| Arizona | 02/12/2021 | N/A | No status |

| 18. What is your child's current status? | 19. What is the expiration date of his/her authorized stay, if any? (mm/dd/yyyy) | 20. Is your child in Immigration Court proceedings? |
|---|---|---|
| No status | N/A | ☒ Yes ☐ No |

21. If in the U.S., is this child to be included in this application? (Check the appropriate box.)
☒ Yes (Attach one photograph of your child in the upper right corner of Page 9 on the extra copy of the application submitted for this person.)
☐ No

# Processing Sheet

**Q: Should we redact the family a-numbers?**

**A: If we know the SOR is privy to the 3rd party PII (ie on the I-589 they signed and submitted), that info can be released.**

***make sure you case note!**

Form I-589 Principal Processing Sheet — For cases received after 3/24/95

Keep with this application throughout processing

*Screening*

1. Is the applicant's address within this Center's I-589 jurisdiction? (If no, move to reject process) ☑ Yes ☐ No
2. In question 17, did the applicant select "B"? (If Yes, move to the reject process) ☐ Yes ☑ No
3. Is the application marked "ABC" on its face, or is it filed with an I-765 marked "ABC" on its face or with the I-765 fee? (If No, move to question 4) ☐ Yes ☑ No
   Is the application information consistent with the claim?
   ☐ Consistent with claim-Treat as ABC. Stop. Attach this sheet and process under pre-asylum reform procedures.
   ☐ Not consistent or did not claim ABC - Treat as non ABC. Continue processing sheet move to question 4
4. Is the I-589 an acceptable form version date? (If no, move to reject process.) ☑ Yes ☐ No
5. Number of persons included in the application:
   Applicant + ☐ None ☐ One ☐ Two ☑ Three ☐ Four More than five ______
6. Is the I-589 signed by the applicant? ☑ Yes ☐ No
7. If a preparer is indicated, did he or she sign the I-589? ☑ Yes ☐ No
8. Are all required questions on the I-589 responded to? ☑ Yes ☐ No
9. Is there a passport style photo of the applicant? ☑ Yes ☐ No
10. Is the applicant 14 or older? ☐ Yes ☐ No-skip to question 11
    Is there a completed FD-258 Fingerprint Chart for the applicant? (not required) ☐ Yes ☐ No
    If the I-589 is the 8/1/91 revision, is there a completed G-325? ☐ Not the 1991 version
11. Are there 2 extra copies of the I-589 for the applicant? ☑ Yes ☐ No
    Does each appear to have a complete copy of the supporting documentation and evidence submitted with the originally signed application? ☑ Yes ☐ No
12. For each family member included in Part A of the application:
    Is there an additional copy of the I-589? ☑ Yes ☐ No
    Is there a completed FD-258 fingerprint chart for each member who is 14 or older? ☑ Yes ☐ No
    Is there a photo of the dependent? ☑ Yes ☐ No
    Does there appear to be a full set of the supporting documentation and evidence submitted with the principal's application? ☑ Yes ☐ No

(b)(6), (b)(7)(c), (b)(7)(f)

*Assembly*

*Check One* G-28? ☐ Yes-signed ☐ Yes not signed ☑ No

☑ Application complete ☐ Application incomplete

Screening and assembly by 101741

Records checks

For principal applicant (Use a FM processing sheet for each included family member)

A# (b)(7)(e)

CIS ☑ Existing Exact Match ☐ New No Match ☐ New Multiple Hits

Included family:

A# 000 00 000 A# 000 00 001

A# 000 00 002 A# ______

A# ______ A# ______

01 MO 28 Day 22 Year

Records checks by 101741

Receipt Date

Final assembly by:

(b)(6), (b)(7)(c), (b)(7)(f)

☐ DOS/DRL copy sent (only send on case to be receipted

DOS/DRL copy sent by ______

*ADN*

File Review ☐ In Use-don't transfer at this time ☐ Not in Use Transfer w/application

☐ File relates to person ☐ File does not relate to person - create new A-File

Other

RAPS ☐ RAPS show pending asylum app - forward as duplicate/supplemental

☐ RAPS shows asylum granted -- reject ☐ Raps shows asylum denied - final assemby, receipt

CAF ☐ CAF shows person in proceedings -- reject ☐ CAF shows proceedings closed - final

☐ CAF shows outstanding order of exclusion/deportation - reject

(CAF showing in proceedings or outstanding order overrides RAPS) ADN review by:

...Changes_FORCE_Launch - PowerPoint

# RAP Sheet

**If it's your SOR: Redact**
**If 3rd party: WIF**

CBPUM20000000...

UNITED STATES DEPARTMENT OF JUSTICE
FEDERAL BUREAU OF INVESTIGATION
CRIMINAL JUSTICE INFORMATION SERVICES DIVISION
CLARKSBURG, WV 26306

AZCBP12345

NCN E0000000000

BECAUSE ADDITIONS OR DELETIONS MAY BE MADE AT ANY TIME, A NEW COPY SHOULD BE REQUESTED WHEN NEEDED FOR SUBSEQUENT USE.
- FBI IDENTIFICATION RECORD -

WHEN EXPLANATION OF A CHARGE OR DISPOSITION IS NEEDED, COMMUNICATE DIRECTLY WITH THE AGENCY THAT FURNISHED THE DATA TO THE FBI.

FEDERAL DEOXYRIBONUCLEIC ACID (DNA) INDICATOR

DNA NOT IN CODIS - COLLECT DNA

| NAME | FBI UCN | DATE REQUESTED |
|---|---|---|
| Henderson, Harry | F000ABCD | 2021/02/13 |

| SEX | RACE | BIRTH DATE | HEIGHT | WEIGHT | EYES | HAIR |
|---|---|---|---|---|---|---|
| M | W | 1979/11/01 | 509 | 190 | BRO | BRO |

BIRTH PLACE
Canada

| PATTERN CLASS | CITIZENSHIP |
|---|---|
| LS LS LS LS LS LS LS LS LS LS | Canada |

Booking

END OF PART 1 - PART 2 TO FOLLOW

UNITED STATES DEPARTMENT OF JUSTICE
FEDERAL BUREAU OF INVESTIGATION

https://fpq2.cbp.dhs.gov/e3Fpq2UI/ (b)(7)(e) 2/13/2021

2026-06-22_10-12-26.snagx - Snagit Editor

PowerPoint Slide Show - DRAFT_Policy_Changes_FORGE_Launch - PowerPoint

# WIF or Redact?

If it's your SOR: Redact
If 3rd party: WIF

**LAST NAME:** Henderson **FIRST NAME:** Harry **DOB:** 11/01/1979



Name: Henderson, Harry
Date of Birth: 11/01/1979 FIN: 1234567
Sex: M | COC:

User: Doe, Jane (b)(6) (b)(7)(c) (b)(7)(f)
Transaction ID: CBYUM0000000000
Transaction Station: YUS

## IDENT Resul ts

IDENT System [7 Encounters] RC Hit Info Ready

| NAME | DOB | A # | ENCOUNTER DATE | ENCOUNTER ID | ALERTS |
|---|---|---|---|---|---|
| Henderson Harry | 1979-11-01 | 000000000 | 12/15/2017 15:40: | 304512263463 | 0 |



First Name: Harry
Last Name: Henderson
Sex: M
Status of Entry: Length of Time Illegally in US:
Encounter Type: DHS/APPREHEND
Lookout Count:

Date of Birth: 1979-11-01
Country of Birth (COB): CA
Country of Citizenship (COC):
Misc 1:
Misc 2:
Misc 3:

Address Residence:
Location:
Apprehension Location:
Apprehension Method:
Apprehension Date:
Apprehended By:

Comments (No Comments)
Alerts (0)

| NAME | DOB | A # | ENCOUNTER DATE | ENCOUNTER ID | ALERTS |
|---|---|---|---|---|---|
| Henderson Harry | 1979-11-01 | | 11/06/2017 21:07: | 454450564017 | 0 |

https://fpq2.cbp.dhs.gov/e3Fpq2UI/ (b)(7)(e)

2/13/2021

POLICY CHANGES

Slide 15 of 35

# Release or WIF?

**SOR is the parent on the birth cert**

TRANSLATION OF BIRTH CERTIFICATE

1.-NAME John (first) (middle) Doe Jr (last)

2.- BIRTHPLACE: Cd. Juarez (city or town) Chihuahua (state or province) Mexico (country)

DATE: Nov. (month) / 21 (day) / 2077 (year)

3.- FATHER'S NAME: Jonathan (First) (middle) Doe sr (last)

4.-MOTHER'S NAME: Jane (First) (middle) Doe (last)

5.- CERTIFICATE ISSUED: Date: December (month) / 10 (day) / 1976 (year)

Place: Juarez (city or town) Chihuahua (state or province) Mexico (country)

Magistrate: DANIEE SAMINJAREZ (full name)

6.- CERTIFICATE FOUND: Archive or Register: 306 Page 4080 No. 155

This is a True and Correct copy taken from the original which was duly verified and sealed and issued upon the request of the interested party and it is authorized and signed in Juarez Chihuahua (City and State) on the 25th (Day) day of Nov. 1998 (Month and Year)

Seal

City, State Juarez, Chihuahua

Official of Civil Registry
Raul Real
Signed

**********************************************************************

I Certify that the above is a true translation from the spanish to english to best of my knowledge and ability on 24th day of April, 2001 (Date and Month Year El Paso TX)

Notary Public
State of Texas, County of El Paso

MY COMMISSION EXPIRES:
9-23-03

NOTARY PUBLIC
in and for the State of Texas
My commission expires 09-23-2003

# Release or WIF?

**SOR is the groom**

TRANSLATION OF A MARRIAGE CERTIFICATE

Date of Marriage: 02/07/2021

GROOM

Name: Harry Henderson 41 YEARS
Age: Canadian
Nationality:

BRIDE

Nancy Sarahson 29 YEARS
Name: Canadian
Age:
Nationality:

PARENTS OF THE GROOM

Father: Harold Henderson Sr.
Mother: Harriette Henderson

PARENTS OF THE BRIDE

Father: John Sarahson
Mother: Maria Sarahson

WITNESSES

Name: George Henderson
Name:
Sarah Henderson

Book:
Act:

I John Doe DO HEREBY CERTIFY THAT I AM COMPETENT TO TRANSLATE INTO ENGLISH AND THAT THE TRANSLATION IS ACCURATE.

NOTARY/TRANSLATOR

# Release or WIF?

## Joint Tax return

Form **8879** (Rev. January 2021) Department of the Treasury Internal Revenue Service

**IRS *e-file* Signature Authorization**

▶ ERO must obtain and retain completed Form 8879.
▶ Go to *www.irs.gov/Form8879* for the latest information.

OMB No. 1545-0074

Submission Identification Number (SID) ▶

| Taxpayer's name | Social security number |
|---|---|
| Jon Doe | 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 |
| **Spouse's name** | **Spouse's social security number** |
| Jane Doe | 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 |

**Part I — Tax Return Information — Tax Year Ending December 31,** 2021 (Enter year you are authorizing.)

Enter whole dollars only on lines 1 through 5.

**Note:** Form 1040-SS filers use line 4 only. Leave lines 1, 2, 3, and 5 blank.

| | | | |
|---|---|---|---|
| 1 | Adjusted gross income | 1 | 108,268. |
| 2 | Total tax | 2 | 8,384. |
| 3 | Federal income tax withheld from Form(s) W-2 and Form(s) 1099 | 3 | 15,650. |
| 4 | Amount you want refunded to you | 4 | 7,266. |
| 5 | Amount you owe | 5 | |

**Part II — Taxpayer Declaration and Signature Authorization (Be sure you get and keep a copy of your return)**

Under penalties of perjury, I declare that I have examined a copy of the income tax return (original or amended) I am now authorizing, and to the best of my knowledge and belief, it is true, correct, and complete. I further declare that the amounts in Part I above are the amounts from the income tax return (original or amended) I am now authorizing. I consent to allow my intermediate service provider, transmitter, or electronic return originator (ERO) to send my return to the IRS and to receive from the IRS (a) an acknowledgement of receipt or reason for rejection of the transmission, (b) the reason for any delay in processing the return or refund, and (c) the date of any refund. If applicable, I authorize the U.S. Treasury and its designated Financial Agent to initiate an ACH electronic funds withdrawal (direct debit) entry to the financial institution account indicated in the tax preparation software for payment of my federal taxes owed on this return and/or a payment of estimated tax, and the financial institution to debit the entry to this account. This authorization is to remain in full force and effect until I notify the U.S. Treasury Financial Agent to terminate the authorization. To revoke (cancel) a payment, I must contact the U.S. Treasury Financial Agent at 1-888-353-4537. Payment cancellation requests must be received no later than 2 business days prior to the payment (settlement) date. I also authorize the financial institutions involved in the processing of the electronic payment of taxes to receive confidential information necessary to answer inquiries and resolve issues related to the payment. I further acknowledge that the personal identification number (PIN) below is my signature for the income tax return (original or amended) I am now authorizing and, if applicable, my Electronic Funds Withdrawal Consent.

**Taxpayer's PIN: check one box only**

☒ I authorize Real Tax Service, Inc. (ERO firm name) to enter or generate my PIN [ ] (Enter five digits, but don't enter all zeros) as my signature on the income tax return (original or amended) I am now authorizing.

☐ I will enter my PIN as my signature on the income tax return (original or amended) I am now authorizing. Check this box only if you are entering your own PIN and your return is filed using the Practitioner PIN method. The ERO must complete Part III below.

Your signature ▶ ______ Date ▶ ______

**Spouse's PIN: check one box only**

☒ I authorize Real Tax Service, Inc. (ERO firm name) to enter or generate my PIN [ ] (Enter five digits, but don't enter all zeros) as my signature on the income tax return (original or amended) I am now authorizing.

☐ I will enter my PIN as my signature on the income tax return (original or amended) I am now authorizing. Check this box only if you are entering your own PIN and your return is filed using the Practitioner PIN method. The ERO must complete Part III below.

Spouse's signature ▶ ______ Date ▶ ______

**Practitioner PIN Method Returns Only—continue below**

**Part III — Certification and Authentication — Practitioner PIN Method Only**

**ERO's EFIN/PIN.** Enter your six-digit EFIN followed by your five-digit self-selected PIN. 0 0 0 0 0 0 0 0 0 0 0 (Don't enter all zeros)

I certify that the above numeric entry is my PIN, which is my signature for the electronic individual income tax return (original or amended) I am now authorized to file for tax year indicated above for the taxpayer(s) indicated above. I confirm that I am submitting this return in accordance with the requirements of the Practitioner PIN method and Pub. 1345, Handbook for Authorized IRS *e-file* Providers of Individual Income Tax Returns.

ERO's signature ▶ ______ Date ▶ ______

**ERO Must Retain This Form — See Instructions**
**Don't Submit This Form to the IRS Unless Requested To Do So**

For Paperwork Reduction Act Notice, see your tax return instructions. BAA REV 06/08/22 PRO Form 8879 (Rev. 01-2021)


2026-06-22_10-12-26.snagx - Snagit Editor
More
werPoint Slide Show - DRAFT_Policy_Changes_FORGE_Launch - PowerPoint
Questions?
POLICY CHANGES
Slide 19 of 35


2026-06-22_10-12-26.snagx - Snagit Editor
More
PowerPoint Slide Show - DRAFT_Policy_Changes_FORGE_Launch - PowerPoint
PART 2
FORGE
USCIS · National Records Center | 4
Slide 20 of 35
Library
Effects

THE NEW STRUCTURE

# Enter FORGE

**FORGE** is the NRC's documentation and training architecture for FOIA work. Same content as the old guides, organized into four tiers, each with one owner and an update cadence that fits what it holds.

| TIER 1 **Policy Manual** | TIER 2 **Procedure Manuals** | TIER 3 **Casework Tools** | TIER 4 **FOIA Academy** |
| --- | --- | --- | --- |
| What FOIA requires. The authoritative standards. | How to do the work in FIRST, step by step. | Lookups, matrices, and charts on SharePoint. | Competency-based certification for the workforce. |

# Why separate policy, procedure, and tools

**Each part changes at a different pace.**

Statute and policy move slowly. Click-paths in FIRST move faster. Lookup charts change most often. Splitting them lets each be maintained without re-issuing the others.

**State the rule once.**

The standard lives in the Policy Manual. Each Procedure Manual restates the governing rule once, then cites the Manual by section number. You should not have to leaf between documents to confirm a single rule.

**Tools stay current without a re-issue.**

Decision matrices, code charts, and treatment tables move to SharePoint, where a designated editor can update them in place.

WHAT IT IS

# Tier 1: FOIA Policy Manual

*The single authoritative source for what FOIA requires, who is bound by what, and how case decisions are evaluated.*

## What is in it

- Statutory and regulatory authority (FOIA, Privacy Act, 6 CFR Part 5)
- Track 1 / 2 / 3 framework
- Perfected-request standards: VOI, consent, parentage, proof of death
- Final action codes: FC, UV, TD, NR, RF, NA, DP
- Exemptions framework, (b)(1) through (b)(9)
- Document classification, roles and authorities, recordkeeping

## Owner

**FOIA Officer**

Holds final review and approval authority. Reviews and signs off on policy issuances, including this Manual.

# Tier 2: Procedure Manuals

Step-by-step procedures in FIRST: which tab, which click, which escalation. Each restates the governing rule once and cites the Policy Manual by section.

## Case Create

**Intake.**

- Triage
- The FIRST tab walkthrough (Request, Search, Duplicate, Locate, Letters)
- Upfront closures
- Special intake scenarios.

## Case Processing

**Processing and closing.**

- Verifying records
- VOI bookmarks
- Applying exemptions line by line
- Specific documents
- Closing the case.

## Owner

**FOIA Program Manager**

Signs the Procedure Manuals; Section Chiefs concur on substance before each publishes.

# Tier 3: Casework Tools

Decision matrices, code charts, and lookup tables on SharePoint, each kept current in one place and cited by the manuals.

| Day-one tools (Priority 1) | Owner |
|---|---|
| • Closure Decision Matrix (replaces the FC/TD chart)<br>• Triage Decision Matrix (A-file vs agency record)<br>• Letter Inserts Library<br>• (b)(6) Document Treatment Matrix<br>• (b)(7)(E) Sensitive Words and Acronyms<br>• Office Routing, Forms Reference, FCO Listing, STACKS codes | **Operations Training**<br><br>A designated editor updates lists in place, governed by site permissions. No code, and no re-issuing a manual.<br><br>*Built as SharePoint lists with filtered views* |

ACCOUNTABILITY

# Who owns what

Each tier is approved by the person who owns the consequence. That is the load-bearing idea: the prior guide failed because everyone owned a piece and no one owned the whole.

| Tier | Document | Owner | Update cadence |
|---|---|---|---|
| **1: Policy** | FOIA Policy Manual | FOIA Officer | As policy changes |
| **2: Procedure** | Case Create + Case Processing Manuals | FOIA Program Manager | With each policy change |
| **3: Casework Tools** | SharePoint lists, matrices, charts | Operations Training | Continuous, in place |
| **4: Academy** | FOIA Academy certification program | Operations Training | Per program roadmap |

QUICK ORIENTATION

# At your desk: where to look

| | |
|---|---|
| Need the rule, or the authority behind it? → | **Policy Manual** |
| Need the steps in FIRST? → | **Procedure Manual for your concentration** |
| Need a reference or job aid? → | **Casework Tools** |
| Know the topic but not where it lives? → | **Use the Navigator on the Operations Hub** |

PowerPoint Slide Show - DRAFT_Policy_Changes_FORGE_Launch - PowerPoint

PART 3

# FORGE Hub: Live Walkthrough

PowerPoint Slide Show - DRAFT_Policy_Changes_FORGE_Launch - PowerPoint

PART 4

# FOIA Academy: A First Look

# What Is the FOIA Academy?

Tier 4 of FORGE. The workforce development pathway and the fourth tier of FORGE, designed to be the first competency-gated, multi-tier, in-house FOIA Academy in the federal government. Four concentrations, six certification levels, and nineteen modules in scope

**4**
**Concentrations**
Intake, Processing, Approving, & Supervision

**19**
**Modules**
By workflow type and complexity

**6**
**Potential Certifications**
GS-5 through GS-13

**Gated**
**Certification Model**
Competency, not seat time

# Four Functional Concentrations

*Concentrations are organized by function, not by record type. This mirrors how FOIA work actually flows: every case starts with intake, moves through processing, ends with approval, all managed by leadership.*

### INTAKE

4 modules

- A-File
- Appeals
- Proactive Disclosure
- Agency Records

### PROCESSING

7 modules

- Specific Docs
- Complete A-File
- EB-5
- Proactive Disclosure
- Appeals
- Agency Records
- Litigation

### APPROVING

5 modules

- A-File
- Appeals
- Proactive Disclosure
- Agency Records
- Negotiation

### SUPERVISION

3 modules

- Workflow Oversight
- Quality Review & Coaching
- Performance & Reporting

# Certifications

| LEVEL | DESIGNATION | SCOPE |
|---|---|---|
| I | FOIA Intake Specialist | Case creation across all intake types |
| II | FOIA Processing Specialist | Specific Doc and Complete A-File processing |
| III | FOIA Senior Specialist | Complex A-File, EB-5, and AAO Decision processing |
| IV | FOIA Subject Matter Expert | Agency Records, Litigation processing; A-File and AAO approving |
| V | FOIA Distinguished Specialist | Agency Records approving and negotiation |
| NA | FOIA Supervisor | Workflow Oversight, Quality Review & Coaching, Performance & Reporting |

In one picture

# One source of truth, two procedure manuals, a living tools layer, and a path to certification.

| Find the rule | Find the steps | Find the lookup | Build the credential |
|---|---|---|---|
| **Policy Manual** | **Procedure Manuals** | **Casework Tools** | **FOIA Academy** |

**Start here:** the FORGE Hub on SharePoint. **Report a gap or error:** the FORGE feedback channel.

***Questions?***

Exhibit 22

FIRST CASE

Reporting POC Search

| Control Number | Type | Office | Track | Status | Closed Reason | Request Date | Backlog Date | Closed Date |
|---|---|---|---|---|---|---|---|---|
| SDO2026 | FOIA Request | NRC | 2 | C | PD | 04/27/2026 | 06/10/2026 | 05/29/2026 |

ACTIONS

125% Page 178 of 660

**Overtime Processing**
This case is flagged for processing in overtime

## Case Information

Requester's Name
Requester's Address
Requester's Email
Subject of Record Name
Other Names
A-Number
Country of Birth
Date of Birth
Father's Name
Mother's Name
Spouse

| | |
|---|---|
| Type | FOIA Request |
| Track | Track 2 |
| Source | Attorney |
| Documents Requested | None |

Show More

Documents Summary Letter History More

OFF ON

Número de salida

Servicio de Inmigración y Naturalización

I-94
Registro de salida

14. Apellido

15. Primer nombre

16. Fecha de nac. (día-mes-año)

17. Ciudadanía

SEMINOLE FORM I-94

Case Notes + Add Note

05/29/2026 05:13 AM
SUMMARY
A# provided
SEQ 4...more
REPLY

05/27/2026 07:23 AM
Return
Case should have been created as T2 under NRC.
REPLY

05/21/2026 03:12 PM
Admin
Full A-file request per seq 1 pg 3.
REPLY

04/30/2026 01:36 PM
CC
No available receipts, staffed A-file.
REPLY

PCIS is in the process of integrating additional role types (e.g. Petitioner, Sponsor). Data from different systems will be incorporated in phases.
Learn which data is currently included.

Horizontal View Vertical View

| Date | Source | Receipt # | Form Type | Beneficiary | Petitioner | Sponsor | A# | Secondary A# | FIN | UCN | Last Name | First Name | Middle Name | COA/POL | DOB | COB | COC |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 04/08/2011 | CPMS | NB | N-400 | | | | A | | | | | | | | | | |
| 04/08/2011 | CPMS | NB | N-400 | | | | A | | | | | | | | | | |
| 03/07/2011 | C4 | NB | N-400 | | | | A | | | | | | | | | | |
| 02/24/2010 | ARELEVEN_CIS2 | -- | | | | | A | | | | | | | | | | |
| 10/07/2005 | CPMS | LIN | I-485 | | | | A | | | | | | | | | | |
| 10/07/2005 | CPMS | LIN | I-485 | | | | A | | | | | | | | | | |
| 06/25/2004 | CPMS | LIN | I-485 | | | | A | | | | | | | | | | |
| 01/12/2004 | C3 | LIN | I-765 | | | | A | | | | | | | | | | |
| 05/13/2002 | C3 | LIN | I-730 | | | | A | | | | | | | | | | |
| 05/13/2002 | C3 | LIN | I-730 | | | | A | | | | | | | | | | |
| 05/13/2002 | C3 | LIN | I-730 | | | | A | | | | | | | | | | |
| 05/13/2002 | C3 | LIN | I-730 | | | | A | | | | | | | | | | |
| 05/06/2002 | C3 | LIN | I-485 | | | | A | | | | | | | | | | |
| 05/06/2002 | C3 | LIN | I-765 | | | | A | | | | | | | | | | |
| 11/15/1999 | C3 | LIN | I-765 | | | | A | | | | | | | | | | |
| 05/22/1998 | C3 | SR | I-765 | | | | A | | | | | | | | | | |
| 08/23/1996 | C3 | SR | I-765 | | | | A | | | | | | | | | | |
| 06/16/1995 | C3 | SR | I-765 | | | | A | | | | | | | | | | |
| 01/27/1994 | C3 | SR | I-765 | | | | A | | | | | | | | | | |
| 01/21/1994 | CIS2 | -- | | | | | A | | | | | | | | | | |
| 01/21/1994 | GLOBAL | ZM | I-589 | | | | A | | | | | | | | | | |

Exhibit 23

**MEMORANDUM FOR THE RECORD**

April 28, 2026

*Combined: [redacted] 1:1 and NRC Quarterly All-Hands*

# PART I: [redacted] 1:1




### Summary

I had a Teams call with my direct supervisor, Operations Support Branch (OSB) Associate Center Director (ACD) [redacted] We covered three substantive areas: (a) a requester-facing guidance document I drafted to clarify VOI requirements after identifying that the FIRST homepage contradicts internal closure criteria; (b) the continued classification of attorney-address closures under the FC code rather than the new UV code; and (c) the connection between opaque closure policies and the 19,000+ appeals backlog. [redacted] acknowledged the issues I raised, confirmed familiarity with the FIRST homepage discrepancy, and characterized the lack of fixes as disproportionate to their difficulty.

### Key Quantitative / Factual Claims

| Claim | Source |
|---|---|
| FIRST homepage tells requesters they can provide "your current address or an email address" | I noted |
| The mailing address field in FIRST is optional; only email is required | I noted |
| Attorney-address closures remain under FC, not the new UV (Unable to Verify) code | I noted |
| Attorney-address closures are "probably the number one type of closure code" | I noted |
| Appeals backlog at approximately 19-20K | I noted |
| Letter inserts can be updated at any time | [redacted] |
| UV training incomplete; OCC not yet consulted on attorney-address issue | I relayed the Acting FOIA Officer's statements |

### Verbatim Quotations

#### On the FIRST homepage / requester confusion

**I stated:** *"The first homepage still says you can provide your current address or an email address."*

**I stated:** *"For the address portion, the actual mailing address is optional. You don't have to put anything there. The only thing you have to enter is an email address. So it's understandably extremely confusing to requesters."*

**On attorney-address closures remaining under FC**

**I stated:** *"It doesn't look like the attorney's address is part of the UB code... from what I saw, or what it sounded like in the training, that's still under FC. And that's, I would imagine, is probably the number one type of closure code."*

**I stated:** *"I think where FOIA's stance is, is the attorney's address, we didn't comply with the requirement to provide a home residence, so that's why they kept it under FC."*

**On the appeals backlog and requester guidance**

**I stated:** *"If our appeals backlog is still sitting at 20K or 19K or whatever it is, a lot of that is just because people are appealing... what they think is the correct stuff, but they're just not aware of how the stuff's being applied internally. So if we can nip that in the bud, we don't have the appeals issue because people are aware of what the policy is."*

[redacted] *"Yeah, exactly."*

**On the feasibility of fixes**

[redacted]**:** *"We can update the letters at any point."*

**:** *"It didn't feel like it should be as hard as we're making it."*

**:** *"It's like getting in a line at like a Disney World that get to the end, it leads to nowhere. What's the point of that?"*

## PART II: NRC QUARTERLY ALL-HANDS (Q2 FY26)

### Summary

NRC-wide quarterly meeting. I presented on OSB accomplishments including the Administrative Appeals Office (AAO) collaboration with my section. Three areas of significance emerged from other presenters: (a) FOIA Superviso [redacted] presented that 40% of 5,000 reviewed appeal cases contained sufficient VOI/consent information to constitute proper FOIA requests, meaning those original closures were incorrect; (b) NRC Chief of Staff [redacted] identified two IRIS-level KPIs: FOIA backlog compliance and 2-hour responsiveness to ICE/CBP file requests, and (c) Arnold directed staff to "put our ideology and personal opinions aside" in executing shifting mission priorities.

### Key Quantitative / Factual Claims

| Claim | Source |
|---|---|
| 5,000 appeal cases reviewed by a team of 13 in 21 days | [redacted] |
| ~40% of reviewed appeals had sufficient VOI/consent to process | |
| A-file backlog in single digits during recent reporting periods | |
| ~299,000 requests responded to YTD FY26 | |
| 2-hour response requirement for ICE/CBP file requests (YZ/IL-300) | |
| 97% compliance on 2-hour ICE/CBP responsiveness (target >95%) | |
| AAO decisions discontinued 3/13/25; resumed 3/6/26 under litigation | |
| AAO backlog 3,000; team expanded from 1 to 18; 1,000+ posted | |
| Agency records teams "almost all" into A-file production | Arnold |

### Verbatim Quotations

#### On IRIS KPIs

[redacted] *"We have had very low backlog numbers and very high compliance numbers. Backlog numbers, certainly in double digits a couple of times, they've been in single digit numbers when we're looking at our A-file backlogs."*

[redacted]**:** *"It's going out to support folks in the new initiatives of the current administration to make sure that they have information necessary and accessible to conduct a business that they're conducting on a daily basis. And that's our responsiveness within two hours."*

[redacted]**:** *"Responsiveness in two hours, we're hovering around 97%. And the expectation there is that we be at greater than 95%."*

#### On the 40% appeals finding

[redacted] *"We discovered that a large number of the appeal cases had either verification of identity and consent in the original case or in a combination of the original case and the appeal. And that would make a proper FOIA request that we could just send back to the NRC side for processing."*

[redacted] *"They accomplished looking at those 5,000 cases in only 21 days, and they had about 40% of the cases that they reviewed fell into that category."*

**On UV closure code**

[redacted]**:** *"We've added a new closure code, unable to verify, which will help our customers understand the reason why we are denying their request is because the information in our system or our file didn't match the information that they gave us."*

**On AAO disclosure**

[redacted]**:** *"On March 13th, 2025, the FOIA program discontinued hosting administrative appeal office decisions to focus on other agency priorities. And then on March 6th of 2026, after reaching an agreement through an active litigation matter, the FOIA program returned to processing 200 decisions a week from a starting backlog of 3,000."*

**My presentation**

**I stated:** *"When those cases sit in backlog, unpublished, you kind of end up with people being in the dark and attorneys advising clients without access to the precedents that our agency is already committed to. So that does have real consequence for real people."*

**I stated:** *"When we act like [privacy competes with disclosure], we give ourselves permission to treat withholding as a default and disclosure as the exception when it's actually the opposite."*

**On workforce realignment**

**Arnold:** *"We've already required almost all of our agency records teams to get into A-file production. And that is driven by the mission. And it's driven by the requirements that are put upon us by our leaders in Washington, leaders in Camp Springs, DHS."*

**Arnold:** *"Like the military, I always say, I'm agnostic to who sits in the White House. I'm agnostic to whether the D or R after somebody's name. We're given a policy shift and priorities. Our job down here is to put our ideology and personal opinions aside and get after the work."*

## PART III: DATABRICKS VERIFICATION (SAME DAY)

I ran queries in Databricks SQL Editor (dbis-sql-warehouse) on the evening of April 28, 2026 to quantify total VOI-driven closures using the letter-insert join chain (letter -> letter_data -> letter_component, content='true' filter) and the UV final action code.

| Category | Distinct Cases | Method |
|---|---|---|
| FC with VOI-related letter inserts | 68,446 | Subquery on letter_component descriptions: Missing Subject of Record Address, COB, DOB, Missing VOI of Subject, Multiple Versions of VOI Provided |
| NR with VOI-related letter inserts | 50,600 | Subquery on letter_component descriptions: Subject of Record Parents, Name, Date of Birth, Alien Number, Country of Birth, Alien Number Does Not Match Your Records |
| UV (case-level closure code) | 2,254 | Direct filter: final_action_code_fk = 'UV' |
| **Total VOI-driven closures** | **121,300** | |

### Application of the 40% Rate

[redacted]'s 40% finding was based on VOI appeal cases generally. She did not specify FC or NR. Applying the agency's own 40% incorrect-closure rate to the 121,300 total VOI-driven closures yields an estimated 48,520 cases potentially closed incorrectly in 7.5 months.

*This is a working hypothesis. The 40% was observed on appeals cases, which are a self-selected subset (requesters who chose to appeal). The rate across the non-appealed population could differ in either direction. The extrapolation is defensible as a baseline estimate for scale, not as a precise system-wide finding. [5]*

## PART IV: CROSS-REFERENCE FINDINGS

**1. The agency's own review establishes a 40% incorrect-closure rate on VOI cases.** Wilson's statement that 40% of 5,000 reviewed appeal cases had sufficient VOI/consent to process is an internal admission, presented to the full NRC, that approximately 2,000 sampled cases were closed incorrectly. Applied to the 120,995 VOI-driven closures I confirmed in Databricks, the agency's own rate implies approximately 48,000 potentially incorrect closures in 7.5 months. [5]

**2. FC remains a contaminated bucket after UV introduction.** I identified in m [redacted] 1:1 that attorney-address closures, which I described as 'probably the number one type of closure code,' were not carved out into UV and remain under FC. In the same all-hands, Wilson presented UV as helping 'customers understand the reason' for closure. UV addressed only a subset of VOI-related closures (system/file mismatches) while the highest-volume category (attorney address) remains aggregated under FC with no sub-categorization. [2]

**3. FIRST homepage contradicts internal closure criteria.** The homepage tells requesters they can provide 'your current address or an email address' and makes the mailing address field optional. Internally, providing an attorney address triggers an FC closure. [redacted] (Acting Chief FOIA Officer) confirmed OCC has not been consulted on the attorney-address classification. [1]

**4. Fixes are acknowledged as easy but not implemented.** [redacted] told me 'We can update the letters at any point' and 'it didn't feel like it should be as hard as we're making it. [redacted] separately reported the case processing guides are 95% complete with a May rollout, confirming that the infrastructure for updating guidance exists. The information gap harming requesters is within the agency's control to fix. [4]

**5. Appeals backlog attributed to policy opacity by both supervisor and program data.** [redacted] xplicitly agreed with my causal chain: opaque closure criteria lead to closures that lead to appeals from requesters who didn't know the rules. [redacted]'s 40% finding confirms this quantitatively: 2,000 of 5,000 reviewed cases had sufficient information but were closed anyway. Combined with Deputy Director [redacted]'s April 13 statement that refile 'goes much faster than them going through the appeal' (2026-04-13 MFR), the record now contains supervisor-level, program-level, and leadership-level acknowledgments that the appeals backlog is substantially self-inflicted. [3]

**6. 2-hour ICE/CBP turnaround at 97% vs. 20-day statutory appeals timeline not met.** [redacted] identified enforcement-file responsiveness as one of two IRIS-level KPIs and reported 97% compliance on a 2-hour turnaround. I referenced in my [redacted] 1:1 that the 20-day statutory response time for appeals is 'not anywhere remotely close' to being met. The NRC can sustain 97% on a 2-hour enforcement deadline but cannot meet a 20-day deadline on appeals. [7]

**7. AAO discontinuation confirms litigation-driven compliance** [redacted] publicly stated AAO decision hosting was stopped for a year 'to focus on other agency priorities' and resumed only 'after reaching an agreement through an active litigation matter.' The 'other agency priorities' are contextualized by [redacted]'s KPI presentation: enforcement support is the co-equal institutional priority. [8]

**8. Arnold's 'ideology and personal opinions' framing.** Arnold told the NRC to 'put our ideology and personal opinions aside' regarding shifting priorities. In the context of my protected disclosures and the February 3, 2026 Arnold MFR (which recharacterized my compliance concerns as a personal failing), this framing parallels a pattern of recasting statutory objections as subjective opinion. This was addressed to the full NRC, not directed at me specifically. [9]

**9.** [redacted]**'s 'single digit' backlog claims require verification** [redacted] characterized A-file backlogs as 'single digit' with 'very high compliance numbers.' If 120,995 VOI closures are counted as 'responses' rather than as unresolved requests, the compliance figures reflect throughput volume, not actual delivery of records. [6]

**10. Resource reallocation from FOIA to enforcement.** Arnold stated 'almost all' agency records teams have been cross-trained into A-file production, driven by 'requirements put upon us by our leaders in Washington, leaders in Camp Springs, DHS.' This documents a resource shift toward enforcement-related workload.

## FOOTNOTES

[1] **Homepage language vs. closure criteria.** The FIRST system's requester-facing homepage instructs requesters they can provide "your current address or an email address." The mailing address field is optional; only email is required. Internally, the agency closes cases when a requester provides an attorney address rather than a home residence. Requesters are following the system's own instructions and being closed for it. [redacted] (Acting Chief FOIA Officer) confirmed on April 13, 2026 that OCC has not been consulted on whether this interpretation is legally correct.

[2] **UV presented as transparency improvement, but highest-volume FC category excluded from UV.** [redacted] presented UV as helping "customers understand the reason why we are denying their request." In the same day' [redacted] 1:1, I identified that attorney-address closures, which I described as "probably the number one type of closure code," remain under FC, not UV. The UV code addresses only system or file verification mismatches; the policy-interpretation closures (attorney address, FIRST homepage discrepancy) remain aggregated under FC with no sub-categorization. The UV introduction therefore resolves only a subset of the categorization problem while the largest FC driver remains opaque.

[3] **Appeals backlog framing as requester-driven vs. internal evidence it is self-inflicted.** In my [redacted] 1:1, I attributed the 19-20K appeals backlog to requesters appealing closures driven by opaque policy criteria they couldn't anticipate. In the All-Hands, [redacted]'s 40% finding confirmed quantitatively that 40% of 5,000 sampled appeal cases had sufficient information to process. Deputy Directo [redacted] stated on April 13 that refiling "goes much faster than them going through the appeal." The record now contains three independent data points, from my supervisor, FOIA leadership, and a deputy director, attributing the appeals backlog to agency closure practices rather than requester behavior. In tension with any framing that characterizes the appeals volume as organic demand or requester non-compliance.

[4] **Acknowledged fix feasibility vs. inaction.** [redacted] stated "We can update the letters at any point" and "it didn't feel like it should be as hard as we're making it." [redacted] eported case processing guides are 95% complete with a May rollout, demonstrating the infrastructure for updating guidance exists. The requester guide I drafted and forwarded to FOIA leadership (Jim Baxley, [redacted] and [redacted]) received no substantive response beyond [redacted] asking 'Is this like a self-help guide for requesters?' The fix is available, acknowledged as easy, and not being deployed.

[5] **Methodological note: 40% rate extrapolation.** [redacted]'s 40% finding was presented as "about 40%," based on a review of 5,000 appeal cases. She did not specify whether the 5,000 were FC appeals, NR appeals, or both. The sample was drawn from the appeals backlog, which is self-selected (only requesters who chose to appeal). The 40% rate may skew higher in the appeals population (requesters who appeal may be more likely to have provided information that was overlooked) or lower (some appeals include new information not available at original closure). The relationship between these 5,000 cases

and the 5,000 cases documented in my March 25, 2026 MFR is not established. They may be the same cohort, overlapping cohorts, or independent samples. The extrapolation to 120,995 is a working hypothesis for estimating scale, not a precise system-wide finding.

[6] **"Single digit" backlog claims vs. 120,995 VOI-driven closures** [redacted] stated backlogs have been in 'single digit numbers when we're looking at our A-file backlogs.' The Nightingale_Summary reporting notebook found in Databricks uses a 9-office filter and counts FC/NR closures as completed responses. My Databricks queries confirm over 120,000 VOI-driven closures in the post-VOI period. If these closures are counted as 'responses' in the compliance calculation, the backlog figures reflect throughput volume (cases moved to a closed status) rather than delivery of records to requesters.

[7] **97% on 2-hour enforcement turnaround vs. failure on 20-day appeals timeline.** [redacted] reported the NRC is at 97% compliance on a 2-hour response requirement for ICE/CBP file requests. I noted in m [redacted] 1:1 that the 20-day statutory response time for appeals is "obviously not anywhere remotely close" to being met, which he agreed with. The NRC demonstrates the operational capacity to sustain near-perfect compliance on a 2-hour deadline for enforcement work while failing to meet a 480-hour (20 business day) deadline for requester appeals.

[8] **AAO discontinued for "other agency priorities" vs. litigation-forced resumption.** [redacted] stated AAO decision posting to the Electronic Reading Room was discontinued on March 13, 2025 "to focus on other agency priorities" and resumed March 6, 2026 "after reaching an agreement through an active litigation matter." The discontinuation lasted nearly one year. The "other agency priorities" are contextualized by [redacted]'s same-day identification of enforcement support and A-file backlog as the NRC's two IRIS-level KPIs. The AAO backlog grew to 3,000 unpublished decisions during the discontinuation.

[9] **Contextual note: 'Ideology and personal opinions' framing.** Arnold told the NRC to "put our ideology and personal opinions aside and get after the work." Facially a standard civil-service message about apolitical duty. In the context of my protected disclosures, which concern statutory FOIA compliance obligations and court-ordered reporting accuracy, this framing parallels the February 3, 2026 Arnold MFR in which Arnold recharacterized my compliance concerns as a personal failing. The pattern of recasting substantive, statute-grounded objections as 'ideology' or 'personal opinions' is documented but not conclusive: Arnold's statement was addressed to the full NRC, not directed at me, and the specific policy shifts he referenced (A-file cross-training, enforcement support) are distinct from the FOIA compliance issues I have raised.

## CONFIDENCE / CAVEATS

Both transcripts are from Teams calls. Quotations are taken directly from transcript text. My [redacted] 1:1 was collegial throughout [redacted] was receptive to my observations. The all-hands was a formal presentation setting with prepared remarks. The 40% figure was presented as approximate ('about 40%'). Databricks screenshots below


databricks
Search data, notebo
New
Workspace
Recents
Catalog
Jobs & Pipelines
Compute
Marketplace
SQL
SQL Editor
Queries
Dashboards
Genie spaces
Alerts
Query History
SQL Warehouses
Data Engineering
Job Runs
Data Ingestion
AI/ML
Playground
Agents
Experiments
Features
Models
New Query 2026-04-27 17:00:14
Run all
Just now (5s)
eciscor_prod
applicant_address_gis
New SQL editor: ON
--FC with VOI-related letter inserts
use catalog eciscor_prod;
use schema ecfirst;
select count(distinct lt.first_case_id)
from letter lt
join letter_data ld on lt.id = ld.letter_id
join first_case fc on lt.first_case_id = fc.id
join office o on o.id = fc.office_id
where fc.final_action_code_fk = 'FC'
and fc.case_closed_timestamp >= '2025-09-16'
and fc.case_closed_timestamp < '2026-05-01'
and o.office_code in ('NRC','BL2','BL3','EB5','ALF','SAF','SMP','MRC','SDO')
and ld.content = 'true'
and ld.letter_component_id in (
select id from letter_component
where description in (
'Missing Subject of Record Address',
'Missing VOI of Subject',
'Missing Subject of Record COB',
'Missing Subject of Record DOB',
'Multiple Versions of VOI Provided'
)
)
Add parameter
Results 3 of 3
Table
count(DISTINCT first_case_id)
1
68446


databricks
Search data, noteb
New
Workspace
Recents
Catalog
Jobs & Pipelines
Compute
Marketplace
SQL
SQL Editor
Queries
Dashboards
Genie spaces
Alerts
Query History
SQL Warehouses
Data Engineering
Job Runs
Data Ingestion
AI/ML
Playground
Agents
Experiments
Features
Models
Serving
New Query 2026-04-27 17:00:14
Run all
Just now (2s)
eciscor_prod
applicant_address_gis
New SQL editor: ON
--NR with VOI-related letter inserts
use catalog eciscor_prod;
use schema ecfirst;
select count(distinct lt.first_case_id)
from letter lt
join letter_data ld on lt.id = ld.letter_id
join first_case fc on lt.first_case_id = fc.id
join office o on o.id = fc.office_id
where fc.final_action_code_fk = 'NR'
and fc.case_closed_timestamp >= '2025-09-16'
and fc.case_closed_timestamp < '2026-05-01'
and o.office_code in ('NRC','BL2','BL3','EB5','ALF','SAF','SMP','MRC','SDO')
and ld.content = 'true'
and ld.letter_component_id in (
select id from letter_component
where description in (
'Subject of Record Parents',
'Subject of Record Name',
'Subject of Record Date of Birth',
'Subject of Record Alien Number',
'Subject of Record Country of Birth',
'Alien Number Does Not Match Your Records'
)
)
Add parameter
Results 3 of 3
Table
count(DISTINCT first_case_id)
1
50600


databricks
New
Workspace
Recents
Catalog
Jobs & Pipelines
Compute
Marketplace
SQL
SQL Editor
Queries
Dashboards
Genie spaces
Alerts
Query History
New Query 2026-04-27 17:00:14
Run all
Just now (1s)
eciscor_prod
applicant_address_gis
--uv cases
select count(*)
from eciscor_prod.ecfirst.first_case
where final_action_code_fk = 'UV'
Add parameter
Table
count(1)
1
2254

Exhibit 24

At 12:00 Eastern, I was scheduled to conducted a training on updates to FOIA Policy regarding the processing of the narrative section of forms I-213 and I-275, in addition to the new Final Action Code and Letter for VOI-specific closures.

Near the end of the training, an employee asked which types of final action code & letter they should use if they did not provide elements of VOI AND the failed to sign the record under penalty of perjury, since each instance would fall under a different closure code. I stated "good question," which the FOIA Section Chief echoed, then added she would speak with the Acting FOIA Officer.

Shortly after, another employee noted that in Case Create they are seeing attorneys providing multiple address in each request associated with their law firms and asked if we were going to do something about it. For clarification, I restated her comment about them providing the law firm info while we do not accept representative addresses for VOI. She responded that she has to research each address provided, only to discover they are all law firm addresses. I noted that part of this is likely that this policy is not clear to the law firms themselves, and asking the Acting FOIA Officer to consider communicating it out since current policy interprets the address requirement of VOI as the subject of record's address, not an attorney's address like we have historically allowed.

The FOIA Section Chief then stated that "this is a known issue, and we are trying to work with our partners at Chief Counsel to get more clarifying guidance on this," and then said to the Acting FOIA Officer: "I know you were going to jump in. I think we're just waiting on some additional feedback."

The Acting FOIA Officer then clarified, "Yep. That is correct... We still have yet to have a conversation with OCC on the address issue, so there will be more to come on that at a later date."

TIMOTHY J TURNER

Digitally signed by TIMOTHY J TURNER
Date: 2026.04.13 13:41:21 -04'00'